**Exhibit A**
**Docket and Relevant Pleadings and Motions in the State Court Action**

| Date Filed | NYSCEF No. | Document |
|---|---|---|
|  | - | Docket |
| 1/10/25 | 2 | Complaint |
| 5/13/2025 | 61 | Decision & Order on Motion granting substitution of Fordham Landing North Holdings LLC as plaintiff in the place and stead of plaintiff SIG CRE 2023 VENTURE LLC |
| 5/29/25 | 74 | Third Party Summons and Amended Verified Answer With Counterclaims, Cross-Claims And Third-Party Complaint |
| 5/29/25 | 75 | Amended Verified Answer with Counterclaims, Cross-Claims, and Third-Party Complaint |
| 5/30/25 | 76 | Answer |
| 8/8/25 | 101 | Notice of Motion to Dismiss Counterclaims |
| 8/8/25 | 102 | Affirmation of N. Dean Boyer in Support of Motion to Dismiss Counterclaims |
| 8/8/25 | 103 | Exhibit 1 to Motion to Dismiss |
| 8/8/25 | 104 | Exhibit 2 to Motion to Dismiss |
| 8/8/25 | 105 | Exhibit 3 to Motion to Dismiss |
| 8/8/25 | 106 | Exhibit 4 to Motion to Dismiss |
| 8/8/25 | 107 | Exhibit 5 to Motion to Dismiss |
| 8/8/25 | 108 | Exhibit 6 to Motion to Dismiss |
| 8/8/25 | 109 | Exhibit 7 to Motion to Dismiss |
| 8/8/25 | 110 | Exhibit 8 to Motion to Dismiss |
| 8/8/25 | 111 | Plaintiff's Memorandum of Law in Support of Motion to Dismiss Counterclaims |
| 9/16/25 | 134 | Affirmation of Jay Edmond Russ in Opposition to Motion to Dismiss |
| 9/16/25 | 135 | Exhibit A in Opposition to Motion to Dismiss |
| 9/16/25 | 136 | Exhibit B in Opposition to Motion to Dismiss |
| 9/16/25 | 137 | Exhibit C in Opposition to Motion to Dismiss |
| 9/16/25 | 138 | Memorandum of Law in Opposition to the Motion for Summary Judgment of Plaintiff Fordham Landing North Holdings, LLC to Dismiss the Counterclaims of Defendants/Third-Party Plaintiffs MDBZJGGS, LLC, DS Fordham Landing 2 LLC, DS Fordham Landing 4 LLC, and Gary Segal |
| 10/10/25 | 146 | Plaintiff's Reply Memorandum of Law in Further Support of Motion to Dismiss Counterclaims Asserted Against Plaintiff in Segal Defendants' Amended Answer/Third-Party Complaint |
| 3/16/26 | 178 | Notice of Bankruptcy |
| 4/21/26 | 181 | Decision and Order on Motion to Dismiss |

# Docket

NYSCEF

New York County Supreme Court

**Document List**

**Index #   850030/2025**

Created on:06/10/2026 01:07 PM

Case Caption:   **Fordham Landing North Holdings LLC v. MDBZJGGS, LLC et al**

Judge Name:   **James Edward D'Auguste**

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|--------------------------|--------|---------------|----------|
| 1 | SUMMONS<br>Summons | Processed | 01/10/2025 | Doherty, J. |
| 2 | COMPLAINT<br>Complaint | Processed | 01/10/2025 | Doherty, J. |
| 3 | EXHIBIT(S) - 1<br>Property Description | Processed | 01/10/2025 | Doherty, J. |
| 4 | EXHIBIT(S) - 2<br>Note and Allonges | Processed | 01/10/2025 | Doherty, J. |
| 5 | RJI -RE: OTHER<br>Request Assignment to Commercial Division | Processed | 01/10/2025 | Doherty, J. |
| 6 | ADDENDUM - COMMERCIAL DIVISION (840C) (POST RJI)<br>Commercial Division Addendum | Processed | 01/13/2025 | Doherty, J. |
| 7 | NOTICE OF PENDENCY | Returned For Correction | 01/22/2025 | Doherty, J. |
| 8 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Affirmation of Service as to Gary Segal | Processed | 01/27/2025 | Doherty, J. |
| 9 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Affidavit of Service upon MDBZJGGS, LLC | Processed | 02/05/2025 | Doherty, J. |
| 10 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Affidavit of Service upon DS Fordham Landing 2 LLC | Processed | 02/05/2025 | Doherty, J. |
| 11 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Affidavit of Service upon DS Fordham Landing 4 LLC | Processed | 02/05/2025 | Doherty, J. |
| 12 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Affidavit of Service upon Igal Namdar | Processed | 02/05/2025 | Doherty, J. |
| 13 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Affidavit of Service upon NYC Environmental Control Board | Processed | 02/05/2025 | Doherty, J. |
| 14 | STIPULATION - TIME TO ANSWER | Processed | 02/10/2025 | Doherty, J. |
| 15 | STIPULATION - TIME TO ANSWER | Processed | 02/18/2025 | Doherty, J. |
| 16 | NOTICE OF APPEARANCE (PRE RJI) | Processed | 03/04/2025 | Levine, I. |
| 17 | DEMAND FOR CHANGE OF PLACE OF TRIAL | Processed | 03/04/2025 | Levine, I. |
| 18 | NOTICE OF MOTION (Motion #001) | Processed | 03/12/2025 | Boyer, N. |
| 19 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION (Motion #001) | Processed | 03/12/2025 | Boyer, N. |
| 20 | EXHIBIT(S) - 1 (Motion #001)<br>Summons & Complaint | Processed | 03/12/2025 | Boyer, N. |

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|---|---|---|---|---|
| 21 | EXHIBIT(S) - 2 (Motion #001) <br> Assignment of Mortgage | Processed | 03/12/2025 | Boyer, N. |
| 22 | EXHIBIT(S) - 3 (Motion #001) <br> Note | Processed | 03/12/2025 | Boyer, N. |
| 23 | EXHIBIT(S) - 4 (Motion #001) <br> Omnibus Loan Assignment | Processed | 03/12/2025 | Boyer, N. |
| 24 | MEMORANDUM OF LAW IN SUPPORT (Motion #001) | Processed | 03/12/2025 | Boyer, N. |
| 25 | NOTICE OF MOTION (Motion #002) <br> Notice of Motion | Processed | 03/20/2025 | Russ, J. |
| 26 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION (Motion #002) <br> Affirmation of Jay Edmond Russ Esq. | Processed | 03/20/2025 | Russ, J. |
| 27 | EXHIBIT(S) - A (Motion #002) <br> Summons and Complaint without Ehibits | Processed | 03/20/2025 | Russ, J. |
| 28 | EXHIBIT(S) - B (Motion #002) <br> Note and Allonges | Processed | 03/20/2025 | Russ, J. |
| 29 | MEMORANDUM OF LAW IN SUPPORT (Motion #002) <br><br> Memo of Law in Support | Processed | 03/20/2025 | Russ, J. |
| 30 | NOTICE OF MOTION (Motion #003) | Processed | 03/23/2025 | Levine, I. |
| 31 | AFFIDAVIT OR AFFIRMATION IN SUPPORT (Motion #003) <br> from Jay Edmond Russ, Esq. | Processed | 03/23/2025 | Levine, I. |
| 32 | EXHIBIT(S) - A (Motion #003) <br> Summons | Processed | 03/23/2025 | Levine, I. |
| 33 | EXHIBIT(S) - B (Motion #003) <br> Complaint | Processed | 03/23/2025 | Levine, I. |
| 34 | EXHIBIT(S) - C (Motion #003) <br> Demand to change venue | Processed | 03/23/2025 | Levine, I. |
| 35 | MEMORANDUM OF LAW IN SUPPORT (Motion #003) | Processed | 03/23/2025 | Levine, I. |
| 36 | ADJOURNMENT OF MOTION -REQUEST -IN SUBMISSIONS PART -RM 130 (Motion #001) <br> requesting adjournment - first request | Processed | 03/25/2025 | Levine, I. |
| 37 | STIPULATION - ADJOURNMENT OF MOTION -IN SUBMISSIONS PART -RM 130 (Motion #001) | Processed | 03/26/2025 | Levine, I. |
| 38 | STIPULATION - TIME TO ANSWER | Processed | 03/26/2025 | Ness, D. |
| 39 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION (Motion #003) | Processed | 04/02/2025 | Boyer, N. |
| 40 | EXHIBIT(S) - 1 (Motion #003) <br> Complaint | Processed | 04/02/2025 | Boyer, N. |

NYSCEF
New York County Supreme Court

**Document List**
**Index #   850030/2025**

Created on:06/10/2026 01:07 PM

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|--------------------------|--------|---------------|----------|
| 41 | EXHIBIT(S) - 2 (Motion #003)<br>Mortgage | Processed | 04/02/2025 | Boyer, N. |
| 42 | EXHIBIT(S) - 3 (Motion #003)<br>Extension Agreement | Processed | 04/02/2025 | Boyer, N. |
| 43 | MEMORANDUM OF LAW (Motion #003)  *Corrected* | Processed | 04/03/2025 | Boyer, N. |
| 44 | AFFIRMATION (Motion #001)<br>Affirmation of Andrew W. Albstein, Esq. | Processed | 04/06/2025 | Rosenthal, D. |
| 45 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO<br>MOTION (Motion #001)<br>Affirmation of Jay Edmond Russ Esq. Inn Opposition | Processed | 04/06/2025 | Rosenthal, D. |
| 46 | EXHIBIT(S) - A (Motion #001)<br>LLC Agreement | Processed | 04/06/2025 | Rosenthal, D. |
| 47 | MEMORANDUM OF LAW IN REPLY (Motion #003) | Processed | 04/06/2025 | Levine, I. |
| 48 | MEMORANDUM OF LAW IN REPLY (Motion #001) | Processed | 04/17/2025 | Boyer, N. |
| 49 | ADJOURNMENT OF MOTION -REQUEST -IN<br>SUBMISSIONS PART -RM 130 (Motion #002) | Processed | 04/22/2025 | Boyer, N. |
| 50 | ORDER - CASE SCHEDULING (Motion #002) | Processed | 04/23/2025 | Court User |
| 51 | ORDER - PRELIMINARY CONFERENCE | Processed | 04/24/2025 | Court User |
| 52 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO<br>MOTION (Motion #002) | Processed | 04/25/2025 | Boyer, N. |
| 53 | EXHIBIT(S) - 1 (Motion #002)<br>Complaint | Processed | 04/25/2025 | Boyer, N. |
| 54 | EXHIBIT(S) - 2 (Motion #002)<br>Mortgage | Processed | 04/25/2025 | Boyer, N. |
| 55 | EXHIBIT(S) - 3 (Motion #002)<br>Omnibus Loan Assignment SigBank to SBB | Processed | 04/25/2025 | Boyer, N. |
| 56 | EXHIBIT(S) - 4 (Motion #002)<br>Omnibus Loan Assignment SBB to Plaintiff | Processed | 04/25/2025 | Boyer, N. |
| 57 | MEMORANDUM OF LAW IN OPPOSITION (Motion<br>#002) | Processed | 04/25/2025 | Boyer, N. |
| 58 | MEMORANDUM OF LAW IN REPLY (Motion #002)<br>MEMORANDUM OF LAW IN REPLY ON THE MOTION<br>TO DISMISS BY DEFENDANTS, MDBZJGGS, LLC, DS<br>FORDHAM LANDING | Processed | 05/02/2025 | Rosenthal, D. |
| 59 | DECISION + ORDER ON MOTION (Motion #001) | Processed | 05/12/2025 | Court User |
| 60 | DECISION + ORDER ON MOTION (Motion #002) | Processed | 05/12/2025 | Court User |
| 61 | DECISION + ORDER ON MOTION (Motion #003) | Processed | 05/12/2025 | Court User |

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|--------------------------|--------|---------------|----------|
| 62 | NOTICE OF ENTRY (Motion #001) | Processed | 05/13/2025 | Boyer, N. |
| 63 | NOTICE OF ENTRY (Motion #002) | Processed | 05/13/2025 | Boyer, N. |
| 64 | NOTICE OF ENTRY (Motion #003) | Processed | 05/13/2025 | Boyer, N. |
| 65 | NOTICE TO COUNTY CLERK CPLR 8019(C) (Motion #001) | Processed | 05/13/2025 | Boyer, N. |
| 66 | SERVICE ON SUPREME COURT CLERK (GENL. CLERK) W/COPY OF ORDER (Motion #001) Order Amending Caption/Substituting Plaintiff | Processed | 05/13/2025 | Boyer, N. |
| 67 | NOTICE TO COUNTY CLERK CPLR 8019(C) (Motion #002) | Processed | 05/13/2025 | Boyer, N. |
| 68 | SERVICE ON SUPREME COURT CLERK (GENL. CLERK) W/COPY OF ORDER (Motion #002) Order Amending Caption/Substituting Plaintiff | Processed | 05/13/2025 | Boyer, N. |
| 69 | NOTICE TO COUNTY CLERK CPLR 8019(C) (Motion #003) | Processed | 05/13/2025 | Boyer, N. |
| 70 | SERVICE ON SUPREME COURT CLERK (GENL. CLERK) W/COPY OF ORDER (Motion #003) Order Amending Caption/Substituting Plaintiff | Processed | 05/13/2025 | Boyer, N. |
| 71 | ANSWER | Processed | 05/22/2025 | Levine, I. |
| 72 | STIPULATION - TIME TO ANSWER | Processed | 05/23/2025 | Ness, D. |
| 73 | NOTICE OF APPEAL from Order Entered on May 13, 2025 | Processed | 05/24/2025 | Levine, I. |
| 74 | THIRD PARTY SUMMONS/COMPLAINT *Corrected* RESUBMITTED AS CORRECTED | Processed | 06/10/2025 | Levine, I. |
| 75 | ANSWER (AMENDED) with counterclaim and cross-claims against co-defendant Namdar | Processed | 05/29/2025 | Levine, I. |
| 76 | ANSWER | Processed | 05/30/2025 | Mehlman, A. |
| 77 | STIPULATION - BRIEFING SCHEDULE | Processed | 06/17/2025 | Boyer, N. |
| 78 | STIPULATION - BRIEFING SCHEDULE Stipulation Extending Defendants' Time to Respond and Setting Briefing Schedule | Processed | 06/17/2025 | Ness, D. |
| 79 | DEMAND FOR: FIRST DEMAND OF MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC and, GARY SEGAL FO | Processed | 06/23/2025 | Rosenthal, D. |
| 80 | DEMAND FOR: FIRST DEMAND OF MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC and, GARY SEGAL FO | Processed | 06/23/2025 | Rosenthal, D. |

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|---|---|---|---|---|
| 81 | DEMAND FOR:<br>FIRST DEMAND OF MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC and, GARY SEGAL FO | Processed | 06/23/2025 | Rosenthal, D. |
| 82 | INTERROGATORIES<br>FIRST SET OF INTERROGATORIES OF MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC an | Processed | 06/23/2025 | Rosenthal, D. |
| 83 | DEMAND FOR:<br>Plaintiff's First Demand for Discovery and Inspection to MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS | Processed | 06/23/2025 | Shuo, L. |
| 84 | INTERROGATORIES<br>Plaintiff's First set of Interrogatories to MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LAND | Processed | 06/23/2025 | Shuo, L. |
| 85 | INTERROGATORIES<br>FIRST SET OF INTERROGATORIES BY IGAL NAMDAR AND NAMDAR FORDHAM LANDING LLC UPON MBZJGGS, LLC, DS FOR | Processed | 06/23/2025 | Ness, D. |
| 86 | DEMAND FOR:<br>FIRST SET OF DOCUMENT DEMANDS BY IGAL NAMDAR AND NAMDAR FORDHAM LANDING LLC UPON MBZJGGS, LLC, DS FO | Processed | 06/23/2025 | Ness, D. |
| 87 | AFFIRMATION/AFFIDAVIT OF SERVICE<br>Affidavit of Service as to SIG CRE 2023 Venture LLC | Processed | 06/30/2025 | Rosenthal, D. |
| 88 | PROOF OF SERVICE<br>Receipt for Service of Process (See Doc # 87) | Processed | 07/16/2025 | Rosenthal, D. |
| 89 | NOTICE OF MOTION (Motion #004) | Processed | 07/22/2025 | Doherty, J. |
| 90 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION (Motion #004)<br>Affirmation of John M. Doherty | Processed | 07/22/2025 | Doherty, J. |
| 91 | EXHIBIT(S) - A (Motion #004)<br>Correspondence | Processed | 07/22/2025 | Doherty, J. |
| 92 | MEMORANDUM OF LAW IN SUPPORT (Motion #004) | Processed | 07/22/2025 | Doherty, J. |
| 93 | RESPONSE TO DEMAND<br>Response to "NAMDAR" Demands | Processed | 07/23/2025 | Rosenthal, D. |
| 94 | RESPONSE TO DEMAND<br>Response to PLAINTIFF'S Document Demands | Processed | 07/23/2025 | Rosenthal, D. |
| 95 | ANSWERS TO INTERROGATORIES<br>Responses to NAMDAR Interrogatories | Processed | 07/23/2025 | Rosenthal, D. |
| 96 | ANSWERS TO INTERROGATORIES<br>Responses to PLAINTIFF'S Interrogatories | Processed | 07/23/2025 | Rosenthal, D. |
| 97 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION (Motion #004)<br>Affirmation of Jay Edmond Russ in Opposition to Motion to Extend | Processed | 07/23/2025 | Rosenthal, D. |

**Document List**

**Index #   850030/2025**

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|--------------------------|--------|---------------|----------|
| 98 | RESPONSE TO DEMAND<br>Namdar Defendants' Responses and Objections to Segal Parties' Demand for Discovery and Inspection | Processed | 07/23/2025 | Ness, D. |
| 99 | RESPONSE TO DEMAND<br>Plaintiff Response to Segal Defendants' Demand for Discovery & Inspection | Processed | 07/25/2025 | Boyer, N. |
| 100 | AFFIDAVIT OR AFFIRMATION IN REPLY (Motion #004)<br>Reply Affirmation of John M. Doherty in Further Support of Third-Party Defendant SIG CRE 2023 Ventur | Processed | 08/06/2025 | Doherty, J. |
| 101 | NOTICE OF MOTION (Motion #006)  *Corrected* | Processed | 08/29/2025 | Boyer, N. |
| 102 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION (Motion #006) | Processed | 08/08/2025 | Boyer, N. |
| 103 | EXHIBIT(S) - 1 (Motion #006)<br>Plaintiff Entity Information | Processed | 08/08/2025 | Boyer, N. |
| 104 | EXHIBIT(S) - 2 (Motion #006)<br>June 2 Notice of Third Party Summons & Complaint Returned for Correction | Processed | 08/08/2025 | Boyer, N. |
| 105 | EXHIBIT(S) - 3 (Motion #006)<br>June 3 Notice of Third Party Summons & Complaint Returned for Correction | Processed | 08/08/2025 | Boyer, N. |
| 106 | EXHIBIT(S) - 4 (Motion #006)<br>June 6 Notice of Third Party Summons & Complaint Returned for Correction | Processed | 08/08/2025 | Boyer, N. |
| 107 | EXHIBIT(S) - 5 (Motion #006)<br>June 10 Notice of Third Party Summons & Complaint Returned for Correction | Processed | 08/08/2025 | Boyer, N. |
| 108 | EXHIBIT(S) - 6 (Motion #006)<br>Segal Defendants' Pleading | Processed | 08/08/2025 | Boyer, N. |
| 109 | EXHIBIT(S) - 7 (Motion #006)<br>NYSCEF Notice of Third Party Action | Processed | 08/08/2025 | Boyer, N. |
| 110 | EXHIBIT(S) - 8 (Motion #006)<br>Third-Party Case Detail | Processed | 08/08/2025 | Boyer, N. |
| 111 | MEMORANDUM OF LAW IN SUPPORT (Motion #006) | Processed | 08/08/2025 | Boyer, N. |
| 112 | NOTICE OF MOTION (Motion #005) | Processed | 08/08/2025 | Doherty, J. |
| 113 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION (Motion #005)<br>Affirmation of John Doherty | Processed | 08/08/2025 | Doherty, J. |
| 114 | EXHIBIT(S) - A (Motion #005)<br>Truncated Loan Sale Agreement | Processed | 08/08/2025 | Doherty, J. |
| 115 | EXHIBIT(S) - B (Motion #005)<br>Third-Party Complaint | Processed | 08/08/2025 | Doherty, J. |
| 116 | EXHIBIT(S) - C (Motion #005)<br>Truncated Borrowers' Certificate with FLPS LLC | Processed | 08/08/2025 | Doherty, J. |

NYSCEF

New York County Supreme Court

**Document List**

**Index #   850030/2025**

Created on:06/10/2026 01:07 PM

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|---|---|---|---|---|
| | Agreement | | | |
| 117 | MEMORANDUM OF LAW IN SUPPORT (Motion #005) | Processed | 08/08/2025 | Doherty, J. |
| 118 | NOTICE OF MOTION (Motion #007)  *Corrected* Notice of Motion to Dismiss Cross-Claims/Third Party Claims | Processed | 08/29/2025 | Goldberg, J. |
| 119 | MEMORANDUM OF LAW IN SUPPORT (Motion #007) Memorandum of Law in Support of Defendants Igal Namdar and Namdar Fordham Landing LLC's Motion to Di | Processed | 08/08/2025 | Goldberg, J. |
| 120 | AFFIDAVIT OR AFFIRMATION IN SUPPORT OF MOTION (Motion #007) Affirmation of Janice I. Goldberg in Support of Motion to Dismiss | Processed | 08/08/2025 | Goldberg, J. |
| 121 | EXHIBIT(S) - A (Motion #007) Goldberg Aff Ex. A - Amended Verified Answer with Counterclaims, Cross-Claims and Third Party Compla | Processed | 08/08/2025 | Goldberg, J. |
| 122 | EXHIBIT(S) - B (Motion #007) Goldberg Aff Ex. B - Amended Verified Answer with Counterclaims, Cross-Claims and Third Party Compla | Processed | 08/08/2025 | Goldberg, J. |
| 123 | EXHIBIT(S) - C (Motion #007) Goldberg Aff Ex. C Fordham Landing Preferred Sponsor LLC OA - Executed | Processed | 08/08/2025 | Goldberg, J. |
| 124 | EXHIBIT(S) - D (Motion #007) Goldberg Aff Ex. D Fordham North Org Chart | Processed | 08/08/2025 | Goldberg, J. |
| 125 | EXHIBIT(S) - E (Motion #007) Goldberg Aff Ex. E SIG - Fordham Landing - Extension Letter - 306593 | Processed | 08/08/2025 | Goldberg, J. |
| 126 | EXHIBIT(S) - F (Motion #007) Goldberg Aff Ex. F Capital Call-Fordham Landing-11-12-24 | Processed | 08/08/2025 | Goldberg, J. |
| 127 | ANSWERS TO INTERROGATORIES | Processed | 08/12/2025 | Boyer, N. |
| 128 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION (Motion #005) Affirmation in Opposition to Motion of Third-Party Defendant | Processed | 08/21/2025 | Rosenthal, D. |
| 129 | EXHIBIT(S) - A (Motion #005) Affirmation of Andrew W. Albstein Esq. | Processed | 08/21/2025 | Rosenthal, D. |
| 130 | EXHIBIT(S) - B (Motion #005) Affirmation of Jay Edmond Russ Esq, | Processed | 08/21/2025 | Rosenthal, D. |
| 131 | EXHIBIT(S) - C (Motion #005) LLC AGREEMENT OF FORDHAM LANDING PREFERRED SPONSOR LLC | Processed | 08/21/2025 | Rosenthal, D. |
| 132 | MEMORANDUM OF LAW IN OPPOSITION (Motion #005) Memo of Law in Opposition to 3rd-Party Defendant's Motion to Dismiss | Processed | 08/21/2025 | Rosenthal, D. |

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|---------------------------|--------|---------------|----------|
| 133 | MEMORANDUM OF LAW IN REPLY (Motion #005) | Processed | 08/27/2025 | Doherty, J. |
| 134 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION (Motion #006)<br>Affirmation in Opposition of Jay Russ Esq. | Processed | 09/16/2025 | Russ, J. |
| 135 | EXHIBIT(S) - A (Motion #006)<br>Prior Affirmation of Andrew W Albstein Esq | Processed | 09/16/2025 | Russ, J. |
| 136 | EXHIBIT(S) - B (Motion #006)<br>Prior Affirmation of Jay Edmond Russ Esq. | Processed | 09/16/2025 | Russ, J. |
| 137 | EXHIBIT(S) - C (Motion #006)<br>Limited Liability Company Agreement | Processed | 09/16/2025 | Russ, J. |
| 138 | MEMORANDUM OF LAW IN OPPOSITION (Motion #006)<br>Memo of Law in Opposition to Motion | Processed | 09/16/2025 | Russ, J. |
| 139 | AFFIDAVIT OR AFFIRMATION IN OPPOSITION TO MOTION (Motion #007)<br>Affirmation in Opposition of Jay Russ Esq. | Processed | 09/17/2025 | Russ, J. |
| 140 | EXHIBIT(S) - A (Motion #007)<br>Prior Affirmation of Andrew W Albstein Esq | Processed | 09/17/2025 | Russ, J. |
| 141 | EXHIBIT(S) - B (Motion #007)<br>Prior Affirmation of Jay Edmond Russ Esq. | Processed | 09/17/2025 | Russ, J. |
| 142 | EXHIBIT(S) - C (Motion #007)<br>Limited Liability Company Agreement | Processed | 09/17/2025 | Russ, J. |
| 143 | MEMORANDUM OF LAW IN OPPOSITION (Motion #007)<br>Memo of Law in Opposition to Motion | Processed | 09/17/2025 | Russ, J. |
| 144 | AFFIRMATION<br>Affirmation of Daniel P Rosenthal Esq. (Commercial Rule 11-b) in Connection with Demand for Document | Processed | 10/06/2025 | Rosenthal, D. |
| 145 | MEMORANDUM OF LAW IN REPLY (Motion #007)<br>MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS IGAL NAMDAR AND NAMDAR FORDHAM LANDING LLCS MOTIO | Processed | 10/10/2025 | Goldberg, J. |
| 146 | MEMORANDUM OF LAW IN REPLY (Motion #006)<br>Reply Memorandum of Law in Further Support of Plaintiff's Motion to Dismiss Counterclaims | Processed | 10/10/2025 | Boyer, N. |
| 147 | DECISION + ORDER ON MOTION (Motion #004) | Processed | 10/20/2025 | Court User |
| 148 | STIPULATION - CONFIDENTIALITY ( REQUEST TO SO ORDER )<br>Stipulation and Order for the Production and Exchange of Confidential  Information | Processed | 10/20/2025 | Rosenthal, D. |
| 149 | ORDER - COMPLIANCE CONFERENCE | Processed | 10/21/2025 | Court User |
| 150 | STIPULATION - CONFIDENTIALITY | Processed | 10/21/2025 | Court User |
| 151 | NOTICE OF ENTRY (Motion #004)<br>Notice of Entry of Decision + Order on Motion, NYSCEF Doc. No. 147 | Processed | 10/21/2025 | Doherty, J. |

NYSCEF

New York County Supreme Court

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 11 of 300

Document List

Index #   850030/2025

Created on:06/10/2026 01:07 PM

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|------|---------------------------|--------|---------------|----------|
| 152 | DEMAND FOR:<br>FIRST DEMAND OF THIRD-PARTY PLAINTIFFS, MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING | Processed | 10/29/2025 | Rosenthal, D. |
| 153 | DEMAND FOR:<br>DEMAND OF THIRD-PARTY PLAINTIFFS, MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC | Processed | 10/29/2025 | Rosenthal, D. |
| 154 | ORDER - STATUS CONFERENCE | Processed | 11/06/2025 | Court User |
| 155 | RESPONSE TO DEMAND<br>Namdar Fordham Landing LLC's Response to Segal Parties' Doc. Demand (NYSCEF 152) | Processed | 11/19/2025 | Ness, D. |
| 156 | ORDER - OTHER (NON-MOTION) | Processed | 11/21/2025 | Court User |
| 157 | LETTER / CORRESPONDENCE TO JUDGE (Motion #006)<br>from Jay Edmond Russ, Esq. | Pending | 12/05/2025 | Levine, I. |
| 158 | LETTER / CORRESPONDENCE TO JUDGE (Motion #005)<br>from Jay Edmond Russ, Esq. | Pending | 12/05/2025 | Levine, I. |
| 159 | LETTER / CORRESPONDENCE TO JUDGE (Motion #007)<br>from Jay Edmond Russ, Esq. | Pending | 12/05/2025 | Levine, I. |
| 160 | LETTER / CORRESPONDENCE TO JUDGE<br>from Jay Edmond Russ, Esq. | Pending | 12/15/2025 | Levine, I. |
| 161 | NOTICE OF DEPOSITION UPON ORAL EXAMINATION<br>of Plaintiff | Processed | 01/14/2026 | Levine, I. |
| 162 | NOTICE OF DEPOSITION UPON ORAL EXAMINATION<br>of CRE | Processed | 01/14/2026 | Levine, I. |
| 163 | NOTICE OF DEPOSITION UPON ORAL EXAMINATION<br>Namdar Fordham | Processed | 01/14/2026 | Levine, I. |
| 164 | NOTICE OF DEPOSITION UPON ORAL EXAMINATION<br>of Igal Namdar | Processed | 01/14/2026 | Levine, I. |
| 165 | ORDER - STATUS CONFERENCE | Processed | 01/15/2026 | Court User |
| 166 | NOTICE OF REJECTION<br>Notice of Objections/Rejection [NYSCEF 163, 164] | Processed | 01/29/2026 | Ness, D. |
| 167 | NOTICE OF REJECTION<br>Notice of Rejection of Notice of Deposition [NYSCEF Doc. No. 161] | Processed | 01/29/2026 | Boyer, N. |
| 168 | NOTICE OF REJECTION<br>General Objection to and Notice of Rejection of Notice to Take Deposition | Processed | 01/29/2026 | Doherty, J. |
| 169 | AFFIRMATION<br>Affirmation / Certification of Daniel P Rosenthal Esq. (Commercial Rule 11-b)  with respect to | Processed | 01/30/2026 | Russ, J. |

| Doc# | Document Type/Information | Status | Date Received | Filed By |
|---|---|---|---|---|
| | "Sega | | | |
| 170 | NOTICE OF MOTION (Motion #008) | Processed | 03/09/2026 | Levine, I. |
| 171 | AFFIDAVIT OR AFFIRMATION IN SUPPORT (Motion #008)<br>of Jay Edmond Russ, Esq. | Processed | 03/09/2026 | Levine, I. |
| 172 | EXHIBIT(S) - A (Motion #008)<br>So-called Removal Notices | Processed | 03/09/2026 | Levine, I. |
| 173 | EXHIBIT(S) - B (Motion #008)<br>Third party summons and complaint in this case | Processed | 03/09/2026 | Levine, I. |
| 174 | EXHIBIT(S) - C (Motion #008)<br>Albstein Aff | Processed | 03/09/2026 | Levine, I. |
| 175 | EXHIBIT(S) - D (Motion #008)<br>Privilege Log | Processed | 03/09/2026 | Levine, I. |
| 176 | MEMORANDUM OF LAW IN SUPPORT (Motion #008) | Processed | 03/09/2026 | Levine, I. |
| 177 | STIPULATION - BRIEFING SCHEDULE (Motion #008) | Processed | 03/13/2026 | Boyer, N. |
| 178 | NOTICE OF BANKRUPTCY (POST RJI) | Processed | 03/16/2026 | Levine, I. |
| 179 | NOTICE OF APPEARANCE (POST RJI) | Processed | 04/02/2026 | Williams, L. |
| 180 | DECISION + ORDER ON MOTION (Motion #006) | Processed | 04/21/2026 | Court User |
| 181 | DECISION + ORDER ON MOTION (Motion #007) | Processed | 04/21/2026 | Court User |
| 182 | NOTICE OF REMOVAL / REMAND (POST RJI)<br>Notice of Filing of Notice of Removal of Claim Against SIG CRE 2023 VENTURE LLC | Processed | 04/24/2026 | Doherty, J. |
| 183 | EXHIBIT(S) - A<br>File-stamped copy of the Notice of Removal | Processed | 04/24/2026 | Doherty, J. |
| 184 | EXHIBIT(S) - B<br>Copy of the Federal District Court's docket | Processed | 04/24/2026 | Doherty, J. |
| 185 | EXHIBIT(S) - C<br>Copy of the Bankruptcy Court's docket in Case No. 26-07059 | Processed | 04/24/2026 | Doherty, J. |
| 186 | NOTICE OF REMOVAL / REMAND (POST RJI)<br>NOTICE OF FILING OF NOTICE OF REMOVAL OF CLAIMS AGAINST IGAL NAMDAR AND NAMDAR FORDHAM LANDING LLC | Processed | 06/05/2026 | Goldberg, J. |

**NYSCEF Document # 2**
**Complaint**

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 14 of 300

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

SIG CRE 2023 VENTURE LLC,

                                    Plaintiff,

        - against -

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC,
DS FORDHAM LANDING 4 LLC, IGAL NAMDAR,
GARY SEGAL, NEW YORK CITY
ENVIRONMENTAL CONTROL BOARD, and "JOHN
DOE" NO. 1 THROUGH "JOHN DOE" NO. 100,
inclusive, the last one hundred names being fictitious and
unknown to plaintiff, the persons or parties intended
being the tenants, occupants, persons or corporations, if
any, having or claiming an interest in or lien upon the
premises described in the complaint,

                                    Defendants.

---

Index No.:

**COMPLAINT**

---

        Plaintiff SIG CRE 2023 Venture LLC ("Plaintiff"), by and through its attorneys, Holland

& Knight LLP, as and for its Complaint, respectfully alleges and states as follows:

## NATURE OF THE ACTION

        1.      Plaintiff brings this action to foreclose a $55,000,000.00 mortgage

encumbering the real property, and the improvements thereon, located at: (i) Landing Road a/k/a

2444 Exterior Street, Bronx, New York, identified as Block 3244 and Lot 1 on the tax map (the

"Tax Map") for the Borough and County of Bronx, City and State of New York ("Parcel A"); (ii)

West 192nd Street a/k/a Exterior Street, Bronx, New York, identified as Block 3245 and Lot 3 on

the Tax Map ("Parcel B"); (iii) 2371 Exterior Street a/k/a 325 West Fordham Road, Bronx, New

York, identified as Block 3244 and Lot 130 on the Tax Map ("Parcel C"); (iv) 2391 Exterior Street,

Bronx, New York, identified as Block 3244 and Lot 145 on the Tax Map ("Parcel D"); and (v)

2401 Exterior Street, Bronx, New York, identified as Block 3244 and Lot 160 on the Tax Map

1

("Parcel E" and together with Parcel A, Parcel B, Parcel C and Parcel D, collectively, the "Mortgaged Premises"), as more particularly described in **Exhibit 1** annexed hereto and made a part hereof.

## THE PARTIES

2.      Plaintiff is a Delaware limited liability company.

3.      Upon information and belief, defendant MDBZJGGS, LLC ("MDBZJGGS Borrower") was and is a New York limited liability company with its principal place of business at 10 West Street, Unit 40B, New York, New York 10004.

4.      MDBZJGGS Borrower is made a defendant in this action because it is the signatory to, and obligor and mortgagor, under the Note and Mortgage (as such terms are defined below), respectively, and to extinguish any interest it has or may have as the owner of the Mortgaged Premises.

5.      Upon information and belief, defendant DS Fordham Landing 2 LLC ("Fordham 2 Borrower") was and is a Delaware limited liability company with its principal place of business at 10 West Street, Unit 40B, New York, New York 10004.

6.      Fordham 2 Borrower is made a defendant in this action because it is the signatory to, and obligor and mortgagor, under the Note and Mortgage (as such terms are defined below), respectively, and to extinguish any interest it has or may have as the owner of the Mortgaged Premises.

7.      Upon information and belief, defendant DS Fordham Landing 4 LLC ("Fordham 4 Borrower" and together with MDBZJGGS Borrower and Fordham 2 Borrower, collectively, "Borrowers") was and is a Delaware limited liability company with its principal place of business at 10 West Street, Unit 40B, New York, New York 10004.

2

8.      Fordham 4 Borrower is made a defendant in this action because it is the signatory to, and obligor and mortgagor, under the Note and Mortgage (as such terms are defined below), respectively, and to extinguish any interest it has or may have as the owner of the Mortgaged Premises.

9.      Upon information and belief, defendant Igal Namdar ("Namdar") was and is an individual having an address at 30 Lighthouse Road, Great Neck, New York 11024.

10.     Namdar is made a defendant in this action because he is the signatory to, and obligor, under the Guaranty (as defined below), wherein he irrevocably and unconditionally guaranteed the prompt payment and performance of certain Guaranteed Obligations, as defined therein, as and when the same is due and payable.

11.     Upon information and belief, defendant Gary Segal ("Segal" and together with Namdar, "Guarantors") was and is an individual having an address at 10 West Street, Unit 40B, New York, New York 10004.

12.     Segal is made a defendant in this action because he is the signatory to, and obligor, under the Guaranty (as defined below), wherein he irrevocably and unconditionally guaranteed the prompt payment and performance of certain Guaranteed Obligations, as defined therein, as and when the same is due and payable.

13.     Upon information and belief, defendant New York City Environmental Control Board ("ECB") is a New York City agency with its principal place of business located at 100 Church Street, 12th Floor, New York, New York 10007.

14.     ECB is made a defendant in this action because of any title, claim or interest it might have against the Mortgaged Premises as a possible lienor with respect to any unpaid fines, violations and/or judgments which are issued or may be issued against the Mortgaged Premises

3

and/or Borrowers, including but not limited to: (i) that certain violation and/or judgment in the original amount of $0.00 entered on or about December 21, 2022 with Violation Number 014037893L; (ii) that certain violation and/or judgment in the original amount of $0.00 entered on or about December 21, 2022 with Violation Number 014037892J; (iii) that certain violation and/or judgment in the original amount of $12,500.00 entered on or about August 26, 2022 with Violation Number 039064964K; (iv) that certain violation and/or judgment in the original amount of $12,500.00 entered on or about August 26, 2022 with Violation Number 039064946R; (v) that certain violation and/or judgment in the original amount of $12,500.00 entered on or about December 9, 2022 with Violation Number 039072063N; and (vi) that certain violation and/or judgment in the original amount of $5,000.00 entered or about January 17, 2024 with Violation Number 0620017568 (collectively, the "ECB Liens").

15. Upon information and belief, defendants "JOHN DOE NO. 1" through "JOHN DOE NO. 100" (collectively, "John Doe Defendants") are fictitious and unknown to Plaintiff and are named herein to designate any and all tenants, occupants, persons, corporations or other entities, if any, having or claiming an interest in or lien upon the Mortgaged Premises or any part thereof, which is subject to the liens of the mortgages that Plaintiff seeks to foreclose by this action.

**JURISDICTION AND VENUE**

16. Pursuant to Section 3.2 of the Mortgage, Borrowers submitted to this Court's jurisdiction and venue with respect to all of the claims asserted against it herein.

17. Pursuant to Section 8 of the Extension Agreement, Borrowers and Guarantors submitted to this Court's jurisdiction with respect to all of the claims asserted against it herein and acknowledged that this venue is proper.

4

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 18 of 300

## FACTUAL BACKGROUND

**I.      The Loan and Loan Documents**

13.    On or about August 8, 2022, Signature Bank ("Original Lender"), a New York banking corporation and Plaintiff's predecessor-in-interest, loaned Borrowers the original principal amount of FIFTY FIVE MILLION AND 00/100 DOLLARS ($55,000,000.00) (as amended and/or modified, the "Loan").

14.    The Loan is evidenced by, *inter alia*, that certain Amended, Consolidated and Restated Mortgage Note dated August 8, 2022, executed by Borrowers in favor of Original Lender in the original principal amount of FIFTY FIVE MILLION AND 00/100 DOLLARS ($55,000,000.00) (as amended and/or modified, the "Note").  A true and correct copy of the Note, together with the Allonges (as defined below) firmly affixed thereto, is annexed hereto as **Exhibit 2**.

15.    The Loan is secured by, *inter alia*, that certain Mortgage Consolidation, Modification, Security Agreement and Fixture Filing, dated as of August 8, 2022, executed by Borrowers in favor of Original Lender (as amended and/or modified, the "Mortgage"), pursuant to which Borrowers, individually, collectively, jointly and severally, granted to Original Lender, *inter alia*, a first priority lien on the Mortgaged Premises and all fixtures, chattels, rents and leases, and articles of personal property then or thereafter attached to or located in or upon the Land (as defined therein), as more fully set forth in the Mortgage (collectively, the "Collateral").

16.    On August 19, 2022, the Mortgage was duly recorded with the Office of the City Register of the City of New York (the "Register's Office") as City Register File No. ("CRFN") 2022000326762, and the mortgage recording taxes were duly paid.

17.    Section 1.20 of the Mortgage provides, in relevant part, that "[t]he Rents of the Mortgaged Property are hereby transferred and assigned to the Mortgagee, and the Mortgagee

5

shall have the right to enter upon the Mortgaged Property for the purpose of collection the same

and to let and operate the Mortgaged Property or any part thereof and to apply the Rents, either in

whole or in part, as the Mortgagee elects, to the payment of all charges and expenses of the

Mortgaged Property or in reduction of any part of the Debt or other sums due or to become due

under the Note or this Mortgage. This assignment and grant shall continue in effect until the Debt

and all other monetary obligations secured by this Mortgage are paid in full."

18. Section 2.2(a)(viii) of the Mortgage further provides that:

[u]pon the occurrence of any Event of Default, the Mortgagee may, in addition to any rights or remedies available to it hereunder or at law, take such action as it deems advisable to protect and enforce its rights against the Mortgagor and in and to the Mortgaged Property, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as the Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of the Mortgagee: … (viii) apply for the appointment of a custodian, trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor, or of any person, party or entity liable for the payment of the Debt[.]

19. The Loan is also secured by, *inter alia*, that certain Assignment of Leases

and Rents, dated as of August 8, 2022, executed by Borrowers in favor of Original Lender (as

amended and/or modified, the "ALR").

20. On August 19, 2022, the ALR was duly recorded with the Register's Office

as CRFN 2022000326763.

21. Pursuant to the ALR, Borrowers transferred and assigned to Original

Lender, and its successors and assigns, the following:

all of the Assignor's right, title, and interest in and to all leases and tenancies (including concessions) of the Premises or any part thereof, or any letting of or agreement for the use or occupancy of

6

the Premises or any part thereof, or any lettering of or agreement for the use or occupancy of the Premises or any part thereof, whether written or oral, heretofore or hereafter made or agreed to by any party, and all extensions, renewals, replacements, and guaranties thereof including, without limitation, subleases of any leases and tenancies following attornment (all of said leases and tenancies, together with all extension, renewals, replacements, and guaranties thereof, are hereafter collectively referred to as the "Leases"), TOGETHER with the immediate and continuing right to collect and receive all of the rents, income, receipts, revenues, issues and profits now due or which may become due or to which the Assignor may now or shall hereafter (including the period of redemption, if any) become entitled or may demand or claim, arising or issuing from or out of the Leases or from or out of the Premises or any part thereof, including but not by way of limitation: minimum rents, additional rents, percentage rents, parking maintenance, tax and insurance contributions, deficiency rents and liquidated damages following default, the premium payable by any tenant upon the exercise of a cancellation privilege originally provided in any Lease, and all proceeds payable under any policy of insurance covering loss of rent resulting from untenantability caused by destruction or damage to the Premises together with any and all rights and claims of any kind which the Assignor may have against any tenant under the Leases or any subtenants or occupants of the Premises (all such monies, rights and claims in this Paragraph described being hereinafter called "Rents")[.]

22.     Section 6 of the ALR further provides that upon an Event of Default, Plaintiff "shall have the complete right, power and authority hereunder then or thereafter . . . to terminate the license granted to the Assignor to collect as aforesaid the Rents, and then and thereafter, without taking possession, in the Assignee's own name, to demand, collect, receive, sue for, attach and levy the Rents, to give proper receipts, releases and acquittances therefor, and after deducting all reasonably necessary and proper costs and expenses of operation and collection, as determined by the Assignee, including, without limitation, reasonable attorney's fees and disbursements generally, and at trial and appellate level, to apply the net proceeds thereof, together with any funds of the Assignor deposited with the Assignee, upon any indebtedness secured hereby and by the Agreements and in such order as the Assignee may determine[.]"

7

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 21 of 300

23. The Loan is further secured by, *inter alia*, that certain Cash Collateral Agreement, dated as of August 8, 2022, executed by Borrowers in favor of Original Lender (as amended and/or modified, the "Cash Collateral Agreement"), pursuant to which Borrower, individually, collectively, jointly and severally, granted to Original Lender, *inter alia*, a first priority lien in all of Borrowers' right, title and interest in the Account (as defined therein), as more fully set forth in the Cash Collateral Agreement (the "Cash Collateral").

24. As further security for the Loan and in order to further induce Original Lender to extend the Loan to Borrowers, Guarantors executed in favor of, and delivered to, Original Lender that certain Guaranty, dated as of August 8, 2022 (as amended and/or modified, the "Guaranty"), pursuant to which Guarantors, individually, collectively, jointly and severally, irrevocably and unconditionally guaranteed the payment and performance of the Guaranteed Obligations (as defined therein), as and when the same is due and payable, subject to the terms thereof.

25. To perfect its interest in the Collateral, on August 10, 2022, Original Lender recorded a UCC Financing Statement naming it as the secured party and Borrowers as the debtor with the New York Department of State ("NY DOS") as File Number 202208100338240 (as amended and/or modified, the "State UCC").

26. The Note, Mortgage, ALR, Cash Collateral Agreement, Guaranty, and State UCC, together with all documents or agreements executed in connection with or evidencing the Loan, are collectively referred to herein as the "Loan Documents."

27. Capitalized terms not defined herein shall have the same meaning as ascribed to them in the Loan Documents.

8

**II.**        **Assignment of the Loan and Loan Documents to Plaintiff**

28.        On March 12, 2023, the New York State Department of Financial Services closed Original Lender and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver for Original Lender.

29.        On or about March 12, 2023, the FDIC, as Original Lender's receiver, assigned all of Original Lender's rights, title, and interest in and to the Loan Documents, including the Note and Mortgage, to Signature Bridge Bank, N.A. ("SBB").

30.        In connection with the assignment of the Loan Documents to SBB, the FDIC, as Original Lender's receiver, executed and delivered to SBB the following documents:

a.        that certain Allonge to the Note in favor of SBB (the "SBB Allonge") and affixed to the back of the Note;

b.        that certain Assignment of Real Estate Mortgage, effective as of March 12, 2023 and recorded with the Register's Office on September 20, 2024 as CRFN 2024000247037 (the "SBB Mortgage Assignment");

c.        that certain Assignment of Assignment of Rents and Leases, effective as of March 12, 2023 and recorded with the Register's Office on September 20, 2024 as CRFN 2024000247039 (the "SBB ALR Assignment");

d.        that certain Omnibus Loan Assignment, dated effective as of March 12, 2023, assigning all of Original Lender's rights, title and interest in the Loan Documents to SBB; and

e.        that certain UCC-3 Financing Statement Amendment, recorded with NY DOS on September 20, 2024 as File Number 202409208493774, assigning the State UCC to SBB.

31.        On March 20, 2023, the New York State Department of Financial Services closed SBB and appointed the FDIC as receiver for SBB.

32.        On or about December 14, 2023, the FDIC, as SBB's receiver, assigned all of SBB's rights, title, and interest in and to the Loan Documents, including the Note and Mortgage, to Plaintiff.

9

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 23 of 300

33. In connection with the assignment of the Loan Documents to Plaintiff, the FDIC, as SBB's receiver, executed and delivered to Plaintiff the following documents:

a. that certain Allonge to the Note in favor of Plaintiff (the "Plaintiff Allonge", and together with the SBB Allonge, the "Allonges") and affixed to the back of the Note;

b. that certain Assignment of Real Estate Mortgage, effective as of December 14, 2023 and recorded with the Register's Office on September 20, 2024 as CRFN 2024000247038 (the "Plaintiff Mortgage Assignment");

c. that certain Assignment of Assignment of Rents and Leases, effective as of December 14, 2023 and recorded with the Register's Office on September 20, 2024 as CRFN 2024000247040 (the "Plaintiff ALR Assignment");

d. that certain Omnibus Loan Assignment, dated effective as of December 14, 2023, assigning all of Original Lender's rights, title and interest in the Loan Documents to Plaintiff; and

e. that certain UCC-3 Financing Statement Amendment, recorded with NY DOS on September 20, 2024 as File Number 202409208493801, assigning the State UCC to Plaintiff.

34. In light of the foregoing, Plaintiff is and remains the current owner, assignee, and holder of the Loan Documents, including the Note and Mortgage.

## III.    Borrower's Obligations and Plaintiff's Rights Under the Loan Documents

35. Pursuant to the Note, Borrowers were required to make monthly interests payments on the tenth day of each month beginning August 10, 2022 (each a "Monthly Payment" and collectively, the "Monthly Payments").

36. Pursuant to Section 1 of the Note, interest on the loan is calculated based upon the actual number of days elapsed divided by 360.

37. The entire outstanding principal of the Loan together with all accrued and unpaid interest and all other amounts due and owing under the Loan Documents are required to be paid on the Loan's maturity date.

10

Case 7:26-cv-04909   Document 1-1   Filed 06/10/26   Page 24 of 300

38.     Pursuant to Section 2 of the Note, the original maturity date of the Loan was August 8, 2024 (the "Original Maturity Date").

39.     Pursuant to that certain letter agreement dated September 27, 2024 (the "Extension Agreement"), Borrowers elected to extend the Original Maturity Date to August 8, 2025 (the "Extended Maturity Date") in accordance with the terms and conditions set forth therein.

40.     Section 1(a) of the Extension Agreement, modified the calculation of the interest rate under Note as follows: "the interest rate shall be (i) fifteen percent (15.0%) per annum for the period from [August 8, 2024] to November 7, 2024, (ii) one percent (1.0%) per annum plus the Prime Rate as of August 8, 2024 for the period from November 8, 2024 to February 7, 2025, (iii) one and one-half percent (1.5%) per annum plus the Prime Rate as of August 8, 2024 for the period from February 8, 2025 to May 7, 2025, and (iv) two percent (2.0%) per annum plus the Prime Rate as of August 8, 2024 for the period from the May 8, 2025 to Extended Maturity Date" (the "Interest Rate").

41.     Pursuant to Section 1(b) of the Extension Agreement, on or before November 7, 2024, Borrower was required to: (i) pay to Plaintiff an amount equal to all interest that accrued during the period from [August 8, 2024] to November 7, 2024, and (ii) deposit with Plaintiff, in a reserve account ("Interest Reserve Account") held by Plaintiff, an amount equal to all (1) interest estimated to accrue during the period beginning on November 8, 2024 to the Extended Maturity Date and (2) real estate taxes estimated to be due during the period beginning on November 8, 2024 to the Extended Maturity Date (the "November 7, 2024 Payment").

42.     Section 1(b) of the Extension Agreement further provides that

On the tenth (10th) day of each month beginning on November 8, 2024 until the Extended Maturity Date, [Plaintiff] shall debit the Interest Reserve Account for an amount equal to all accrued and unpaid interest. At any such time that the money maintained in the

11

Interest Reserve Account is insufficient for any payment due under this Agreement or the other Loan Documents, Borrower shall immediately deposit with [Plaintiff] funds sufficient to pay such payment, or if Borrower fails to timely do so, subject to the terms of the Loan Documents, [Plaintiff] reserves the right to debit any other account of any Borrower for such payment.

43.     Pursuant to Section 16 of the Extension Agreement, Borrowers acknowledged, among other liens and violations, the existence of multiple liens held by the ECB against the Mortgaged Premises and agreed to cure the same.

44.     Pursuant to Section 4 of the Extension Agreement, Borrowers and Guarantors ratified and reaffirmed validity of the Loan Documents, as modified by the Extension Agreement's extension the maturity date, reset of interest rate on the Note, and adjustment of the monthly payment installments and the amortization schedule under the Note.

45.     Section 2.1.1(a) of the Mortgage provides that an Event of Default shall occur if "after default in the payment of any installment of principal or interest as provided in the Note[.]"

46.     Section 8 of the Note provides that upon the occurrence of an Event of Default, "the interest payable on this Note shall be at the rate of twenty-four percent (24%) per annum or the maximum rate allowed to be charged by law, whichever is lower" (the "Default Interest Rate").

47.     Section 8 of the Note further requires Borrowers to pay a late charge of five percent (5.00%) of any payment that is not received on the date when said payment is due (each a "Late Charge" and, collectively, the "Late Charges").

48.     Upon the occurrence of an Event of Default, Plaintiff is entitled to declare the entire unpaid Debt to be immediately due and payable in accordance with Section 2.2(a)(i) of the Mortgage, and the other Loan Documents.

12

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 26 of 300

49. Upon the occurrence of an Event of Default, Plaintiff is further entitled to bring this foreclosure action in accordance with Section 2.2(a)(iii) of the Mortgage, and the other Loan Documents.

50. Pursuant to Section 2.2(a)(viii) of the Mortgage, Plaintiff is further entitled to "apply for the appointment of a custodian, trustee, receive, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor, or of any person, party or entity liable for the payment of the Debt[.]"

51. Additionally, pursuant to Section 1.1 of the Guaranty, Guarantors "irrevocably and unconditionally guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Guarantor hereby irrevocably and unconditionally covenants and agrees that it is liable for the Guaranteed Obligations as a primary obligor."

52. Pursuant to Section 1.2 of the Guaranty, the term "Guaranteed Obligations" is defined therein to mean "the repayment in full of the Loan, including the requirement to replenish amounts on deposit in the Account (as defined in the Cash Collateral Agreement of even date herewith between Borrower and Lender (the 'Cash Collateral Agreement')) as required by the Cash Collateral Agreement."

**IV.** **Borrowers' Defaults Under the Loan Documents**

53. Section 2.1.1 of the Mortgage provides, the entire Debt shall become due, at Plaintiff's options, upon the occurrence of any Events of Default.

13

54. Pursuant to Section 2.1.1(a) of the Mortgage, an Event of Default shall occur if "after default in the payment of any installment of principal or interest as provided in the Note[.]"

55. In breach of its obligations, Borrowers failed to pay the November 7, 2024 Payment as required under the Extension Agreement and monthly payments due and owing under the Loan Documents, as modified by the Extension Agreement, causing an Event of Default (the "Payment Default").

56. Additionally, Borrowers failed to cure all of the liens and violations in breach of their obligations under Section 16 of the Extension Agreement.

57. Pursuant to Section 2.1.1(k) of the Mortgage, Borrowers further encumbering the Mortgage Premises with the ECB Liens without Plaintiff's consent constitutes another Event of Default (the "Lien Default").

58. While under no obligation to do so, pursuant to that certain Notice of Default / Demand for Payment, dated November 19, 2024 (the "Default Notice"), Plaintiff notified Borrowers and Guarantors of the occurrence and continuance of the Payment Default and demanded said default be immediately cured (the "Default Notice").

59. As of the date hereof, despite receipt of the Default Notice, Borrowers and Guarantors have failed to cure the Payment Default.

60. Guarantors defaulted under the Guaranty by failing to fully and timely pay, satisfy and/or perform the Guaranteed Obligations, as defined therein.

61. As of the date hereof, Guarantors remain in default under the Guaranty.

14

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 28 of 300

62. As a result of the forgoing defaults, Plaintiff hereby accelerates the maturity of the Loan making the entire Debt due and owing under the Loan Documents immediately due and owing.

63. Pursuant to the Loan Documents, Borrowers are liable for all of Plaintiff's costs incurred enforcing Plaintiff's rights under the Loan Documents, including, but not limited to, Plaintiff's reasonable attorneys' fees and costs.

64. As a result of the foregoing, Plaintiff is entitled under the Loan Documents to foreclose the Mortgage.

65. As a result of the foregoing, there is now due and owing under the Loan Documents an amount of no less than: (i) $55,000,000.00 for the outstanding principal balance of the Loan; plus (ii) all accrued interest, default interest, late charges and any other amounts due and owing under the Loan Documents, including, but not limited to, Plaintiff's attorneys' fees and costs incurred in enforcing Plaintiff's rights under the Loan Documents.

66. Plaintiff has brought no other action or proceeding to recover any part of the Debt herein described.

## FIRST COUNT
### (Mortgage Foreclosure)

67. Plaintiff repeats and incorporates herein the allegations set forth above as if the same were set forth and repeated at length herein.

68. Plaintiff has complied with all the terms and provisions of the Loan Documents.

69. Borrowers are in default of its obligations under the Loan Documents because of, *inter alia*, the Payment Default.

15

70.     To date, Borrowers have failed to cure the Payment Default despite due demand.

71.     In order to protect the lien and security represented by the Mortgage during the pendency of this action, Plaintiff may be compelled to pay insurance premiums, taxes, assessments, water charges, sewer charges, attorneys' fees, repairs and other expenses and charges affecting the Mortgaged Premises.  Plaintiff asks that any amount so paid and expended by it during the pendency of this action be added, pursuant to the Loan Documents, to its claim and, together with interest thereon from the date that such expenditures are made, and that the same be added to the amounts due to Plaintiff and secured by the Loan Documents.

72.     The defendants named herein are obligated to pay the Debt and/or have, claim to have, or may have some possessory or other interest in or lien upon the Mortgaged Premises, or some part thereof, which interest or lien, if any, accrued subsequent to, and is subject and subordinate to, the lien of the Mortgage.

73.     Plaintiff seeks to foreclose upon the Mortgage and recover the Debt secured by the Mortgage including costs and attorneys' fees and that Borrowers be adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable.

74.     Plaintiff seeks to foreclose upon the Mortgage and recover the outstanding principal amount of $55,000,000.00 together with accrued interest at the Interest Rate and Default Interest Rate, Late Charges, and any other amounts to be added pursuant to the terms of the Loan Documents, including, but not limited to, Plaintiff's attorneys' fees and costs and a determination that Borrowers shall pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after the sale of the Mortgaged Premises and the application of the proceeds pursuant to the provisions contained in such judgment, the amount

16

thereof to be determined by the Court as provided in Section 1371 of the Real Property Action and Proceedings Law.

75. In the event that Plaintiff possesses any other lien(s) against said Mortgaged Premises, Plaintiff requests that such other lien(s) not be merged in Plaintiff's causes of action set forth in this Complaint, but that Plaintiff be permitted to enforce said other lien(s) and/or seek or proceeding(s), including, without limitation, any surplus money proceedings.

76. Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinafter made by reason of the payment after the date of the commencement of this action of any or all of the defaults mentioned herein, and such election shall continue and remain effective until the costs and disbursements of this action, and any and all future defaults under the Loan Documents, and occurring prior to the discontinuance of this action, are fully paid

77. No proceeding other than this action has been commenced to recover the Debt secured by the Mortgage owed to Plaintiff.

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A. Adjudging and decreeing the amounts due to Plaintiff as demanded in this Complaint by means of Borrowers' defaults under the Loan Documents;

B. Adjudging and decreeing that the defendants herein, all persons claiming under them, and all persons making any claim against the Mortgaged Premises, which is the subject of this foreclosure action, subsequent to the filing of the notice of pendency of this action be barred and foreclosed of and from any and all estate, right, title, interest, claim, lien and equity of redemption of, in and to the Mortgaged Premises and each and every part and parcel thereof;

C. Adjudging and decreeing that (a) the Mortgaged Premises may be decreed or sold, according to law, subject to a statutory right of redemption in the United States of America,

17

if any, subject to taxes, assessments, water charges and sewer rents, subject to any state of facts an accurate, currently dated survey would disclose, subject to zoning ordinances and local regulations, and subject to all mortgages, conditions, restrictions, liens, encumbrances, rights and interests, if any, that may be prior to the liens of the Loan Documents; (b) that the Mortgaged Premises may be sold in one or more parcels and in such order as determined by Plaintiff; (c) that the money resulting from said sale be brought into court; and (d) that Plaintiff be paid (1) the expenses of said sale, (2) the costs, allowances, and disbursements of this action, (3) the amounts due on the Note and Mortgage, together with interest at the Interest Rate and Default Interest Rate, Late Charges thereon as provided therein to the time of such payment, (4) all money advanced or paid by Plaintiff pursuant to any term or provision of any exhibit forming a part of this complaint, or to protect the mortgages or the Mortgaged Premises, (5) its expenses of collection, including reasonable attorneys' fees, and (6) all other charges and liens, with interest upon said amounts from the dates of the respective payments or advances all so far as the amount of money Mortgaged Premises applicable thereto will pay the same;

D. Adjudging and decreeing that Borrowers be adjudged to pay any deficiency remaining under the Loan Documents after the application of the monies as aforesaid in accordance with Section 1371 of the Real Property Actions and Proceedings Law;

E. Adjudging and decreeing that Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective;

F. Adjudging and decreeing that in the event that Plaintiff possesses any other lien(s) against the Mortgaged Premises either by way of judgment, junior mortgage or otherwise,

18

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 32 of 300

Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause of action set forth in this Complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money or deficiency proceedings; and

G.      Awarding such other and further relief as the Court may deem just and proper.

## SECOND COUNT
### (Appointment of a Receiver)

78.      Plaintiff repeats and incorporates herein the allegations set forth above as if the same were set forth and repeated at length herein.

79.      The leases, rents, books, records, and other property relating to the ownership and operation of the Mortgaged Premises (collectively, the "Borrowers' Assets") are the sole assets of Borrowers.

80.      Except for certain limited qualifications as set forth in the Loan Documents, Borrowers have no personal liability for the repayment of the Loan, and Plaintiff's primary recourse for repayment of the Loan is the Collateral and Cash Collateral securing the Loan.

81.      Upon the occurrence of an Event of Default, the Loan Documents expressly permit Plaintiff to seek the appointment of a receiver, without notice and without regard to the adequacy of the security of the Debt or the solvency of Borrowers.

82.      Borrowers and their agents are still in possession of Borrowers' Assets.

83.      Plaintiff, as an interested and secured party, is threatened with material losses and injuries, including the Borrowers' Assets suffering continuous waste and a dissipation or diminution in value, if Borrowers remain in control of the Borrowers' Assets.

19

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 33 of 300

84. Therefore, in accordance with Article 64 of the Civil Practice Law and Rules, and Real Property Law 254(10), Plaintiff, asks the Court to appoint a Receiver to take immediate possession of and hold, subject to the discretion of this Court, the Mortgaged Premises and Borrowers' Assets.

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Appointing a receiver of the Borrowers' Assets;

B. Directing all tenants in possession of the Borrowers' Assets to pay the appointed receiver all rent, income and profits;

C. Awarding Plaintiff its costs of suit, including, but not limited to, reasonable attorneys' fees; and

D. Granting such other and further relief as the Court may deem just and proper.

## THIRD COUNT
### (Breach of Guaranty)

85. Plaintiff repeats and incorporates herein the allegations set forth above as if the same were set forth and repeated at length herein.

86. In order to induce Original Lender to make the Loan to Borrowers, Guarantors executed, acknowledged and delivered to Original Lender the Guaranty.

87. Pursuant to the terms of the Guaranty, Guarantors irrevocably, absolutely and unconditionally guaranteed the full, prompt and complete payment when due of the Guaranteed Obligations, and that Guarantors shall fully perform each and every term and provision thereof.

20

88.     Moreover, in the Guaranty, the Guarantors agreed to pay all costs, charges and expenses including reasonable attorneys' fees and disbursements, incurred by Plaintiff in enforcing the covenants, agreements, obligations and liabilities of Guarantors under the Guaranty.

89.     Plaintiff is the current holder and assignee of the Note, with the Allonge firmly affixed thereto, the Mortgage and the Guaranty.

90.     Plaintiff has brought no other action or proceeding to recover any part of the Debt herein described.

91.     Plaintiff seeks to foreclose upon the Mortgage and recover the outstanding principal amount of $55,000,000.00 together with accrued interest at the Interest Rate and Default Interest Rate, Late Charge, and any other amounts to be added pursuant to the terms of the Loan Documents, including costs and attorneys' fees and that Borrowers be adjudged to pay the whole residue or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after the sale of the Mortgaged Premises and the application of the proceeds pursuant to the provisions contained in such judgment, the amount thereof to be determined by the Court as provided in Section 1371 of the Real Property Action and Proceedings Law.

**WHEREFORE**, Plaintiff demands judgment against Guarantors as follows:

A.     Fixing the amount due to Plaintiff from the Guarantors pursuant to the Guaranty and any other applicable Loan Documents;

B.     Adjudging that Plaintiff is entitled to be paid by Guarantors the amounts due pursuant to the Guaranty, with interest at the rate applicable in the Loan Documents, advances, other charges, attorneys' fees and costs;

C.     Granting Plaintiff its costs of suit, including reasonable attorneys' fees; and

D.     Awarding such other and further relief as the Court may deem just and proper.

21

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 35 of 300

Dated: New York, New York
January 10, 2025

**HOLLAND & KNIGHT LLP**


By: _/s/ John M. Doherty_
John M. Doherty, Esq.
Keith M. Brandofino, Esq.
Baron C. Giddings, Esq.
*Attorneys for Plaintiff*
787 Seventh Avenue
New York, New York 10019
Tel: (212) 513-3200
jack.doherty@hklaw.com
keith.brandofino@hklaw.com
baron.giddings@hklaw.com

22

**NYSCEF Document # 61**
**Decision & Order on Motion granting substitution of Fordham Landing North Holdings LLC as plaintiff in the place and stead of plaintiff SIG CRE 2023 VENTURE LLC**

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 37 of 300

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

|  |  |
|---|---|
| **PRESENT:**  **HON. MELISSA A. CRANE** | **PART**  **60M** |
| *Justice* | |

-------------------------------------------------------------------------------X

SIG CRE 2023 VENTURE LLC,

                         Plaintiff,

              - v -

MDBZJGGS, LLC,DS FORDHAM LANDING 2 LLC,DS FORDHAM LANDING 4 LLC,IGAL NAMDAR, GARY SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100, INCLUSIVE,

                       Defendant.

-------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 850030/2025 |
| **MOTION DATE** | 03/12/2025, 03/20/2025, 03/23/2025 |
| **MOTION SEQ. NO.** | 001 002 003 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 18, 19, 20, 21, 22, 23, 24, 36, 37, 44, 45, 46, 48

were read on this motion to/for        PARTIES - ADD/SUBSTITUTE/INTERVENE   .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 25, 26, 27, 28, 29, 49, 50, 52, 53, 54, 55, 56, 57, 58

were read on this motion to/for        DISMISSAL   .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 30, 31, 32, 33, 34, 35, 39, 40, 41, 42, 43, 47

were read on this motion to/for        CHANGE VENUE   .

Upon the foregoing documents, it is

     Motion 3 to change venue was withdrawn on the record.

     Motions 1 and 2 are decided in accordance with the reasoning on the record of May 12, 2025.  In particular, the court denied the motion to dismiss because plaintiff has cobbled together enough documents to demonstrate a proper assignment for the purpose of overcoming a motion to dismiss.  This includes EDOC 21 containing an assignment of a series of mortgages from Sig Cre 2023 to Fordham Landing North Holdings LLC (see page 4 of the document).  The various mortgages are listed in Schedule A with dates and loan numbers.  These mortgages were

**850030/2025   SIG CRE 2023 VENTURE LLC vs. MDBZJGGS, LLC ET AL**
**Motion No.  001 002 003**

                         **Page 1 of 3**

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 38 of 300

consolidated into the loan in question in section 5, paragraph 3. In addition, plaintiff presented EDOCS 55 and 56 that purport to assign "Loan Documents" from (1) Signature Bank (via the FDIC as receiver) to Signature Bridge Bank (EDOC 55) and then from Signature Bridge Bank to Sig Cre 2023 Venture LLC (EDOC 56) (see *US Bank Nat'l Ass'n v. Ezugwu*, 162 A.D.3d 613, 614, [1st Dep't 2018] [documents sufficient to demonstrate standing in foreclosure action]).

In addition, the aforementioned EDOC 21 demonstrates a proper assignment from SIG CRE 2023 VENTURE LLC to Fordham Landing North Holdings LLC. Therefore, the court will allow the substitution.

Accordingly, it is

ORDERED THAT the motion to dismiss is denied; and it is further

ORDERED THAT the court grants the motion to substitute plaintiff and therefore Fordham Landing North Holdings LLC is substituted as plaintiff in this action in the place and stead of plaintiff SIG CRE 2023 VENTURE LLC, without prejudice to any proceedings heretofore had herein; and it is further

ORDERED THAT all papers, pleadings and proceedings in the above-entitled action be amended by substituting the name of Fordham Landing North Holdings LLC as plaintiff in the place and stead of SIG CRE 2023 VENTURE LLC without prejudice to any proceedings heretofore had herein; and it is further

**ORDERED** that the caption be amended to reflect the amendment, and that all future papers filed with the Court shall bear the amended caption; it is further

**ORDERED** that the action shall bear the following caption:

-----------------------------------------------------------------------------------X

Fordham Landing North Holdings LLC

        plaintiff                           **Index No.:**  850030/2025

-against-

MDBZJGGS, LLC,DS FORDHAM LANDING 2 LLC,DS FORDHAM LANDING 4 LLC,IGAL NAMDAR, GARY SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100, INCLUSIVE,

             Defendant.

-----------------------------------------------------------------------------------X

**850030/2025   SIG CRE 2023 VENTURE LLC vs. MDBZJGGS, LLC ET AL**       **Page 2 of 3**
**Motion No.  001 002 003**

2 of 3

And it is further

ORDERED that within 5 days of the court's entry of this order, counsel for **plaintiff** shall serve a copy of this order with notice of entry upon the County Clerk (Room 141B) and the Clerk of the General Clerk's Office (Room 119), who are directed to mark the Court's records to reflect the change in the caption herein; and it is further

ORDERED that such service upon the County Clerk and Clerk of the General Clerk's Office shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-filing" page on the court's website – www.nycourts.gov/supctmanh).

20250512165445MACRANE0E2C23B883E74F33998A2A1AA6F2C819

| 5/12/2025 | | | | |
|-----------|--|--|--|--|
| **DATE** | | | **MELISSA A. CRANE, J.S.C.** | |

| CHECK ONE: | | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
|------------|--|-----------------|--|-------------------------|--|
| | | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

**850030/2025   SIG CRE 2023 VENTURE LLC vs. MDBZJGGS, LLC ET AL**                    **Page 3 of 3**
**Motion No.  001 002 003**

**NYSCEF Document # 74**
**Third Party Summons and Amended Verified Answer With**
**Counterclaims, Cross-Claims And Third-Party Complaint**

Case 7:26-cv-04909   Document 1-1   Filed 06/10/26   Page 41 of 300

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-------------------------------------------------------------------------- X

FORDHAM LANDING NORTH HOLDINGS LLC,                    Index No.: 850030/2025

                Plaintiff,

      -against-

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS          **THIRD-PARTY SUMMONS**
FORDHAM LANDING 4 LLC, IGAL NAMDAR, GARY
SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD and "JOHN DOE" NO. 1 THROUGH "JOHN DOE"
NO. 100, inclusive, the last one hundred names being fictitious
and unknown to plaintiff, the persons or parties intended being
tenants, occupants, persons or corporations, if any, having or
claiming an interest in or lien upon the premises described in the
complaint,

                Defendants.
-------------------------------------------------------------------------- X
MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC,
DS FORDHAM LANDING 4 LLC and GARY SEGAL,

                Third-Party Plaintiffs,

        -against-

NAMDAR FORDHAM LANDING LLC, and SIG CRE 2023
VENTURE LLC,

                Third-Party Defendants,

        -and-

FORDHAM LANDING PREFERRED, LLC and FORDHAM
LANDING PREFERRED SPONSOR LLC,

                Nominal Third-Party Defendants.
-------------------------------------------------------------------------- X

    To the Third-Party Defendant(s):

        You are hereby summoned to answer the complaint of the third-party plaintiffs and the

complaint of the original plaintiff, copies of which, together with copies of all prior pleadings in

this action, are herewith served upon you, and to serve copies of your answer upon the third-party

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 42 of 300

plaintiff's attorney, at its address stated below and upon the original plaintiff's attorney, Lester Shaw & Levy, LLP, whose address is 45 Main Street, Suite 322, Brooklyn, New York 11201-4490.

If this third-party summons was personally served upon you in the State of New York, the answer must be served within 20 days after such service, excluding the date of service. If the third-party summons was not personally delivered to you within the State of New York, the answer must be served within 30 days after service of the summons is complete as provided by law.

If you do not serve an answer to the attached third-party complaint within the applicable time limitation stated above, a judgment may be entered against you, by default, for the relief demanded in the third-party complaint.

Dated: Massapequa, New York
          May 29, 2025

                                        RUSS & RUSS, P.C.


                                        By: *Jay Edmond Russ*
                                            Jay Edmond Russ, Esq.
                                        543 Broadway
                                        Massapequa, NY 11758
                                        516-541-1014
                                        jayruss@russrusspc.com

                                        *Attorney for Segal Defendants/*
                                        *Third Party Plaintiffs*

TO:

NAMDAR FORDHAM LANDING LLC
c/o New York Secretary of State
Albany, New York

SIG CRE 2023 VENTURE LLC
c/o New York Secretary of State
Albany, New York

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
------------------------------------------------------------------------------- X

FORDHAM LANDING NORTH HOLDINGS LLC,                    Index No.: 850030/2025

                               Plaintiff,

              -against-

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, IGAL NAMDAR, GARY
SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD and "JOHN DOE" NO. 1 THROUGH "JOHN DOE"
NO. 100, inclusive, the last one hundred names being fictitious
and unknown to plaintiff, the persons or parties intended being
tenants, occupants, persons or corporations, if any, having or
claiming an interest in or lien upon the premises described in the
complaint,

                               Defendants.
------------------------------------------------------------------------------- X

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, and GARY SEGAL,

                    Third-Party Plaintiffs,


              -against-

NAMDAR FORDHAM LANDING LLC, and SIG CRE 2023
VENTURE LLC,

                    Third-Party Defendants,

              -and-

FORDHAM LANDING PREFERRED, LLC and FORDHAM
LANDING PREFERRED SPONSOR LLC,

                    Nominal Third-Party Defendants.
------------------------------------------------------------------------------- X

### AMENDED VERIFIED ANSWER WITH COUNTERCLAIMS, CROSS-CLAIMS AND THIRD-PARTY COMPLAINT

Defendants, MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM

LANDING 4 LLC and GARY SEGAL, by their attorney, Russ & Russ, P.C., as and for their

1

Amended Verified Answer to the Complaint, with Counterclaims, Crossclaims and Third-Party Claims, allege as follows:

1.      Deny knowledge sufficient to form a belief as to paragraphs 2, 9, and 15.

2.      Deny each and every allegation set forth in paragraph 1, 16, 17, (note: misnumbering of the paragraphs of the Complaint has resulted in a "new" paragraph 13 on page 5 after paragraph 17 on page 4), 14 (page 5) through 25, 27, 35, 36, 38, 40 through 47, 51, 53, 54, and 57, and respectfully refer the Court to the documents or agreements referenced, for the Court's own evaluation and interpretation.

3.      Deny each and every allegation set forth in paragraph 4, 6, 8, 10, 12, 14, "new" paragraph 13 on page 5, 26, 28 through 34, 37, 39, 48 through 50, 52, 55, 56, 58 through 66, and 68 through 77.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

4.      Plaintiff (formerly referred to in this action as the "Proposed Substituting Plaintiff") lacks standing. Plaintiff is an interloper as to any right, title or interest in the cause of action, and cannot establish the required elements of standing. Original Plaintiff did not allege that it was the holder and owner of the alleged "promissory note" when the action was commenced. Plaintiff has not unequivocable done so either as of the date it sought substitution as Plaintiff.

5.      N. Dean Boyer, Esq. alleged to the Court at oral argument "on the Record" that he held the original "promissory note" on that date but that assertion, upon information and belief, is false. N. Dean Boyer, Esq. made no such assertion in his affirmation of March 12, 2025, or affirmation of April 25, 2025, or in other submissions to the Court.  Upon information and belief, Plaintiff still does not have possession and ownership of the alleged "promissory note."

2

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

6.      Plaintiff has not acquired any right, title or interest in the cause of action, or any of the underlying documents, by virtue of any indorsement, allonge or alleged "negotiation" of an alleged "promissory note." The alleged "promissory note" states at the last sentence of Section 7, that it is subject to all the terms and conditions of the "Loan Document" which renders it non-negotiable, pursuant to UCC 3-105 (2) (a). The alleged "promissory note" is not a negotiable instrument. The allonges are a nullity and are not "firmly affixed" nor alleged to be.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

7.      Plaintiff has not acquired any right, title, or interest in the cause of action, or any of the underlying documents, by virtue of any alleged "assignment" of an alleged "promissory note" or any document, arising from or related to, the loan transaction. Plaintiff relies upon two alleged "assignments" which are defective documents. One references therein "Loan Documents" but does not define the capitalized term. Neither clearly assert that the "promissory note" was assigned. The Complaint alleges assignment only of allonges and other documents. The allonges were not assigned. The mortgages were not assigned. The cause of action was not assigned. The Court has ruled that Plaintiff merely "cobbled" together some evidence of an assignment to defeat a dismissal motion, but that does not establish standing.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

8.      The alleged chain of alleged "assignments" by which Plaintiff claims to have standing are each subject to numerous defenses, any one of which renders the alleged chain of alleged "assignments" null and void, including but not limited to, failure to execute properly, failure to deliver properly, lack or authority to execute/deliver, absence of consideration, failure of

3

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 46 of 300

any party in the chain of alleged "assignments" to possess/control and deliver the original "promissory note" or any other original document.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

9.      To the extent that Plaintiff has relied upon an "intent" to assign as to any alleged "assignment" in the chain, which is the position taken by Plaintiff "on the Record" before the Court, there was insufficient evidence of such alleged intent, and while there might have been "intent" to assign other documents, there was no intent to assign the alleged "promissory note," not is there any intent to "assign" the mortgage(s).

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

10.     Plaintiff has failed to properly and/or timely notice an alleged default, provide required notice of default, accelerate any balance allegedly due, or otherwise satisfy the conditions precedent to suit.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

11.     Any or all sums allegedly owed are owed, if at all, to parties other than Plaintiff.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

12.     Plaintiff's calculation of sums that are allegedly due is flawed, incorrect, contrary to the documents underlying the transaction, or excessive.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

13.     This action may not be maintained and is subject to numerous defenses, based upon: a) Igal Namdar (**"Namdar"**) being the person in control of Plaintiff and NAMDAR FORDHAM LANDING LLC, (jointly and severally, together with any entities formed by or controlled by Namdar, known or unknown, having or claiming any ownership or management right or interest in the transactions, real estate, entities and/or project, which is the subject of this action, and/or the

4

Counterclaims, Crossclaims and Third-Party Claims, hereinafter "**Namdar Entities**"); and b) the motivation behind the motivation of Namdar, Plaintiff and/or the Namdar Entities to purportedly acquire the right, title and interest to prosecute this action; and c) as further alleged herein in the Counterclaims, Cross-Claim, and Third Party Claims, advancing theories of recovery of: (i) Breach of Fiduciary Duties and the Duty of Loyalty; (ii) Tortious Interference with Contract Rights (the Operating Agreement) and Inducing a Breach of the Operating Agreement; and (iii) aiding and abetting a Breach of Fiduciary Duties. Plaintiff is guilty of unconscionable conduct, has unclean hands, and is not entitled to equitable relief. Plaintiff and Third-Party Defendant, SIG CRE 2023 VENTURE LLC, had actual knowledge of the Breach of Fiduciary Duties and the Duty of Loyalty, encouraged the acts and omissions, and provided substantial assistance in causing the Breach of Fiduciary Duties and the Duty of Loyalty.

**AS AND FOR A TENTH AFFIRMATIVE DEFENSE, FIRST COUNTERCLAIM AGAINST PLAINTIFF, FIRST CROSSCLAIM AGAINST IGAL NAMDAR FOR WHICH A RESPONSE IS DEMANDED, AND FIRST CAUSE OF ACTION AGAINST NAMDAR FORDHAM LANDING LLC**
**(Breach Of Fiduciary Duty)**

14.    MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC and GARY SEGAL, assert these claims individually and on behalf of Fordham Landing Preferred, LLCm and Fordham Landing Preferred Sponsor LLC, and are referred to in these Counterclaims, Crossclaims and Third Party Claims, as the **"Segal Defendants."** As Fordham Landing Preferred, LLC and Fordham Landing Preferred Sponsor LLC are, or may be, necessary parties to this action, they are joined in this action as Nominal Defendants, although no claims for relief are asserted against them.

5

Case 7:26-cv-04909   Document 1-1   Filed 06/10/26   Page 48 of 300

15.     Fordham Landing Preferred, LLC and Fordham Landing Preferred Sponsor, LLC, are in the chain of entities for the ownership of the subject real estate, which entities own "common" interests and "preferred" interests.

16.     The sole member of MDBZJGGS, LLC, DS Fordham Landing 2 LLC, and DS Fordham Landing 4, LLC is Fordham Landing Preferred LLC.

17.     The members of Fordham Landing Preferred LLC are Fordham Landing Preferred Sponsor LLC and CPIF MRA LLC.

18.     The members of Fordham Landing Preferred Sponsor LLC are Namdar Fordham Landing LLC, The Plymouth Group III, LLC, Dynamic Star III LLC and DS GP 3, INC.

19.     The managers and management duties and responsibilities of Fordham Landing Preferred Sponsor LLC consist of two (2) individuals ("Management Committee") as follows: "NAMDAR shall be entitled to designate one (1) representative to represent NAMDAR" and "DYNAMIC shall be entitled to designate one (1) representative to represent DYNAMIC…" and the Management Committee's sole function under the agreement is to vote in respect to Major Decisions and any "Other MC Decisions…"

20.     The entities named or identified as "Namdar" are owned or majority owned and by Namdar or his affiliates, and controlled by Namdar or his affiliates, and directed by Namdar.

21.     The entities named "**Dynamic**" or designated as "**DS**" are majority owned by Gary Segal.

22.     The individual managers, or the controlling individuals of the managers, are Gary Segal and Namdar. They are the persons who manage Fordham Landing Preferred Sponsor, LLC, and its business affairs.

6

Case 7:26-cv-04909  Document 1-1  Filed 06/10/26  Page 49 of 300

23. DS Fordham Landing 2 LLC owns real estate at 2371 Exterior Street, Bronx, New York. DS Fordham Landing 4 LLC owns real estate at 2391 and 2401 Exterior Street, Bronx, New York. MDBZJGGS LLC owns real estate at 301 West Fordham Road, Bronx, New York.

24. Plaintiff is owned or majority owned by Namdar and/or Namdar Entities and Plaintiff was formed by, or at the direction of, Namdar, or Namdar Entities, or his or their agents or counsel. Namdar, directly or indirectly, controls Plaintiff and Namdar Entities.

25. Gary Segal and Namdar/Namdar Entities have management rights, duties and responsibilities, including but not limited to Major Matters governance and management rights, duties and responsibilities which impact the real estate. Such governance and management rights, duties and responsibilities extend to downstream entities/members/partners in the business relationship.

26. Namdar/Namdar Entities freely assumed such rights, duties and responsibilities without duress, and, as a manager, Namdar has fiduciary duties to members.

27. Gary Segal and Namdar/Namdar Entities, representing themselves as their interests may appear and their affiliates, are and consider themselves to be "co-venturers" and "partners" in the transactions and entities which are the subject of this action, and the Counterclaims, Crossclaims and Third-Party Claims, with fiduciary duties to each other and which extend to downstream entities/members/partners in the business relationship.

28. Those fiduciary duties apply to and bind Plaintiff.

29. Those fiduciary duties apply to and protect the Segal Defendants and their downstream entities/members/partners.

30. Namdar/Namdar Entities (including Fordham Landing LLC) were required to fund the first set of payments due to SIG CRE 2023 Venture LLC, pursuant to a certain "Extension

7

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 50 of 300

Agreement" dated in or about September 27, 2024, by and between MDBZJGGS, LLC, DS Fordham Landing 2 LLC, DS Fordham Landing 4 LLC, and SIG CRE 2023 Venture LLC. The purpose of the Extension Agreement was to obtain an extension of the original maturity date of the current loan of $55,0000,000. The Segal Defendants and SIG CRE 2023 Venture LLC relied on the financial commitment of Namdar/Namdar Entities in executing the Extension Agreement, particularly since Namdar signed the Extension Agreement as a Guarantor and was fully aware of the payment requirements thereunder.  Accordingly, Namdar/Namdar Entities (including Namdar Fordham Landing LLC) were put on notice, in writing, pursuant to the Fordham Landing Preferred Sponsor LLC, Operating Agreement of their breach (the **"Notice,"** dated November 12, 2024, from Dynamic Star III LLC, a Delaware limited liability company (the "Manager"), the Manager of Fordham Landing Preferred Sponsor LLC, a Delaware limited liability company.

31.     Said Notice referenced the repeated requests that Namdar/Namdar Entities (including Fordham Landing LLC) contribute the required share of the amount necessary to extend the loan. Said Notice referenced that these requests have been ignored or dismissed by them. Said Notice referenced that the "sustained dereliction of your responsibility to the Company has endangered the entire future of the Project."  Said Notice referenced that to extend the loan or renew negotiations, "…the Company requires Additional Capital Contributions of $7,106,779.33" and that "…Pursuant to Section 5.2 of the Operating Agreement, each Member is required to contribute its pro rata share of this Additional Capital Contribution.  You are required to submit your pro rata share, in an amount equal to $4,060,813.70, to the account specified in the wire instructions attached as Schedule A hereto…"

32.     Namdar/Namdar Entities (including Namdar Fordham Landing LLC) failed and refused to respond or comply with the Notice.

8

33.     One of the goals of Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff was and is to purchase or purport to purchase the debt, promissory note, mortgage and any related rights, to foreclose, force a judicial sale of the real estate, and take or "steal" from the Segal Defendants their ownership and equity interests, all contrary to their fiduciary duties and the duty of loyalty.

34.     Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff are engaged in a plan, conspiracy, and scheme to devastate and damage the Segal Defendants by prosecuting this action to judgment and public sale, and take or "steal" from the Segal Defendants their ownership and equity interests, all contrary to their fiduciary duties and the duty of loyalty.

35.     The Segal Defendants are severally damaged by the acts, omissions, and breaches by Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff, and their willful, deceitful, conspiratorial and malicious attempt to foreclose and steal the real estate.

36.     The Segal Defendants, on the one hand, and Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff, on the other, are in a special trust relationship. As such, Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff are strictly held to the highest standard of conduct under the law, for as Justice Cardozo famously stated in Meinhard v Salmon, 249 N.Y. 458 (1928): "Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."

37.     A breach of any fiduciary duty, whether intentional or unintentional, results in fiduciary liability. The duty of loyalty is at the core of any fiduciary relationship; undivided and undiluted duty of loyalty is absolute and may not be waived. Namdar/Namdar Entities (including

9

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 52 of 300

Namdar Fordham Landing LLC), and Plaintiff must act solely in the interest of members/partners. This duty, which is also referred to as the "sole interest rule," means that they, and each of them, must put the interests of their members/partners ahead of the their own individual interest, and means that they, and each of them, must avoid actual and potential conflicts of interest, and must avoid any transaction, which would benefit only them, or any of them, of their affiliates, known and unknown, or a closely related person or entity, directly or indirectly, and must communicate to the Segal Defendants all material facts. The duty of loyalty is a rule of "uncompromising rigidity" and cannot be overcome by any amount of good faith.

38. The "no further inquiry" rule prohibits Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff from profiting from any self-dealing transaction. They, and each of them, are per se liable simply upon a showing of personal interest in the transaction. Whether the self-dealing transaction involves fair and reasonable terms or compensation is immaterial.

39. Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff cannot hide behind the "business judgment rule." Every fiduciary must act solely in the interests of the beneficiaries, and that duty is breached when a fiduciary engages in self-dealing, i.e., places his/her own interests over those of the beneficiaries.

40. They, and each of them, breached fiduciary duties and duties of loyalty to the Segal Defendants.

41. Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff conspired with SIG CRE 2023 Venture LLC to acquire or purport to acquire certain rights by which Plaintiff would and has claimed the right to be substituted in as Plaintiff and prosecute this action.

10

42.    Upon information and belief, Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff, also conspired with others, unknown at this time, including but not limited to attorneys and law firms, to acquire or purport to acquire certain rights by which Plaintiff would and has claimed the right to be substituted in as Plaintiff and prosecute this action.

43.    To remedy the breach of fiduciary duties and duties of loyalty, and the plot/scheme against the Segal Defendants, this action should be dismissed on the merits, because Plaintiff is not permitted to profit, pursuant to the doctrine of "disgorgement" (see Howard v Pooler, 184 A.D.3d 1160 (4th Dept., 2020) and must return any monies, benefits, real estate or funds which it might recover, to the entities which have suffered the loss.

44.    Alternatively, the investment by Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff in its entirety, whether in the underlying promissory note, mortgage, loan, loan documents, or otherwise, should be declared by declaratory judgment of the Court, to be "capital" in Fordham Landing Preferred Sponsor LLC, or such other entity as is appropriate, to be returned at a later date, if at all, in accordance with the then current Operating Agreement of the entity.

45.    Upon information and belief, the alternative remedy does equity and justice under the circumstances, because Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff, will have voluntarily extinguished debt of such entity, for the benefit of its members/partners.

46.    Additionally, the Segal Defendants should recover attorney's fees and expenses and punitive damages.

11

**AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE, A SECOND COUNTERCLAIM AGAINST PLAINTIFF, AND A SECOND CROSSCLAIM ON AGAINST IGAL NAMDAR FOR WHICH A RESPONSE IS DEMANDED AND SECOND CAUSE OF ACTION AGAINST NAMDAR FORDHAM LANDING LLC**
**(Tortious Interference With Contract Rights and Inducing a Breach of Contract)**

47.     The Segal Defendants repeat and re-allege every allegation previously set forth herein.

48.     The Fordham Landing Preferred Sponsor LLC Operating Agreement was/is a valid contractual relationship between the signatories thereto, and Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff knew of the Fordham Landing Preferred Sponsor LLC Operating Agreement and the valid contractual relationship.

49.     Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff intentionally interfered with the valid contractual relationship, intentionally induced a breach of the valid contractual relationship, and Namdar/Namdar Entities breached the Fordham Landing Preferred Sponsor LLC Operating Agreement.

50.     Namdar/Namdar Entities including Namdar Fordham Landing LLC, and Plaintiff caused the Segal Defendants to suffer loss and damage as a result and are also entitled to an award of punitive damages.

**AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE, A THIRD COUNTERCLAIM AGAINST PLAINTIFF AND THIRD CROSSCLAIM AGAINST IGAL NAMDAR FOR WHICH A RESPONSE IS DEMANDED, AND THIRD CAUSE OF ACTION AGAINST NAMDAR FORDHAM LANDING LLC**
**(Abuse of Process)**

51.     The Segal Defendants repeat and re-allege every allegation previously set forth herein.

12

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 55 of 300

52.    The summons in this case was regularly issued and the commencement and prosecution of this action includes the provisional remedy of a Notice of Pendency, which creates a lien and encumbrance on the real estate.

53.    Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff purport to have acquire the right to prosecute this action to Judgment, to sell the real estate at public auction, and divest the Segal Defendants of title, ownership and the benefits thereof, all for other purposes and ulterior motives beyond those set forth in the summons and Notice of Pendency, and to harm the Segal Defendants. Such other purpose and ulterior motives are to defeat the purpose of Fordham Landing Preferred Sponsor LLC, its Operating Agreement, the entire project, and steal the real estate and ownership and equity interests from the Segal Defendants.

54.    Namdar/Namdar Entities including Namdar Fordham Landing LLC), and Plaintiff have acted and continue to act maliciously, willfully, conspiratorially, and with intent to cause harm and loss to the Segal Defendants. The Segal Defendants have been damaged in an amount determined at trial but believed to be in the sum of approximately 300 million dollars, together with punitive damages. The Segal Defendants reserve their right to amend their damage claims.

**AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE, A FOURTH COUNTERCLAIM AGAINST PLAINTIFF, A FOURTH CROSSCLAIM AGAINST IGAL NAMDAR FOR WHICH A RESPONSE IS DEMANDED, A FOURTH CAUSE OF ACTION AGAINST NAMDAR FORDHAM LANDING LLC AND FIRST CAUSE OF ACTION AGAINST SIG CRE 2023 VENTURE LLC**
**(Aiding and Abetting a Breach of Fiduciary Duties)**

55.    The Segal Defendants repeat and re-allege every allegation previously set forth herein.

56.    As alleged herein, Namdar/Namdar Entities including Namdar Fordham Landing LLC), and Plaintiff have knowingly breached fiduciary duties, and duties of loyalty owed to the Segal Defendants.

13

57.     Third Party Defendant, SIG CRE 2023 Venture LLC knew that Plaintiff was and is controlled by Namdar/Namdar Entities (including Namdar Fordham Landing LLC).

58.     Third Party Defendant, SIG CRE 2023 Venture LLC, which was the original Plaintiff herein, wrongfully, tortiously and conspiratorially participated therein, and used that participation to: a) sell or purport to sell its right, title and interest in this case and the underlying transaction for a sum paid to it by Namdar/Namdar Entities (including Namdar Fordham Landing LLC), or Plaintiff in an amount unknown, but believed to be the entire principal and interest which Third Party Defendant, SIG CRE 2023 Venture LLC, claimed was due and owing, and b) purport to free itself of this case and the duties and responsibilities of litigation and prosecution hereof.

59.     Upon information and belief, knowing full well that Plaintiff was and is controlled by Namdar/Namdar Entities, and was and is guilty of wrongdoing and tortious acts committed against the Segal Defendants, Third Party Defendant, SIG CRE 2023 Venture LLC, procured from Namdar/Namdar Entities (including Namdar Fordham Landing LLC), or Plaintiff, a complete release, indemnification and hold harmless, from and against any liability of any kind, even in tort, as to the Segal Defendants arising from its transaction, or arising from this action, or otherwise.

60.     Upon information and belief, Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff have and are paying the legal costs and expenses of Third-Party Defendant, SIG CRE 2023 Venture LLC in this case.

61.     Third Party Defendant, SIG CRE 2023 Venture LLC participated in and wrongfully, willfully and maliciously induced such breach of fiduciary duties and duties of loyalty, and profits from it.

62.     As a result of the foregoing the Segal Defendants have been damaged in the amount of 300 million dollars and are entitled to an award of punitive damages and counsel fees.

14

WHEREFORE, the Segal Defendants demand judgment as follows:

A.     Dismissing the Complaint, and every cause of action;

B.     On the First Counterclaim against Plaintiff Fordham Landing North Holdings LLC, First Crossclaim against Igal Namdar, and First Cause of Action against Namdar Fordham Landing LLC, that this action be dismissed on the merits, and directing that Plaintiff "disgorge" and monies or profits, or alternatively, that the totality of the investment by any of them in the underlying promissory note, mortgage, loan, and loan documents, be declared by declaratory judgment of the Court to be "capital" of Namdar/Namdar Entities in Fordham Landing Preferred Sponsor LLC, or in such other appropriate entity, to be returned, if at all, in accordance with the then current Operating Agreement of the entity;

C.     On the Second Counterclaim against Plaintiff Fordham Landing North Holdings LLC, Second Crossclaim against Igal Namdar, and Second Cause of Action against Namdar Fordham Landing LLC, that this action be dismissed on the merits, and directing that Plaintiff "disgorge" and monies or profits, or alternatively, that the totality of the investment by any of them in the underlying promissory note, mortgage, loan, and loan documents, be declared by declaratory judgment of the Court to be "capital" of Namdar/Namdar Entities in Fordham Landing Preferred Sponsor LLC, or in such other appropriate entity, to be returned, if at all, in accordance with the then current Operating Agreement of the entity;

D.     On the Third Counterclaim against Plaintiff Fordham Landing North Holdings LLC, Third Crossclaim against Igal Namdar and Third Cause of Action against Namdar Fordham Landing LLC that this action be dismissed on the merits, and that the Segal Defendants have judgment in the sum of approximately 300 million dollars;

15

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 58 of 300

E.      On the Fourth Counterclaim against Plaintiff, Fordham Landing North Holdings LLC, Fourth Crossclaim against Igal Namdar, Fourth Cause of Action against Namdar Fordham Landing LLC and First Cause of Action against SIG CRE 2023 Venture LLC that this action be dismissed on the merits, and that the Segal Defendants have judgment in the sum of approximately 300 million dollars;

F.      Reasonable counsel fees and expenses;

G.      Punitive Damages; and

H.      The costs and disbursements of this action.

Dated:  Massapequa, New York
        May 29, 2025

                                RUSS & RUSS, P.C.


                                By: *Jay Edmond Russ*
                                    Jay Edmond Russ, Esq.
                                543 Broadway
                                Massapequa, NY 11758
                                516-541-1014
                                jayruss@russrusspc.com

                                *Attorney for Segal Defendants/*
                                *Third-Party Plaintiffs*

16

**NYSCEF Document # 75**
**Amended Verified Answer with Counterclaims,**
**Cross-Claims, and Third-Party Complaint**

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-------------------------------------------------------------------------- X

FORDHAM LANDING NORTH HOLDINGS LLC,                    Index No.: 850030/2025

                  Plaintiff,

      -against-

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, IGAL NAMDAR, GARY
SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD and "JOHN DOE" NO. 1 THROUGH "JOHN DOE"
NO. 100, inclusive, the last one hundred names being fictitious
and unknown to plaintiff, the persons or parties intended being
tenants, occupants, persons or corporations, if any, having or
claiming an interest in or lien upon the premises described in the
complaint,

                  Defendants.
-------------------------------------------------------------------------- X

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, and GARY SEGAL,

                  Plaintiffs on the Counterclaims,
                  Crossclaims and Third-Party
                  Plaintiffs,

and

FORDHAM LANDING PREFERRED, LLC and
FORDHAM LANDING PREFERRED SPONSOR, LLC

                  Additional Plaintiffs on
                  Counterclaims, Crossclaims
                  and Third-Party Plaintiffs,

      -against-

NAMDAR FORDHAM LANDING LLC, and SIG CRE 2023
VENTURE LLC,

                  Third-Party Defendants.
-------------------------------------------------------------------------- X

**AMENDED VERIFIED ANSWER WITH COUNTERCLAIMS,**
**CROSS-CLAIMS AND THIRD-PARTY COMPLAINT**

1

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 61 of 300

Defendants, MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC and GARY SEGAL, by their attorneys, Russ & Russ, P.C., as and for their Amended Verified Answer to the Complaint, with Counterclaims, Crossclaims and Third-Party Claims, also on behalf of FORDHAM LANDING PREFERRED, LLC and FORDHAM LANDING PREFERRED SPONSOR, LLC, Additional Plaintiffs on Counterclaims, Crossclaims and Third-Party Claims, allege as follows:

1. Deny knowledge sufficient to form a belief as to paragraphs 2, 9, and 15.

2. Deny each and every allegation set forth in paragraph 1, 16, 17, (note: misnumbering of the paragraphs of the Complaint has resulted in a "new" paragraph 13 on page 5 after paragraph 17 on page 4), 14 (page 5) through 25, 27, 35, 36, 38, 40 through 47, 51, 53, 54, and 57, and respectfully refer the Court to the documents or agreements referenced, for the Court's own evaluation and interpretation.

3. Deny each and every allegation set forth in paragraph 4, 6, 8, 10, 12, 14, "new" paragraph 13 on page 5, 26, 28 through 34, 37, 39, 48 through 50, 52, 55, 56, 58 through 66, and 68 through 77.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

4. Plaintiff (formerly referred to in this action as the "Proposed Substituting Plaintiff") lacks standing. Plaintiff is an interloper as to any right, title or interest in the cause of action, and cannot establish the required elements of standing. Original Plaintiff did not allege that it was the holder and owner of the alleged "promissory note" when the action was commenced. Plaintiff has not unequivocable done so either as of the date it sought substitution as Plaintiff.

5. N. Dean Boyer, Esq. alleged to the Court at oral argument "on the Record" that he held the original "promissory note" on that date but that assertion, upon information and belief, is

2

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 62 of 300

false. N. Dean Boyer, Esq. made no such assertion in his affirmation of March 12, 2025, or affirmation of April 25, 2025, or in other submissions to the Court. Upon information and belief, Plaintiff still does not have possession and ownership of the alleged "promissory note."

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

6. Plaintiff has not acquired any right, title or interest in the cause of action, or any of the underlying documents, by virtue of any indorsement, allonge or alleged "negotiation" of an alleged "promissory note." The alleged "promissory note" states at the last sentence of Section 7, that it is subject to all the terms and conditions of the "Loan Document" which renders it non-negotiable, pursuant to UCC 3-105 (2) (a). The alleged "promissory note" is not a negotiable instrument. The allonges are a nullity and are not "firmly affixed" nor alleged to be.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

7. Plaintiff has not acquired any right, title, or interest in the cause of action, or any of the underlying documents, by virtue of any alleged "assignment" of an alleged "promissory note" or any document, arising from or related to, the loan transaction. Plaintiff relies upon two alleged "assignments" which are defective documents. One references therein "Loan Documents" but does not define the capitalized term. Neither clearly assert that the "promissory note" was assigned. The Complaint alleges assignment only of allonges and other documents. The allonges were not assigned. The mortgages were not assigned. The cause of action was not assigned. The Court has ruled that Plaintiff merely "cobbled" together some evidence of an assignment to defeat a dismissal motion, but that does not establish standing.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

8. The alleged chain of alleged "assignments" by which Plaintiff claims to have standing are each subject to numerous defenses, any one of which renders the alleged chain of

3

alleged "assignments" null and void, including but not limited to, failure to execute properly, failure to deliver properly, lack or authority to execute/deliver, absence of consideration, failure of any party in the chain of alleged "assignments" to possess/control and deliver the original "promissory note" or any other original document.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

9. To the extent that Plaintiff has relied upon an "intent" to assign as to any alleged "assignment" in the chain, which is the position taken by Plaintiff "on the Record" before the Court, there was insufficient evidence of such alleged intent, and while there might have been "intent" to assign other documents, there was no intent to assign the alleged "promissory note," not is there any intent to "assign" the mortgage(s).

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

10. Plaintiff has failed to properly and/or timely notice an alleged default, provide required notice of default, accelerate any balance allegedly due, or otherwise satisfy the conditions precedent to suit.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

11. Any or all sums allegedly owed are owed, if at all, to parties other than Plaintiff.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

12. Plaintiff's calculation of sums that are allegedly due is flawed, incorrect, contrary to the documents underlying the transaction, or excessive.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

13. This action may not be maintained and is subject to numerous defenses, based upon: a) Igal Namdar (**"Namdar"**) being the person in control of Plaintiff and NAMDAR FORDHAM LANDING LLC, (jointly and severally, together with any entities formed by or controlled by

4

Case 7:26-cv-04909   Document 1-1   Filed 06/10/26   Page 64 of 300

Namdar, known or unknown, having or claiming any ownership or management right or interest in the transactions, real estate, entities and/or project, which is the subject of this action, and/or the Counterclaims, Crossclaims and Third-Party Claims, hereinafter "**Namdar Entities**"); and b) the motivation behind the motivation of Namdar, Plaintiff and/or the Namdar Entities to purportedly acquire the right, title and interest to prosecute this action; and c) as further alleged herein in the Counterclaims, Cross-Claim, and Third Party Claims, advancing theories of recovery of: (i) Breach of Fiduciary Duties and the Duty of Loyalty; (ii) Tortious Interference with Contract Rights (the Operating Agreement) and Inducing a Breach of the Operating Agreement; and (iii) aiding and abetting a Breach of Fiduciary Duties. Plaintiff is guilty of unconscionable conduct, has unclean hands, and is not entitled to equitable relief. Plaintiff and Third-Party Defendant, SIG CRE 2023 VENTURE LLC, had actual knowledge of the Breach of Fiduciary Duties and the Duty of Loyalty, encouraged the acts and omissions, and provided substantial assistance in causing the Breach of Fiduciary Duties and the Duty of Loyalty.

**AS AND FOR A TENTH AFFIRMATIVE DEFENSE, FIRST COUNTERCLAIM AGAINST PLAINTIFF, FIRST CROSSCLAIM AGAINST IGAL NAMDAR FOR WHICH A RESPONSE IS DEMANDED, AND FIRST CAUSE OF ACTION AGAINST NAMDAR FORDHAM LANDING LLC**
**(Breach Of Fiduciary Duty)**

14.     MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC and GARY SEGAL are referred to in these Counterclaims, Crossclaims and Third Party Claims, jointly and severally, together with FORDHAM LANDING PREFERRED, LLC and FORDHAM LANDING PREFERRED SPONSOR, LLC, as the **"Segal Defendants."** Fordham Landing Preferred, LLC and Fordham Landing Preferred Sponsor, LLC, are in the chain of entities for the ownership of the subject real estate, which entities own "common" interests and

5

"preferred" interests. The Segal Defendants repeat and re-allege every allegation previously set forth herein.

15. The sole member of MDBZJGGS, LLC, DS Fordham Landing 2 LLC, and DS Fordham Landing 4, LLC is Fordham Landing Preferred LLC.

16. The members of Fordham Landing Preferred LLC are Fordham Landing Preferred Sponsor LLC and CPIF MRA LLC.

17. The members of Fordham Landing Preferred Sponsor LLC are Namdar Fordham Landing LLC, The Plymouth Group III, LLC, Dynamic Star III LLC and DS GP 3, INC.

18. The managers and management duties and responsibilities of Fordham Landing Preferred Sponsor LLC consist of two (2) individuals ("Management Committee") as follows: "NAMDAR shall be entitled to designate one (1) representative to represent NAMDAR" and "DYNAMIC shall be entitled to designate one (1) representative to represent DYNAMIC…" and the Management Committee's sole function under the agreement is to vote in respect to Major Decisions and any "Other MC Decisions…"

19. The entities named or identified as "Namdar" are owned or majority owned and by Namdar or his affiliates, and controlled by Namdar or his affiliates, and directed by Namdar.

20. The entities named "**Dynamic**" or designated as "**DS**" are majority owned by Gary Segal.

21. The individual managers, or the controlling individuals of the managers, are Gary Segal and Namdar. They are the persons who manage Fordham Landing Preferred Sponsor, LLC, and its business affairs.

6

22. DS Fordham Landing 2 LLC owns real estate at 2371 Exterior Street, Bronx, New York. DS Fordham Landing 4 LLC owns real estate at 2391 and 2401 Exterior Street, Bronx, New York. MDBZJGGS LLC owns real estate at 301 West Fordham Road, Bronx, New York.

23. Plaintiff is owned or majority owned by Namdar and/or Namdar Entities and Plaintiff was formed by, or at the direction of, Namdar, or Namdar Entities, or his or their agents or counsel. Namdar, directly or indirectly, controls Plaintiff and Namdar Entities.

24. Gary Segal and Namdar/Namdar Entities have management rights, duties and responsibilities, including but not limited to Major Matters governance and management rights, duties and responsibilities which impact the real estate. Such governance and management rights, duties and responsibilities extend to downstream entities/members/partners in the business relationship.

25. Namdar/Namdar Entities freely assumed such rights, duties and responsibilities without duress, and, as a manager, Namdar has fiduciary duties to members.

26. Gary Segal and Namdar/Namdar Entities, representing themselves as their interests may appear and their affiliates, are and consider themselves to be "co-venturers" and "partners" in the transactions and entities which are the subject of this action, and the Counterclaims, Crossclaims and Third-Party Claims, with fiduciary duties to each other and which extend to downstream entities/members/partners in the business relationship.

27. Those fiduciary duties apply to and bind Plaintiff.

28. Those fiduciary duties apply to and protect the Segal Defendants and their downstream entities/members/partners.

29. Namdar/Namdar Entities (including Fordham Landing LLC) were required to fund the first set of payments due to SIG CRE 2023 Venture LLC, pursuant to a certain "Extension

7

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 67 of 300

Agreement" dated in or about September 27, 2024, by and between MDBZJGGS, LLC, DS Fordham Landing 2 LLC, DS Fordham Landing 4 LLC, and SIG CRE 2023 Venture LLC. The purpose of the Extension Agreement was to obtain an extension of the original maturity date of the current loan of $55,0000,000. The Segal Defendants and SIG CRE 2023 Venture LLC relied on the financial commitment of Namdar/Namdar Entities in executing the Extension Agreement, particularly since Namdar signed the Extension Agreement as a Guarantor and was fully aware of the payment requirements thereunder.  Accordingly, Namdar/Namdar Entities (including Namdar Fordham Landing LLC) were put on notice, in writing, pursuant to the Fordham Landing Preferred Sponsor LLC, Operating Agreement of their breach (the **"Notice,"** dated November 12, 2024, from Dynamic Star III LLC, a Delaware limited liability company (the "Manager"), the Manager of Fordham Landing Preferred Sponsor LLC, a Delaware limited liability company.

30.    Said Notice referenced the repeated requests that Namdar/Namdar Entities (including Fordham Landing LLC) contribute the required share of the amount necessary to extend the loan. Said Notice referenced that these requests have been ignored or dismissed by them. Said Notice referenced that the "sustained dereliction of your responsibility to the Company has endangered the entire future of the Project."  Said Notice referenced that to extend the loan or renew negotiations, "…the Company requires Additional Capital Contributions of $7,106,779.33" and that "…Pursuant to Section 5.2 of the Operating Agreement, each Member is required to contribute its pro rata share of this Additional Capital Contribution.  You are required to submit your pro rata share, in an amount equal to $4,060,813.70, to the account specified in the wire instructions attached as Schedule A hereto…"

31.    Namdar/Namdar Entities (including Namdar Fordham Landing LLC) failed and refused to respond or comply with the Notice.

8

32.     One of the goals of Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff was and is to purchase or purport to purchase the debt, promissory note, mortgage and any related rights, to foreclose, force a judicial sale of the real estate, and take or "steal" from the Segal Defendants their ownership and equity interests, all contrary to their fiduciary duties and the duty of loyalty.

33.     Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff are engaged in a plan, conspiracy, and scheme to devastate and damage the Segal Defendants by prosecuting this action to judgment and public sale, and take or "steal" from the Segal Defendants their ownership and equity interests, all contrary to their fiduciary duties and the duty of loyalty.

34.     The Segal Defendants are severally damaged by the acts, omissions, and breaches by Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff, and their willful, deceitful, conspiratorial and malicious attempt to foreclose and steal the real estate.

35.     The Segal Defendants, on the one hand, and Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff, on the other, are in a special trust relationship. As such, Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff are strictly held to the highest standard of conduct under the law, for as Justice Cardozo famously stated in Meinhard v Salmon, 249 N.Y. 458 (1928): "Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."

36.     A breach of any fiduciary duty, whether intentional or unintentional, results in fiduciary liability. The duty of loyalty is at the core of any fiduciary relationship; undivided and undiluted duty of loyalty is absolute and may not be waived. Namdar/Namdar Entities (including

9

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 69 of 300

Namdar Fordham Landing LLC), and Plaintiff must act solely in the interest of members/partners. This duty, which is also referred to as the "sole interest rule," means that they, and each of them, must put the interests of their members/partners ahead of the their own individual interest, and means that they, and each of them, must avoid actual and potential conflicts of interest, and must avoid any transaction, which would benefit only them, or any of them, of their affiliates, known and unknown, or a closely related person or entity, directly or indirectly, and must communicate to the Segal Defendants all material facts. The duty of loyalty is a rule of "uncompromising rigidity" and cannot be overcome by any amount of good faith.

37. The "no further inquiry" rule prohibits Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff from profiting from any self-dealing transaction. They, and each of them, are per se liable simply upon a showing of personal interest in the transaction. Whether the self-dealing transaction involves fair and reasonable terms or compensation is immaterial.

38. Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff cannot hide behind the "business judgment rule." Every fiduciary must act solely in the interests of the beneficiaries, and that duty is breached when a fiduciary engages in self-dealing, i.e., places his/her own interests over those of the beneficiaries.

39. They, and each of them, breached fiduciary duties and duties of loyalty to the Segal Defendants.

40. Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff conspired with SIG CRE 2023 Venture LLC to acquire or purport to acquire certain rights by which Plaintiff would and has claimed the right to be substituted in as Plaintiff and prosecute this action.

10

41. Upon information and belief, Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff, also conspired with others, unknown at this time, including but not limited to attorneys and law firms, to acquire or purport to acquire certain rights by which Plaintiff would and has claimed the right to be substituted in as Plaintiff and prosecute this action.

42. To remedy the breach of fiduciary duties and duties of loyalty, and the plot/scheme against the Segal Defendants, this action should be dismissed on the merits, because Plaintiff is not permitted to profit, pursuant to the doctrine of "disgorgement" (see Howard v Pooler, 184 A.D.3d 1160 (4th Dept., 2020) and must return any monies, benefits, real estate or funds which it might recover, to the entities which have suffered the loss.

43. Alternatively, the investment by Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff in its entirety, whether in the underlying promissory note, mortgage, loan, loan documents, or otherwise, should be declared by declaratory judgment of the Court, to be "capital" in Fordham Landing Preferred Sponsor LLC, or such other entity as is appropriate, to be returned at a later date, if at all, in accordance with the then current Operating Agreement of the entity.

44. Upon information and belief, the alternative remedy does equity and justice under the circumstances, because Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff, will have voluntarily extinguished debt of such entity, for the benefit of its members/partners.

45. Additionally, the Segal Defendants should recover attorney's fees and expenses and punitive damages.

11

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 71 of 300

**AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE, A SECOND COUNTERCLAIM AGAINST PLAINTIFF, AND A SECOND CROSSCLAIM ON AGAINST IGAL NAMDAR FOR WHICH A RESPONSE IS DEMANDED AND SECOND CAUSE OF ACTION AGAINST NAMDAR FORDHAM LANDING LLC**
**(Tortious Interference With Contract Rights and Inducing a Breach of Contract)**

46.     The Segal Defendants repeat and re-allege every allegation previously set forth herein.

47.     The Fordham Landing Preferred Sponsor LLC Operating Agreement was/is a valid contractual relationship between the signatories thereto, and Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff knew of the Fordham Landing Preferred Sponsor LLC Operating Agreement and the valid contractual relationship.

48.     Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff intentionally interfered with the valid contractual relationship, intentionally induced a breach of the valid contractual relationship, and Namdar/Namdar Entities breached the Fordham Landing Preferred Sponsor LLC Operating Agreement.

49.     Namdar/Namdar Entities including Namdar Fordham Landing LLC), and Plaintiff caused the Segal Defendants to suffer loss and damage as a result and are also entitled to an award of punitive damages.

**AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE, A THIRD COUNTERCLAIM AGAINST PLAINTIFF AND THIRD CROSSCLAIM AGAINST IGAL NAMDAR FOR WHICH A RESPONSE IS DEMANDED, AND THIRD CAUSE OF ACTION AGAINST NAMDAR FORDHAM LANDING LLC**
**(Abuse of Process)**

50.     The Segal Defendants repeat and re-allege every allegation previously set forth herein.

12

51.     The summons in this case was regularly issued and the commencement and prosecution of this action includes the provisional remedy of a Notice of Pendency, which creates a lien and encumbrance on the real estate.

52.     Namdar/Namdar Entities including Namdar Fordham Landing LLC), and Plaintiff purport to have acquire the right to prosecute this action to Judgment, to sell the real estate at public auction, and divest the Segal Defendants of title, ownership and the benefits thereof, all for other purposes and ulterior motives beyond those set forth in the summons and Notice of Pendency, and to harm the Segal Defendants. Such other purpose and ulterior motives are to defeat the purpose of Fordham Landing Preferred Sponsor LLC, its Operating Agreement, the entire project, and steal the real estate and ownership and equity interests from the Segal Defendants.

53.     Namdar/Namdar Entities including Namdar Fordham Landing LLC), and Plaintiff have acted and continue to act maliciously, willfully, conspiratorially, and with intent to cause harm and loss to the Segal Defendants. The Segal Defendants have been damaged in an amount determined at trial but believed to be in the sum of approximately 300 million dollars, together with punitive damages. The Segal Defendants reserve their right to amend their damage claims.

**AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE, A FOURTH COUNTERCLAIM AGAINST PLAINTIFF, A FOURTH CROSSCLAIM AGAINST IGAL NAMDAR FOR WHICH A RESPONSE IS DEMANDED, A FOURTH CAUSE OF ACTION AGAINST NAMDAR FORDHAM LANDING LLC AND FIRST CAUSE OF ACTION AGAINST SIG CRE 2023 VENTURE LLC**
**(Aiding and Abetting a Breach of Fiduciary Duties)**

54.     The Segal Defendants repeat and re-allege every allegation previously set forth herein.

55.     As alleged herein, Namdar/Namdar Entities including Namdar Fordham Landing LLC), and Plaintiff have knowingly breached fiduciary duties, and duties of loyalty owed to the Segal Defendants.

13

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 73 of 300

56. Third Party Defendant, SIG CRE 2023 Venture LLC knew that Plaintiff was and is controlled by Namdar/Namdar Entities (including Namdar Fordham Landing LLC).

57. Third Party Defendant, SIG CRE 2023 Venture LLC, which was the original Plaintiff herein, wrongfully, tortiously and conspiratorially participated therein, and used that participation to: a) sell or purport to sell its right, title and interest in this case and the underlying transaction for a sum paid to it by Namdar/Namdar Entities (including Namdar Fordham Landing LLC), or Plaintiff in an amount unknown, but believed to be the entire principal and interest which Third Party Defendant, SIG CRE 2023 Venture LLC, claimed was due and owing, and b) purport to free itself of this case and the duties and responsibilities of litigation and prosecution hereof.

58. Upon information and belief, knowing full well that Plaintiff was and is controlled by Namdar/Namdar Entities, and was and is guilty of wrongdoing and tortious acts committed against the Segal Defendants, Third Party Defendant, SIG CRE 2023 Venture LLC, procured from Namdar/Namdar Entities (including Namdar Fordham Landing LLC), or Plaintiff, a complete release, indemnification and hold harmless, from and against any liability of any kind, even in tort, as to the Segal Defendants arising from its transaction, or arising from this action, or otherwise.

59. Upon information and belief, Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff have and are paying the legal costs and expenses of Third-Party Defendant, SIG CRE 2023 Venture LLC in this case.

60. Third Party Defendant, SIG CRE 2023 Venture LLC participated in and wrongfully, willfully and maliciously induced such breach of fiduciary duties and duties of loyalty, and profits from it.

61. As a result of the foregoing the Segal Defendants have been damaged in the amount of 300 million dollars and are entitled to an award of punitive damages and counsel fees.

14

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 74 of 300

WHEREFORE, Defendants, MDBZJGGS, LLC, DS Fordham Landing 2 LLC, DS Fordham Landing 4 LLC and Gary Segal, and also, FORDHAM LANDING PREFERRED, LLC and FORDHAM LANDING PREFERRED SPONSOR, LLC, Additional Plaintiffs on Counterclaims, Crossclaims and Third-Party Claims, demand judgment as follows:

A.     Dismissing the Complaint, and every cause of action;

B.     On the First Counterclaim against Plaintiff Fordham Landing North Holdings LLC, First Crossclaim against Igal Namdar, and First Cause of Action against Namdar Fordham Landing LLC, that this action be dismissed on the merits, and directing that Plaintiff "disgorge" and monies or profits, or alternatively, that the totality of the investment by any of them in the underlying promissory note, mortgage, loan, and loan documents, be declared by declaratory judgment of the Court to be "capital" of Namdar/Namdar Entities in Fordham Landing Preferred Sponsor LLC, or in such other appropriate entity, to be returned, if at all, in accordance with the then current Operating Agreement of the entity;

C.     On the Second Counterclaim against Plaintiff Fordham Landing North Holdings LLC, Second Crossclaim against Igal Namdar, and Second Cause of Action against Namdar Fordham Landing LLC, that this action be dismissed on the merits, and directing that Plaintiff "disgorge" and monies or profits, or alternatively, that the totality of the investment by any of them in the underlying promissory note, mortgage, loan, and loan documents, be declared by declaratory judgment of the Court to be "capital" of Namdar/Namdar Entities in Fordham Landing Preferred Sponsor LLC, or in such other appropriate entity, to be returned, if at all, in accordance with the then current Operating Agreement of the entity;

D.     On the Third Counterclaim against Plaintiff Fordham Landing North Holdings LLC, Third Crossclaim against Igal Namdar and Third Cause of Action against Namdar Fordham

15

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 75 of 300

Landing LLC that this action be dismissed on the merits, and that the Segal Defendants have judgment in the sum of approximately 300 million dollars;

    E.    On the Fourth Counterclaim against Plaintiff, Fordham Landing North Holdings LLC, Fourth Crossclaim against Igal Namdar, Fourth Cause of Action against Namdar Fordham Landing LLC and First Cause of Action against SIG CRE 2023 Venture LLC that this action be dismissed on the merits, and that the Segal Defendants have judgment in the sum of approximately 300 million dollars;

    F.    Reasonable counsel fees and expenses;

    G.    Punitive Damages; and

    H.    The costs and disbursements of this action.

Dated: Massapequa, New York
       May 29, 2025

                           RUSS & RUSS, P.C.

                           By: *Jay Edmond Russ*
                             Jay Edmond Russ, Esq.
                           543 Broadway
                           Massapequa, NY 11758
                           516-541-1014
                           jayruss@russrusspc.com

*Attorney for **MDBZJGGS, LLC, DS Fordham Landing 2 LLC, DS Fordham Landing 4 LLC, and Gary Segal**, Defendants/Plaintiffs on the Counterclaims, Crossclaims and Third-Party Plaintiffs and **Fordham Landing Preferred, LLC and Fordham Landing Preferred Sponsor, LLC,** Additional Plaintiffs on Counterclaims, Crossclaims and Third-Party Plaintiffs.*

16

**VERIFICATION**

JAY EDMOND RUSS, affirms the following under penalties of perjury:

I am the President of RUSS & RUSS, P.C., the attorney for the defendants/third-party plaintiffs, MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC, and GARY SEGAL, in the within action, and for FORDHAM LANDING PREFERRED, LLC and FORDHAM LANDING PREFERRED SPONSOR, LLC Additional Plaintiff on the Counterclaims, Crossclaims and Third Party Plaintiffs.  I have read the foregoing ANSWER with Counterclaims, Crossclaims and Third-Party Causes of Action  and know the contents thereof; the same is true to my own knowledge, except as to those matters therein stated to be alleged on information and belief, and as to those matters I believe same to be true.

The grounds of your affiant's belief as to all matters not based on his personal knowledge are the books and records of the plaintiff.

The reason why this affirmation is made by the undersigned is that the defendant/third party plaintiff does not maintain its principal place of business in the County where your affiant maintains his office; to wit, Nassau County.

I affirm this 29th day of May, 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

s/    <i>Jay Edmond Russ</i><br>JAY EDMOND RUSS

**NYSCEF Document # 76**
**Answer**

Case 7:26-cv-04909   Document 1-1   Filed 06/10/26   Page 78 of 300

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

FORDHAM LANDING NORTH HOLDINGS LLC,

Plaintiff,

- against -

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC, IGAL NAMDAR, GARY SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, and "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100, inclusive, the last one hundred names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,

Defendants.

Index No.: 850030/2025

**ANSWER**

---

Defendant Igal Namdar ("Namdar"), by through his undersigned counsel, Herrick, Feinstein LLP, as and for his Answer to the Complaint dated January 10, 2025,[1] alleges as follows:

1.      Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 1 of the Complaint.

2.      Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 2 of the Complaint.

3.      Namdar admits the allegations contained in Paragraph 3 of the Complaint.

---

[1] The Complaint was filed on behalf of plaintiff SIG CRE 2023 VENTURE LLC. However, by Decision and Order of this Court dated May 12, 2025, and entered May 13, 2025, current plaintiff Fordham Landing North Holdings LLC was substituted for the initial filing plaintiff, and the caption of this action was amended to reflect such substitution.

1

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 79 of 300

4.      Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 of the Complaint.

5.      Namdar admits the allegations contained in Paragraph 5 of the Complaint.

6.      Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the Complaint.

7.      Namdar admits the allegations contained in Paragraph 7 of the Complaint.

8.      Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint.

9.      Namdar admits the allegations contained in Paragraph 9 of the Complaint.

10.     Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint.

11.     Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint.

12.     Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint.

13.     Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint.

14.     Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint.

15.     Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint.

2

## JURISDICTION AND VENUE[2]

16.     Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint.

17.     Namdar denies the allegations contained in Paragraph 17 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

## FACTUAL BACKGROUND

### I.     The Loan and Loan Documents

13.     Namdar denies the allegations contained in Second Paragraph 13 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.[3]

14.     Namdar denies the allegations contained in Second Paragraph 14 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

15.     Namdar denies the allegations contained in Second Paragraph 15 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms

16.     Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Second Paragraph 16 of the Complaint.

---

[2] For ease of reference, section headings appear as alleged in the Complaint. The incorporation of such headings is not to be construed as an admission of anything set forth therein, and, to avoid any doubt, to the extent any response is required, all such headings are expressly denied.

[3] After Paragraph 17, the Complaint mistakenly continues from a second Paragraph 13. For ease of reference, this misnumbering is utilized in this Answer.

3

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 81 of 300

17. Namdar denies the allegations contained in Second Paragraph 17 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms,

18. Namdar denies the allegations contained in Paragraph 18 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

19. Namdar denies the allegations contained in Paragraph 19 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

20. Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint.

21. Namdar denies the allegations contained in Paragraph 21 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

22. Namdar denies the allegations contained in Paragraph 22 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

23. Namdar denies the allegations contained in Paragraph 23 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

24. Namdar denies the allegations contained in Paragraph 24 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

25. Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 25 of the Complaint.

26. Paragraph 26 simply describes the terminology utilized in the Complaint, and therefore is not a factual allegation requiring a response. To the extent a response is required, Namdar denies the allegations contained in Paragraph 26 of the Complaint.

4

27. Paragraph 27 simply describes the terminology utilized in the Complaint, and therefore is not a factual allegation requiring a response. To the extent a response is required, Namdar denies the allegations contained in Paragraph 27 of the Complaint.

## II. Assignment of the Loan and Loan Documents to Plaintiff

28. Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 of the Complaint.

29. Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 29 of the Complaint.

30. Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 30 of the Complaint.

31. Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 31 of the Complaint.

32. Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 32 of the Complaint.

33. Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 of the Complaint.

34. Namdar denies the allegations contained in Paragraph 34 of the Complaint.

## III. Borrower's Obligations and Plaintiff's Rights Under the Loan Documents

35. Namdar denies the allegations contained in Paragraph 35 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

36. Namdar denies the allegations contained in Paragraph 36 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

5

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 83 of 300

37.     Namdar denies the allegations contained in Paragraph 37 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

38.     Namdar denies the allegations contained in Paragraph 38 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

39.     Namdar denies the allegations contained in Paragraph 39 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

40.     Namdar denies the allegations contained in Paragraph 40 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

41.     Namdar denies the allegations contained in Paragraph 41 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

42.     Namdar denies the allegations contained in Paragraph 42 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

43.     Namdar denies the allegations contained in Paragraph 43 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

44.     Namdar denies the allegations contained in Paragraph 44 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

45.     Namdar denies the allegations contained in Paragraph 45 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

46.     Namdar denies the allegations contained in Paragraph 46 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

47.     Namdar denies the allegations contained in Paragraph 47 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

6

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 84 of 300

48. Namdar denies the allegations contained in Paragraph 48 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

49. Namdar denies the allegations contained in Paragraph 49 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

50. Namdar denies the allegations contained in Paragraph 50 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

51. Namdar denies the allegations contained in Paragraph 51 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

52. Namdar denies the allegations contained in Paragraph 52 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

## IV. Borrower's Defaults Under the Loan Documents

53. Namdar denies the allegations contained in Paragraph 53 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

54. Namdar denies the allegations contained in Paragraph 54 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

55. Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55 of the Complaint.

56. Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 56 of the Complaint.

57. Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 57 of the Complaint.

58. Namdar denies the allegations contained in Paragraph 58 of the Complaint.

59. Namdar denies the allegations contained in Paragraph 59 of the Complaint.

7

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 85 of 300

60.     Namdar denies the allegations contained in Paragraph 60 of the Complaint.

61.     Namdar denies the allegations contained in Paragraph 61 of the Complaint.

62.     Namdar denies the allegations contained in Paragraph 62 of the Complaint.

63.     Namdar denies the allegations contained in Paragraph 63 of the Complaint.

64.     Namdar denies the allegations contained in Paragraph 64 of the Complaint.

65.     Namdar denies the allegations contained in Paragraph 65 of the Complaint.

66.     Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66 of the Complaint.

## FIRST COUNT
### (Mortgage Foreclosure)

67.     Paragraph 67 simply repeats and incorporates the prior allegations, and therefore no response is required. To the extent a response is required, Namdar repeats and incorporates the prior allegations set forth above as if the same were set forth and repeated at length herein.

68.     Namdar denies the allegations contained in Paragraph 68 of the Complaint.

69.     Namdar denies the allegations contained in Paragraph 69 of the Complaint.

70.     Namdar denies the allegations contained in Paragraph 70 of the Complaint.

71.     Namdar denies the allegations contained in Paragraph 71 of the Complaint.

72.     Namdar denies the allegations contained in Paragraph 72 of the Complaint.

73.     Namdar denies the allegations contained in Paragraph 73 of the Complaint.

74.     Namdar denies the allegations contained in Paragraph 74 of the Complaint.

75.     Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 75 of the Complaint.

76.     Namdar denies the allegations contained in Paragraph 76 of the Complaint.

8

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 86 of 300

77.     Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 77 of the Complaint.[4]

## SECOND COUNT
### (Appointment of Receiver)

78.     Paragraph 78 simply repeats and incorporates the prior allegations, and therefore no response is required. To the extent a response is required, Namdar repeats and incorporates the prior allegations set forth above as if the same were set forth and repeated at length herein.

79.     Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 79 of the Complaint.

80.     Namdar denies the allegations contained in Paragraph 80 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

81.     Namdar denies the allegations contained in Paragraph 81 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

82.     Namdar denies the allegations contained in Paragraph 82 of the Complaint.

83.     Namdar denies the allegations contained in Paragraph 83 of the Complaint.

84.     Paragraph 84 of the Complaint simply describes the relief sought by Plaintiff and sets forth no factual allegations requiring a response. To the extent a response is required, Namdar denies any allegations contained in Paragraph 84.[5]

---

[4] Plaintiff sets forth a "Wherefore" clause with subparts A-G requesting various relief following Paragraph 77 of the Complaint. This clause contains no factual allegations requiring a response. To the extent a response is required, Namdar denies any allegations in this clause and its subparts in their entirety.

[5] Plaintiff sets forth a "Wherefore" clause with subparts A-D requesting various relief following Paragraph 84 of the Complaint. This clause contains no factual allegations requiring a response. To the extent a response is required, Namdar denies any allegations in this clause and its subparts in their entirety.

9

Case 7:26-cv-04909  Document 1-1  Filed 06/10/26  Page 87 of 300

## THIRD COUNT
### (Breach of Guaranty)

85.     Paragraph 85 simply repeats and incorporates the prior allegations, and therefore no response is required. To the extent a response is required, Namdar repeats and incorporates the prior allegations set forth above as if the same were set forth and repeated at length herein.

86.     Namdar denies the allegations contained in Paragraph 86 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

87.     Namdar denies the allegations contained in Paragraph 87 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

88.     Namdar denies the allegations contained in Paragraph 88 of the Complaint and respectfully refers the Court to the referenced document for its full and complete terms.

89.     Namdar denies the allegations contained in Paragraph 81 of the Complaint.

90.     Namdar lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 90 of the Complaint.

91.     Paragraph 91 of the Complaint simply describes the relief sought by Plaintiff and sets forth no factual allegations requiring a response. To the extent a response is required, Namdar denies any allegations contained in Paragraph 91.[6]

### DEFENSES

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

1.      Plaintiff's Complaint fails to state a cause of action upon which any relief can be granted.

---

[6] Plaintiff sets forth a "Wherefore" clause with subparts A-D requesting various relief following Paragraph 91 of the Complaint. This clause contains no factual allegations requiring a response. To the extent a response is required, Namdar denies any allegations in this clause and its subparts in their entirety.

10

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 88 of 300

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

2.      Plaintiff's claims are barred under the Doctrine of Equitable Estoppel.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

3.      Plaintiff's claims are barred by the Doctrine of Unclean Hands.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

4.      Plaintiff lacks standing to maintain the present action.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

5.      Plaintiff's claims are barred by the Doctrine of Waiver and/or Estoppel.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

6.      Plaintiff's claims are barred or fail to comply with Real Property Actions and Proceedings Law ("RPAPL") Article 13.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

7.      Plaintiff's claims are barred in whole or in part by documentary evidence.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

8.      Plaintiff failed to comply with the default notice requirements and other applicable conditions precedent to suit.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

9.      Namdar currently has insufficient knowledge or information upon which to form a belief as to whether they may have additional, as yet unstated, defenses available. Accordingly, Namdar reserves the right to assert additional defenses.

11

Case 7:26-cv-04909   Document 1-1   Filed 06/10/26   Page 89 of 300

Dated: New York, New York
       May 30, 2025

**Herrick, Feinstein LLP**


By*: /s/ Avery S. Mehlman*
       Avery S. Mehlman
       Janice Goldberg
       Devin W. Ness
Two Park Avenue
New York, New York 10016
212-592-1400
dness@herrick.com

*Attorneys for Defendant*
*Igal Namdar*

HF 17940233v.1

12

**NYSCEF Document # 101**
**Notice of Motion to Dismiss Counterclaims**

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 91 of 300

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------x
FORDHAM LANDING NORTH HOLDINGS, LLC,

Plaintiff,

-against-

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, IGAL NAMDAR, GARY
SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD, and "JOHN DOE" NO. 1 THROUGH "JOHN DOE"
NO. 100, inclusive, the last one hundred names being fictitious
and unknown to plaintiff, the persons or parties intended being the
tenants, occupants, persons or corporations, if any, having or
claiming an interest in or lien upon the premises described in the
complaint,

Defendants.
-------------------------------------------------------------------x

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, and GARY SEGAL,

Third-Party Plaintiffs,

-against-

NAMDAR FORDHAM LANDING LLC, and SIG CRE 2023
VENTURE LLC,

Third-Party Defendants.

- and -

FORDHAM LANDING PREFERRED, LLC and FORDHAM
LANDING PREFERRED SPONSOR, LLC

Nominal Third-Party Defendants
-------------------------------------------------------------------x

Index No. 850030/2025

**NOTICE OF MOTION**

    **PLEASE TAKE NOTICE** that upon the Attorney Affirmation of N. Dean Boyer, Esq. in

Support dated August 8, 2025, the exhibits thereto and documents incorporated therein by

reference, and the Memorandum of Law in Support, dated August 8, 2025, and upon all pleadings

and papers filed herein, and all prior proceedings had herein, the undersigned will move this Court

at the Motion Submission Part, Room 130, at the New York County Supreme Court, 60 Centre Street, New York, New York 10007, on the 14th day of October, 2025, at 9:30 a.m., or as soon thereafter as counsel can be heard, or an Order:

(1)     Pursuant to CPLR 3211(a)(7) and/or CPLR 3211(a)(1), dismissing the counterclaims by Defendants/Third-Party Plaintiffs MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC, and GARY SEGAL, as alleged against Plaintiff, for failure to state a cause of action upon which relief can be granted and/or based on documentary evidence; and

(2)     For such other and further relief as this Court deems just and necessary.

**PLEASE TAKE FURTHER NOTICE**, that pursuant to stipulation between Plaintiff and Defendants/Third-Party Plaintiffs MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC, and GARY SEGAL dated June 17, 2025, answering papers, if any, are required to be served upon the undersigned so as to be received on or before September 19, 2025.

Dated: Brooklyn, New York
          August 8, 2025

_Dean Boyer_
_____
N. Dean Boyer, Esq.
Lester Shaw & Levy LLP
*Attorney for Plaintiff*
45 Main Street, Suite 322
Brooklyn, New York 1201
(212) 279-4490; Ext. 204

To: *All Counsel of Record Via NYSCEF*

**NYSCEF Document # 102**
**Affirmation of N. Dean Boyer in Support of Motion to Dismiss Counterclaims**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x
FORDHAM LANDING NORTH HOLDINGS, LLC,

                                 Plaintiff,

         -against-

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, IGAL NAMDAR, GARY
SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD, and "JOHN DOE" NO. 1 THROUGH "JOHN DOE"
NO. 100, inclusive, the last one hundred names being fictitious
and unknown to plaintiff, the persons or parties intended being the
tenants, occupants, persons or corporations, if any, having or
claiming an interest in or lien upon the premises described in the
complaint,

                                Defendants.
------------------------------------------------------------------x
MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, and GARY SEGAL,

                      Third-Party Plaintiffs,

         -against-

NAMDAR FORDHAM LANDING LLC, and SIG CRE 2023
VENTURE LLC,

                      Third-Party Defendants.
                  - and -

FORDHAM LANDING PREFERRED, LLC and FORDHAM
LANDING PREFERRED SPONSOR, LLC

                    Nominal Third-Party Defendants

------------------------------------------------------------------x

Index No. 850030/2025

**AFFIRMATION IN
SUPPORT OF MOTION TO
DISMISS
COUNTERCLAIMS**

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 95 of 300

**N. Dean Boyer**, an attorney duly admitted to practice law in the Courts of the State of New York, affirms the following to be true under the penalties of perjury:

1.      I am an associate of Lester Shaw & Levy LLP, attorneys for FORDHAM LANDING NORTH HOLDINGS, LLC, ("Plaintiff"). I am fully familiar with the facts and circumstances of this action set forth below based on my review of the file maintained by my office and the documents attached hereto and incorporated herein by reference.

2.      I respectfully submit this affirmation in support of Plaintiff's motion, pursuant to CPLR 3211(a)(7) and CPLR 3211(a)(1), to dismiss the counterclaims by defendants MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC and GARY SEGAL ("Segal Defendants").

3.      SIG CRE 2023 Venture, LLC, commenced this foreclosure action on January 10, 2025, with the filing of the summons and complaint against MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC, IGAL NAMDAR, GARY SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, and "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100, inclusive, the last one hundred names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint. A true copy of the complaint appears at NYSCEF Doc. No. 2.

4.      The complaint seeks to foreclose a $55,000,000.00 mortgage loan (the "Loan") made to MDBZJGGS, LLC, DS FORDHAM LANDING 2, LLC, and DS FORDHAM LANDING 4, LLC by Signature Bank ("Original Lender") on or about August 8, 2022.

5.      The Loan is evidenced by, inter alia, that certain Amended, Consolidated and Restated Mortgage Note dated August 8, 2022, executed by Borrowers in favor of original lender

Signature Bank in the original principal amount of FIFTY FIVE MILLION AND 00/100 DOLLARS ($55,000,000.00) (as amended and/or modified, the "Note"). A copy of the Note together with allonges as filed by Original Plaintiff appears at NYSCEF Doc. No. 4.

6. The Loan is secured by, inter alia, that certain Mortgage Consolidation, Modification, Security Agreement and Fixture Filing, dated as of August 8, 2022, executed by Borrowers in favor of Original Lender (as amended and/or modified, the "Mortgage").

7. Pursuant to the Mortgage, Borrowers, individually, collectively, jointly and severally, granted to Original Lender, inter alia, a first priority lien on the real property, and the improvements thereon, located at: (i) Landing Road a/k/a 2444 Exterior Street, Bronx, New York, identified as Block 3244 and Lot 1 on the tax map (the "Tax Map") for the Borough and County of Bronx, City and State of New York ("Parcel A"); (ii) West 192nd Street a/k/a Exterior Street, Bronx, New York, identified as Block 3245 and Lot 3 on the Tax Map ("Parcel B"); (iii) 2371 Exterior Street a/k/a 325 West Fordham Road, Bronx, New York, identified as Block 3244 and Lot 130 on the Tax Map ("Parcel C"); (iv) 2391 Exterior Street, Bronx, New York, identified as Block 3244 and Lot 145 on the Tax Map ("Parcel D"); and (v) 2401 Exterior Street, Bronx, New York, identified as Block 3244 and Lot 160 on the Tax Map ("Parcel E" and together with Parcel A, Parcel B, Parcel C and Parcel D, collectively, the "Mortgaged Premises"). A description of the Mortgaged Premises appears at NYSCEF Doc. No. 3.

8. On August 19, 2022, the Mortgage was duly recorded with the Office of the City Register of the City of New York (the "Register's Office") as City Register File No. ("CRFN") 2022000326762.

9. The Loan is further secured by (1) an Assignment of Lease and Rents, (2) a Cash Collateral Agreement, (3) Guaranty, and (4) State UCC, each of which is more fully described and

defined in the Original Plaintiff's complaint, which descriptions and definitions are adopted and incorporated herein.

10. The Note, Mortgage, ALR, Cash Collateral Agreement, Guaranty, and State UCC, together with all documents or agreements executed in connection with or evidencing the Loan, are collectively referred to herein as the "Loan Documents."

11. On or about December 14, 2023, SIG CRE 2023 Venture, LLC, received all of Original Lender's rights, title, and interest in and to the Loan Documents, including the Note and Mortgage.

12. On January 10, 2025, SIG CRE 2023 Venture, LLC commenced this action as, inter alia, holder of the Note.

13. On or about February 25, 2025, Plaintiff was established by the filing of Plaintiff's Articles of Organization. A copy of the Entity Filing History from the New York State Department of State is attached hereto as **Exhibit 1**.

14. On or about February 28, 2025, the SIG CRE 2023 Venture, LLC, by an instrument in writing, duly assigned and transferred to Plaintiff, for a valuable consideration, the claim and demand constituting the cause of action set forth in the complaint in the above-entitled action. Plaintiff has ever since been and is now the lawful owner of the cause of action.

15. On or about February 28, 2025, Plaintiff became holder and assignee of the Note, Mortgage, and other Loan Documents.

16. By Notice of Motion filed on March 12, 2025, Plaintiff moved to be substituted in place and stead of SIG CRE 2023 Venture, LLC, and to amend the caption to reflect such substitution ("Plaintiff's Substitution Motion"). NYSCEF Doc. No. 18.

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 98 of 300

17. In opposition to Plaintiff's Substitution Motion, Segal Defendants submitted the Affirmation in Opposition of Jay Edmund Russ, Esq. (the "Russ Affirmation"). NYSCEF Doc. No. 45.

18. The Russ Affirmation attached the Limited Liability Company Agreement of Fordham Landing Preferred Sponsor LLC, whose members include DS3 GP Inc., Dynamic Star III LLC, The Plymouth Group III LLC, and Namdar Fordham Landing LLC. *See* NYSCEF Doc. No. 46.

19. Based on this LLC Agreement, Segal Defendants asserted that "Gary Segal and Igal Namdar have management duties and responsibilities under the applicable Operating Agreement…As a manager, Igal Namdar has fiduciary duties to both members." NYSCEF Doc. No. 45.

20. This Court granted Plaintiff's Substitution Motion by Decision and Order dated May 12, 2025. NYSCEF Doc. No. 59.

21. On May 22, 2025, Segal Defendants filed an Answer in this action. NYSCEF Doc. No. 71.

22. On May 29, 2025, Segal Defendants filed an Amended Verified Answer with Counterclaims, Cross-Claims and Third-Party Complaint. NYSCEF Doc. No. 75. Segal Defendants' counsel alleged to bring claims on behalf of "Third-Party Claims, also on behalf of FORDHAM LANDING PREFERRED, LLC and FORDHAM LANDING PREFERRED SPONSOR, LLC, Additional Plaintiffs on Counterclaims, Crossclaims and Third-Party Claims." *Id*.

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 99 of 300

23. On the same date, Segal Defendants filed a "Third-Party Summons/Complaint" alleging the exact same counterclaims, crossclaims/and third-party claims, and only omitting the "Answer" portion of their pleading.

24. On June 2, 2025, the following Monday, the clerk rejected the filing of the Third Party Summons/Complaint: "Crossclaim parties do not need to be listed on the 3rd-Party S+C. You may file a "Summons (Crossclaim/Counterclaim)". Please correct the caption on your 3rd-Party S+C to include only the main parties and 3rd-Party plaintiffs/defendants. Be sure to resubmit the corrected filing using the "Refile Document" link for document #74. Thank you and have a nice day." A copy of the June 2, 2025, NYSCEF Notice of Document Returned for Correction is attached hereto as **Exhibit 2**.

25. Segal Defendants' counsel refiled the Third-Party Summons/Complaint on June 2, 2025. On June 3, 2025, this filing was also rejected by the clerk : "Parties who are not listed as defendants in the main action cannot be added as 3rd-Party plaintiffs. Additionally, the 3rd-Party Complaint is missing from your document. Please make the necessary corrections and resubmit using the "Refile Document" link for document #74. Thank you and have a good day." A copy of the June 3, 2025, NYSCEF Notice of Document Returned for Correction is attached hereto as **Exhibit 3**.

26. Segal Defendants' counsel refiled the Third-Party Summons/Complaint on June 5, 2025, which was again returned for correction. A copy of the June 6, 2025, NYSCEF Notice of Document Returned for Correction is attached hereto as **Exhibit 4**.

27. Segal Defendants' counsel refiled the Third-Party Summons/Complaint on June 10, 2025, which was again returned for correction. A copy of the June 10, 2025, NYSCEF Notice of Document Returned for Correction is attached hereto as **Exhibit 5**.

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 100 of 300

28.    Segal Defendants' counsel again refiled the Third-Party Summons/Complaint on June 10, 2025, which filing was accepted by the clerk. NYSCEF Doc. No. 74.

29.    This Amended Verified Answer with Counterclaims, Cross-Claims and Third-Party Complaint (the "Segal Pleading"), dated May 29, 2025, but not accepted for filing until submitted in corrected form on June 10, 2025, is the operative pleading for the Segal Defendants in this action. A copy of the Segal Pleading is attached hereto as **Exhibit 6** (also at NYSCEF Doc. No. 74).

30.    The Segal Pleading states "Defendants, MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC and GARY SEGAL, by their attorney, Russ & Russ, P.C., as and for their Amended Verified Answer to the Complaint, with Counterclaims, Crossclaims and Third-Party Claims, allege as follows:…" Ex 6.

31.    The Segal Pleading makes clear "Fordham Landing Preferred, LLC and Fordham Landing Preferred Sponsor LLC…are joined in this action as Nominal Defendants" only. *Id*. at ¶ 14.

32.    This was confirmed by NYSCEF Notice listing only Segal Defendants, as defined herein, as third-party plaintiffs. A copy of the NYSCEF Notice dated June 12, 2025, is attached hereto as **Exhibit 7**.

33.    The Third-Party Case Detail from NYSCEF confirms that Fordham Landing Preferred, LLC and Fordham Landing Preferred Sponsor, LLC are nominal third-party defendants in this action, and not represented by counsel. A copy of the Third-Party case detail page is attached hereto as **Exhibit 8**.

34.    In the Segal Pleading, Segal Defendants bring counterclaims against Plaintiff for (1) breach of fiduciary duty, (2) tortious interference with contract rights and inducing a breach of

contract, (3) abuse of process, and (4) aiding and abetting breach of fiduciary duty. *See* Ex 6 (also at NYSCEF Doc. No. 74).

35. As set forth in the accompanying Memorandum of Law in Support of Plaintiff's Motion to Dismiss, each of Segal Defendants counterclaims against Plaintiff must be dismissed for failure to state a cause of action and/or based on documentary evidence.

**WHEREFORE**, Plaintiff respectfully requests an order (i) pursuant to CPLR 3211(a)(7) and CPLR 3211(a)(1) dismissing Segal Defendants' counterclaims with prejudice, and (ii) for such other and further relief as this Court deems just, proper, and equitable.

I affirm this 8th day of August, 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Dated: Brooklyn, New York
August 8, 2025

*Dean Boyer*

N. Dean Boyer, Esq.
Lester Shaw & Levy LLP
*Attorney for Plaintiff*
45 Main Street, Suite 322
Brooklyn, New York 1201
(212) 279-4490; Ext. 204

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 102 of 300

## CERTIFICATION OF WORD COUNT

I hereby certify that the word count of this Affirmation complies with the word limits of 22 New York Codes, Rules and Regulations § 202.8-b(a). According to the word-processing system used to prepare this document, the total word count for all printed text exclusive of the material omitted under 22 N.Y.C.R.R. § 202.8-b(b) is 1,798 words.

Dated: New York, New York
August 8, 2025

*Dean Boyer*
_____

N. Dean Boyer

**NYSCEF Document # 103**
**Exhibit 1 to Motion to Dismiss**

# EXHIBIT 1

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 105 of 300

An official website of New York State.
Here's how you know ⌄



# Department of State
## Division of Corporations

## Entity Information

Return to Results    Return to Search

**Entity Details**

**ENTITY NAME:** FORDHAM LANDING NORTH HOLDINGS LLC

**DOS ID:** 7543265

**FOREIGN LEGAL NAME:**

**FICTITIOUS NAME:**

**ENTITY TYPE:** DOMESTIC LIMITED LIABILITY COMPANY

**DURATION DATE/LATEST DATE OF DISSOLUTION:**

**SECTIONOF LAW:** LIMITED LIABILITY COMPANY LAW - 203 LIMITED LIABILITY COMPANY LAW - LIMITED LIABILITY COMPANY LAW

**ENTITY STATUS:** ACTIVE

**DATE OF INITIAL DOS FILING:** 02/25/2025

**REASON FOR STATUS:**

**EFFECTIVE DATE INITIAL FILING:** 02/25/2025

**INACTIVE DATE:**

**FOREIGN FORMATION DATE:**

**STATEMENT STATUS:** CURRENT

**COUNTY:** ALBANY

**NEXT STATEMENT DUE DATE:** 02/28/2027

**JURISDICTION:** NEW YORK, UNITED STATES

**NFP CATEGORY:**

ENTITY DISPLAY    NAME HISTORY    FILING HISTORY    MERGER HISTORY    ASSUMED NAME HISTORY

Service of Process on the Secretary of State as Agent

**The Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery:**

**Name:** C/O LESTER SHAW & LEVY LLP

**Address:** 45 MAIN STREET, SUITE 322, BROOKLYN, NY, UNITED STATES, 11201

**Electronic Service of Process on the Secretary of State as agent: Not Permitted**

Chief Executive Officer's Name and Address

**Name:**

**Address:**

Principal Executive Office Address

**Address:**

Registered Agent Name and Address

**Name:**

**Address:**

Entity Primary Location Name and Address

**Name:**

**Address:**

Farmcorpflag

**Is The Entity A Farm Corporation:** NO

Stock Information

| Share Value | Number Of Shares | Value Per Share |
|---|---|---|

AgenciesApp DirectoryCountiesEventsProgramsServices

**NYSCEF Document # 104**
**Exhibit 2 to Motion to Dismiss**

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 108 of 300

# EXHIBIT 2

Dean Boyer

| | |
|---|---|
| From: | efile@nycourts.gov |
| Sent: | Monday, June 2, 2025 10:40 AM |
| To: | jayruss@russrusspc.com; jgoldberg@herrick.com; Ian Lester; amehlman@herrick.com; Dean Boyer; ira.levine@iralevinelaw.com; danrosenthal@dprlawfirm.com; Martin Shaw; dness@herrick.com; aharchan@herrick.com; jwollach@gwfglaw.com; courtnotices@herrick.com |
| Subject: | NYSCEF Alert: New York - Commercial - Other - Commercial Division - <DOCUMENT RETURNED> 850030/2025 (Fordham Landing North Holdings LLC v. MDBZJGGS, LLC et al) |



## New York County Supreme Court
## DOCUMENT RETURNED FOR CORRECTION
## 06/02/2025

The court has returned the documents listed below for the following reasons: Crossclaim parties do not need to be listed on the 3rd-Party S+C. You may file a "Summons (Crossclaim/Counterclaim)". Please correct the caption on your 3rd-Party S+C to include only the main parties and 3rd-Party plaintiffs/defendants. Be sure to resubmit the corrected filing using the "Refile Document" link for document #74. Thank you and have a nice day.

Follow the steps below to correct your filing:

1. Make the corrections to your document as instructed in this email, then save it as a PDF.
2. Log into NYSCEF with the same ID that was used to file the original document.
3. Search for the case or select My Cases, then select the case to bring up the Document List.
4. On the Document List, find the "Refile Document" link under the document you need to correct, and attach the corrected document.

### Case Information

Index #: 850030/2025

Caption: Fordham Landing North Holdings LLC v. MDBZJGGS, LLC et al

eFiling Status: Partial Participation Recorded

Assigned Case Judge: Melissa Anne Crane

### Documents Returned on 06/02/2025 10:39 AM

| Doc # | Document | Filed Date |
|---|---|---|
| 74 | THIRD PARTY SUMMONS/COMPLAINT | 05/29/2025 |

1

## E-mail Notifications Sent

| Name | Email Address | |
|---|---|---|
| IRA LEVINE | ira.levine@iralevinelaw.com | |
| AVERY S MEHLMAN | amehlman@herrick.com | |
| JAY E RUSS | jayruss@russrusspc.com | |
| DANIEL P ROSENTHAL | danrosenthal@dprlawfirm.com | |
| JANICE IVY GOLDBERG | jgoldberg@herrick.com | |
| IAN LESTER | ilester@lestershawlevy.com | |
| DEVIN WILLIAM NESS | dness@herrick.com | |
| DANIEL P. ROSENTHAL | danrosenthal@dprlawfirm.com | |
| NOLEN DEAN BOYER | dboyer@lestershawlevy.com | |
| JACOB ELLIOT WOLLACH | jwollach@gwfglaw.com | |

## Filing User

IRA LEVINE | ira.levine@iralevinelaw.com | (516) 541-1072 | 543 Broadway, Massapequa, NY 11758-5009

*NOTICE: This e-mail is intended only for the named recipient and for the purposes of the New York State Courts E-Filing System. If you are neither the intended recipient nor a person designated to receive messages on behalf of the intended recipient, notify the sender immediately.*

Case 7:26-cv-04909     Document 1-1     Filed 06/10/26     Page 111 of 300

*If you are unsure of the contents or origin of this email, it is advised to NOT click on any links provided. Instead, log into your NYSCEF account to access the documents referred to in this email. Thank you.*

**NYSCEF Document # 105**
**Exhibit 3 to Motion to Dismiss**

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 113 of 300

# EXHIBIT 3

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 114 of 300

**Dean Boyer**

| | |
|---|---|
| From: | efile@nycourts.gov |
| Sent: | Tuesday, June 3, 2025 11:59 AM |
| To: | jayruss@russrusspc.com; jgoldberg@herrick.com; Ian Lester; amehlman@herrick.com; Dean Boyer; ira.levine@iralevinelaw.com; danrosenthal@dprlawfirm.com; Martin Shaw; dness@herrick.com; aharchan@herrick.com; jwollach@gwfglaw.com; courtnotices@herrick.com |
| Subject: | NYSCEF Alert: New York - Commercial - Other - Commercial Division - <DOCUMENT RETURNED> 850030/2025 (Fordham Landing North Holdings LLC v. MDBZJGGS, LLC et al) |



# New York County Supreme Court
## DOCUMENT RETURNED FOR CORRECTION
## 06/03/2025

The court has returned the documents listed below for the following reasons: Parties who are not listed as defendants in the main action cannot be added as 3rd-Party plaintiffs. Additionally, the 3rd-Party Complaint is missing from your document. Please make the necessary corrections and resubmit using the "Refile Document" link for document #74. Thank you and have a good day.

Follow the steps below to correct your filing:

1. Make the corrections to your document as instructed in this email, then save it as a PDF.
2. Log into NYSCEF with the same ID that was used to file the original document.
3. Search for the case or select My Cases, then select the case to bring up the Document List.
4. On the Document List, find the "Refile Document" link under the document you need to correct, and attach the corrected document.

## Case Information

Index #: 850030/2025

Caption: Fordham Landing North Holdings LLC v. MDBZJGGS, LLC et al

eFiling Status: Partial Participation Recorded

Assigned Case Judge: Melissa Anne Crane

## Documents Returned on 06/03/2025 11:58 AM

| Doc # | Document | Filed Date |
|---|---|---|
| 74 | THIRD PARTY SUMMONS/COMPLAINT | 05/29/2025 |

1

## E-mail Notifications Sent

| Name | Email Address | |
|---|---|---|
| IRA LEVINE | ira.levine@iralevinelaw.com | |
| AVERY S MEHLMAN | amehlman@herrick.com | |
| JAY E RUSS | jayruss@russrusspc.com | |
| DANIEL P ROSENTHAL | danrosenthal@dprlawfirm.com | |
| JANICE IVY GOLDBERG | jgoldberg@herrick.com | |
| IAN LESTER | ilester@lestershawlevy.com | |
| DEVIN WILLIAM NESS | dness@herrick.com | |
| DANIEL P. ROSENTHAL | danrosenthal@dprlawfirm.com | |
| NOLEN DEAN BOYER | dboyer@lestershawlevy.com | |
| JACOB ELLIOT WOLLACH | jwollach@gwfglaw.com | |

## Filing User

IRA LEVINE | ira.levine@iralevinelaw.com | (516) 541-1072 | 543 Broadway, Massapequa, NY 11758-5009

*NOTICE: This e-mail is intended only for the named recipient and for the purposes of the New York State Courts E-Filing System. If you are neither the intended recipient nor a person designated to receive messages on behalf of the intended recipient, notify the sender immediately.*

*If you are unsure of the contents or origin of this email, it is advised to NOT click on any links*

2

*provided. Instead, log into your NYSCEF account to access the documents referred to in this email. Thank you.*

*provided. Instead, log into your NYSCEF account to access the documents referred to in this email. Thank you.*

**NYSCEF Document # 106**
**Exhibit 4 to Motion to Dismiss**

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 118 of 300

# EXHIBIT 4

## Dean Boyer

| | |
|---|---|
| From: | efile@nycourts.gov |
| Sent: | Friday, June 6, 2025 1:49 PM |
| To: | jayruss@russrusspc.com; jgoldberg@herrick.com; Ian Lester; amehlman@herrick.com; Dean Boyer; ira.levine@iralevinelaw.com; danrosenthal@dprlawfirm.com; Martin Shaw; dness@herrick.com; aharchan@herrick.com; jwollach@gwfglaw.com; courtnotices@herrick.com |
| Subject: | NYSCEF Alert: New York - Commercial - Other - Commercial Division - <DOCUMENT RETURNED> 850030/2025 (Fordham Landing North Holdings LLC v. MDBZJGGS, LLC et al) |



# New York County Supreme Court

## DOCUMENT RETURNED FOR CORRECTION 06/06/2025

The court has returned the documents listed below for the following reasons: The caption for the Third-Party Plaintiff must agree with the main caption in the NYSCEF system. If you were incorrectly sued as, you may state so in the third party caption; eg: "individually and on behalf of Fordham Landing Preferred, LLC, and Fordham Landing Preferred Sponsor, LLC i/s/h/a Gary Segal" Please correct and resubmit this filing using the "refile document" link for document #74. Thank you and have a great day.

Follow the steps below to correct your filing:

1. Make the corrections to your document as instructed in this email, then save it as a PDF.
2. Log into NYSCEF with the same ID that was used to file the original document.
3. Search for the case or select My Cases, then select the case to bring up the Document List.
4. On the Document List, find the "Refile Document" link under the document you need to correct, and attach the corrected document.

## Case Information

Index #: 850030/2025

Caption: Fordham Landing North Holdings LLC v. MDBZJGGS, LLC et al

eFiling Status: Partial Participation Recorded

Assigned Case Judge: Melissa Anne Crane

## Documents Returned on 06/06/2025 01:49 PM

| Doc # | Document | Filed Date |
|---|---|---|
| 74 | THIRD PARTY SUMMONS/COMPLAINT | 05/29/2025 |

Case 7:26-cv-04909   Document 1-1   Filed 06/10/26   Page 120 of 300

## E-mail Notifications Sent

| Name | Email Address | |
|---|---|---|
| IRA LEVINE | ira.levine@iralevinelaw.com | |
| AVERY S MEHLMAN | amehlman@herrick.com | |
| JAY E RUSS | jayruss@russrusspc.com | |
| DANIEL P ROSENTHAL | danrosenthal@dprlawfirm.com | |
| JANICE IVY GOLDBERG | jgoldberg@herrick.com | |
| IAN LESTER | ilester@lestershawlevy.com | |
| DEVIN WILLIAM NESS | dness@herrick.com | |
| DANIEL P. ROSENTHAL | danrosenthal@dprlawfirm.com | |
| NOLEN DEAN BOYER | dboyer@lestershawlevy.com | |
| JACOB ELLIOT WOLLACH | jwollach@gwfglaw.com | |

## Filing User

IRA LEVINE | ira.levine@iralevinelaw.com | (516) 541-1072 | 543 Broadway, Massapequa, NY 11758-5009

*NOTICE: This e-mail is intended only for the named recipient and for the purposes of the New York State Courts E-Filing System. If you are neither the intended recipient nor a person designated to receive messages on behalf of the intended recipient, notify the sender immediately.*

*If you are unsure of the contents or origin of this email, it is advised to NOT click on any links provide d. Instead, log into your NYSCEF account to access the documents referred to in this email. Thank you.*

FILED: NEW YORK COUNTY CLERK 08/08/2025 06:27 PM
NYSCEF DOC. NO. 106

INDEX NO. 850030/2025
RECEIVED NYSCEF: 08/08/2025

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 121 of 300

*If you are unsure of the contents or origin of this email, it is advised to NOT click on any links provide d. Instead, log into your NYSCEF account to access the documents referred to in this email. Thank you.*

3

**NYSCEF Document # 107**
**Exhibit 5 to Motion to Dismiss**

# EXHIBIT 5

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 124 of 300

## Dean Boyer

| | |
|---|---|
| From: | efile@nycourts.gov |
| Sent: | Tuesday, June 10, 2025 4:18 PM |
| To: | jayruss@russrusspc.com; jgoldberg@herrick.com; Ian Lester; amehlman@herrick.com; Dean Boyer; ira.levine@iralevinelaw.com; danrosenthal@dprlawfirm.com; Martin Shaw; dness@herrick.com; aharchan@herrick.com; jwollach@gwfglaw.com; courtnotices@herrick.com |
| Subject: | NYSCEF Alert: New York - Commercial - Other - Commercial Division - <DOCUMENT RETURNED> 850030/2025 (Fordham Landing North Holdings LLC v. MDBZJGGS, LLC et al) |



# New York County Supreme Court
## DOCUMENT RETURNED FOR CORRECTION
## 06/10/2025

The court has returned the documents listed below for the following reasons: As per conversation, please correct the caption so that they match exactly and resubmit using the "Refile Document" link for document #74. Thank you and have a good day.

Follow the steps below to correct your filing:

1. Make the corrections to your document as instructed in this email, then save it as a PDF.
2. Log into NYSCEF with the same ID that was used to file the original document.
3. Search for the case or select My Cases, then select the case to bring up the Document List.
4. On the Document List, find the "Refile Document" link under the document you need to correct, and attach the corrected document.

## Case Information

Index #: 850030/2025

Caption: Fordham Landing North Holdings LLC v. MDBZJGGS, LLC et al

eFiling Status: Partial Participation Recorded

Assigned Case Judge: Melissa Anne Crane

## Documents Returned on 06/10/2025 04:17 PM

| Doc # | Document | Filed Date |
|---|---|---|
| 74 | THIRD PARTY SUMMONS/COMPLAINT<br>RESUBMITTED AS CORRECTED | 05/29/2025 |

1

INDEX NO. 850030/2025
 RECEIVED NYSCEF: 08/08/2025

## E-mail Notifications Sent

| Name | Email Address | |
|------|---------------|---|
| IRA LEVINE | ira.levine@iralevinelaw.com | |
| AVERY S MEHLMAN | amehlman@herrick.com | |
| JAY E RUSS | jayruss@russrusspc.com | |
| DANIEL P ROSENTHAL | danrosenthal@dprlawfirm.com | |
| JANICE IVY GOLDBERG | jgoldberg@herrick.com | |
| IAN LESTER | ilester@lestershawlevy.com | |
| DEVIN WILLIAM NESS | dness@herrick.com | |
| DANIEL P. ROSENTHAL | danrosenthal@dprlawfirm.com | |
| NOLEN DEAN BOYER | dboyer@lestershawlevy.com | |
| JACOB ELLIOT WOLLACH | jwollach@gwfglaw.com | |

## Filing User

IRA LEVINE | ira.levine@iralevinelaw.com | (516) 541-1072 | 543 Broadway, Massapequa, NY 11758-5009

*NOTICE: This e-mail is intended only for the named recipient and for the purposes of the New York State Courts E-Filing System. If you are neither the intended recipient nor a person designated to receive messages on behalf of the intended recipient, notify the sender immediately.*

*If you are unsure of the contents or origin of this email, it is advised to NOT click on any links*

2

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 126 of 300

*provided. Instead, log into your NYSCEF account to access the documents referred to in this email. Th ank you.*

**NYSCEF Document # 108**
**Exhibit 6 to Motion to Dismiss**

# EXHIBIT 6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------------- X
FORDHAM LANDING NORTH HOLDINGS LLC,                    Index No.: 850030/2025

                          Plaintiff,

              -against-

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS          **THIRD-PARTY SUMMONS**
FORDHAM LANDING 4 LLC, IGAL NAMDAR, GARY
SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD and "JOHN DOE" NO. 1 THROUGH "JOHN DOE"
NO. 100, inclusive, the last one hundred names being fictitious
and unknown to plaintiff, the persons or parties intended being
tenants, occupants, persons or corporations, if any, having or
claiming an interest in or lien upon the premises described in the
complaint,
                          Defendants.
------------------------------------------------------------------------------- X
MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC,
DS FORDHAM LANDING 4 LLC and GARY SEGAL,

                          Third-Party Plaintiffs,

              -against-

NAMDAR FORDHAM LANDING LLC, and SIG CRE 2023
VENTURE LLC,

                          Third-Party Defendants,

              -and-

FORDHAM LANDING PREFERRED, LLC and FORDHAM
LANDING PREFERRED SPONSOR LLC,

                          Nominal Third-Party Defendants.
------------------------------------------------------------------------------- X

     To the Third-Party Defendant(s):

        You are hereby summoned to answer the complaint of the third-party plaintiffs and the

complaint of the original plaintiff, copies of which, together with copies of all prior pleadings in

this action, are herewith served upon you, and to serve copies of your answer upon the third-party

plaintiff's attorney, at its address stated below and upon the original plaintiff's attorney, Lester Shaw & Levy, LLP, whose address is 45 Main Street, Suite 322, Brooklyn, New York 11201-4490.

If this third-party summons was personally served upon you in the State of New York, the answer must be served within 20 days after such service, excluding the date of service. If the third-party summons was not personally delivered to you within the State of New York, the answer must be served within 30 days after service of the summons is complete as provided by law.

If you do not serve an answer to the attached third-party complaint within the applicable time limitation stated above, a judgment may be entered against you, by default, for the relief demanded in the third-party complaint.

Dated: Massapequa, New York
May 29, 2025

RUSS & RUSS, P.C.


By: *Jay Edmond Russ*
Jay Edmond Russ, Esq.
543 Broadway
Massapequa, NY 11758
516-541-1014
jayruss@russrusspc.com

*Attorney for Segal Defendants/
Third Party Plaintiffs*

TO:

NAMDAR FORDHAM LANDING LLC
c/o New York Secretary of State
Albany, New York

SIG CRE 2023 VENTURE LLC
c/o New York Secretary of State
Albany, New York

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
-------------------------------------------------------------------------------- X

FORDHAM LANDING NORTH HOLDINGS LLC,                    Index No.: 850030/2025

                                 Plaintiff,

            -against-

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, IGAL NAMDAR, GARY
SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD and "JOHN DOE" NO. 1 THROUGH "JOHN DOE"
NO. 100, inclusive, the last one hundred names being fictitious
and unknown to plaintiff, the persons or parties intended being
tenants, occupants, persons or corporations, if any, having or
claiming an interest in or lien upon the premises described in the
complaint,

                             Defendants.
-------------------------------------------------------------------------------- X
MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, and GARY SEGAL,

                     Third-Party Plaintiffs,


            -against-

NAMDAR FORDHAM LANDING LLC, and SIG CRE 2023
VENTURE LLC,

                   Third-Party Defendants,

            -and-

FORDHAM LANDING PREFERRED, LLC and FORDHAM
LANDING PREFERRED SPONSOR LLC,

               Nominal Third-Party Defendants.
-------------------------------------------------------------------------------- X

**AMENDED VERIFIED ANSWER WITH COUNTERCLAIMS,**
**CROSS-CLAIMS AND THIRD-PARTY COMPLAINT**

     Defendants, MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM

LANDING 4 LLC and GARY SEGAL, by their attorney, Russ & Russ, P.C., as and for their

1

Amended Verified Answer to the Complaint, with Counterclaims, Crossclaims and Third-Party Claims, allege as follows:

1. Deny knowledge sufficient to form a belief as to paragraphs 2, 9, and 15.

2. Deny each and every allegation set forth in paragraph 1, 16, 17, (note: misnumbering of the paragraphs of the Complaint has resulted in a "new" paragraph 13 on page 5 after paragraph 17 on page 4), 14 (page 5) through 25, 27, 35, 36, 38, 40 through 47, 51, 53, 54, and 57, and respectfully refer the Court to the documents or agreements referenced, for the Court's own evaluation and interpretation.

3. Deny each and every allegation set forth in paragraph 4, 6, 8, 10, 12, 14, "new" paragraph 13 on page 5, 26, 28 through 34, 37, 39, 48 through 50, 52, 55, 56, 58 through 66, and 68 through 77.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

4. Plaintiff (formerly referred to in this action as the "Proposed Substituting Plaintiff") lacks standing. Plaintiff is an interloper as to any right, title or interest in the cause of action, and cannot establish the required elements of standing. Original Plaintiff did not allege that it was the holder and owner of the alleged "promissory note" when the action was commenced. Plaintiff has not unequivocable done so either as of the date it sought substitution as Plaintiff.

5. N. Dean Boyer, Esq. alleged to the Court at oral argument "on the Record" that he held the original "promissory note" on that date but that assertion, upon information and belief, is false. N. Dean Boyer, Esq. made no such assertion in his affirmation of March 12, 2025, or affirmation of April 25, 2025, or in other submissions to the Court. Upon information and belief, Plaintiff still does not have possession and ownership of the alleged "promissory note."

2

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

6.    Plaintiff has not acquired any right, title or interest in the cause of action, or any of the underlying documents, by virtue of any indorsement, allonge or alleged "negotiation" of an alleged "promissory note."  The alleged "promissory note" states at the last sentence of Section 7, that it is subject to all the terms and conditions of the "Loan Document" which renders it non-negotiable, pursuant to UCC 3-105 (2) (a). The alleged "promissory note" is not a negotiable instrument. The allonges are a nullity and are not "firmly affixed" nor alleged to be.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

7.    Plaintiff has not acquired any right, title, or interest in the cause of action, or any of the underlying documents, by virtue of any alleged "assignment" of an alleged "promissory note" or any document, arising from or related to, the loan transaction. Plaintiff relies upon two alleged "assignments" which are defective documents. One references therein "Loan Documents" but does not define the capitalized term. Neither clearly assert that the "promissory note" was assigned. The Complaint alleges assignment only of allonges and other documents. The allonges were not assigned. The mortgages were not assigned. The cause of action was not assigned. The Court has ruled that Plaintiff merely "cobbled" together some evidence of an assignment to defeat a dismissal motion, but that does not establish standing.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

8.    The alleged chain of alleged "assignments" by which Plaintiff claims to have standing are each subject to numerous defenses, any one of which renders the alleged chain of alleged "assignments" null and void, including but not limited to, failure to execute properly, failure to deliver properly, lack or authority to execute/deliver, absence of consideration, failure of

3

Case 7:26-cv-04909   Document 1-1   Filed 06/10/26   Page 134 of 300

any party in the chain of alleged "assignments" to possess/control and deliver the original "promissory note" or any other original document.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

9.      To the extent that Plaintiff has relied upon an "intent" to assign as to any alleged "assignment" in the chain, which is the position taken by Plaintiff "on the Record" before the Court, there was insufficient evidence of such alleged intent, and while there might have been "intent" to assign other documents, there was no intent to assign the alleged "promissory note," not is there any intent to "assign" the mortgage(s).

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

10.      Plaintiff has failed to properly and/or timely notice an alleged default, provide required notice of default, accelerate any balance allegedly due, or otherwise satisfy the conditions precedent to suit.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

11.      Any or all sums allegedly owed are owed, if at all, to parties other than Plaintiff.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

12.      Plaintiff's calculation of sums that are allegedly due is flawed, incorrect, contrary to the documents underlying the transaction, or excessive.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

13.      This action may not be maintained and is subject to numerous defenses, based upon: a) Igal Namdar (**"Namdar"**) being the person in control of Plaintiff and NAMDAR FORDHAM LANDING LLC, (jointly and severally, together with any entities formed by or controlled by Namdar, known or unknown, having or claiming any ownership or management right or interest in the transactions, real estate, entities and/or project, which is the subject of this action, and/or the

4

Counterclaims, Crossclaims and Third-Party Claims, hereinafter "**Namdar Entities**"); and b) the motivation behind the motivation of Namdar, Plaintiff and/or the Namdar Entities to purportedly acquire the right, title and interest to prosecute this action; and c) as further alleged herein in the Counterclaims, Cross-Claim, and Third Party Claims, advancing theories of recovery of: (i) Breach of Fiduciary Duties and the Duty of Loyalty; (ii) Tortious Interference with Contract Rights (the Operating Agreement) and Inducing a Breach of the Operating Agreement; and (iii) aiding and abetting a Breach of Fiduciary Duties. Plaintiff is guilty of unconscionable conduct, has unclean hands, and is not entitled to equitable relief. Plaintiff and Third-Party Defendant, SIG CRE 2023 VENTURE LLC, had actual knowledge of the Breach of Fiduciary Duties and the Duty of Loyalty, encouraged the acts and omissions, and provided substantial assistance in causing the Breach of Fiduciary Duties and the Duty of Loyalty.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE, FIRST COUNTERCLAIM AGAINST PLAINTIFF, FIRST CROSSCLAIM AGAINST IGAL NAMDAR FOR WHICH A RESPONSE IS DEMANDED, AND FIRST CAUSE OF ACTION AGAINST NAMDAR FORDHAM LANDING LLC
**(Breach Of Fiduciary Duty)**

14.    MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC and GARY SEGAL, assert these claims individually and on behalf of Fordham Landing Preferred, LLCm and Fordham Landing Preferred Sponsor LLC, and are referred to in these Counterclaims, Crossclaims and Third Party Claims, as the **"Segal Defendants."** As Fordham Landing Preferred, LLC and Fordham Landing Preferred Sponsor LLC are, or may be, necessary parties to this action, they are joined in this action as Nominal Defendants, although no claims for relief are asserted against them.

5

INDEX NO. 850030/2025
RECEIVED NYSCEF: 06/08/2025

15. Fordham Landing Preferred, LLC and Fordham Landing Preferred Sponsor, LLC, are in the chain of entities for the ownership of the subject real estate, which entities own "common" interests and "preferred" interests.

16. The sole member of MDBZJGGS, LLC, DS Fordham Landing 2 LLC, and DS Fordham Landing 4, LLC is Fordham Landing Preferred LLC.

17. The members of Fordham Landing Preferred LLC are Fordham Landing Preferred Sponsor LLC and CPIF MRA LLC.

18. The members of Fordham Landing Preferred Sponsor LLC are Namdar Fordham Landing LLC, The Plymouth Group III, LLC, Dynamic Star III LLC and DS GP 3, INC.

19. The managers and management duties and responsibilities of Fordham Landing Preferred Sponsor LLC consist of two (2) individuals ("Management Committee") as follows: "NAMDAR shall be entitled to designate one (1) representative to represent NAMDAR" and "DYNAMIC shall be entitled to designate one (1) representative to represent DYNAMIC…" and the Management Committee's sole function under the agreement is to vote in respect to Major Decisions and any "Other MC Decisions…"

20. The entities named or identified as "Namdar" are owned or majority owned and by Namdar or his affiliates, and controlled by Namdar or his affiliates, and directed by Namdar.

21. The entities named "**Dynamic**" or designated as "**DS**" are majority owned by Gary Segal.

22. The individual managers, or the controlling individuals of the managers, are Gary Segal and Namdar. They are the persons who manage Fordham Landing Preferred Sponsor, LLC, and its business affairs.

6

23. DS Fordham Landing 2 LLC owns real estate at 2371 Exterior Street, Bronx, New York. DS Fordham Landing 4 LLC owns real estate at 2391 and 2401 Exterior Street, Bronx, New York. MDBZJGGS LLC owns real estate at 301 West Fordham Road, Bronx, New York.

24. Plaintiff is owned or majority owned by Namdar and/or Namdar Entities and Plaintiff was formed by, or at the direction of, Namdar, or Namdar Entities, or his or their agents or counsel. Namdar, directly or indirectly, controls Plaintiff and Namdar Entities.

25. Gary Segal and Namdar/Namdar Entities have management rights, duties and responsibilities, including but not limited to Major Matters governance and management rights, duties and responsibilities which impact the real estate. Such governance and management rights, duties and responsibilities extend to downstream entities/members/partners in the business relationship.

26. Namdar/Namdar Entities freely assumed such rights, duties and responsibilities without duress, and, as a manager, Namdar has fiduciary duties to members.

27. Gary Segal and Namdar/Namdar Entities, representing themselves as their interests may appear and their affiliates, are and consider themselves to be "co-venturers" and "partners" in the transactions and entities which are the subject of this action, and the Counterclaims, Crossclaims and Third-Party Claims, with fiduciary duties to each other and which extend to downstream entities/members/partners in the business relationship.

28. Those fiduciary duties apply to and bind Plaintiff.

29. Those fiduciary duties apply to and protect the Segal Defendants and their downstream entities/members/partners.

30. Namdar/Namdar Entities (including Fordham Landing LLC) were required to fund the first set of payments due to SIG CRE 2023 Venture LLC, pursuant to a certain "Extension

7

Agreement" dated in or about September 27, 2024, by and between MDBZJGGS, LLC, DS Fordham Landing 2 LLC, DS Fordham Landing 4 LLC, and SIG CRE 2023 Venture LLC. The purpose of the Extension Agreement was to obtain an extension of the original maturity date of the current loan of $55,0000,000. The Segal Defendants and SIG CRE 2023 Venture LLC relied on the financial commitment of Namdar/Namdar Entities in executing the Extension Agreement, particularly since Namdar signed the Extension Agreement as a Guarantor and was fully aware of the payment requirements thereunder. Accordingly, Namdar/Namdar Entities (including Namdar Fordham Landing LLC) were put on notice, in writing, pursuant to the Fordham Landing Preferred Sponsor LLC, Operating Agreement of their breach (the **"Notice,"** dated November 12, 2024, from Dynamic Star III LLC, a Delaware limited liability company (the "Manager"), the Manager of Fordham Landing Preferred Sponsor LLC, a Delaware limited liability company.

31. Said Notice referenced the repeated requests that Namdar/Namdar Entities (including Fordham Landing LLC) contribute the required share of the amount necessary to extend the loan. Said Notice referenced that these requests have been ignored or dismissed by them. Said Notice referenced that the "sustained dereliction of your responsibility to the Company has endangered the entire future of the Project." Said Notice referenced that to extend the loan or renew negotiations, "…the Company requires Additional Capital Contributions of $7,106,779.33" and that "…Pursuant to Section 5.2 of the Operating Agreement, each Member is required to contribute its pro rata share of this Additional Capital Contribution. You are required to submit your pro rata share, in an amount equal to $4,060,813.70, to the account specified in the wire instructions attached as Schedule A hereto…"

32. Namdar/Namdar Entities (including Namdar Fordham Landing LLC) failed and refused to respond or comply with the Notice.

8

Case 7:26-cv-04909     Document 1-1     Filed 06/10/26     Page 139 of 300

33.     One of the goals of Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff was and is to purchase or purport to purchase the debt, promissory note, mortgage and any related rights, to foreclose, force a judicial sale of the real estate, and take or "steal" from the Segal Defendants their ownership and equity interests, all contrary to their fiduciary duties and the duty of loyalty.

34.     Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff are engaged in a plan, conspiracy, and scheme to devastate and damage the Segal Defendants by prosecuting this action to judgment and public sale, and take or "steal" from the Segal Defendants their ownership and equity interests, all contrary to their fiduciary duties and the duty of loyalty.

35.     The Segal Defendants are severally damaged by the acts, omissions, and breaches by Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff, and their willful, deceitful, conspiratorial and malicious attempt to foreclose and steal the real estate.

36.     The Segal Defendants, on the one hand, and Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff, on the other, are in a special trust relationship. As such, Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff are strictly held to the highest standard of conduct under the law, for as Justice Cardozo famously stated in Meinhard v Salmon, 249 N.Y. 458 (1928): "Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."

37.     A breach of any fiduciary duty, whether intentional or unintentional, results in fiduciary liability. The duty of loyalty is at the core of any fiduciary relationship; undivided and undiluted duty of loyalty is absolute and may not be waived. Namdar/Namdar Entities (including

9

Namdar Fordham Landing LLC), and Plaintiff must act solely in the interest of members/partners. This duty, which is also referred to as the "sole interest rule," means that they, and each of them, must put the interests of their members/partners ahead of the their own individual interest, and means that they, and each of them, must avoid actual and potential conflicts of interest, and must avoid any transaction, which would benefit only them, or any of them, of their affiliates, known and unknown, or a closely related person or entity, directly or indirectly, and must communicate to the Segal Defendants all material facts. The duty of loyalty is a rule of "uncompromising rigidity" and cannot be overcome by any amount of good faith.

38. The "no further inquiry" rule prohibits Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff from profiting from any self-dealing transaction. They, and each of them, are per se liable simply upon a showing of personal interest in the transaction. Whether the self-dealing transaction involves fair and reasonable terms or compensation is immaterial.

39. Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff cannot hide behind the "business judgment rule." Every fiduciary must act solely in the interests of the beneficiaries, and that duty is breached when a fiduciary engages in self-dealing, i.e., places his/her own interests over those of the beneficiaries.

40. They, and each of them, breached fiduciary duties and duties of loyalty to the Segal Defendants.

41. Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff conspired with SIG CRE 2023 Venture LLC to acquire or purport to acquire certain rights by which Plaintiff would and has claimed the right to be substituted in as Plaintiff and prosecute this action.

10

42. Upon information and belief, Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff, also conspired with others, unknown at this time, including but not limited to attorneys and law firms, to acquire or purport to acquire certain rights by which Plaintiff would and has claimed the right to be substituted in as Plaintiff and prosecute this action.

43. To remedy the breach of fiduciary duties and duties of loyalty, and the plot/scheme against the Segal Defendants, this action should be dismissed on the merits, because Plaintiff is not permitted to profit, pursuant to the doctrine of "disgorgement" (see Howard v Pooler, 184 A.D.3d 1160 (4th Dept., 2020) and must return any monies, benefits, real estate or funds which it might recover, to the entities which have suffered the loss.

44. Alternatively, the investment by Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff in its entirety, whether in the underlying promissory note, mortgage, loan, loan documents, or otherwise, should be declared by declaratory judgment of the Court, to be "capital" in Fordham Landing Preferred Sponsor LLC, or such other entity as is appropriate, to be returned at a later date, if at all, in accordance with the then current Operating Agreement of the entity.

45. Upon information and belief, the alternative remedy does equity and justice under the circumstances, because Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff, will have voluntarily extinguished debt of such entity, for the benefit of its members/partners.

46. Additionally, the Segal Defendants should recover attorney's fees and expenses and punitive damages.

11

**AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE, A SECOND COUNTERCLAIM AGAINST PLAINTIFF, AND A SECOND CROSSCLAIM ON AGAINST IGAL NAMDAR FOR WHICH A RESPONSE IS DEMANDED AND SECOND CAUSE OF ACTION AGAINST NAMDAR FORDHAM LANDING LLC**
**(Tortious Interference With Contract Rights and Inducing a Breach of Contract)**

47.     The Segal Defendants repeat and re-allege every allegation previously set forth herein.

48.     The Fordham Landing Preferred Sponsor LLC Operating Agreement was/is a valid contractual relationship between the signatories thereto, and Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff knew of the Fordham Landing Preferred Sponsor LLC Operating Agreement and the valid contractual relationship.

49.     Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff intentionally interfered with the valid contractual relationship, intentionally induced a breach of the valid contractual relationship, and Namdar/Namdar Entities breached the Fordham Landing Preferred Sponsor LLC Operating Agreement.

50.     Namdar/Namdar Entities including Namdar Fordham Landing LLC, and Plaintiff caused the Segal Defendants to suffer loss and damage as a result and are also entitled to an award of punitive damages.

**AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE, A THIRD COUNTERCLAIM AGAINST PLAINTIFF AND THIRD CROSSCLAIM AGAINST IGAL NAMDAR FOR WHICH A RESPONSE IS DEMANDED, AND THIRD CAUSE OF ACTION AGAINST NAMDAR FORDHAM LANDING LLC**
**(Abuse of Process)**

51.     The Segal Defendants repeat and re-allege every allegation previously set forth herein.

12

52. The summons in this case was regularly issued and the commencement and prosecution of this action includes the provisional remedy of a Notice of Pendency, which creates a lien and encumbrance on the real estate.

53. Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff purport to have acquire the right to prosecute this action to Judgment, to sell the real estate at public auction, and divest the Segal Defendants of title, ownership and the benefits thereof, all for other purposes and ulterior motives beyond those set forth in the summons and Notice of Pendency, and to harm the Segal Defendants. Such other purpose and ulterior motives are to defeat the purpose of Fordham Landing Preferred Sponsor LLC, its Operating Agreement, the entire project, and steal the real estate and ownership and equity interests from the Segal Defendants.

54. Namdar/Namdar Entities including Namdar Fordham Landing LLC), and Plaintiff have acted and continue to act maliciously, willfully, conspiratorially, and with intent to cause harm and loss to the Segal Defendants. The Segal Defendants have been damaged in an amount determined at trial but believed to be in the sum of approximately 300 million dollars, together with punitive damages. The Segal Defendants reserve their right to amend their damage claims.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE, A FOURTH COUNTERCLAIM AGAINST PLAINTIFF, A FOURTH CROSSCLAIM AGAINST IGAL NAMDAR FOR WHICH A RESPONSE IS DEMANDED, A FOURTH CAUSE OF ACTION AGAINST NAMDAR FORDHAM LANDING LLC AND FIRST CAUSE OF ACTION AGAINST SIG CRE 2023 VENTURE LLC
### (Aiding and Abetting a Breach of Fiduciary Duties)

55. The Segal Defendants repeat and re-allege every allegation previously set forth herein.

56. As alleged herein, Namdar/Namdar Entities including Namdar Fordham Landing LLC), and Plaintiff have knowingly breached fiduciary duties, and duties of loyalty owed to the Segal Defendants.

13

57.     Third Party Defendant, SIG CRE 2023 Venture LLC knew that Plaintiff was and is controlled by Namdar/Namdar Entities (including Namdar Fordham Landing LLC).

58.     Third Party Defendant, SIG CRE 2023 Venture LLC, which was the original Plaintiff herein, wrongfully, tortiously and conspiratorially participated therein, and used that participation to: a) sell or purport to sell its right, title and interest in this case and the underlying transaction for a sum paid to it by Namdar/Namdar Entities (including Namdar Fordham Landing LLC), or Plaintiff in an amount unknown, but believed to be the entire principal and interest which Third Party Defendant, SIG CRE 2023 Venture LLC, claimed was due and owing, and b) purport to free itself of this case and the duties and responsibilities of litigation and prosecution hereof.

59.     Upon information and belief, knowing full well that Plaintiff was and is controlled by Namdar/Namdar Entities, and was and is guilty of wrongdoing and tortious acts committed against the Segal Defendants, Third Party Defendant, SIG CRE 2023 Venture LLC, procured from Namdar/Namdar Entities (including Namdar Fordham Landing LLC), or Plaintiff, a complete release, indemnification and hold harmless, from and against any liability of any kind, even in tort, as to the Segal Defendants arising from its transaction, or arising from this action, or otherwise.

60.     Upon information and belief, Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff have and are paying the legal costs and expenses of Third-Party Defendant, SIG CRE 2023 Venture LLC in this case.

61.     Third Party Defendant, SIG CRE 2023 Venture LLC participated in and wrongfully, willfully and maliciously induced such breach of fiduciary duties and duties of loyalty, and profits from it.

62.     As a result of the foregoing the Segal Defendants have been damaged in the amount of 300 million dollars and are entitled to an award of punitive damages and counsel fees.

14

WHEREFORE, the Segal Defendants demand judgment as follows:

A. Dismissing the Complaint, and every cause of action;

B. On the First Counterclaim against Plaintiff Fordham Landing North Holdings LLC, First Crossclaim against Igal Namdar, and First Cause of Action against Namdar Fordham Landing LLC, that this action be dismissed on the merits, and directing that Plaintiff "disgorge" and monies or profits, or alternatively, that the totality of the investment by any of them in the underlying promissory note, mortgage, loan, and loan documents, be declared by declaratory judgment of the Court to be "capital" of Namdar/Namdar Entities in Fordham Landing Preferred Sponsor LLC, or in such other appropriate entity, to be returned, if at all, in accordance with the then current Operating Agreement of the entity;

C. On the Second Counterclaim against Plaintiff Fordham Landing North Holdings LLC, Second Crossclaim against Igal Namdar, and Second Cause of Action against Namdar Fordham Landing LLC, that this action be dismissed on the merits, and directing that Plaintiff "disgorge" and monies or profits, or alternatively, that the totality of the investment by any of them in the underlying promissory note, mortgage, loan, and loan documents, be declared by declaratory judgment of the Court to be "capital" of Namdar/Namdar Entities in Fordham Landing Preferred Sponsor LLC, or in such other appropriate entity, to be returned, if at all, in accordance with the then current Operating Agreement of the entity;

D. On the Third Counterclaim against Plaintiff Fordham Landing North Holdings LLC, Third Crossclaim against Igal Namdar and Third Cause of Action against Namdar Fordham Landing LLC that this action be dismissed on the merits, and that the Segal Defendants have judgment in the sum of approximately 300 million dollars;

15

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 146 of 300

E.      On the Fourth Counterclaim against Plaintiff, Fordham Landing North Holdings LLC, Fourth Crossclaim against Igal Namdar, Fourth Cause of Action against Namdar Fordham Landing LLC and First Cause of Action against SIG CRE 2023 Venture LLC that this action be dismissed on the merits, and that the Segal Defendants have judgment in the sum of approximately 300 million dollars;

F.      Reasonable counsel fees and expenses;

G.      Punitive Damages; and

H.      The costs and disbursements of this action.

Dated: Massapequa, New York
       May 29, 2025

RUSS & RUSS, P.C.


By: *Jay Edmond Russ*
    Jay Edmond Russ, Esq.
543 Broadway
Massapequa, NY 11758
516-541-1014
jayruss@russrusspc.com

*Attorney for Segal Defendants/*
*Third-Party Plaintiffs*

16

**NYSCEF Document # 109**
**Exhibit 7 to Motion to Dismiss**

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 148 of 300

# EXHIBIT 7

---

**Dean Boyer**

| | |
|---|---|
| From: | efile@nycourts.gov |
| Sent: | Thursday, June 12, 2025 3:10 PM |
| To: | jayruss@russrusspc.com; jgoldberg@herrick.com; Ian Lester; amehlman@herrick.com; Dean Boyer; ira.levine@iralevinelaw.com; danrosenthal@dprlawfirm.com; Martin Shaw; dness@herrick.com; aharchan@herrick.com; jwollach@gwfglaw.com; courtnotices@herrick.com |
| Subject: | NYSCEF Alert: New York - Commercial - Other - Commercial Division - <THIRD PARTY SUMMONS/COMPLAINT> 850030/2025 (Fordham Landing North Holdings LLC v. MDBZJGGS, LLC et al) |



# New York County Supreme Court

## 3rd Party Action Started on 05/29/2025 03:12 PM

On 05/29/2025 03:12 PM, Ira Levine started a 3rd party Action in the following case:

Case/Docket #: 850030/2025

Short Caption: Fordham Landing North Holdings LLC v. MDBZJGGS, LLC et al

Assigned Judge: Crane, Melissa Anne

## 3rd Party Action

3rd Party Plaintiffs: MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC, GARY SEGAL

3rd Party Defendants: NAMDAR FORDHAM LANDING LLC, SIG CRE 2023 VENTURE LLC, FORDHAM LANDING PREFERRED, LLC (Nominal Third-Party Defendant), FORDHAM LANDING PREFERRED SPONSOR LLC (Nominal Third-Party Defendant)

3rd Party Index #:595565/2025

*Please Note: The issuance of the this 3rd Party Index Number does not create a separate electronic file or case. Parties shall continue to file to the original index number.*

## Documents Received

| Doc # | Document | Received Date |
|---|---|---|
| | | |

1

| 74 | THIRD PARTY SUMMONS/COMPLAINT RESUBMITTED AS CORRECTED | |

## Filing User

Ira Levine | ira.levine@iralevinelaw.com | (516) 541-1072

*NOTICE: This e-mail is intended only for the named recipient and for the purposes of the New York State Courts E-Filing System. If you are neither the intended recipient nor a person designated to receive messages on behalf of the intended recipient, notify the sender immediately.*

*If you are unsure of the contents or origin of this email, it is advised to NOT click on any links provided. Instead, log into your NYSCEF account to access the documents referred to in this email. Thank you.*

**NYSCEF Document # 110
Exhibit 8 to Motion to Dismiss**

# EXHIBIT 8

NYSCEF - New York State Courts Electronic Filing (Live System)

## 850030/2025 - New York County Supreme Court

Short Caption: **Fordham Landing North Holdings LLC v. MDBZJGGS, LLC et al**
Case Type: **Commercial - Other - Commercial Division (Real Property)**
Case Status: **Active**
eFiling Status: **Partial Participation Recorded**
Assigned Judge: **Melissa Anne Crane**

E-mail Participating Parties

**Third-Party**
595565/2025
MDBZJGGS, LLC et al v. NAMDAR FORDHAM LANDING LLC et al

**Parties**

| Role | Name | Represented By (File #) |
|------|------|-------------------------|
| Third Party Petitioner | MDBZJGGS, LLC | IRA LEVINE |
| Third Party Petitioner | DS FORDHAM LANDING 2 LLC | IRA LEVINE |
| Third Party Petitioner | DS FORDHAM LANDING 4 LLC | IRA LEVINE |
| Third Party Petitioner | GARY SEGAL | IRA LEVINE |
| Third Party Respondent | NAMDAR FORDHAM LANDING LLC | none recorded |
| Third Party Respondent | SIG CRE 2023 VENTURE LLC | JOHN MICHAEL DOHERTY |
| Third Party Respondent | FORDHAM LANDING PREFERRED, LLC (Nominal Third-Party Defendant) | none recorded |
| Third Party Respondent | FORDHAM LANDING PREFERRED SPONSOR LLC (Nominal Third-Party Defendant) | none recorded |

**Commencing Document:** 74 - THIRD PARTY SUMMONS/COMPLAINT
**Filed By:** IRA LEVINE on 05/29/2025

# NYSCEF Document # 111
# Plaintiff's Memorandum of Law in Support of Motion to Dismiss Counterclaims

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-----------------------------------------------------------------------x

FORDHAM LANDING NORTH HOLDINGS, LLC,

                                 Plaintiff,

          -against-

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC, IGAL NAMDAR, GARY SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, and "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100, inclusive, the last one hundred names being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or lien upon the premises described in the complaint,

                                 Defendants.

**Index No. 850030/2025**

-----------------------------------------------------------------------x

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC, and GARY SEGAL,

                        Third-Party Plaintiffs,

          -against-

NAMDAR FORDHAM LANDING LLC, and SIG CRE 2023 VENTURE LLC,

                        Third-Party Defendants.

           - and -

FORDHAM LANDING PREFERRED, LLC and FORDHAM LANDING PREFERRED SPONSOR, LLC

                     Nominal Third-Party Defendants

-----------------------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS**

1 of 29

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

PRELIMINARY STATEMENT..........................................................................................1

FACTS ...............................................................................................................................2

ARGUMENT .....................................................................................................................2

   I.    Legal Standard ........................................................................................................2

   II.   Segal Defendants Claim of Breach of Fiduciary Duty Should Be Dismissed Pursuant to CPLR 3211(a)(7) As No Fiduciary Duty Exists ........................................................... 3

      A.   The Fordham Landing Preferred Sponsor LLC Operating Agreement Does Not Impose Fiduciary Obligations on Namdar/Namdar Entities (including Namdar Fordham Landing LLC).......................................................................................................................... 5

      B.   Segal Defendants Fail to Plead Breach of Fiduciary Duty with Requisite Particularity 8

      C.   Segal Defendants Have Not Suffered any Damages.......................................................11

   III.  Segal Defendants' Claim for Tortious Interference with Contract Rights Must Be Dismissed as Deficiently Pleaded ........................................................................................11

      A.   There Are No Damages to Support a Claim for Tortious Interference ........................ 14

   IV.  Segal Defendants Cannot Maintain Abuse of Process Claims Based on the Filing of Summons and Notice of Pendency in This Action .................................................... 15

   V.  Segal Defendants' Claim for Aiding and Abetting Breach of Fiduciary Duty Must be Dismissed for Lack of Underlying Breach of Fiduciary Duty, Lack of Damages, and Deficient Pleading.............................................................................................................................. 19

i

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 157 of 300

CONCLUSION.................................................................................................................. 21

ii

Case 7:26-cv-04909     Document 1-1     Filed 06/10/26     Page 158 of 300

## <u>**TABLE OF AUTHORITIES**</u>

**Cases**

*111 W. 57th Inv. LLC v 111 W57 Mezz Inv. LLC*, 220 A.D.3d 435 (1st Dept. 2023).................... 13

*5303 Realty Corp. v O & Y Equity Corp.*, 64 N.Y.2d 313 (1984) ................................................ 16

*Abdale v. North Shore-LongIs. Jewish Health Sys., Inc.*, 49 Misc. 3d 1027 (Sup Ct, Queens County 2015) ......................................................................................................................... 10

*Abrazi v Kotlyarsky*, 2017 N.Y. Slip Op. 32327[U] (Sup Ct, New York County 2017).............. 18

*ADP, Inc. v E. Armada Inc.*, 85 Misc. 3d 1220(A) (Sup Ct, New York County 2025)................ 14

*Aetna Cas. & Surety Co. v Merchants Mut. Ins. Co.*, 84 A.D.2d 736 (1st Dept. 1981)................. 9

*Andesco, Inc. v Page*, 137 A.D.2d 349 (1st Dept. 1988) ..................................................... 15, 17

*Arena Riparian LLC v CSDS Aircraft Sales and Leasing Co.*, 184 A.D.3d 509 (1st Dept. 2020) 20

*Atl. Gas & Wash LLC v 3170 Atl. Ave. Corp.*, 37 Misc. 3d 1226(A) (Sup Ct, Kings County 2012) ..................................................................................................................................... 14

*Baker v Andover Assoc. Mgt. Corp.*, 30 Misc 3d 1218(A) (Sup Ct, Westchester County 2009).... 5

*Barlow v Skroupa*, 76 Misc 3d 587 (Sup Ct, New York County 2022) ........................................ 9

*Bay Towers Assoc. v Lightstone Group, LLC*, 235 A.D.3d 573 (1st Dept. 2025).......................... 4

*Bd. of Ed. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO*, 38 N.Y.2d 397 (1975) .................................................... 17

*Bensen v. Farhadian*, 195 A.D.3d 548 (1st Dept. 2021).............................................................. 3

*Bullmore v Ernst & Young Cayman Is.*, 45 A.D.3d 461 (1st Dept. 2007) .................................. 20

*Burrowes v Combs*, 25 A.D.3d 370 (1st Dept. 2006).................................................................. 13

*Burry v. Madison Park Owner LLC*, 84 A.D.3d 699 (1st Dept. 2011) ......................................... 4

*Caniglia v Chicago Tribune-New York News Syndicate, Inc.*, 204 A.D.2d 233 (1st Dept. 1994) .. 2

*Casa de Meadows Inc. (Cayman Is.) v Zaman*, 76 A.D.3d 917 (1st Dept. 2010)........................ 16

*Celauro v. 4C Foods Corp.*, 187 A.D.3d 836 (2d Dept. 2020)......................................................11

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v Solow Bldg. Corp.*, 52 A.D.2d 533 (1st Dept. 1976)........................................................................................... 16

*Cortlandt St. Recovery Corp. v Hellas Telecom., S.A.R.L.*, 47 Misc. 3d 544 (Sup Ct, New York County 2014) ........................................................................................................... 9, 10

*Coventry Real Estate Advisors, L.L.C. v Developers Diversified Realty Corp.*, 84 A.D.3d 583 (1st Dept. 2011)........................................................................................................................ 7

*Curiano v Suozzi*, 63 N.Y.2d 113 (1984) ............................................................................. 15, 16

*Dragonetti Bros. Landscaping Nursery & Florist, Inc. v Verizon New York, Inc.*, 71 Misc 3d 1214(A) (Sup Ct, New York County 2021) .......................................................................... 3

*EBC I, Inc. v Goldman, Sachs & Co.*, 5 N.Y.3d 11 (2005)...................................................... 3, 7

*Fischer v Belmonte*, 2013 N.Y. Slip Op 32491[U] (Sup Ct, New York County 2013)................... 4

*Galanova v TKR Prop. Services, Inc.*, 52 Misc 3d 1205(A) (Sup Ct, Kings County 2016)......... 12

*Goshen v Mut. Life Ins. Co.*, 98 N.Y.2d 314 (2002) ................................................................... 3

*Hoag v Chancellor, Inc.*, 246 A.D.2d 224 (1st Dept. 1998)....................................................... 12

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132 (2009).................................. 15

*In re Sharp Int'l Corp.*, 403 F.3d 43 (2d Cir. 2005)................................................................... 20

*InKine Pharm. Co., Inc. v Coleman*, 305 A.D.2d 151 (1st Dept. 2003). ....................................11

*Jonas v National Life Ins. Co.*, 147 A.D.3d 610 (1st Dept. 2017)............................................... 9

*Kaufman v. Cohen*, 307 A.D.2d 113 (1st Dept. 2003) ............................................................... 19

*Khandalavala v Artsindia.com, LLC*, 2014 N.Y. Slip Op. 30939[U] (Sup Ct, New York County 2014) ......................................................................................................................... 18

iv

_Kronos, Inc. v AVX Corp._, 81 N.Y.2d 90 (1993) ................................................................ 12, 15

_Lama Holding Co. v Smith Barney Inc._, 88 N.Y.2d 413 (1996) .................................... 13

_Leon v Martinez_, 84 N.Y.2d 83 (1994) ........................................................................ 2

_Loch Sheldrake Beach & Tennis Inc v. Akulich_, 141 A.D.3d 809,(3d Dept. 2016) ...................... 10

_Mandarin Trading Ltd. v Wildenstein_, 16 N.Y.3d 173 (2011) .................................... 4

_Matthews v. New York City Dep't. of Social Servs., Child Welfare Admin._, 217 A.D.2d at 413 (1st

Dept. 1995) .............................................................................................. 16

_Moyal v Tripost Capital Partners_, LLC, 2019 N.Y. Slip Op. 30947[U] (Sup Ct, New York County)

................................................................................................................ 20

_Northeast Gen. Corp. v Wellington Adv._, 82 N.Y.2d 158 (1993)................................ 7

_O'Keeffe's Inc. v 400 Times Sq. Assoc. LLC_, 2020 NY Slip Op 30208[U] (Sup Ct, New York

County 2020) ............................................................................................ 16

_Panish v Steinberg_, 32 A.D.3d 383 (2d Dept. 2006) .............................................. 17

_Pennsylvania Lumbermens Mut. Ins. Co. v Fbe/Mhp Partners Corp._, 254 A.D.2d 469 (2d Dept.

1998) ...................................................................................................... 4

_Principia Partners LLC v Swap Fin. Group_, 194 A.D.3d 584 (1st Dept. 2021) ........................... 9

_Roberts v Pollack,_ 92 A.D.2d 440 (1st Dept. 1983) .............................................. 16

_Roni LLC v Arfa,_ 18 N.Y.3d 846 (2011) ........................................................ 3

_Shea v. Hambros PLC_, 244 A.D.2d 39 (1st Dept. 1998)......................................... 3

_Suthers v. Amgen,_ 441 F. Supp. 2d 478 (S.D.N.Y.2006)........................................ 6

_Syllman v. Nissan,_ 18 A.D.3d 221 (1st Dept. 2005)............................................ 15

_Talipot ESG Investments LLC v Bulltick Fin. Advisory Services LLC_, 85 Misc. 3d 1234(A) (Sup

Ct, New York County 2025) ............................................................................ 5

v

*Two Rivers Entities, LLC v Sandoval*, 192 A.D.3d 528 (1st Dept. 2021) ................................... 14

*Ulico Cas. Co. v Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 A.D.3d 1 (1st Dept. 2008) .. 20

*Varon v Annino*, 170 A.D.2d 445 (2d Dept. 1991) ................................................................. 16

*Ward v Melis*, 28 A.D.3d 970 (3d Dept. 2006) ..................................................................... 17

*Yukos Cap. S.AR.L. v. Feldman*, 977 F.3d 216 (2d. Cir. 2020) ........................................... 11

*Zion v. Kurtz*, 50 N.Y.2d 92 (1980) ..................................................................................... 7

**Statutes**

CPLR 3016(b) ......................................................................................................................... 14

CPLR 3013 ............................................................................................................................. 14

CPLR 3211(a)(1) ..................................................................................................................... 9

CPLR 6501 ............................................................................................................................. 21

CPLR 3211(a)(7) ..................................................................................................................... 8

vi

## PRELIMINARY STATEMENT

Plaintiff moves to dismiss the counterclaims alleged against Plaintiff by defendants MDBZJGGS, LLC, DS FORDHM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC and GARY SEGAL ("Segal Defendants")[1] in the Segal Defendants' Amended Verified Answer with Counterclaims, Cross-Claims and Third-Party Complaint (the "Segal Pleading"). The Segal Pleading should be dismissed in its entirety as it fails to meet the bare minimum pleading standards under the CPLR 3211 – to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense. Moreover, the counterclaims for breach of fiduciary duty and aiding and abetting the same fall well short of the heightened pleading standards required for such claims. In addition, Segal Defendants' blunderbuss pleading levels claims against "Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff" without distinguishing which party is alleged to have taken what actions, if any. On these bases Plaintiff's motion to dismiss the Segal Pleading should be granted in its entirety.

In addition to these fatal defects, the Segal Pleading, on its face, fails to allege sufficient factual allegations supporting essential elements of its claims and such failure to state a cause of

---

[1] Segal Defendants alleged to bring counterclaims against Plaintiff on behalf of "Fordham Landing Preferred, LLCm (*sic*) and Fordham Landing Preferred Sponsor LLC". NYSCEF Doc. No. 75. However, Segal Defendants counsel subsequently filed an Amended Verified Answer With Counterclaims, Cross-Claims, and Third-Party Complaint making clear that it was brought only on behalf of "MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC and GARY SEGAL", and that Fordham Landing Preferred LLC, and Fordham Landing Preferred Sponsor LLC were only joined in the action as "Nominal Defendants". NYSCEF Doc. No. 74. Thus, while the Segal Pleading confusingly defines Segal Defendants to include these nominal defendants, no counterclaims can be brought on behalf of these nominal defendant entities, particularly not by counsel who does not purport to represent these nominal defendants. *See* Boyer Aff. ¶ ¶ 22-33.

1

action requires dismissal pursuant to CPLR 3211(a)(7). Furthermore, documentary evidence incorporated by reference into the Plaintiff's complaint establishes the factual and legal impossibility of Segal Defendants' claims as alleged against Plaintiff requiring dismissal pursuant to CPLR 3211(a)(1). Therefore, for the reasons set forth herein, Plaintiff's motion to dismiss Segal Defendants' counterclaims against Plaintiff should be granted in its entirety.

## FACTS

The facts upon which this memorandum of law is based are contained in the accompanying Affirmation of N. Dean Boyer dated August 8, 2025 ("Boyer Aff."), the exhibits attached thereto, and the documents incorporated by reference therein.

## ARGUMENT

### I.    Legal Standard

On a motion to dismiss pursuant to CPLR 3211(a)(7) "the facts pleaded are presumed to be true and are accorded every favorable inference. However, allegations consisting of bare legal conclusions, as well as factual claims inherently incredible or flatly contradicted by documentary evidence are not entitled to such consideration." *Caniglia v Chicago Tribune-New York News Syndicate, Inc.*, 204 A.D.2d 233, 233-34 (1st Dept. 1994); *see CIBC Bank & Trust Co. (Cayman) Ltd. v. Credit Lyonnais*, 270 A.D.2d 138, 138 (1st Dept. 2000); *Godfrey v Spano*, 13 N.Y.3d 358, 373 (2009) ("[C]onclusory allegations—claims consisting of bare legal conclusions with no factual specificity—are insufficient to survive a motion to dismiss."); *see also* CPLR. 3211(a)(7).

Dismissal pursuant to CPLR 3211(a)(7) for a failure to state a cause of action is further required when, even accepting the facts as alleged in the complaint as true, the facts alleged do not fit within a cognizable legal theory. *Leon v Martinez*, 84 N.Y.2d 83, 87 (1994); *Skillgames, LLC. v Brody*, 1 A.D.3d 247, 250 (1st Dept. 2003). Indeed, a cause of action must be dismissed where

2

"sufficient factual allegations of even a single element are lacking." *Shea v. Hambros PLC*, 244 A.D.2d 39, 46 (1st Dept. 1998).

A motion to dismiss, in this instance regarding dismissal of the counterclaims set forth in the Segal Pleading, should be granted pursuant to CPLR 3211(a)(1) based upon documentary evidence where such documentary evidence resolves all factual issues as a matter of law and conclusively disposes of the claims. *See Goshen v Mut. Life Ins. Co.*, 98 N.Y.2d 314, 326 (2002); *Bronxville Knolls Inc. v. Webster Town Center Partnership*, 221 A.D.2d 248 (1st Dept. 1995). The Court may consider documents that the Complaint "incorporate[s] by reference" as well as "documents that are integral to the plaintiff's claims, even if not explicitly incorporated by reference." *Dragonetti Bros. Landscaping Nursery & Florist, Inc. v Verizon New York, Inc.*, 71 Misc 3d 1214(A) (Sup Ct, New York County 2021), *affd*, 208 A.D.3d 1125 (1st Dept. 2022).

## II. Segal Defendants Claim of Breach of Fiduciary Duty Should Be Dismissed Pursuant to CPLR 3211(a)(7) As No Fiduciary Duty Exists

A cause of action for breach of fiduciary duty requires: (i) that the defendant owed plaintiff a duty (i.e., there was a fiduciary relationship); (ii) that the duty was breached; and (iii) that damages were caused by that breach. *Bensen v. Farhadian*, 195 A.D.3d 548, 549-550 (1st Dept. 2021). Since there is an absence of a fiduciary relationship between Segal Defendants and Plaintiff, there can be no cause of action for breach of the same. As the Court of Appeals explained in *Roni LLC v Arfa*, 18 N.Y.3d 846, 848-49 (2011), "[a] fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *See EBC I, Inc. v Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19 (2005). Here, there is no a allegation of *any* direct relationship between Plaintiff and any Segal Defendant; there can be no fiduciary duty. *See Mandarin Trading Ltd. v Wildenstein*, 16 N.Y.3d 173, 179 (2011); *Pennsylvania Lumbermens Mut. Ins. Co. v Fbe/Mhp Partners Corp.*, 254 A.D.2d 469, 470

3

(2d Dept. 1998) ("Here, the defendant had no dealings whatsoever with Lumbermens; no confidential or fiduciary relationship existed.") Courts have rejected attempts to extend fiduciary duties to entities related to a fiduciary but unconnected to the complaining party. *See Bay Towers Assoc. v Lightstone Group, LLC*, 235 A.D.3d 573, 573 (1st Dept. 2025); *see also Stevens v Skolnik, 223 A.D.3d 580, 581 (1st Dept. 2024)*.

The basis for the Segal Defendants' claimed breach of fiduciary duty against Plaintiff is an alleged fiduciary relationship between Gary Segal and Namdar/Namdar Entities:

> Gary Segal and Namdar/Namdar Entities representing themselves as their interests may appear and their affiliates, are and consider themselves to be "co-venturers" and "partners" in the transactions and entities which are the subject of this action, and the Counterclaims, Crossclaims and Third-Party Claims, with fiduciary duties to each other and which extend to downstream entities/members/partners in the business relationship. Those fiduciary duties apply to and bind Plaintiff.

The allegation that Plaintiff owes a fiduciary duty is quintessentially conclusory. The claim that a fiduciary relationship between Segal and Namdar/Namdar Entities - a conclusory allegation in itself - somehow extends to Plaintiff finds no support in law.

Absent any allegation of a relationship between Plaintiff and any Segal Defendants, there can be no fiduciary duty. *Fischer v Belmonte*, 2013 NY Slip Op 32491[U], *7 (Sup Ct, New York County 2013) ("As to the breach of fiduciary duty claim, Phillips had no relationship with plaintiffs, which would give rise to a fiduciary duty."); *Pennsylvania Lumbermens Mut. Ins. Co.., 254 AD2d at 470* ("Here, the defendant had no dealings whatsoever with Lumbermens; no confidential or fiduciary relationship existed."); *See Burry v. Madison Park Owner LLC*, 84 A.D.3d 699, 699–700 (1st Dept. 2011) ("To state a claim for breach of fiduciary duty, plaintiffs must allege . . . defendant owed them a fiduciary duty[.]").

4

A. <u>The Fordham Landing Preferred Sponsor LLC Operating Agreement Does Not Impose Fiduciary Obligations on Namdar/Namdar Entities (including Namdar Fordham Landing LLC)</u>

More broadly, Segal Defendants claim for breach of fiduciary duty against *any* party as alleged in the Segal Pleading is deficient. Any fiduciary duty, if it existed, was affirmatively waived. The only relationship which hypothetically might have formed the basis of a fiduciary obligation, is that between the parties to the Fordham Landing Preferred Sponsor LLC Operating Agreement (the "Operating Agreement"), referenced in the Segal Pleading and previously included as an exhibit to Segal Defendants' opposition to Plaintiff's substitution in this matter. *See* NYSCEF Doc. No. 46. No other facts are pleaded by Segal Defendants that would illustrate any direct relationship giving rise to a fiduciary duty. Indeed, in opposition to Plaintiff's Substitution Motion, Segal Defendants explicitly identified the Operating Agreement as the sole source of any fiduciary obligation. *See* NYSCEF Doc. No. 46, ¶ 6. Segal Defendants' attempt to use the relationship between Namdar Fordham Landing LLC and Dynamic Star III LLC and DS GP 3, Inc., entities allegedly owned by Gary Segal, to shoehorn fiduciary relationships between "downstream entities/members/partners in the business relationship" has no legal or factual support. Boyer Aff, Ex 6 ¶ 24.

There is no basis for this expansive application of fiduciary duty to related individuals and entities not in privity with one another. *See Talipot ESG Investments LLC v Bulltick Fin. Advisory Services LLC*, 85 Misc. 3d 1234(A) (Sup Ct, New York County 2025) ("[P]laintiffs have failed to cite to any authority suggesting that a controlling-interest holder of a managing member of an LLC owes a separate and distinct fiduciary duty to the non-managing members of that same LLC solely by virtue of its controlling interest in the managing member."); *Baker v Andover Assoc. Mgt. Corp.*, 30 Misc 3d 1218(A) (Sup Ct, Westchester County 2009) ("New York courts have not hesitated to find fiduciary duty claims deficient when a plaintiff has not pled or proved facts demonstrating a

5

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 167 of 300

fiduciary duty or any relationship approaching privity'") (quoting *Suthers v. Amgen,* 441 F. Supp. 2d 478, 487 (S.D.N.Y.2006)). Notably, none of the Segal Defendants who have pleaded any cause of action in this matter are members of Fordham Landing Preferred Sponsor LLC. Even if Namdar Fordham Landing, LLC, owed a fiduciary duty to the other members of Fordham Landing Preferred Sponsor LLC (which, as discussed below, it does not) there is simply no factual or legal basis for imputing that duty being owed to any of the Segal Defendants.

In addition to the lack of any legal basis for allegations of fiduciary obligations, the claim must also be rejected based on the Operating Agreement's disclaimer as to the existence of any fiduciary duty owed by Namdar Fordham Landing, LLC, and therefore cannot be the basis of an alleged breach of a nonexistent duty. The Operating Agreement establishes the relationship between the members of Fordham Landing Sponsor LLC - DS3 GP Inc., Dynamic Star III LLC, The Plymouth Group III LLC, and Namdar Fordham Landing LLC. NYSCEF Doc. No. 46. Notably, the Operating Agreement disclaims "any duties or liabilities to the Company or any other Member (including any fiduciary duties), whether or not such duties or liabilities arise or exist at law or in equity, and each Member hereby expressly waives any such duties or liabilities." *Id.* at p. 16.

The Segal Defendants seek to ignore the effect of this express waiver by pointing to a supposed source of an alleged fiduciary relationship: "Gary Segal and Namdar/Namdar Entities, representing themselves as their interests may appear and their affiliates, are and consider themselves to be 'co-venturers' and 'partners' in the transactions and entities which are the subject of this action." Boyer Aff., Ex 6 at ¶ 26. This conclusory assertion is not only incorrect, but is also directly contradicted by section 2.6 of the Operating Agreement, which states "[t]he Members intend that the Company shall not be a partnership (including, without limitation, a limited

6

partnership) or joint venture, and that no Member be an agent, partner or joint venture of any other Member for any purposes other than U.S. Federal and state tax purposes, and this Agreement shall not be construed to suggest otherwise." NYSCEF Doc. No. 46 at p. 2.

This Court need not rely on the Segal Defendants' allegation of what the entities "consider themselves" to be when there is a document explicitly setting forth the relationship between the parties to the Operating Agreement. *See EBC I, Inc. v Goldman, Sachs & Co.*, 5 N.Y.3d 11, 19-20 (2005) ("Generally, where parties have entered into a contract, courts look to that agreement 'to discover ... the nexus of [the parties'] relationship and the particular contractual expression establishing the parties' interdependency'") (quoting *Northeast Gen. Corp. v Wellington Adv.*, 82 N.Y.2d 158, 162 (1993)).

The Operating Agreement establishes Fordham Landing Preferred Sponsor LLC is a Delaware entity and its members acknowledge this representation. Under traditional choice of law principles, the law of the state of incorporation presumptively governs the "internal affairs" of the corporation. *Zion v. Kurtz*, 50 N.Y.2d 92 (1980) (under "internal affairs doctrine," the "generally accepted choice-of-law principle" is that the law of the state of incorporation governs relationship between shareholders and directors). "[U]nder Delaware law, fiduciary duties are imposed 'only on managers and those designated as controlling members of an LLC,' and not on non-managing minority members". *Coventry Real Estate Advisors, L.L.C. v Developers Diversified Realty Corp.*, 84 A.D.3d 583, 584 (1st Dept. 2011) (quoting *In re S. Canaan Cellular Investments, LLC*, 09-10473, 2010 WL 3306907, at *7 (E.D. Pa Aug. 16, 2010)). The manager designated by the Operating Agreement is DS 3. Namdar Fordham Landing LLC thus does not owe a fiduciary duty to the other members by virtue of its membership in the LLC.

7

As Segal Defendants note in their pleading, the Operating Agreement establishes a Management Committee for Fordham Landing Preferred Sponsor LLC, consisting of two individuals: "'NAMDAR shall be entitled to designate one (1) representative to represent NAMDAR' and 'DYNAMIC shall be entitled to designate one (1) representative to represent DYNAMIC…' and the Management Committee's sole function under the agreement is to vote in respect to Major Decisions and any 'Other MC Decisions…'" Boyer Aff., Ex 6 at ¶ 18 (quoting NYSCEF Doc. No. 46 at p. 14-15). These limited management duties, however, do not give rise to any fiduciary duty, as such duties are expressly waived in the Operating Agreement which provides as follows: "Except as otherwise expressly provided in this Agreement, none of the Representatives (in their capacities as members of the Management Committee only), the Manager or the Members shall have any duties or liabilities to the Company or any other Member (including any fiduciary duties)." NYSCEF Doc. No. 46 at p. 16. The limited exceptions provided for do not apply to the facts at hand and do not impose a fiduciary duty on Namdar Fordham Landing LLC.

In sum, the only entity which might owe a fiduciary duty to any entity related to any Segal Defendants is Namdar Fordham Landing, LLC, which fiduciary duty has been expressly waived. There is no basis for expanding that duty to impose an obligation on any related entities alleged to be owned or controlled by Namdar to any of the Segal Defendants and in no instance can any duty be imputed to Plaintiff.

B. Segal Defendants Fail to Plead Breach of Fiduciary Duty with the Requisite Particularity

CPLR 3013 requires that "[s]tatements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense." CPLR §3016(b) states that "where a cause of action ... is based on misrepresentation, fraud,

8

mistake, willful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail."

Courts routinely grant motions to dismiss such causes of actions when a party fails to plead with the particularity required under CPLR § 3016(b) and/or CPLR § 3013. One form of failure of particularized pleading is the allegation that multiple defendants collectively engaged in a breach of trust or other duty. A complaint that fails to differentiate between the defendants is an improper group pleading. *Principia Partners LLC v Swap Fin. Group*, 194 A.D.3d 584, 584 (1st Dept. 2021); *Aetna Cas. & Surety Co. v Merchants Mut. Ins. Co.*, 84 A.D.2d 736, 736 (1st Dept. 1981) (complaint that collectively refers to defendants "without any specification as to the precise tortious conduct charged to a particular defendant" does not satisfy requirements of CPLR 3013).

By crediting the broadly alleged breach of fiduciary duty to every single defendant, collectively, the Segal Pleading engages in impermissible group pleading. Indeed, aside from claiming that Plaintiff is owned and controlled by "Namdar and/or Namdar Entities" and is vaguely subject to fiduciary duties, there is no direct allegation against Plaintiff, as a distinct and separate actor. Such group pleading fails to satisfy CPLR 3013 and 3016 (b). *See Jonas v National Life Ins. Co.*, 147 A.D.3d 610, 612 (1st Dept. 2017) (dismissing a fraud claim where the defendants were "impermissibly lump[ed] together"); *Barlow v Skroupa*, 76 Misc 3d 587, 591 (Sup Ct, New York County 2022), *affd* 217 A.D.3d 620 (1st Dept. 2023) (citing *Principia Partners LLC*, 194 A.D.3d at 584). This is especially true where the allegations are conclusory. *See Cortlandt St. Recovery Corp. v Hellas Telecom., S.A.R.L.*, 47 Misc. 3d 544, 572 n 11 (Sup Ct, New York County 2014), *mod* 142 A.D.3d 833 (1st Dept. 2016), *affd* 31 N.Y.3d 30 (2018) (conclusory alter ego allegations and group pleading insufficient to plead fraud).

9

Courts have consistently dismissed claims based on such "group pleading" for failure to identify with particularity the specific conduct of each individual defendant. *See Aetna Cas. & Sur. Co.,* 84 A.D.2d 736 (dismissing complaint, in part, because "four causes of action are pleaded against all defendants collectively without any specification as to the precise tortious conduct charged to a particular defendant"); *Loch Sheldrake Beach & Tennis Inc v. Akulich,* 141 A.D.3d 809 (3d Dept. 2016) (dismissing breach of fiduciary duty counterclaim when the movant failed to "ascribe independent tortious conduct to any individual director"); *Abdale v. North Shore-LongIs. Jewish Health Sys., Inc.,* 49 Misc. 3d 1027, 1041 (Sup Ct, Queens County 2015) (dismissing breach of fiduciary duty claim due to group pleading); conclusory group pleading); *Cortlandt St. Recovery Corp.,* 47 Misc. 3d at 572.

The Segal Defendants' claims for breach of fiduciary duty with respect to Plaintiff (and Namdar/Namdar Entities) fail in their entirety on this basis, because they do not allege a single act conducted specifically by Plaintiff. Rather, the Segal Defendants repeatedly and obtusely allege that "Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff are engaged in a plan, conspiracy, and scheme" which somehow amounts to a breach of fiduciary duty.

However, New York law is well-settled that such group pleading concerning the conduct of a group of defendants, rather than particularized pleading of the conduct of each defendant, fails to state a claim, because it denies a defendant the ability to determine the "precise tortious conduct charged" against that defendant. *See Loch Sheldrake,* 141 A.D.3d at 811; *See Aetna Cas. & Sur. Co.,* 84 A.D.2d at 737. Because this failure infects the entirety of Segal Defendants' breach of fiduciary duty claim, the claim should be dismissed pursuant to CPLR § 3211(a)(7).

10

C.  Segal Defendants Have Not Suffered any Damages

Finally, and fatally, Segal Defendants cannot establish damages from any breach because all claimed damages are purely prospective and speculative. "It is well established that damages, in general, may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the defendant's conduct." *InKine Pharm. Co., Inc. v Coleman*, 305 A.D.2d 151, 153 (1st Dept. 2003). To recover damages for breach of fiduciary duty a plaintiff must show "damages directly caused by the defendant's misconduct." *Celauro v. 4C Foods Corp.*, 187 A.D.3d 836, 837 (2d Dept. 2020). "Damages are an essential element of a cause of action to recover damages for breach of fiduciary duty." *Id.*; *see also Yukos Cap. S.AR.L. v. Feldman*, 977 F.3d 216, 244 n.17 (2d. Cir. 2020) (" [A]ctual injury'— or 'damage'—is an essential element of a breach of fiduciary duty claim under New York law[.]").

The crux of the pleading is that "Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff are engaged in a plan, conspiracy, and scheme to devastate and damage the Segal Defendants by prosecuting this action to judgment and public sale, and take or "steal" from the Segal Defendants their ownership and equity interests". Boyer Aff. Ex. 2 at ¶ 33. Segal Defendants decry an "attempt to foreclose and steal the real estate" but point to no damages actually incurred as a result of any party's actions. *Id.* at ¶ 34. There has been no foreclosure, and Segal Defendants inarguably still retain their rights in the real estate which is the subject of this action. Because Segal Defendants have suffered no actual damages, the cause of action for breach of fiduciary duty must be dismissed in its entirety.

**III.  Segal Defendants' Claim for Tortious Interference with Contract Rights Must Be Dismissed as Deficiently Pleaded.**

In order to state a claim for tortious interference with contractual relations, a plaintiff must allege, "(1) the existence of a contract between plaintiff and a third party; (2) defendant's

11

knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff." *Kronos, Inc. v AVX Corp.,* *81 N.Y.2d 90, 94 (1993)*; *see Foster v Churchill,* *87 N.Y.2d 744, 749-50 (1996)*; *Lama Holding* *Co. v Smith Barney Inc.,* *88 N.Y.2d 413, 424 (1996)* ("Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom."); *Hoag v Chancellor,* *Inc.,* *246 A.D.2d 224, 228 (1st Dept. 1998)* ("The elements of a tortious interference with contract claim are well established—the existence of a valid contract, the tortfeasor's knowledge of the contract and intentional interference with it, the resulting breach and damages."). While Segal Defendants plead "inducing breach of contract" in the conjunctive, the two causes of action are, in fact, the same. *See Galanova v TKR Prop. Services, Inc.,* *52 Misc 3d 1205(A) (Sup Ct, Kings* *County 2016)* ("The tort of inducement of breach of contract, now more broadly known as interference with contractual relations, consists of four elements: (1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff").

Here, there is, yet again, no direct allegation against Plaintiff to support the Segal Defendants' claim. The Segal Pleading is murky with no specifics regarding what, exactly, is the alleged breach. The contract at issue is, evidently, the Fordham Landing Preferred Sponsor LLC Operating Agreement. *See* Boyer Aff. Ex 6 at ¶ 48. The breach, as best as can be discerned, is the failure to make additional capital contributions for payments under an Extension Agreement dated September 27, 2024. *Id.* at ¶ 29. According to the Segal Pleading "Namdar/Namdar Entities

12

(including Namdar Fordham Landing LLC) were put on notice, in writing, pursuant to the Fordham Landing Preferred Sponsor LLC, Operating Agreement of their breach (the "Notice," [sic] dated November 12, 2024, from Dynamic Star III LLC." There is no indication that *Plaintiff,* specifically, did anything to intentionally procure any breach of the Fordham Landing Preferred Sponsor LLC Operating Agreement, which is fatal to the cause of action. *See Lama Holding Co. v Smith Barney Inc.*, 88 N.Y.2d 413, 424 (1996).

Further, to plead and sustain a cause of action for tortious interference with contract, "a plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct." *Burrowes v Comb*s, 25 A.D.3d 370, 373 (1st Dept. 2006). Segal Defendants make no such allegation, requiring dismissal of this claim against Plaintiff.

As shown on the Entity Information printout from the New York Department of State, Plaintiff was formed on February 25, 2025, and thus did not even *exist* on the date of the alleged breach, which necessarily occurred before the "Notice" sent November 12, 2024.[2] *See* Boyer Aff. Ex 1. The Segal Defendants' broad allegation that Plaintiff somehow induced a breach of the operating agreement prior to its formation is thus an impossibility. Without this but-for causation, Segal Defendants' claims must be dismissed. *See 111 W. 57th Inv. LLC v 111 W57 Mezz Inv. LLC,* 220 A.D.3d 435, 436 (1st Dept. 2023)*, lv to appeal denied,* 41 N.Y.3d 905 (2024)*, and lv to appeal granted,* 42 N.Y.3d 912 (2025); *ADP, Inc. v E. Armada Inc.*, 85 Misc. 3d 1220(A) (Sup Ct, New

---

[2]    This Court may take judicial notice of public records, such as information from the New York Department of State, in deciding a motion to dismiss. *David Shaev Profit Sharing Plan v Bank of Am. Corp.*, 2014 N.Y. Slip Op. 33986[U], 1 (Sup Ct, New York County 2014); *In re Avon Products, Inc.*, 2013 N.Y. Slip Op. 31833[U] (Sup Ct, New York County 2013).

Case 7:26-cv-04909   Document 1-1   Filed 06/10/26   Page 175 of 300

York County 2025); *Atl. Gas & Wash LLC v 3170 Atl. Ave. Corp.*, 37 Misc. 3d 1226(A) (Sup Ct, Kings County 2012).

A. <u>There Are No Damages to Support a Claim for Tortious Interference</u>

Segal Defendants cannot maintain a suit predicated on damages from any alleged failure to make capital contributions, as the Operating Agreement provides for the exclusive remedies for such breach. According to the Segal Pleading, Namdar Fordham Landing, LLC, was sent a "Notice" that the "'Company requires Additional Capital Contributions of $7,106,779.33' and that '…Pursuant to Section 5.2 of the Operating Agreement, each Member is required to contribute its pro rata share of this Additional Capital Contribution. You are required to submit your pro rata share, in an amount equal to $4,060,813.70.'" Boyer Aff., Ex. 2 at ¶ 48. Section 5.2 explicitly provides that if a member fails to make an additional capital contribution, "other Member(s)…*shall have the following remedies*… to advance to the Company on behalf of, and as a loan to the Non-Funding Member, an amount equal to the Default Amount". NYSCEF Doc. No. 46. The loan shall be secured by the non-contributing member's right to receive capital contributions and, if not repaid within 60 days, converted to a capital contribution with the members' percentage interests recalculated and adjusted accordingly. *Id.* As the Operating Agreement explicitly provides a remedy for the claimed breach, Segal Defendants may not maintain an action for breach of contract or, by extension, tortious interference with contract. *See Two Rivers Entities, LLC v Sandoval*, 192 A.D.3d 528, 529 (1st Dept. 2021) (Upholding dismissal of claim for breach of operating agreement where operating agreement provided clear remedy).

Finally, and fatally, Segal Defendants cannot establish damages from any breach because any claimed damages are purely speculative. As discussed above, the Segal Pleading alleges an "*attempt* to foreclose and steal the real estate", but provides no facts as to how, presently, Segal

14

Defendants have sustained any damages. "Since damage is an essential element of the tort, the claim is not enforceable until damages are sustained." *Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94 (1993).; *see IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 140-41 (2009) (Tortious interference with contract claim "not enforceable until IDT first suffered damages.").

## IV. Segal Defendants Cannot Maintain Abuse of Process Claims Based on the Filing of Summons and Notice of Pendency in This Action

Abuse of process has three essential elements: "First, there must be regularly issued process, civil or criminal, compelling the performance or forbearance of some prescribed act. Next, the person activating the process must be moved by a purpose to do harm without that which has been traditionally described as economic or social excuse or justification. Lastly, defendant must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process." *Andesco, Inc. v Page*, 137 A.D.2d 349, 356 (1st Dept. 1988) (internal citations omitted); *see Curiano v Suozzi*, 63 N.Y.2d 113, 116 (1984). A malicious motive alone in bringing an action does not give rise to a cause of action for abuse of process. *Syllman v. Nissan*, 18 A.D.3d 221 (1st Dept. 2005) ("A malicious motive in commencing an action is insufficient to support such a claim because 'the institution of a civil action by summons and complaint is not legally considered process capable of being abused'").

First and foremost, Segal Defendants claim for abuse of process must be dismissed as there is no factual allegation that Plaintiff was involved in any "regularly issued process". The Segal Pleading cites the summons and notice of pendency filed in this action, both of which were indisputably effectuated by SIG CRE 2023 Venture LLC. *See* NYSCEF Doc. No's. 1, 7.

Regardless as to whom the claim is directed, Segal Defendants' abuse of process claim is deficient on its face and lacks legal foundation since it is based on the issuance of the summons. It is well settled that "the institution of a civil action by summons and complaint is not legally

15

considered process capable of being abused." *Curiano*, 63 N.Y.2d at 116; *see O'Keeffe's Inc. v 400 Times Sq. Assoc. LLC*, 2020 NY Slip Op 30208[U], *2-3 (Sup Ct, New York County 2020)* (holding that "even assuming Defendants' allegations about the Complaint's lack of merit are true, Defendants have not stated a viable claim for abuse of process"); *Matthews v. New York City Dep't. of Social Servs., Child Welfare Admin.*, 217 A.D.2d 413, 415 (1st Dept. 1995); *Muro-Light v. Farley*, 95 A.D.3d 846, 847 (2d Dept. 2012) (dismissing abuse of process claim because "[t]he institution of a civil action by summons and complaint" and "an improper motive in bringing an action alone…does not give rise to a cause of action to recover damages for abuse of process" as "doing so is not legally considered the type of process capable of being abused").

Nor can the filing of a notice of pendency be the basis for a claim of abuse of process as its filing is not "process" and therefore cannot suffice to state a claim for abuse of process. CPLR 6501 provides: "A notice of pendency may be filed in any action in a court of the state or of the United States in which the judgment demanded would affect the title to, or the possession, use or enjoyment of, real property." *5303 Realty Corp. v O & Y Equity Corp.*, 64 N.Y.2d 313, 318 (1984). The purpose of the notice of pendency is "to afford constructive notice from the time of the filing so that any person who records a conveyance or encumbrance after that time becomes bound by all of the proceedings taken in the action" *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v Solow Bldg. Corp.*, 52 A.D.2d 533, 534 (1st Dept. 1976) It does not create rights that did not already exist. *See Varon v Annino*, 170 A.D.2d 445, 445 (2d Dept. 1991). "If process has a legitimate purpose, the allegation that it was misused does not suffice to state a claim for abuse of process" *Casa de Meadows Inc. (Cayman Is.) v Zaman*, 76 A.D.3d 917, 921 (1st Dept. 2010); *see Roberts v Pollack*, 92 A.D.2d 440, 445 (1st Dept. 1983) ("Plaintiff's allegation that the

16

subpoena was intended to inflict emotional harm does not suffice since defendant had reason, legitimate and indisputable, to subpoena her.").

Segal Defendants obtusely allege that the notice of pendency was filed for the ulterior motive "to defeat the purpose of Fordham Landing Preferred Sponsor LLC, its Operating Agreement, the entire project, and steal the real estate and ownership and equity interests from the Segal Defendants." Boyer Aff. Ex. 2 at ¶ 52. Even hypothetically accepting that alleged motive as true, the notice of pendency does nothing to further that motive as a "collateral objective" and serves the legitimate purpose for which it was intended. *Andesco, Inc*, 137 A.D.2d at 356. Segal Defendants allege no facts suggesting that the notice of pendency itself has been, or could be, used to further the claimed ulterior motive(s). *See Panish v Steinberg*, 32 A.D.3d 383, 384 (2d Dept. 2006) (Dismissing claim for abuse of process where "plaintiff failed to allege any actual misuse of the notice of pendency to obtain an end outside its proper scope."). Segal Defendants make no claim that this action does not affect title to real property, or that the provision of constructive notice to third parties is somehow improper. Thus, "[t]he notice of pendency was used in the manner for which it was designed and defendants failed to allege facts sufficient to establish that it was filed *with malicious intent alone*". *Ward v Melis*, 28 A.D.3d 970, 971 (3d Dept. 2006).

"Further, the filing of a notice of pendency is not process 'compelling the performance or forbearance of some prescribed act'" and thus cannot be the basis of a claim for abuse of process. *Andesco, Inc*, 137 A.D.2d at 357 (quoting *Bd. of Ed. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO*, 38 N.Y.2d 397, 403 (1975); *See also Williams v Williams*, 23 N.Y.2d 592, 596 (1969) ("Process is a 'direction or demand that the person to whom it is directed shall perform or refrain from the doing of some described act.'") (quoting *In re Smith's Will*, 175 Misc 688, 692 (Sur Ct, Kings County 1940)).

17

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 179 of 300

Independent of the fact that the process complained of is for the legitimate purposes for which it was intended, the abuse of process counterclaim cannot be sustained as Segal Defendants have not adequately pled any damages. As discussed herein, all 'damages' alleged by Segal Defendants are speculative and prospective. It is well settled that "to sustain a cause of action for abuse of process, the plaintiff must also allege special damages with sufficient particularity." *Abrazi v Kotlyarsky*, 2017 N.Y. Slip Op. 32327[U], 3 (Sup Ct, New York County 2017) (finding plaintiff's special damages for legal fees were not set forth with any particularity and thus the allegations were not sufficient to support an abuse of process causes of action for abuse of process were properly dismissed because he failed to plead special damages with sufficient particularity or a cognizable actual damage claim); *Khandalavala v Artsindia.com, LLC,* 2014 N.Y. Slip Op. 30939[U] (Sup Ct, New York County 2014) (Dismissing abuse of process claim where defendant failed to allege damages with particularity particularity). "The law is settled that a plaintiff may not plead special damages by way of conclusory language and unitemized round numbers." *Abrazi,* 2017 N.Y. Slip Op. 32327[U], at 3. Thus, a claim for abuse of process must also allege "how they were specifically harmed by" the alleged abuse of process. *Khandalavala,* 2014 N.Y. Slip Op. 30939[U], at 7.

In *Khandalavala,* the defendants alleged that plaintiffs abused process when they instituted the action, and obtained a TRO against defendants. *Id*. There, the court found that the TRO could only be the basis of a claim if "it actually was used in a manner inconsistent with the purpose for which it was designed." *Id*. at 14. The court also found that Defendants failed to allege facts supporting their claim that the TRO caused them losses of $500,000. *Id*. Here, like the claimant in *Khandalavala,* the Segal Defendants make a conclusory claim that they "have been damaged in an amount determined at trial but believed to be in the sum of approximately 300 million dollars,

18

together with punitive damages." Boyer Aff., Ex. 2 at ¶ 53. Segal Defendants have failed to plead special damages with requisite particularity to state a cause of action for abuse of process. Accordingly, for all the foregoing reasons, the fourth counterclaim against Plaintiff must be dismissed pursuant to CPLR 3211(a)(7).

**V.      Segal Defendants' Claim for Aiding and Abetting Breach of Fiduciary Duty Must be Dismissed for Lack of Underlying Breach of Fiduciary Duty, Lack of Damages, and Deficient Pleading**

In their fourth counterclaim Segal Defendants allege that Plaintiff aided and abetted a breach of fiduciary duty. To prevail on this claim, Segal Defendants must allege: "(1) a breach by a fiduciary of obligations to another, (2) that the plaintiff knowingly induced or participated in the breach, and (3) that defendant suffered damage as a result of the breach". *See Kaufman v. Cohen,* 307 A.D.2d 113, 125 (1st Dept. 2003). A party knowingly participates in the breach of fiduciary duty when he or she provides "substantial assistance" to the fiduciary, which occurs "when a [party] affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur" *Id.* at 307 A.D. 2d at 125-126.

Initially, Segal Defendants' claim for aiding and abetting fiduciary duty cannot survive as there is no underlying breach of fiduciary duty. As discussed above, the Segal Defendants cannot establish a claim for breach of fiduciary duty because Segal Defendants have not alleged any facts showing privity with any of the entities against whom their fiduciary claims are directed. Moreover, any fiduciary duty which might exist between Segal and what the Segal Pleading terms "Namdar/Namdar Entities including Namdar Fordham Landing LLC" is expressly waived by the Operating Agreement. Similarly, the lack of damages from the alleged breach of fiduciary duty precludes any claim for aiding and abetting the same, as damages from the underlying breach are a required element of the aiding and abetting claim. *See Bullmore v Ernst & Young Cayman Is.,* 45

19

A.D.3d 461, 463 (1st Dept. 2007). "In the absence of a viable claim for breach of fiduciary duty, there can be no claim for aiding and abetting a breach of fiduciary duty." *Moyal v Tripost Capital Partners*, LLC, 2019 N.Y. Slip Op. 30947[U], 6 (Sup Ct, New York County); *Kassover v Prism Venture Partners, LLC*, 53 A.D.3d 444, 449 (1st Dept. 2008). As Segal Defendants' breach of fiduciary claims must be dismissed for any or all the myriad reasons set forth herein, the attendant claim for aiding and abetting must also be dismissed.

Segal Defendants aiding and abetting claims are deficiently pleaded. A claim for aiding and abetting breach of fiduciary duty requires allegation of "a single distinct action independent of the underlying breaches [of fiduciary duty]" *Arena Riparian LLC v CSDS Aircraft Sales and Leasing Co.,* 184 A.D.3d 509, 510 (1st Dept. 2020) (citing *Ulico Cas. Co. v Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 A.D.3d 1, 11-12 (1st Dept. 2008)).

Segal Defendants cause of action for aiding and abetting breach of fiduciary duty against Plaintiff merely re-pleads that Plaintiff committed the very same acts that constitute the alleged underlying breaches. This simple re-pleading is deficient, as aiding-and-abetting liability requires both (1) a breach by the fiduciary and (2) the "defendant's substantial assistance to [the fiduciary] in effecting the breach." *Ulico Cas. Co.*, 56 A.D.3d 1, 11 (1st Dept. 2008); *see also Sanford/Kissena Owners Corp. v. Daral Props., LLC*, 84 A.D.3d 1210, 1212 (2d Dept. 2011) (substantial assistance requires an act or omission that "enabl[es] the breach to occur"). Through their pleading artifice, Segal Defendants impermissibly and improperly collapse the distinct elements of substantial assistance and breach, trying to satisfy both with indistinguishable acts. *See In re Sharp Int'l Corp.*, 403 F.3d 43, 49 (2d Cir. 2005) (applying New York law). As there is no allegation that Plaintiff did anything separate and distinct from the underlying breach(es) which

20

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 182 of 300

comprise the first cause of action, the fourth counterclaim against Plaintiff for aiding and abetting breach of fiduciary duty must be dismissed.

As with the underlying claim for breach of fiduciary duty, Segal Defendants must plead this cause of action with particularity; conclusory allegations are insufficient (*see* CPLR 3016[b]; *Front, Inc. v. Khalil,* 103 A.D.3d 481, 483 (1st Dept. 2013), *affd.* 24 N.Y.3d 713, (2015); *Roni LLC.* 15 N.Y.2d at 826. Here, once again, the Segal Pleading fails as a group pleading which improperly ascribes actions to "Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff" without distinction. Once again, this failure to state with specificity the actions alleged to have been taken by Plaintiff, either as a breach or in furtherance of a breach, compels dismissal of the claims.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Boyer Affirmation, Plaintiff respectfully requests that its motion be granted in its entirety, dismissing all counterclaims by the Segal Defendants, together with such other and further relief as this Court deems just and necessary.

Dated: Brooklyn, New York
August 8, 2025

*Dean Boyer*

N. Dean Boyer, Esq.
Lester Shaw & Levy LLP
*Attorneys for Plaintiff*
45 Main Street, Suite 322
Brooklyn, New York 1201
(212) 279-4490; Ext. 204

21

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 183 of 300

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to 22 NYCRR § 202.8-b(a), that the total number of words in the foregoing Memorandum of Law dated August 8, 2025 (the "Memorandum"), exclusive of the caption and signature block is 6,784, and that the Memorandum complies with the word count limit of 22 NYCRR § 202.8-b(a). The foregoing word count is based on the word count of the Microsoft Word word-processing program used to prepare the Memorandum.

Dated: Brooklyn, New York
August 8, 2025

*Dean Boyer*
N. Dean Boyer, Esq.

22

**NYSCEF Document # 134**
**Affirmation of Jay Edmond Russ in Opposition to Motion to Dismiss**

Case 7:26-cv-04909   Document 1-1   Filed 06/10/26   Page 185 of 300

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------- X

FORDHAM LANDING NORTH HOLDINGS LLC,

Index No.: 850030/2025

Plaintiff,

-against-

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, IGAL NAMDAR, GARY
SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD and "JOHN DOE" NO. 1 THROUGH "JOHN DOE"
NO. 100, inclusive, the last one hundred names being fictitious
and unknown to plaintiff, the persons or parties intended being
tenants, occupants, persons or corporations, if any, having or
claiming an interest in or lien upon the premises described in the
complaint,

Defendants.

**AFFIRMATION IN OPPOSITION**

Mot Seq. 6

-------------------------------------------------------------------------- X

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, and GARY SEGAL,

Third-Party Plaintiffs,

-against-

NAMDAR FORDHAM LANDING LLC, and SIG CRE 2023
VENTURE LLC,

Third-Party Defendants,

-and-

FORDHAM LANDING PREFERRED, LLC and FORDHAM
LANDING PREFERRED SPONSOR LLC,

Nominal Third-Party Defendants.

-------------------------------------------------------------------------- X

JAY EDMOND RUSS, an attorney admitted to practice in the Courts of the State of New

York states as follows:

1.     I am president of Russ & Russ, P.C., the attorney for MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC, and GARY SEGAL (the "Segal Defendants"), who are defendants and third-party plaintiffs in this action.  I submit this affirmation in opposition to the motion of Fordham Landing North Holdings LLC (the "Substitute Plaitniff"), to dismiss counterclaims asserted against the Substitute Plaintiff.

2.     The Segal Defendants, as part of their opposition to the Substitute Plaintiff's motion, submit the following documents as exhibits:

> Exhibit A – the Affirmation of Andrew Albstein, Esq. dated April 3, 2025 (Doc. No. 44);
>
> Exhibit B – the Affirmation of Jay Edmond Russ dated April 6, 2025 (Doc. No. 45); and
>
> Exhibit C – the Limited Liability Company Agreement of Fordham Landing Preferred  Sponsor LLC (Doc. No. 46).

3.     The Segal Defendants also include by reference as part of their opposition to the Substitute Plaintiff's motion, their opposition to a similar motion made by SIG CRE 2023 VENTURE LLC, one of the third-party defendants.  (NYSCEF Doc. Nos. 128-132)

I affirm this 16th day of September 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

*Jay Edmond Russ*
JAY EDMOND RUSS

2

Case 7:26-cv-04909     Document 1-1     Filed 06/10/26     Page 187 of 300

## Word Count Certification

The undersigned hereby certifies that the within document contains 397 words and that the document complies with 22 NYCRR §202.8-b of the Uniform Rules of Courts.

Dated: September 16, 2025

*Jay Edmond Russ*
JAY EDMOND RUSS

3

**NYSCEF Document # 135**
**Exhibit A in Opposition to Motion to Dismiss**

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM
INDEX NO. 850030/2025
NYSCEF DOC. NO. 44
RECEIVED NYSCEF: 04/06/2025

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------X

SIG CRE 2023 VENTURE LLC,

                                        Plaintiff,          **AFFIRMATION**

            - against –                                     Index No.:

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC,                    850030/2025
DS FORDHAM LANDING 4 LLC, IGAL NAMDAR,
GARY SEGAL, NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD, and "JOHN DOE" NO. 1
THROUGH "JOHN DOE" NO. 100, inclusive, the last
one hundred names being fictitious and unknown to
plaintiff, the persons or parties intended being the
tenants, occupants, persons or corporations, if
any, having or claiming an interest in or lien upon
the premises described in the complaint,

                                        Defendants.

------------------------------------------------------------------X

        ANDREW W. ALBSTEIN, an attorney duly admitted to practice law before the Courts of

the State of New York hereby affirms the following to be true subject to the penalties of perjury:

        1.      I am a partner in the law firm of Goldberg Weprin Finkel Goldstein LLP. We

represent the Defendants, MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC and DS

FORDHAM LANDING 4 LLC (hereinafter "Defendants"), real estate owners, in this foreclosure

action.

        2.      The Plaintiff in this case is SIG CRE 2023 Venture, LLC, represented by Holland

& Knight, LLP, by John Doherty, Esq. and Keith M. Brandofino, Esq.

EXHIBIT A

1 of 2

Case 7-26-cv-04909    Document 71    Filed 06/18/26    Page 190 of 300

3.    On February 5, 2025, I received a telephone call from Mr. Brandofino, Esq., informing me that Defendants' partner "Namdar" had called him for a pay off letter and wanted to payoff the loan.

Dated: April _3_, 2025
      Massapequa, New York

_____
Andrew W. Albstein

Pursuant to CPLR 2106, I affirm this _3rd_ day of April, 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

_____
Andrew W. Albstein

**NYSCEF Document # 136**
**Exhibit B in Opposition to Motion to Dismiss**

Case 7-26-cv-04909    Document 1-1    Filed 06/10/26    Page 192 of 300

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---------------------------------------------------------------------- X

SIG CRE 2023 VENTURE LLC,

                      Plaintiff,

      -against-

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, IGAL NAMDAR, GARY
SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD and "JOHN DOE" NO. 1 THROUGH "JOHN DOE"
NO. 100, inclusive, the last one hundred names being fictitious
and unknown to plaintiff, the persons or parties intended being
tenants, occupants, persons or corporations, if any, having or
claiming an interest in or lien upon the premises described in the
complaint,

                      Defendants.

---------------------------------------------------------------------- X

Index No.: 850030/2025

**AFFIRMATION IN OPPOSITION**

Mot. Seq. 1

    **JAY EDMOND RUSS**, an attorney duly admitted to practice law in the courts of the State of New York, affirms under penalty of perjury as follows:

1. I am the President of Russ & Russ P.C., attorneys for MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC (jointly and severally "Borrowers"), and GARY SEGAL ("Guarantor" and with Borrowers, collectively **"Segal Defendants"**). I am fully familiar with the facts and circumstances herein.

2. I submit this affirmation in opposition to the motion by a non-party, Fordham Landing North Holdings LLC (the "Namdar Entity") to be substituted as the Plaintiff in this action in place and stead of SIG CRE 2023 VENTURE LLC. I note that as a non-party, the Namdar Entity is not permitted to move by Notice of Motion, but must move by Order to Show Cause.

3. CPLR 1024 provides that only a party may make an application for substitution. ("A motion for substitution may be made by the successors or representatives of a party or by any party…."). I further note that the Namdar Entity has failed to produce a written assignment of this

EXHIBIT   B

Case 7-26-cv-04909 Document 171 Filed 06/10/26 Page 193 of 300

action, and as a chose in action, it is under the control of the named Plaintiff unless and until such an assignment of the chose in action is produced.

4.      I present these two (2) defects, first, noting that this affirmation will present other defects which require that the motion for substitution by the Namdar Entity be denied, with leave to renew by OSC, with an assignment of the chose in action, and, therefore, this motion should be rejected as defected, untimely, and should be renewed only upon proper papers.

## THE NAMDAR ENTITY IS A PARTNER AND MANAGER
## WITH FIDUCIARY DUTIES AND HAS BREACHED ITS DUTY OF LOYALTY

5.      The affirmation of Andrew Albstein, Esq., a noted and highly respected real estate attorney in Manhattan, establishes that the non-party seeking to pay off the debt was, indeed, Igal Namdar, who is also one of the named defendants.

6.      Gary Segal and Igal Namdar have management duties and responsibilities under the applicable Operating Agreement, a copy of which is annexed hereto as Exhibit A (see, for example, the section on Major Matters set forth in Exhibit C to the Operating Agreement). As a manager, Igal Namdar has fiduciary duties to both members. It is a blatant and outrageous breach of the duty of loyalty for the non-party Namdar Entity to purchase or purport to purchase the debt, promissory note, mortgage and any related alleged rights, to foreclose and wipe out all equity owners and holders.

7.      This Court should not approve a substitution of a party under these circumstances where substitution is part of a plan and scheme by one partner to devastate and damage another party. Of equal importance is the fact that the non-party has failed to meet its burden of admissible proof on this motion. The standard for relief is set forth later herein.

## THE MERITORIOUS PENDING MOTION TO DISMISS

8.      The Court is respectfully referred to the Segal Defendants' Notice of Motion dated

2

March 20, 2025, and the supporting papers (Mot. Seq. 2; Doc Nos. 25-29), wherein the Segal Defendants establish that the originally named plaintiff, SIG CRE 2023 VENTURE LLC, lacked standing to commence this action. In the dismissal motion, the Segal Defendants demonstrated that the promissory note is **not** an unconditional promise to pay, is **not** a negotiable instrument, **cannot** be negotiated as if it were a negotiable instrument, and therefore **cannot** be transferred by an allonge. This fatal defect affects not only the named Plaintiff, SIG CRE 2023 VENTURE LLC, but each other alleged transfer of the promissory note. All the purported assignments of the mortgage are defective and are nullities because the assignment of a mortgage alone is a legal nullity. Quite obviously, the named Plaintiff, SIG CRE 2023 VENTURE LLC, owned absolutely nothing and could not transfer anything to the Namdar Entity. The Namdar Entity compounded these fatal errors by purporting to add an allonge to the promissory note; this also was and is a nullity.

9. The Namdar Entity has no rights in or to the promissory note and mortgage. The Namdar Entity claims to have taken an assignment of the "Omnibus Loan Assignment" (Doc. No. 23), which is NOT the promissory note, and which does not define the capitalized term "Loan Documents." Capitalized terms that are undefined in the document are ambiguities created by the draftsman and strictly construed against the draftsman or simply are nullities. This hardly matters as the named Plaintiff owned nothing, whatsoever, to transfer.

10. Under New York law, it is the owner of the note that dictates ownership of the mortgage, as evidence by Article 3 and Article 9 of the Uniform Commercial Code. As commonly said, the "mortgage follows the note" so that when the note changes hands, the mortgage interest automatically follows. Mortgage Elec. Registration Sys., Inc. v. Coakley, 41 A.D.3d 674 (2d Dept. 2007). However, the obverse is not true: the transfer of the mortgage without the debt is a nullity,

3

Case 7-26-cv-04909 Document 1-1 Filed 06/10/26 Page 195 of 300

and no interest is acquired by it because a mortgage is merely security for a debt or other obligation and cannot exist independently of the debt or obligation". HSBC Bank USA, Nat. Ass'n v. Roumiantseva, 130 A.D.3d 983, 984 (2d Dept., 2015). Therefore, the Court need only examine the words of the promissory note and UCC 3-105 (a) (2) to ascertain that the promissory note cannot be transferred by allonge since the note is not a negotiable instrument.

11.    Given that the Segal Defendants' motion to dismiss is meritorious, the Namdar Entity should not be permitted to substitute into or even be heard on a request to substitute into a case which should be dismissed.

### THE LEGAL STANDARD FOR SUBSTITUTION

12.    Aside from the defects previously identified, the Namdar Entity had a well-defined burden to prove that the substitution does not result in surprise of prejudice to the Segal Defendants. Pursuant to CPLR 1018, a Court in its discretion may, but is not required, to direct that an assignee be substituted as a party when a cause of action has been assigned. Nations Credit Home Equity Servs. v. Anderson, 16 A.D.3d 563 (2d Dept., 2005). The purported assignee must prove the fact of the assignment, Citibank. N.A. v. Van Brunt Properties. LLC, 95 A.D.3d 1158 (2d Dept., 2012) and that substitution will not result in surprise or prejudice to defendants Mortgage Electronic Registration Systems. Inc. v. Holmes, 131 A.D.3d 680, 682 (2d Dept., 2015); see also Davis v Port, et. al, 79 Misc.3d 1232(A) (N.Y. Cty., 2023), Melcher v. Greenberg Traurig LLP, 44 Misc.3d 1224(A) (N.Y. Cty., 2014).

13.    The Namdar Entity has not addressed these issues. It has also tried to "pass under the radar" by using a nondescript name and avoiding all references to it being affiliated with Igal Namdar and the Namdar entities. The Segal Defendants are thoroughly surprised by this application. The Segal Defendants are severally damaged by the clandestine attempt by a co-

4

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 196 of 300

member to foreclose on the owning entity and wipe out every equity owner in the organizational chart.

## BREACH OF THE DUTY OF LOYALTY

14. The Segal Defendants, on the one hand, and Igal Namdar and the Namdar Entity and Namdar affiliates on the other, are in a special trust relationship. As such, Igal Namdar and the Namdar Entity and Namdar affiliates are strictly held to the **highest standard of conduct under the law.** As Justice Cardozo famously stated in <u>Meinhard v Salmon</u>, 249 N.Y. 458 (1928):

> Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.

15. Any breach of a fiduciary duty, whether intentional or unintentional, results in fiduciary liability. First and foremost, the duty of loyalty is at the core of the fiduciary relationship. "A fiduciary owes a duty of **undivided and undiluted** loyalty to those whose interests the fiduciary is to protect." <u>Matter of Wallens</u>, 9 N.Y.3d 117 (2007) citing <u>Birnbaum v. Birnbaum</u>, 73 N.Y.2d 461 (1989). The undivided and undiluted duty of loyalty is absolute and may not be waived. <u>Matter of Wallens</u>, supra.

16. Igal Namdar and the Namdar Entity and Namdar affiliates must act **solely in the interest of both partners** Restatement (Third) of Trusts § 78. This duty, which is also referred to as the "sole interest rule," means that Igal Namdar and the Namdar Entity and Namdar affiliates, must place the interests of **both partners, together, ahead of the fiduciary's own individual interest.** In keeping with this absolute duty, Igal Namdar and the Namdar Entity and Namdar affiliates, must avoid actual and potential conflicts of interest, and must avoid any transaction, which would benefit only Igal Namdar and the Namdar Entity and Namdar affiliates,, or a closely related person or entity, directly or indirectly (see <u>Karen E. Boxx</u>, "Of Punctilios and Paybacks:

5

The Duty of Loyalty Under the Uniform Trust Code," 67 Missouri L. Rev. (2002) citing 2A Austin Wakeman Scott & William Franklin Fratcher, "The Law of Trusts" §§ 170-170.25, at 311-437 (4th ed. 1987); see Restatement (Third) of Trusts § 78, cmt. C) and **must communicate to the Segal Defendants all material facts in connection with the matter and must always treat the Segal Defendants Plaintiff.**

17.     The rationale underlying the **rule against self-dealing** was summarized by the Court of Appeals in Ten Eyck v. Craig, 62 N.Y. 406, 420 (1875), as follows:

> The rule is founded in the highest wisdom. It recognizes the infirmity of human nature and interposes a barrier against the operation of selfishness and greed. It discourages fraud by taking away motive for its perpetration. It tends to insure fidelity on the part of the trustee...

18.     A self-dealing transaction is breach of the duty of loyalty. The duty of loyalty is a rule of "uncompromising rigidity." A breach of this duty cannot be overcome by any amount of good faith. Rather, the "no further inquiry" rule prohibits Igal Namdar and the Namdar Entity and Namdar affiliates from profiting from any self-dealing transaction. Igal Namdar and the Namdar Entity and Namdar affiliates are *per se* liable simply upon a showing that each has a personal interest in the transaction. Whether the self-dealing transaction involves fair and reasonable terms or compensation is immaterial. See 90A C.J.S. Trusts § 335 citing In re Carter's Estate, 6 N.J. 426, 78 A.2d 904 (1951) and City Bank Farmers Trust Co. v. Cannon, 264 App. Div. 429 (2nd Dept., 1942), modified on other grounds, 265 App. Div. 863 (2nd Dept., 1942) and aff'd. 291 N.Y. 125 (1943), and Uniform Trust Code § 802(b). See also Matter of Rothko, 43 N.Y.2d 305 (1977).

19.     Igal Namdar and the Namdar Entity and Namdar affiliates cannot hide behind the "business judgment rule." Amfesco Indus., Inc. v. Greenblatt, 172 A.D.2d 261 (1st Dept., 1991), Wolf v Rand, 258 A.D.2d 401 (1st Dept., 1999). Every fiduciary must act solely in the interests of the beneficiaries, and that duty is breached when a fiduciary engages in self-dealing, i.e., places

6

his/her own interests over those of the beneficiaries. Matter of Smith, N.Y.L.J., May 17, 2018, p. 28.

20.    As the Court of Appeals stated in Birnbaum v. Birnbaum, 73 N.Y.2d 461, 466 (1989):

> …it is elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect (e.g., Meinhard v. Salmon, supra, 249 N.Y. at 463–464; Matter of Rothko, 43 N.Y.2d 305, 319). This is a sensitive and "inflexible" rule of fidelity, barring not only blatant self-dealing, but also requiring avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty (Matter of Ryan, 291 N.Y. 376, 407). Included within this rule's broad scope is every situation in which a fiduciary, who is bound to single-mindedly pursue the interests of those to whom a duty of loyalty is owed, deals with a person "in such close relation [to the fiduciary] * * * that possible advantage to such other person might * * * consciously or unconsciously" influence the fiduciary's judgment (Albright v. Jefferson County Natl. Bank, 292 N.Y. 31, 39).

21.    Accordingly, the substitution motion should be denied.

WHEREFORE, your affirmant prays for an order granting the motion in all respects, together with such other and further relief as the Court deems just and proper.

I affirm this 6th day of April 2025, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

JAY EDMOND RUSS

7

## <u>Word Count Certification</u>

The undersigned hereby certifies that the within document contains 2,263 words and that the document complies with 22 NYCRR §202.8-b of the Uniform Rules of Courts.

Dated: April 6, 2025

JAY EDMOND RUSS

**NYSCEF Document # 137**
**Exhibit C in Opposition to Motion to Dismiss**

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 201 of 300

## LIMITED LIABILITY COMPANY AGREEMENT

### OF

### FORDHAM LANDING PREFERRED SPONSOR LLC

THIS LIMITED LIABILITY COMPANY AGREEMENT of FORDHAM LANDING PREFERRED SPONSOR LLC (this "**Agreement**") is made and entered into and is effective as of July ___, 2022, by and among DS 3 GP Inc. a New York corporation ("**DS 3**"), Dynamic Star III LLC, a Delaware limited liability company ("**Dynamic**"), The Plymouth Group III LLC, a New York limited liability company ("**Plymouth**"), and Namdar Fordham Landing LLC, a New York limited liability company ("**Namdar**," Dynamic, DS 3, Plymouth and Namdar, each, a "**Member**" and, together, the "**Members**").

### WITNESSETH:

WHEREAS, the Company was formed on July 8, 2022, pursuant to the Act; and

WHEREAS, the Company is, together with [CPIF MRA LLC, a Delaware limited liability company] ("**Preferred Investor**"), all of the Members of Fordham Landing Preferred LLC, a Delaware limited liability company, (the "**PrefCo**");

WHEREAS, PrefCo is the sole member of DS Fordham Landing 2 LLC, DS Fordham Landing 4 LLC and MDBZJGGS LLC (collectively, the "**Borrowers**");

WHEREAS, DS Fordham Landing 2 LLC owns the real property at 2371 Exterior Street, Bronx, New York, DS Fordham Landing 4 LLC owns the real property located at 2391 & 2401 Exterior Street, Bronx, New York and MDBZJGGS LLC owns the real property located at 301 West Fordham Road, Bronx, New York (collectively, the "**Properties**");

WHEREAS, pursuant to Assignment and Assumption Agreements entered into by and among the members of the Borrowers and Prefco, Prefco owns One Hundred Percent (100%) of the membership interests in each of the Borrowers;

WHEREAS, the Members desire to enter into this Agreement in order to, *inter alia*: (i) set forth the rights, obligations and duties of Members and the Company; and (ii) adopt this Agreement as the limited liability company agreement of the Company, as contemplated by the Act.

NOW, THEREFORE, in consideration of the agreements and covenants set forth herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

Exhiibit A

EXHIBIT C

Section 1.  Definitions.  Capitalized terms used herein shall have the meanings ascribed to such terms in this Agreement (including, without limitation, Exhibit B and the other Exhibits attached hereto).

Section 2.  Organization of the Company.

2.1.  Name.  The name of the Company shall be "FORDHAM LANDING PREFERRED LLC".  The business and affairs of the Company shall be conducted under such name or such other name as the Manager deems necessary or appropriate to comply with the requirements of law in any jurisdiction in which the Company may elect to do business.

2.1.  Registered Agent and Registered Office.  The Company shall maintain a registered office in the state of New York and a registered agent for service of process in the State of New York as required by the Act.  The Manager shall give notice to the Members prior to any change in the location of the principal office of the Company.

2.2.  Principal Office.  The Company's principal office shall be located at c/o 10 West Street, Apartment 40B, New York, NY, 10004, or such other place as the Manager may determine.  The Manager shall give notice to the Members prior to any change in the location of the principal office of the Company.

2.3.  Filings.  Before the execution of this Agreement the Company has duly filed or caused to be filed the Certificate of Formation of the Company with the office of the Secretary of State of the State of Delaware, as provided in the Act, and the Members hereby ratify such filing.  The Members shall use their respective commercially reasonable efforts to take such actions as may be reasonably necessary to perfect and maintain the status of the Company as a limited liability company under the laws of the State of Delaware.  Notwithstanding anything contained herein to the contrary, the Company shall not do business in any jurisdiction that would jeopardize the limitation on liability afforded to the Members under the Act or this Agreement.

2.4.  Term.  The Company shall continue in existence from the date hereof in perpetuity until the Company is dissolved and liquidated as provided in Section 13.

2.5.  Admission of Members.  Upon execution of this Agreement, each of the Members shall be admitted to the Company as members.

2.6.  No Partnership.  The Members intend that the Company shall not be a partnership (including, without limitation, a limited partnership) or joint venture, and that no Member be an agent, partner or joint venture of any other Member for any purposes other than U.S. Federal and state tax purposes, and this Agreement shall not be construed to suggest otherwise.

Section 3.  Purpose.

Capitalized terms used in this Section 3 and not otherwise defined shall have the meanings ascribed to such terms in the Prefco LLCA. Subject to the provisions of Section 17, the sole purpose of the Company is to, indirectly through its ownership interest in Prefco, acquire, own, develop, improve, lease, operate, manage, maintain, finance, refinance, sell, exchange or otherwise deal with and

-2-

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM INDEX NO. 850030/2025
NYSCEF DOC. NO. 46 RECEIVED NYSCEF: 04/06/2025

dispose of the Properties, and undertake such other activities related or incidental thereto as the Manager may determine is in the interests of the Company.

Section 4. Expenses.

4.1 Except as otherwise specifically provided in this Agreement or determined by the Management Committee, each Member shall bear its own general costs and expenses (including, without limitation, any office and administrative and similar general overhead expenses). The Company will bear and be charged with all ordinary, necessary and recurring administrative costs and expenses of the Company and the Manager, including, without limitation: (i) reasonable fees and expenses of consultants, appraisers, custodians, counsel, independent public accountants, actuaries and other agents; (ii) costs and expenses incurred for the preparation and distribution of financial reports, tax reports and other information for the benefit of the Members; (iii) any taxes, fees or other governmental charges levied against the Company or any Subsidiary or their respective income or assets or in connection with their respective business or operations; (iv) costs of any agency or administrative actions or hearings, any governmental action or third-party litigation or other matters that are the subject of indemnification pursuant this Agreement; (v) any insurance expenses; (vi) costs of winding-up and liquidating the Company or any Subsidiary; (vii) reasonable and necessary travel expenses; and (viii) all other costs and reasonable expenses of the Company, the Manager, the Manager's agents and authorized persons in connection with this Agreement.

4.2 All expenses reasonably incurred by Namdar and Dynamic and their Affiliates in organizing the Company, any Subsidiary and the Manager (the "**Organizational Expenses**"), including, without limitation, legal fees, accounting fees, filing fees, printing expenses, postage, delivery charges and travel expenses, shall be charged to the Company, and the Company shall reimburse Namdar and Dynamic and their Affiliates for Organizational Expenses reasonably incurred by on behalf of the Company or any Subsidiary.

4.3 Investment Maintenance Costs shall be at the sole expense of the Company and shall be reimbursed promptly by the Company to the Manager (or its Affiliates), provided such Investment Maintenance Costs are without duplication of any other amounts paid or reimbursable by the Company (or any Subsidiary) to Manager (or its Affiliates).

4.4 The Company shall cause any amounts reimbursable by any Subsidiary to conform to the reimbursements set forth in this Section 4 (without duplication).

Section 5. Capital Contributions and Capital Accounts.

5.1. Initial Capital Contributions. As of the date hereof, each Member has contributed capital as set forth opposite its name in Exhibit A attached hereto under the heading Initial Capital Contribution (such capital contribution, the "**Initial Capital Contribution**").

5.2. Additional Capital Contributions.

(a) In addition to the Capital Contributions made pursuant to Section 5.1 above, additional capital may be called for from the Members by the Manager by written notice to the Members from time to time as and to the extent capital is necessary to effect an investment or

-3-

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 204 of 300

expenditures approved by the Management Committee, and/or as otherwise may be required for the development of the Project in accordance with the approved Annual Business Plan. For the purposes of clarification and without limiting the foregoing, no additional Capital Contributions may be called without the express consent of the Namdar Member. For the purposes of clarification and without limiting the forgoing, any capital expenditures set forth in the Annual Business Plan, shall be deemed expressly consented to by Namdar.

(b) Subject to clause (c) below and Section 9.9, except as otherwise agreed in writing by the Members, such additional Capital Contributions shall be in an amount for each Member equal to the product of the amount of the aggregate Capital Contribution called for multiplied by such Member's Percentage Interest. Such additional Capital Contributions shall be payable by the Members to the Company upon the later of: (i) twenty (20) days after written request by the Management Committee, or (ii) the date when the Capital Contributions are required, as set forth in a written request by the Management Committee.

(c) If a Member (a "**Non-Funding Member**") fails to make a Capital Contribution that is required as provided in Sections 5.1, 5.2(a) or 9.9 within the time frame required therein (the amount of the failed Capital Contribution shall be the "**Default Amount**"), the other Member(s), provided that it has made the Capital Contribution required to be made by it, shall have the following remedies (such Member exercising such remedy is hereinafter referred to as a "**Contributing Member**"):

1. to advance to the Company on behalf of, and as a loan to the Non-Funding Member, an amount equal to the Default Amount to be evidenced by a promissory note in form reasonably satisfactory to the Contributing Member (each such loan, a "**Default Loan**"). The Default Loan shall constitute a debt owed by the Non-Funding Member to the Contributing Member. Any Default Loan shall bear interest at the Default Loan Rate, and shall be payable by the Non-Funding Member on demand from the Contributing Member and, without limiting the foregoing, from any Distributions due to the Non-Funding Member hereunder. Interest on a Default Loan to the extent unpaid, shall accrue and compound on an annual basis. A Default Loan shall be pre-payable, in whole or in part, at any time or from time to time without penalty. Any such Default Loan shall be with full recourse to the Non-Funding Member and, without limiting the foregoing, shall be secured by the Non-Funding Member's right to receive Distributions. Any advance to the Company by the Contributing Member on behalf of a Non-Funding Member pursuant to this paragraph shall be deemed to be a Capital Contribution made by the Non-Funding Member except as otherwise expressly provided herein. The Capital Account of the Non-Funding Member shall be credited with the amount of such Default Loan. All Distributions to the Non-Funding Member hereunder shall be applied first to payment of any interest due under any Default Loan and then to principal until all amounts due thereunder are paid in full. While any Default Loan is outstanding, the Company shall be obligated to pay directly to the Contributing Member, for application to and until all Default Loans have been paid in full, the amount of (x) any Distributions payable to the Non-Funding Member, and (y) any proceeds of the sale of the Non-Funding Member's Interest in the Company; and

2. if not fully repaid within sixty (60) days after being made, any Default Loan (including any accrued but unpaid interest thereon) shall be converted into a Capital Contribution made by the Contributing Member (each a "**Capital Conversion**") whereupon (i)

-4-

Case 7:26-cv-04909   Document 1-1   Filed 06/10/26   Page 205 of 300

the Percentage Interests of the Members shall be recalculated to increase the Contributing Member's Percentage Interest by the percentage (the "**Default Adjustment Percentage**") determined by dividing one hundred percent (100%) of the amount of the Converted Amount by the sum of the Members' Total Investment (which shall include such Converted Amount), (ii) the Contributing Member's Capital Account shall be increased by (x) one hundred percent (100%) of the amount of the applicable Capital Contribution required to be made (and made) by such Contributing Member pursuant to Section 5.2(a) and (y) one hundred percent (100%) of the additional Capital Contribution, (iii) the Percentage Interest of the Non-Funding Member shall be decreased by the Default Adjustment Percentage, and (iv) the Capital Account of the Non-Funding Member shall be decreased by one hundred percent (100%) of the amount of the Capital Contributions deemed made by the Non-Funding Member under Section 5.2(b)(1) in connection with such Default Loan.

3.  For purposes of this Agreement, "**Converted Amount**" shall mean, with respect to any Capital Conversion, the amount of the Default Loan (and any accrued but unpaid interest thereon) converted into an additional Capital Contribution pursuant to a Capital Conversion.

4.  Notwithstanding anything set forth in this Section 5.2 to the contrary, Plymouth shall not be obligated to make any additional capital contributions to the Company until the earlier of (i) payment in full of the Plymouth Required Payment (as hereinafter defined), whether by distributions of Net Cash Flow from the Company in accordance with Section 6.1 and/or by Supplemental Payments (as hereinafter defined), and (ii) the Outside Redemption Date (as hereinafter defined). In the event of any capital call which the Plymouth Member is not obligated to contribute to in accordance with the forgoing, all Capital Contributions that would be attributable to the Plymouth Member shall instead be the obligation of the Dynamic Member for all purposes hereunder, including without limitation, the remedies available to the Company for Non-Funding Members.

5.3.  Percentage Ownership Interest.  Each Member shall have a percentage ownership interest (as the same may be adjusted as provided in this Agreement, a "**Percentage Interest**") in the Company at any time equal to the quotient (expressed as a percentage) of the Total Investment made (or deemed made) by such Member divided by the Total Investment made (or deemed made) by all of the Members.  Percentage Interests shall not be adjusted by distributions made (or deemed made) to a Member.  The Percentage Interests of the Members in the Company shall be adjusted from time to time, as necessary, so that the respective Percentage Interests of the Members at any time shall be in proportion to their respective cumulative Total Investment made (or deemed to be made) pursuant to Sections 5.1 and 5.2, as the same may be further adjusted pursuant to Sections 5.2(c)(3).

5.4.  Return of Capital Contribution.  Except as approved by the Management Committee in writing, no Member shall have any right to withdraw or make a demand for withdrawal of the balance reflected in such Member's Capital Account (as determined under Section 5.6) until the full and complete winding up and liquidation of the business of the Company.

5.5.  No Interest on Capital.  Interest earned on Company funds shall inure solely to the benefit of the Company, and, except as expressly provided herein, no interest shall be paid

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 206 of 300

upon any Capital Contributions nor upon any undistributed or reinvested income or profits of the Company.

5.6. Capital Accounts. (a) A separate capital account (the "**Capital Account**") shall be maintained for each Member in accordance with Section 1.704-1(b)(2)(iv) of the Regulations. Without limiting the foregoing, the Capital Account of each Member shall be increased by (i) the amount of any Capital Contributions made (actually, rather than deemed) by such Member, (ii) the amount of Income allocated to such Member and (iii) the amount of income or profits, if any, allocated to such Member not otherwise taken into account in this Section. The Capital Account of each Member shall be reduced by (i) the amount of any cash and the fair market value of any property distributed to the Member by the Company (net of liabilities secured by such distributed property that the Member is considered to assume or take subject to), (ii) the amount of Loss allocated to the Member, (iii) the amount of expenses or losses, if any, allocated to such Member not otherwise taken into account in this Section and (iv) with respect to Plymouth, cash paid to Plymouth by Dynamic or its principals subject to (and in accordance with) the provisions of Section 6.1(a) below. If any property other than cash is distributed to a Member, the Capital Accounts of the Members shall be adjusted as if such property had instead been sold by the Company for a price equal to its fair market value, the gain or loss allocated pursuant to Section 7, and the proceeds distributed. No Member shall be obligated to restore any negative balance in its Capital Account. No Member shall be compensated for any positive balance in its Capital Account except as otherwise expressly provided herein. The foregoing provisions and the other provisions of this Agreement relating to the maintenance of Capital Accounts are intended to comply with the provisions of Regulations Section 1.704-1(b)(2) and shall be interpreted and applied in a manner consistent with such Regulations.

(b) The Capital Accounts of the Members shall be increased or decreased in accordance with Treasury Regulations § 1.704 1(b)(2)(iv)(f) to reflect a revaluation of the property of the Company on the Company's books as of the following times: (i) the acquisition of an additional interest in the Company by any new or existing Member in exchange for more than a de minimis capital contribution; (ii) the distribution by the Company to a Member of more than a de minimis amount of money or other property as consideration for an interest in the Company; (iii) the grant of an interest in the Company (other than a de minimis interest) as consideration for the provision of services to or for the benefit of the Company by an existing Member, or by a new Member in anticipation of becoming a Member; and (iv) the liquidation of the Company within the meaning of Treasury Regulations § 1.704-1(b)(2)(ii)(g); provided, however, that adjustments pursuant to clauses (i), (ii) and (iii) above shall be made only if the Manager reasonably determines that such adjustments are necessary or appropriate to reflect the relative economic interests of the Members in the Company.

5.7. New Members. The Company, at the written direction of the Management Committee, may issue additional Interests and thereby admit a new Member or Members, as the case may be, to the Company, only if such new Member (i) has funded to the Company the Capital Contribution required to be made by such new Member as determined by the Management Committee, (ii) has agreed in writing to be bound by the terms of this Agreement by becoming a party hereto, and (iii) has delivered such additional documentation as the Manager shall reasonably require to so admit such new Member to the Company. A new Member may not be admitted to the Company if the Company would, or may, have in the aggregate more than one hundred (100)

-6-

Case 7-26-cv-04909 Document 1-1 Filed 06/10/26 Page 207 of 300

members. For purposes of determining the number of members under this Section, a Person (the "**beneficial owner**") indirectly owning an interest in the Company through a partnership, grantor trust or S corporation (as such terms are used in the Code) (the "**flow-through entity**") shall be considered a member, but only if (i) substantially all of the value of the beneficial owner's interest in the flow-through entity is attributable to the flow-through entity's interest (direct or indirect) in the Company and (ii) in the sole discretion of the Manager, a principal purpose of the use of the flow-through entity is to permit the Company to satisfy the 100-member limitation.

Section 6. Distributions.

6.1. <u>Distribution of Distributable Funds</u>. The Manager shall calculate and determine the amount of Distributable Funds for each applicable period, after consultation with the Management Committee. Except as otherwise provided hereunder or determined by the Manager, Distributable Funds, if any, shall be distributed to the Members on a calendar-quarter basis. Except as provided in Sections <u>5.2(b)</u>, <u>6.2</u>, <u>9.9</u> or <u>13.3</u> or as otherwise provided hereunder, such Distributable Funds shall be distributed to the Members as follows:

(a) first, 100% of such Distributable Funds to the Members, until each Member has received aggregate distributions pursuant to this Section <u>6.1</u> in an aggregate amount equal to their total Capital Contributions together with an Internal Rate of Return thereon equal to ten percent (10%), provided, however, should such total distribution not be made within the first 24 months following the Effective Date of this Agreement, the Internal Rate of Return for any remaining balance shall be compounded annually from and after the expiration of the first 24 month period; and provided further that distributions that would have been made to Dynamic pursuant to this Section 6.1(a) shall instead be made to Plymouth until Plymouth has received the aggregate sum of (i) $2,315,000.00; and (ii) interest on the sum of $2,315,000.00 calculated at the rate of ten percent (10%) per annum from the Effective Date (such aggregate sum, the "**Plymouth Required Payment**"); provided that any payments made by or on behalf of Dynamic Star or its direct or indirect principals to Plymouth (i.e., which monies are not distributions of Distributable Funds from the Company; collectively, "**Supplemental Payments**") shall be credited toward the Company's obligation to repay the Plymouth Required Payment;

(b) second, the balance, if any, of such Distributable Funds remaining after the distributions pursuant to Section <u>6.1(a)</u> shall be distributed as follows: (i) forty percent (40%) of such Distributable Funds to Namdar, and (ii) sixty percent (60%) of such distributable funds to Dynamic, subject to any applicable adjustments in Percentage Interest as set forth in Section 5.2.

(c) Notwithstanding the forgoing, (i) in the event of a Percentage Interest increase or decrease, pursuant to Section 5 of the Agreement, distributions to the Members will be correspondingly adjusted to reflect such increased or decreased percentage Interest, as applicable; and (ii) so long as any portion of the Plymouth BCP Distribution (as hereinafter defined) is not paid to Plymouth as and when due in accordance with this Agreement, and for so long as any portion thereof remains outstanding, the Company shall not distribute any Distributable Funds to Dynamic in accordance with Sections 6.1(a) or 6.1(f).

-7-

6.2. <u>Distribution Priority for Indemnities.</u> Any distributions or other amounts otherwise payable to a Member under this Agreement shall be applied first to satisfy amounts due and payable on account of the indemnity and/or contribution obligations and/or any other obligations of such Member (or its Affiliates) under this Agreement and/or any other agreement delivered by such Member (or its Affiliates) to the Company or any other Member (or its Affiliates) but shall be deemed distributed or paid, as the case may be, to such Member for purposes of this Agreement.

6.3. <u>Distributions in Kind.</u> Subject to the approval of the Management Committee, Distributable Funds may be distributed to the Members in cash, or in kind, and the Members may be compelled to accept a distribution of any asset in kind even if the percentage of that asset distributed to it exceeds a percentage of that asset that is equal to the percentage in which such Member shares in distributions from the Company. In the case of all assets to be distributed in kind, the amount of the distribution shall equal the net fair market value of the asset distributed as reasonably determined by the Management Committee. In the case of any distribution of publicly traded property, the net fair market value of such property shall be deemed to be the average closing price for such property for the thirty (30) day period immediately prior to the distribution, or if such property has not yet been publicly traded for thirty (30) days, the average closing price of such property for the period prior to the distribution in which the property has been publicly traded.

6.4 <u>Plymouth BCP Distribution.</u> (a) In the event that after any audit the MDBZJGGS LLC actually receives "Qualified Tangible Property" tax credits under the New York State Brownfield Program (collectively "**Gross BCP Credits**"), sixty (60) days after receipt of such Gross BCP Credits, Plymouth shall receive a cash distribution from the Company equal to fifty percent (50%) of such Gross BCP Credits less a deduction for the following sums: (1) Federal Income Taxes; and (2) the costs expended on curing and resolving any violations of Environmental Law on or originating from the Properties, including, but not limited to, those related to wetlands, wetland adjacent areas, surface waters, stormwater discharges and hazardous, regulated and solid waste (which costs shall include without limitation legal, engineering/consulting, government oversight and fines, fees and penalties) (the "**Plymouth BCP Distribution**").

(b) Notwithstanding anything in this Agreement to the contrary, prior to the payment in full of the Plymouth BCP Distribution, in conjunction with any sale or transfer of all or substantially all of the Properties and/or the Company (as applicable) MDBZJGGS LLC must retain a right to receive not less than fifty percent (50%) of the Gross BCP Credits to which MDBZJGGS LLC is entitled with respect to the Properties from such purchaser or transferee. If and when received, the Company shall be obligated to use those Gross BCP Credits retained in accordance with the prior sentence first to make the balance of the Plymouth BCP Distribution, and the balance (if any) shall be paid pro rata to the Members.

(c) In the event that the Company does not have sufficient funds to pay the Plymouth BCP Distribution and must make a call for additional capital in accordance with Section 5.2, such additional capital will be contributed solely by Dynamic, and Namdar shall have no obligation to contribute any amount of additional capital in connection with the Plymouth BCP Distribution.

-8-

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 209 of 300
FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 04/06/2025

6.5     Redemption of a Portion of the Plymouth Interest.

(a)     Provided and upon the express condition that the Plymouth Required Payment shall be paid in full to Plymouth, whether by distributions of Net Cash Flow from the Company in accordance with Section 6.1 and/or by Supplemental Payments, on or before December 31st 2022 (the "**Redemption Date**"), **time being of the essence**, the Company shall automatically (and without notice to, or further action by, any Member or other party) redeem (for no additional consideration or compensation) 2.5% of Plymouth's aggregate Membership Interest in the aggregate and distribute such Membership Interest to Dynamic (the "**Redemption**"). Following the Initial Redemption (if at all), Plymouth shall own a 2.5% Membership Interest in the Company and Dynamic shall own a _____% Membership Interest in the Company, and each of their respective capital accounts shall be modified accordingly to reflect such redemption. Notwithstanding the foregoing, in the event that the Initial Redemption shall occur, Plymouth agrees to provide such reasonable cooperation as required by the Company or the Manager and to execute such other and further documentation as reasonably required by the Company or the Manager shall require to memorialize and/or effectuate the Initial Redemption.

(b)     Notwithstanding the foregoing, in the event that the Redemption does not occur, by the Redemption Date, interest will accrue annually on the Plymouth Required Payment at the Loan Default Rate, and will accrue interest at such rate until the Plymouth Required Payment is made in full.

(c)     In the event that DS Fordham Landing 1 LLC ("**DSFL1**"), an Affiliate of the Company, sells that certain parcel of real property located at and commonly known as 320 West Fordham Road, Bronx, New York ("**La Salla**"), the Plymouth Required Payment shall be made fifteen (15) Business Days after DSFL1 actually receives payment in connection with the sale of La Salla. If payment is not made, the Plymouth Required Payments shall accrue interest at the Loan Default Rate.

(d)     For the avoidance of doubt, in the event that the Plymouth Required Payment is not made in full on or before the Redemption Date, **time being of the essence**, there shall be no redemption of any portion of Plymouth's Membership Percentage in the Company.

Section 7.   Allocations.

7.1.    Allocation of Net Income and Net Losses Other than in Liquidation. Except as otherwise provided in this Agreement, Net Income and Net Losses of the Company for each Fiscal Year shall be allocated among the Members in a manner such that, as of the end of such Fiscal Year and taking into account all prior allocations of Net Income and Net Losses of the Company and all distributions made by the Company through such date, the Capital Account of each Member is, as nearly as possible, equal to the distributions that would be made to such Member pursuant to Section 6 if the Company were dissolved, its affairs wound up and assets sold for cash equal to their book value, all Company liabilities were satisfied, and the net assets of the Company were distributed in accordance with Section 6 immediately after such allocation.

7.2.    Other Allocation Provisions. (a)(i) If there' is a net decrease in "partnership minimum gain" (within the meaning of Regulation § 1.704-2(d)) with respect to a

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 04/06/2025

Company for a Fiscal Year, then there shall be allocated to each Member items of income and gain for that year equal to that Member's share of the net decrease in partnership minimum gain (within the meaning of Treasury Regulations § 1.704-2(g)(2)), subject to the exceptions set forth in Treasury Regulations § 1.704-2(f)(2) and (3). The foregoing is intended to be a "minimum gain chargeback" provision as described in Treasury Regulations § 1.704-2(f) and shall be interpreted and applied in all respects in accordance with that Treasury Regulation.

If during a Fiscal Year there is a net decrease in "partner nonrecourse debt minimum gain" (as determined in accordance with Treasury Regulations § 1.704-2(i)(3)), then, in addition to the amounts, if any, allocated pursuant to the preceding paragraph, any Member with a share of that partner nonrecourse debt minimum gain (determined in accordance with Treasury Regulations § 1.704-2(i)(5)) as of the beginning of the Fiscal Year shall, subject to the exceptions set forth in Treasury Regulations § 1.704-2(i)(4), be allocated items of income and gain for the year (and, if necessary, for succeeding years) equal to that Member's share of the net decrease in the partner nonrecourse debt minimum gain. The foregoing is intended to be the "chargeback of partner nonrecourse debt minimum gain" required by Treasury Regulations § 1.704-2(i)(4) and shall be interpreted and applied in all respects in accordance with that Treasury Regulation.

(b) Notwithstanding any other provision herein to the contrary, no Net Losses (or item of loss or deduction) of the Company shall be allocated to a Member if such allocation would result in a deficit balance in such Member's Capital Account. Such Net Losses (or item of loss or deduction) shall be allocated among the Members whose Capital Account balances are positive in proportion to such positive balances to the extent necessary to reduce the balances of such other Members' positive Capital Accounts to zero, it being the intention of the Members that no Member's Capital Account shall fall below zero while any other Member's Capital Account has a positive balance. For this purpose, a Member's Capital Account shall be increased by the amount, if any, that such Member is obligated (or is deemed to be obligated) to contribute subsequently to the capital of the Company as determined under Regulation §§ 1.704-1(b)(2)(ii)(c) and 1.704-2(g) or otherwise under this Agreement.

(c) Notwithstanding any other provision herein to the contrary, if a Member unexpectedly receives an adjustment, allocation, or distribution described in Regulation §§ 1.704-(b)(2)(ii)(d)(4), (5), or (6), such Member shall be allocated items of income (including gross income) and gain (after the allocations required by Section 7.2(a) hereof but before any other allocation required by this Section 7) in an amount and in a manner sufficient to eliminate any deficit balance in its Capital Account as quickly as possible. For this purpose, a Member's Capital Account shall be increased by the amount, if any, that such Member is obligated (or is deemed to be obligated) to contribute subsequently to the capital of the Company as determined under Treasury Regulations §§ 1.704-1(b)(2)(ii)(c) and 1.704-2(g). This Section 7.2(c) is intended to constitute a "qualified income offset" within the meaning of Treasury Regulations § 1.704-1(b)(2)(ii)(d) and shall be interpreted consistently therewith.

(d) To the extent an adjustment to the adjusted basis of any Company asset pursuant to Section 734(b) or Section 743(b) of the Code is required to be taken into account in determining Capital Accounts pursuant to Regulations § 1.704-1(b)(2)(iv)(m), the amount of such adjustment shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis) and such gain or loss shall be allocated to

-10-

the Members in a manner consistent with the manner in which their Capital Accounts are required to be adjusted pursuant to Regulations § 1.704-1(b)(2)(iv)(m).

(e) To the extent that any item of income, gain, loss or deduction has been specially allocated pursuant to paragraphs (a), (b), (c) or (d) of this Section 7.2 and such allocation is inconsistent with the way in which the same amount otherwise would have been allocated under Section 7.1, subsequent allocations under Section 7.1 shall be made, to the extent possible and without duplication, in a manner which negates as rapidly as possible the effect of all such inconsistent allocations under said paragraph (a), (b), (c) or (d).

(f) Except to the extent otherwise required by the Code and Treasury Regulations, if an Interest in the Company or part thereof is transferred in any Fiscal Year, the items of income, gain, loss, deduction and credit allocable to the Interest in the Company for such Fiscal Year shall be allocated to the Person who held the Interest in the Company on the date such items were realized or incurred by the Company, based upon the closing of the books method of allocation. The record date for admission of new Members to the Company for income tax purposes may be selected by Manager under any reasonable convention consistently applied, and items of taxable income and loss allocated to them based upon the closing of the books method of allocation for the period subsequent to the date of admission.

(g) Nonrecourse deductions of the Company, as defined in Treasury Regulations §1.704-2(b) shall be allocated among the Members in accordance with their respective Percentage Interests. These provisions shall be applied as if all distributions and allocations were made at the end of the Fiscal Year, including distributions of any Available Cash made in a subsequent Fiscal Year.

7.3.    Allocations for Income Tax Purposes. (a)    Subject to Section 7.3(b), the income, gains, losses, deductions and credits of the Company for Federal, state and local income tax purposes shall be allocated in the same manner as the corresponding items entering into the computation of Net Income and Net Losses were allocated pursuant to Sections 7.1 and 7.2.

(b) Code Section 704(c). In accordance with Code Section 704(c) and the Treasury regulations promulgated thereunder, income and loss with respect to any property contributed to the capital of the Company shall, solely for U.S. Federal income tax purposes, be allocated among the Members so as to take account of any variation between the adjusted basis of such property to the Company for U.S. Federal income tax purposes and its Agreed Upon Value at the time of contribution. Such allocation shall be made in accordance with the remedial method set forth in Regulations Section 1.704-3(d).

(c) Any elections or other decisions relating to such allocations (or any allocations required by this Agreement) shall be made by Manager in any manner that reasonably reflects the purpose and intention of this Agreement. Allocations pursuant to this Section 7.3 are solely for purposes of U.S. Federal, state and local income taxes and shall not affect, or in any way be taken into account in computing, any Member's share of Net Income, Net Losses, other items or distributions pursuant to any provisions of this Agreement.

Section 8.    Books, Records, Tax Matters and Bank Accounts.

-11-

Case 7-26-cv-04909 Document 1-1 Filed 06/10/26 Page 212 of 300

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM
NYSCEF DOC. NO. 46 RECEIVED NYSCEF: 04/06/2025

8.1. Books and Records. The books and records of account of the Company, together with all items set forth in Section 1102 of the Act, shall be maintained in accordance with standard accounting principles in the United States, consistently applied, and shall be reconciled to comply with the methods followed by the Company for U.S. Federal income tax purposes, consistently applied. The books and records shall be maintained at the Company's principal office or at a location designated by the Manager, and all such books and records (and the dealings and other affairs of the Company and the Subsidiaries) shall be available to any Member at such location for review, investigation, audit and copying, at such Member's sole cost and expense, during normal business hours on at least twenty-four (24) hours prior notice.

8.2. Reports and Financial Statements. Within ninety (90) days after the end of each taxable year of the Company or as soon as available, the Manager shall cause to be sent to each Person who was an Economic Interest Holder at any time during the taxable year then ended, tax information concerning the Company which is necessary for preparing the Economic Interest Holder's income tax returns for that year. In addition, the Manager shall furnish to the Members such other information, statements, and reports as the Manager shall reasonably determine. The expenses incurred in connection with the preparation of such reports and statements shall be reimbursed by the Company to the Manager (or its Affiliates performing such services).

8.3. Partnership Representative. Dynamic shall serve as the "partnership representative" (within the meaning of Section 6223(a) of the Code, as amended by Title XI of the Bipartisan Budget Act of 2015 (such Title XI, including the corresponding provisions of the Code impacted thereby, and any corresponding provisions of state or local income tax law, as the same may be amended from time to time, the ("**BB Act**")) (any Person so designated as the "partnership representative" is referred to herein as the "**Company Representative**"). The Company Representative is authorized to take such actions and to execute and file all statements and forms on behalf of the Company which may be permitted or required by the applicable provisions of the Code, as amended by the BB Act, or the Treasury Regulations. The Company Representative shall have the sole authority to act on behalf of the Company under the Code, as amended by the BB Act, and in any examinations of the Company's affairs by tax authorities, including administrative and judicial proceedings ("**Tax Proceedings**") brought by other taxing authorities, and the Company and all the Economic Interest Holders shall be bound by the actions taken by the Company Representative in such capacity. In the event of an audit by the Internal Revenue Service, the Manager shall have the right to cause the Company to make an election under Section 6221(b) (if available) or Section 6226 of the Code (as amended by the BB Act and as thereafter amended) with respect to any Company taxable year.

If the Company Representative makes a timely election under Section 6226(a) of the Code (as amended by the BB Act and as thereafter amended), the Company Representative shall furnish to each Economic Interest Holder (or former Economic Interest Holder) for the year under audit a statement reflecting the Economic Interest Holder's (or former Economic Interest Holder's) share of the adjusted items as determined in the notice of final partnership adjustment, and each such Economic Interest Holder (or former Economic Interest Holder) shall take such adjustment into account as required under Section 6226(b) of the Code, as amended by the BB Act, and shall be liable for any related interest, penalty, addition to tax, or additional amounts.

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM

If and to the extent the Company Representative does not elect to have Section 6226 of the Code (as amended by the BB Act and as thereafter amended) apply to any adjustment, the Company shall make any payments of assessed amounts under Section 6221 of the Code (as amended by the BB Act and as thereafter amended) and shall allocate any such assessment among the current or former Economic Interest Holders of the Company for the "reviewed year" to which the assessment relates in a manner that reflects the current or former Economic Interest Holders' respective interests in the Company for that reviewed year based on such Economic Interest Holder's share of such assessment as would have occurred if the Company had amended the tax returns for such reviewed year and such Economic Interest Holder incurred the assessment directly (using the tax rates applicable to the Company under Section 6225(b) of Code, as amended by the BB Act). To the extent that the Company is assessed amounts under Section 6221(a) of the Code, as amended by the BB Act, each current or former Economic Interest Holder to which this assessment relates shall pay to the Company such Economic Interest Holder's share (as determined by the Company Representative, in its sole good faith discretion and after consulting with the Company's tax advisors) of the assessed amounts, including such Economic Interest Holder's share of any additional accrued interest assessed against the Company relating to such Economic Interest Holder's share of the assessment, upon thirty (30) days of written notice from the Company Representative requesting the payment.

The Company Representative shall, within fifteen (15) Business Days of receipt thereof, forward to the Members a copy of any correspondence relating to the Company received from the Internal Revenue Service which relates to matters that are of material importance to the Company and/or its Members. The Company Representative shall, within fifteen (15) Business Days thereof, advise each Member in writing of the substance of any conversation held with any representative of the Internal Revenue Service which relates to matters that are of material importance to the Company and/or its Members. Any expenses and fees incurred by the Company Representative in connection with any Tax Proceedings, including costs of retaining accountants, lawyers and/or other professionals, shall be expenses of the Company. Any resignation by Dynamic as Company Representative shall require at least thirty (30) days advance written notice to the Members. In such event, a new Company Representative shall be appointed by the Namdar Member.

The provisions regarding limitation of liability and indemnification set forth in Section 14 shall be fully applicable to the Company Representative in its capacity as such. The provisions contained in this Section 8.3 shall survive the dissolution of the Company and the withdrawal of any Economic Interest Holder or the assignment of any Economic Interest Holder's interest in the Company.

8.4. **Bank Accounts**. All funds of the Company are to be deposited in the Company's name in such bank account or accounts as may be designated by the Manager. Funds expended by the Company in accordance with the Annual Business Plan shall be withdraw on the signature of the Dynamic Representative. Funds expended by the Company that are not in accordance with the Annual Business Plan shall be withdrawn on the signature of both the Namdar Representative and the Dynamic Representative.

8.5. **Tax Returns**. The Manager shall prepare or cause to be prepared (in consultation with ) all income and other tax returns of the Company and the Subsidiaries required by applicable law and shall submit such returns to the Members for their review, comment and

-13-

approval at least thirty (30) days prior to the due date thereof (but in no event later than March 15 of each year for the preceding Fiscal Year) and, upon receipt of such approval, shall thereafter cause the same to be filed in a timely manner (including extensions). No later than June 1 of each year with respect to the preceding Fiscal Year, the Manager shall deliver or cause to be delivered to each Member a copy of the tax returns for the Company and each Subsidiary with respect to such Fiscal Year, together with such information with respect to the Company and such Subsidiaries as shall be necessary for the preparation by each Member of its U.S. Federal and state income or other tax and information returns.

<u>Section 9.</u>   <u>Management and Operations.</u>

9.1.   <u>Management.</u>   Subject to the terms of this Agreement, the business operations and affairs of the Company shall be managed exclusively by the Manager, which shall have the authority to exercise all of the powers and privileges granted to a "manager" by the Act, any other law or this Agreement, including, without limitation, all powers which a limited liability company may possess under the Act, together with any powers incidental thereto, and to take any other action not prohibited under the Act or other applicable law, so far as such powers or actions are necessary or convenient or related to the conduct, promotion or attainment of the business, purposes or activities of the Company. The Manager shall be DS 3.

(a) Notwithstanding the foregoing or anything in this Agreement to the contrary, no act shall be taken, sum expended, decision made or obligation incurred by the Company (and the Company shall not permit any act to be taken, sum expended, decision made or obligation incurred by any Subsidiary) with respect to Major Decisions (as set forth on Exhibit C) without the express approval of the Management Committee and all Major Decisions shall be made solely by the Management Committee after presentation by any Representative to the Management Committee of such Major Decision.

(b) The provisions of this Agreement regarding the management and governance of the Company shall, to the fullest extent legally permissible, apply as well to the management and governance of the Subsidiaries, whether such Subsidiaries are managed or controlled directly or indirectly by the Company as a member, partner, stockholder or otherwise. Any action to be taken by any Subsidiary shall be construed as an action taken by the Company and shall be subject to the same rights and limitations granted and imposed on the Members under this Agreement.

(c) The Manager may appoint individuals to act on behalf of the Company or any Subsidiary with such titles and authority as determined from time to time by the Manager. Each of such individuals shall hold office until his or her death, resignation or removal by either of the Manager. Manager shall have the right, at any time in its sole discretion, upon written notice to such Person, to reduce, eliminate or modify such authority granted to such Person or to relieve such Person of such authority and exercise such authority itself or assist or grant such authority to another Person.

9.2.   <u>Management Committee.</u>   (a)   The Members hereby establish a management committee (the "**Management Committee**"). The Management Committee shall consist of two (2) individuals (the "**Representatives**") as follows: (i) Namdar shall be entitled to

-14-

designate one (1) representative to represent Namdar (the "**Namdar Representative**"); and (ii) Dynamic shall be entitled to designate one (1) representative to represent Dynamic (the "**Dynamic Representative**" and, together with the Namdar Representative, the "**Representatives**"). The initial Representatives are set forth on Exhibit A.

(b)    Each Representative on the Management Committee shall hold office until his or her death, resignation or removal at the pleasure of the Person that appointed him or her. If a vacancy occurs on the Management Committee, the Person with the right to appoint and remove such vacating Representative shall appoint his or her successor. A Person shall lose its right to have Representatives on the Management Committee, and its Representatives on the Management Committee shall be deemed to be automatically removed, as of the date on which such Member ceases to be a Member (unless such Member ceases to be a Member pursuant to a Transfer of its entire Interest as permitted hereunder to a transferee which is admitted to the Company as a member pursuant to the terms herein, in which event such Member's appointment rights (if any) shall be exercised by such transferee).

(c)    The Management Committee's sole function under this Agreement shall be to vote in respect of Major Decisions and any Other MC Decisions. The Management Committee shall meet at such times as may be necessary for the conduct of the Management Committee's business on at least five (5) Business Days prior written notice of the time and place of such meeting given by any Representative to all of the other Representatives. Representatives may waive in writing the requirements for notice before, at or after a special meeting, and attendance at such a meeting without objection by a Representative shall be deemed a waiver of such notice requirement. No such meeting shall be scheduled on a weekend, national holiday or religious holiday.

(d)    The Namdar Representative and the Dynamic Representative shall be required to constitute a quorum for a meeting of the Management Committee. If any meeting of the Management Committee shall fail to achieve a quorum by reason of the absence of the Namdar Representative, then the Dynamic Representative may adjourn such meeting and provide notice to Namdar that such adjourned meeting has been rescheduled for a date not less than three (3) Business Days following such adjourned meeting. If the rescheduled meeting of the Management Committee shall fail to achieve a quorum by reason of the absence of the Namdar Representative, then, notwithstanding the first sentence of this paragraph, the rescheduled meeting shall be deemed to have achieved a quorum and no further vote by any Namdar Representative shall be required to approve any action presented to the Management Committee during such rescheduled meeting; (ii) If any meeting of the Management Committee shall fail to achieve a quorum by reason of the absence of the Dynamic Representative, then the Namdar Representative may adjourn such meeting and provide notice to Dynamic that such adjourned meeting has been rescheduled for a date not less than three (3) Business Days following such adjourned meeting. If the rescheduled meeting of the Management Committee shall fail to achieve a quorum by reason of the absence of the Dynamic Representative, then, notwithstanding the first sentence of this paragraph, the rescheduled meeting shall be deemed to have achieved a quorum and no further vote by the Dynamic Representative shall be required to approve any action presented to the Management Committee during such rescheduled meeting;

-15-

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 216 of 300

(e) Each of the Representatives shall be entitled to cast one (1) vote on any matter that comes before the Management Committee. Except as provided in Section 9.4 or otherwise specifically set forth herein, no action by the Management Committee of any matter shall be the valid, binding action of the Management Committee unless such action is in accord with (whether for or against) the affirmative vote (including votes cast by proxy) of both Representatives.

(f) If the Management Committee cannot reach agreement (in accordance with the requirements of subparagraphs (a) through (e) above, inclusive) with respect to a Major Decision or Other MC Decision after such Major Decision or Other MC Decision was presented by a Representative to the Management Committee for approval (such deadlocked Major Decision or Other MC Decision, a "**Deadlocked Major Decision**"), the Representatives will attempt in good faith to resolve such Deadlocked Major Decision for ten (10) Business Days; provided, however, that if the subject of the Deadlocked Major Decision requires greater urgency, then the Representatives will use such lesser period of time as they reasonably deem appropriate. During the Lockout Period, if the Representatives cannot agree on any Deadlocked Major Decision, such Deadlocked Major Decision shall be determined by binding arbitration in New York, New York, before an arbitrator appointed by JAMS. The arbitration will be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures and in accordance with the Expedited Procedures in those Rules. After the expiration of the Lockout Period, such Deadlocked Major Decision will not be resolved by arbitration and any Representative may provide written notice to the other Representatives exercising the Buy/Sell procedures set forth in Exhibit D. Notwithstanding the preceding sentence, no Member nor Representative shall be permitted to exercise the Buy/Sell procedures with respect to a Deadlocked Major Decision involving utilization or leasing of the Properties for industrial purposes pursuant to Section 9.10 hereof.

(g) At the request of either Representative, any meeting of the Management Committee may be held by conference telephone call, video conference or through similar communications equipment by means of which all persons participating in the meeting can communicate with each other. Participation in a telephonic and/or video conference meeting held pursuant to this Section shall constitute presence in person at such meeting.

(h) Any action required or permitted to be taken at a meeting of the Management Committee may be taken without a meeting, without prior notice and without a vote if a consent or consents in writing, setting forth the action so taken, shall be signed unanimously by the Representatives. All consents shall be filed with the minutes of the proceedings of the Management Committee.

(i) Except as otherwise expressly provided in this Agreement, none of the Representatives (in their capacities as members of the Management Committee only), the Manager or the Members shall have any duties or liabilities to the Company or any other Member (including any fiduciary duties), whether or not such duties or liabilities arise or exist at law or in equity, and each Member hereby expressly waives any such duties or liabilities. This Section shall not eliminate or limit the liability of such Representatives, Manager, or the Members (A) for acts or omissions that involve fraud, intentional misconduct or a knowing and culpable violation of law, (B) for any intentional breach of this Agreement, or (C) for any

-16-

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 04/06/2025

transaction not permitted or authorized under or pursuant to this Agreement from which such Representative, Manager or Member derived a personal benefit (that is separate from its interest in Distributions) unless approved in accordance with this Agreement (including, without limitation, Section 9.4). Notwithstanding any duty (including any fiduciary duty) that might otherwise exist at law or in equity, (i) none of the Representatives (in their capacities as members of the Management Committee only), the Manager or the Members may permit or authorize a transaction under or pursuant to this Agreement from which such Representative, Manager or Member derived a personal benefit (that is separate from its interest in Distributions) unless approved in accordance with this Agreement (including, without limitation, Section 9.4), and (ii) if such approval is obtained, such Representative's, Manager's or Member's duty (including any fiduciary duty) shall be completely satisfied with respect to such transaction. Notwithstanding any duty (including any fiduciary duty) that might otherwise exist at law or in equity, the duty of care of each of such Representatives (in their capacities as members of the Management Committee only), the Manager and the Members is to act in good faith and to not act with fraud, intentional misconduct or a knowing and culpable violation of law. Except as provided in this Agreement, notwithstanding any duty (including any fiduciary duty) that might otherwise exist at law or in equity, whenever in this Agreement a Representative of a Member and/or a Member is permitted or required to make a decision affecting or involving the Company, any Member or any other Person, such Representative and/or such Member shall be entitled to consider only such interests and factors as he, she or it desires, including a particular Member's interests, and shall, to the fullest extent permitted by applicable law, have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any Member. Without limiting the forgoing, each Member acknowledges that the exercise of the rights of any Member under this Agreement and the taking of action on behalf of the Company or with respect to the Properties (including, without limitation, with respect to the sale or other disposition of all or any portion of the Properties) may arise at a time when current market conditions and other factors may be materially disadvantageous to the Company or any other Member.

(j) Except as provided in this Agreement, the liability of Managers and the Representatives for the debts, obligations or liabilities of the Company, in their capacity as such, shall be limited to the fullest extent permitted by the Act. Specifically, and without limitation, each of them shall have no liability, personal or otherwise, for any debts, obligations or liabilities of the Company, whether arising in tort, contract or otherwise, solely by reason of being Manager or Representative or acting or omitting to act in such capacities or participating in any capacity in the conduct of the business of the Company.

(k) To the fullest extent permitted by the Act, any liability of Manager or Representative to the Company or to the Members for any breach of duty (other than as set forth in Section 9.2(j)) in such capacity is hereby eliminated.

9.3. Business Plans. No later than thirty (30) days prior to the end of the then current Fiscal Year, the Manager shall prepare (or cause to be prepared), and shall deliver to the Management Committee for approval, the Annual Business Plan for the development of the Project during the next calendar year (except for the Initial Business Plan, which is set forth in Exhibit E attached hereto). The Annual Business Plan may be updated at such times as may be reasonably determined by Manager. Any material updates of the Annual Business Plan shall require the

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 218 of 300

approval of the Management Committee. The Initial Business Plan and any other annual business plan approved by the Management Committee is referred to herein as the "**Annual Business Plan**". If any Annual Business Plan is not approved before the beginning of any calendar year, the Annual Business Plan for the previous calendar year (or the Initial Business Plan, if no subsequent Annual Business Plan has been approved) shall remain in effect until an Annual Business Plan is approved. In such event, if such Annual Business Plan for the previous calendar year sets forth any discretionary expense for such calendar year but does not specify the amount of such expense for the following calendar year, such expense shall be increased by 3% per year until an Annual Business Plan is approved; expenses for non-discretionary expenses, including, but not limited to, real estate taxes, insurance, and any non-discretionary expenses and obligations due pursuant to any agreement previously entered by the Company or any Subsidiary, shall be increased as needed to satisfy such expenses or obligations.

9.4.    Affiliate Transactions; Fees. (a) Except as provided in Sections 9.4(b) and 9.4(c) below, no agreement or transaction shall be entered into by the Company or any Subsidiary with a Member or any Affiliate of a Member and no decision shall be made in respect of any such agreement or transaction (including, without limitation, the entering into, enforcement or termination thereof) or any other matter relating to any dealings between the Company or any Subsidiary and such Member or Affiliate unless such agreement, transaction or decision shall have been approved in writing by the Management Committee acting without the Representative or Representatives appointed by the Member which has (or whose Affiliate of such Member has) such interest in such agreement, transaction or other matter. Without limiting the foregoing, but subject to Sections 9.4(b) and 9.4(c) below, any such agreement, transaction or other matter shall be on terms and conditions at least as favorable to the Company or such Subsidiary, as applicable, as the terms and conditions which would be available in an arm's length transaction with a Person which is not an Affiliate, and the terms and conditions of such agreement, transaction or other matter shall be fully disclosed by the interested Member and the Company to all of the Representatives and the Management Committee prior to the execution, delivery and/or consummation thereof and there shall be a vote by the Management Committee thereon in accordance with the terms of this paragraph.

(b) The Members hereby agree that none of the following shall constitute a breach of Section 9.4(a) (provided the same are duly authorized in accordance with this Agreement): (i) the Company or a Subsidiary entering into the Development Agreement (and the payment of the Development Fees payable thereunder), (ii) the Company or a Subsidiary paying the fees described in Section 9.4(c) below, and (iii) the Members (or Affiliates, if applicable) making loans to the Company (and the repayment by the Company of such loans) in accordance with the terms provided herein. Each Member acknowledges that the Members intend for the Company or a Subsidiary to enter into the Development Agreement on terms customary to similarly-situated companies, which shall include the Development Fee, as described in Section 9.4(c) below.

(c) The Members hereby approve the following ancillary agreements and fees:

(1)    In connection with the development of the Properties, the Company (or a subsidiary) has entered into a Development Agreement (the "**Development Agreement**") with the Manager, which Development Agreement shall provide for the payment to the

-18-

Case 7-26-cv-04909 Document 1-1 Filed 06/10/26 Page 219 of 300

Manager of a monthly developer fee (a "**Development Fee**") of One Hundred and Fifty Six Thousand Two Hundred and Fifty Dollars ($156,250.00), which Development Fee shall be paid monthly until November 24, 2023 (the "**Development Fee Period**"). The Development Fee shall be paid to the Manager out of the funds received by the Company from Namdar as Namdar' s Initial Capital Contribution.

(2)    If there is a final unappealable denial of the Rezoning Certification within the Development Fee Period, no further Development Fees will be paid and all amounts of Development Fee paid to the Manager will be credited to Namdar's Capital Account in the Company as set forth in (4) below.

(3)    During the Development Fee Period, if the Rezoning occurs or a sale of the Land takes place, the Company shall pay all accrued but unpaid Development Fee through the date of such Rezoning or sale, and no further Development Fee will be paid to the Manager.

(4)    After the Development Fee Period, if the Rezoning Certification has been withdrawn or denied in a final, non-appealable decision, no further Development Fee will be paid to the Manager and all amounts of Development Fee paid, will have a dilutive effect on the equity position of Dynamic, which said diluted percentage shall be credited to the Namdar Equity/membership interest. For example, Namdar currently has a 57.14% equity interest in the property based on a total project investment of $35,000,000 and an initial capital investment of $20,000,000. In the event that the Development Fee to be credited to Namdar is in the sum of $3,750,000.00, same represents 10.71% of the total investment in the Company. As such Namdar's membership interest would be increased 10.71% to 67.85% and thereafter diluted by the 30% promote fee leaving Namdar a diluted 47.495% equity interest.

9.5.    Other Activities. Except as provided in Section 9.5(b), neither the Company nor any Member (or any Affiliate of any Member) shall have any right by virtue of this Agreement either to participate in or to share in any other now existing or future ventures, activities or opportunities of any of the other Members or their Affiliates, or in the income or proceeds derived from such ventures, activities or opportunities.

9.6.    Limitation on Actions of Members; Binding Authority. Other than the Manager, acting in its capacity as the Manager of the Company, no Member shall, without the prior written consent of Manager, take any action on behalf of, or in the name of, or otherwise bind the Company, or enter into any contract, agreement, commitment or obligation binding upon the Company, or, in its capacity as a Member, perform any act in any way relating to the Company or the Company's assets, except in a manner and to the extent specifically authorized by the provisions of this Agreement.

. The Members acknowledge and agree that the Company may be restructured as a tenancy-in-common to transfer to each direct or indirect Member a direct interest in each of the Properties, such that each direct or indirect Member may utilize IRC Section 1031 Tax Deferred Exchange for such party's benefit. Each Member agrees to assist and cooperate with the other Members and the Company in such exchange, provided that no Member shall incur liability, cost or expense in

-19-

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM   INDEX NO. 850030/2025
NYSCEF DOC. NO. 46   RECEIVED NYSCEF: 04/06/2025

connection with another Member's exchange and will execute any and all documents as are reasonably necessary in connection with such exchange. The Members each hereby agree that each Member shall have the right to cause the Company to make such an election, and, to the extent feasible, such election shall be made to cause only the electing Member's Interest to be converted to a direct tenancy-in-common interest in such Property.

9.8. FCPA/OFAC. (a) In compliance with the Foreign Corrupt Practices Act, each Member will not, and will ensure that its officers, directors, employees, shareholders, members, agents and Affiliates, acting on its behalf or on the behalf of the Company or any Subsidiary or Affiliates of the foregoing do not, for a corrupt purpose, offer, directly or indirectly, promise to pay, pay, promise to give, give or authorize the paying or giving of anything of value to any official representative or employee of any government agency or instrumentality, any political party or officer thereof or any candidate for office in any jurisdiction, except for any facilitating or expediting payments to government officials, political parties or political party officials the purpose of which is to expedite or secure the performance of a routine governmental action by such government officials or political parties or party officials. The term "routine governmental action" for purposes of this provision shall mean an action which is ordinarily and commonly performed by the applicable government official in (i) obtaining permits, licenses, or other such official documents which such Person is otherwise legally entitled to; (ii) processing governmental papers; (iii) providing police protection, mail pick-up and delivery or scheduling inspections associated with contract performance or inspections related to transit of goods across country; (iv) providing phone service, power and water supply, loading and unloading of cargo, or protecting perishable products or commodities from deterioration; or (v) actions of a similar nature. The term routine governmental action does not include any decision by a government official whether, or on what terms, to award new business to or to continue business with a particular party, or any action taken by an official involved in the decision making process to encourage a decision to award new business to or continue business with a particular party.

(b) Each Member agrees to notify immediately the other Member of any request that such Member or any of its officers, directors, employees, shareholders, members, agents or Affiliates, acting on its behalf, receives to take any action that may constitute a violation of the Foreign Corrupt Practices Act.

(c) None of the Members or any of their Affiliates, nor any of their respective members, and none of their respective officers or directors is, nor during the term of this Agreement while such Member is a Member, will they become, a person or entity with whom U.S. persons or entities are restricted from doing business under regulations of the Office of Foreign Asset Control ("**OFAC**") of the Department of the Treasury (including those named on OFAC's Specially Designated Blocked Persons List) or under any U.S. statute, executive order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit or Support Terrorism) or other governmental action and is not engaged and, during the term of this Agreement, will not, engage in any dealings or transactions with or be otherwise associated with such persons or entities.

9.9. Development Agreement. The Members acknowledge and agree that upon the Company entering into any development agreement for the Properties, this Agreement will be modified accordingly.

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM INDEX NO. 850030/2025
NYSCEF DOC. NO. 46                                                    RECEIVED NYSCEF: 04/06/2025

9.10.    Industrial Uses. Namdar and Dynamic both acknowledge and agree that the company is proceeding to have the Properties rezoned for mixed commercial and residential use. Prior to the Rezoning, if either party seeks to utilize the Properties for industrial purposes (which it is currently zoned for) the decision to allow such use and the stabilized cap rate of any such lease will be a Major Decision.

Section 10.    Confidentiality.    (a)   Any information relating to the business, operation or finances of a Member or the Company which are proprietary to, or considered proprietary by, such Member or the Company; and all information in tangible form (plans, writings (including, without limitation, customer lists and marketing materials), drawings, computer software and programs, etc.) or provided to or conveyed orally or visually to a receiving Member (including, without limitation, any marketing techniques) shall be presumed to be confidential information (collectively referred to as "**Confidential Information**"). Each Member and Representative agrees:  (i) not to disclose such Confidential Information to any Person except to those of its employees or representatives who need to know such Confidential Information in connection with the conduct of the business of the Company and who have agreed to maintain the confidentiality of such Confidential Information and (ii) neither it nor any of its employees or representatives will use the Confidential Information for any purpose other than in connection with the conduct of the business of the Company; provided that nothing herein shall prevent any Member from disclosing any portion of such Confidential Information (1) to the Company and allowing the Company to use such Confidential Information in connection with the Company's business, (2) pursuant to judicial order or in response to a governmental inquiry, by subpoena or other legal process, but only to the extent required by such order, inquiry, subpoena or process, and only after reasonable notice to the original divulging Member, (3) as necessary or appropriate in connection with, or to prevent the audit by, a governmental agency of the accounts of any of the Members, (4) in order to initiate, defend or otherwise pursue legal proceedings between the parties regarding this Agreement, (5) as necessary in connection with a Transfer of an Interest permitted hereunder, provided the recipient agrees to maintain the confidentiality of such Confidential Information, (6) to a Member's respective attorneys or accountants or other representatives, (7) as, and solely to the extent, required by applicable laws or applicable rules and regulations of a stock exchange, provided notice of such disclosure is first given to Manager prior to such disclosure, or (8) to any existing and prospective, direct or indirect, investors, lenders and other capital sources, provided the recipient agrees to maintain the confidentiality of such Confidential Information. Confidential Information shall not include information (1) which is or hereafter becomes public, other than by breach of this Agreement, (2) which was already in the receiving Member's possession prior to any disclosure of the Confidential Information to the receiving Member by the divulging Member, or (3) which has been or is hereafter obtained by the receiving Member from a third party not bound by any confidentiality obligation with respect to the Confidential Information.

(b)   All Confidential Information shall be protected by the receiving Member and the Company from disclosure with the same degree of care with which the receiving Member protects its own Confidential Information from disclosure but in any event using no less than reasonable care.  The Company, the Members and their Affiliates shall each act to safeguard the secrecy and confidentiality of, and any proprietary rights to, the Confidential Information of the Company and the Members, except to the extent such information may be disclosed pursuant to Section 10(a) above.  Each Member and the Company may, from time to

-21-

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 222 of 300

time, provide the other Members written notice of any Confidential Information which is subject to this Section.

(c) References in this Section to the Company shall include any Subsidiary of the Company.

### Section 11. Representations and Warranties.

11.1. <u>In General</u>. As of the date hereof, each of the Members hereby makes each of the representations and warranties applicable to such Member as set forth in Section <u>11.2</u>. Such representations and warranties shall survive the execution of this Agreement.

11.2. <u>Representations and Warranties</u>. Each Member hereby represents and warrants that:

(a) <u>Due Incorporation or Formation; Authorization of Agreement</u>. Such Member is a corporation duly organized or a partnership or limited liability company duly formed, validly existing and in good standing under the laws of the jurisdiction of its incorporation or formation and has the corporate, partnership or company power and authority to own its property and carry on its business as owned and carried on at the date hereof and as contemplated hereby. Such Member is duly licensed or qualified to do business and in good standing in each of the jurisdictions in which the failure to be so licensed or qualified would have a material adverse effect on its financial condition or its ability to perform its obligations hereunder. Such Member has the corporate, partnership or company power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and the execution, delivery and performance of this Agreement has been duly authorized by all necessary corporate, partnership or company action. This Agreement constitutes the legal, valid and binding obligation of such Member.

(b) <u>No Conflict with Restrictions; No Default</u>. Neither the execution, delivery or performance of this Agreement nor the consummation by such Member (or any of its Affiliates) of the transactions contemplated hereby (i) conflicts or will conflict with, violate or result in a breach of (or has conflicted with, violated or resulted in a breach of) any of the terms, conditions or provisions of any law, regulation, order, writ, injunction, decree, determination or award of any court, any governmental department, board, agency or instrumentality, domestic or foreign, or any arbitrator, applicable to such Member or any of its Affiliates, (ii) conflicts or will conflict with, violate, result in a breach of or constitute a default under (or has conflicted with, violated, resulted in a breach of or constituted a default under) any of the terms, conditions or provisions of the articles of incorporation, bylaws, partnership agreement or operating agreement of such Member or any of its Affiliates or of any material agreement or instrument to which such Member or any of its Affiliates is a party or by which such Member or any of its Affiliates is or may be bound or to which any of its properties or assets is subject, (iii) conflicts or will conflict with, violate, result in (or has conflicted with, violated or resulted in) a breach of, constitute (or has constituted) a default under (whether with notice or lapse of time or both), accelerate or permit the acceleration of (or has accelerated) the performance required by, give (or has given) to others any material interests or rights or require any consent, authorization or approval under any indenture, mortgage, lease, agreement or instrument to which such Member

-22-

or any of its Affiliates is a party or by which such Member or any of its Affiliates or any of their properties or assets is or may be bound, or (iv) results or will result (or has resulted) in the creation or imposition of any lien upon any of the properties or assets of such Member or any of its Affiliates.

(c) <u>Governmental Authorizations</u>. Any registration, declaration or filing with, or consent, approval, license, permit or other authorization or order by, or exemption or other action of, any governmental, administrative or regulatory authority, domestic or foreign, that was or is required in connection with the valid execution, delivery, acceptance and performance by such Member under this Agreement or consummation by such Member (or any of its Affiliates) of any transaction contemplated hereby has been completed, made or obtained on or before the date hereof.

(d) <u>Litigation</u>. There are no actions, suits, proceedings or investigations pending, or, to the knowledge of such Member or any of its Affiliates, threatened against or affecting such Member or any of its Affiliates or any of their properties, assets or businesses in any court or before or by any governmental department, board, agency or instrumentality, domestic or foreign, or any arbitrator which could, if adversely determined (or, in the case of an investigation could lead to any action, suit or proceeding which if adversely determined) could reasonably be expected to materially impair such Member's ability to perform its obligations under this Agreement or to have a material adverse effect on the consolidated financial condition of such Member; such Member or any of its Affiliates has not received any currently effective notice of any default, and such Member or any of its Affiliates is not in default, under any applicable order, writ, injunction, decree, permit, determination or award of any court, any governmental department, board, agency or instrumentality, domestic or foreign, or any arbitrator which could reasonably be expected to materially impair such Member's (or any of its Affiliate's) ability to perform its obligations under this Agreement or to have a material adverse effect on the consolidated financial condition of such Member.

(e) <u>Investigation</u>. Such Member is acquiring its Interest based upon its own investigation, and the exercise by such Member of its rights and the performance of its obligations under this Agreement will be based upon its own investigation, analysis and expertise. Such Member is a sophisticated investor possessing an expertise in analyzing the benefits and risks associated with acquiring investments that are similar to the acquisition of its Interest.

(f) <u>Broker</u>. Except for Meridian Capital Group LLC, no broker, agent or other person acting as such on behalf of such Member was instrumental in consummating this transaction and no conversations or prior negotiations were had by such party with any broker, agent or other such person concerning the transaction that is the subject of this Agreement.

(g) <u>Investment Company Act</u>. Neither such Member nor any of its Affiliates is, nor will the Company as a result of such Member holding an interest therein be, an "investment company" as defined in, or subject to regulation under, the Investment Company Act of 1940, as amended.

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 224 of 300

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM
NYSCEF DOC. NO. 46 RECEIVED NYSCEF: 04/06/2025

(h) <u>Securities Matters</u>. (i) None of the Interests are registered under the Securities Act or any state securities laws. Such Member understands that the offering, issuance and sale of the Interests are intended to be exempt from registration under the Securities Act, based, in part, upon the representations, warranties and agreements contained in this Agreement. Such Member is an "accredited investor" as such term is defined in Rule 501 of Regulation D promulgated under the Securities Act.

(i) Neither the Securities and Exchange Commission nor any state securities commission has approved the Interests or passed upon or endorsed the merits of the offer or sale of the Interests. Such Member is acquiring the Interests solely for such Member's own account for investment and not with a view to resale or distribution thereof in violation of the Securities Act.

(ii) Such Member is unaware of, and in no way relying on, any form of general solicitation or general advertising in connection with the offer and sale of the Interests, and no Member has taken any action which could give rise to any claim by any person for brokerage commissions, finders' fees (without regard to any finders' fees payable by the Company directly) or the like relating to the transactions contemplated hereby.

(iii) Such Member is not relying on the Company or any of its officers, directors, employees, advisors or representatives with regard to the tax and other economic considerations of an investment in the Interests, and such Member has relied on the advice of only such Member's Advisors.

(iv) Such Member understands that the Interests may not be sold, hypothecated or otherwise disposed of unless subsequently registered under the Securities Act and applicable state securities laws, or an exemption from registration is available. Such Member agrees that it will not attempt to Transfer all or any portion of the Interests in violation of this Agreement.

(v) Such Member has adequate means for providing for its current financial needs and anticipated future needs and possible contingencies and emergencies and has no need for liquidity in the investment in the Interests.

(vi) Such Member, or its direct or indirect members, partners or shareholders, as applicable, has significant prior investment experience, including investment in non-listed and non-registered securities. Such Member is knowledgeable about investment considerations and has a sufficient net worth to sustain a loss of such Member's entire investment in the Company in the event such a loss should occur. Such Member's overall commitment to investments which are not readily marketable is not excessive in view of such Member's net worth and financial circumstances and the purchase of the Interests will not cause such commitment to become excessive. The investment in the Interests is suitable for such Member.

-24-

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 225 of 300

(vii) Such Member represents to the Company that the information contained in this subparagraph (h) and in all other writings, if any, furnished to the Company with regard to such Member (to the extent such writings relate to its exemption from registration under the Securities Act) is complete and accurate and may be relied upon by the Company in determining the availability of an exemption from registration under Federal and state securities laws in connection with the sale of the Interests.

<u>Section 12.</u>    <u>Sale, Assignment, Transfer or other Disposition.</u>

12.1.    <u>Prohibited Transfers.</u>  Except as otherwise provided in this Section 12 or approved in writing by the Management Committee, no Member shall (i) Transfer, directly or indirectly, all or any part of its Interest (whether legal or beneficial) in the Company or (ii) permit any Transfer, directly or indirectly of all or any part of any interest in such Member, and any attempt to so Transfer such Interest or such interest in a Member (and such Transfer) in violation of this Section <u>12.1</u> shall be null and void and of no effect.

12.2.    <u>Permitted Transfers.</u>

(a)  <u>Dynamic Permitted Transfers.</u>

(1)    Dynamic may Transfer its Interests in the Company at any time to any Dynamic Permitted Transferee provided such Person remains a Dynamic Permitted Transferee at all times while such Person holds such Interests.  If any such Person subsequently ceases to be a Dynamic Permitted Transferee while such Person holds such Interests, such Person shall, before ceasing to be a Dynamic Permitted Transferee, Transfer such Interests to Dynamic or a Dynamic Permitted Transferee.  Any failure to comply with the immediately preceding sentence will result in such cessation being a non-permitted Transfer.

(2)    Nothing in this Agreement shall restrict any indirect Transfers of interests in Dynamic so long as following such Transfer no Dynamic Change of Control shall have occurred. Dynamic shall have the right to interpose a new entity between Dynamic and the Company, following which the Dynamic Change of Control requirement shall apply to such new entity instead of Dynamic.

(b)  <u>Namdar Permitted Transfers.</u>

(1)    Namdar may Transfer its Interests in the Company at any time to any Namdar Permitted Transferee provided such Person remains a Namdar Permitted Transferee at all times while such Person holds such Interests.  If any such Person subsequently ceases to be a Namdar Permitted Transferee while such Person holds such Interests, such Person shall, before ceasing to be a Namdar Permitted Transferee, Transfer such Interests to Namdar or a Namdar Permitted Transferee.  Any failure to comply with the immediately preceding sentence will result in such cessation being a non-permitted Transfer.

(2)    Nothing in this Agreement shall restrict any indirect Transfers of interests in Namdar so long as following such Transfer no Namdar Change of Control shall have occurred. Namdar shall have the right to interpose a new entity between Namdar and the Company, following

which the Namdar Change of Control requirement shall apply to such new entity instead of Namdar.

    (c)    <u>Plymouth Permitted Transfers</u>.

    (1)    Plymouth may Transfer its Interests in the Company at any time to any Plymouth Permitted Transferee provided such Person remains a Plymouth Permitted Transferee at all times while such Person holds such Interests. If any such Person subsequently ceases to be a Plymouth Permitted Transferee while such Person holds such Interests, such Person shall, before ceasing to be a Plymouth Permitted Transferee, Transfer such Interests to Plymouth or a Plymouth Permitted Transferee. Any failure to comply with the immediately preceding sentence will result in such cessation being a non-permitted Transfer.

    (2)    Nothing in this Agreement shall restrict any indirect Transfers of Interests in Plymouth so long as following such Transfer no Plymouth Change of Control shall have occurred. Plymouth shall have the right to interpose a new entity between Plymouth and the Company, following which the Plymouth Change of Control requirement shall apply to such new entity instead of Plymouth.

    12.3.    <u>Admission of Transferee</u>. (a) Notwithstanding anything in this Section to the contrary, no Transfer of Interests in the Company shall be permitted unless the potential transferee is admitted as a Member under this Section. If a Member Transfers all or any portion of its Interest in the Company in accordance with the terms of this Agreement, such transferee may become a Member if (i) such transferee executes and agrees to be bound by this Agreement, (ii) the transferor and/or transferee pays all reasonable legal and other fees and expenses incurred by the Company in connection with such assignment and substitution and (iii) the transferor and transferee execute such documents and deliver such certificates to the Company and the remaining Members as may be required by applicable law or otherwise reasonably advisable by Manager. Without limiting the foregoing, unless a transferee of a Member's Interest is admitted as a Member under this Section, it shall have none of the powers of a Member hereunder and shall only have such rights of an assignee under the Act as are consistent with the other terms and provisions of this Agreement. If a transferee of a Member's Interest is not admitted as a Member under this Section, the transferor shall retain all noneconomic rights of a Member, including, without limitation, the power to vote such Member's Interest on all matters coming before the Member's for a vote. Upon the Transfer of its entire Interest in the Company and the admission of such Member's transferee(s) pursuant to this Section, a Member shall be deemed to have withdrawn from the Company as a Member.

    (b) Notwithstanding the foregoing, any Transfer or purported Transfer of any Interest, whether to another Member or to a third party, shall be of no effect, and such transferee shall not become a Member, if either party determines (acting reasonably, prior to or within thirty (30) days of written notice of the Transfer from the transferring Member) that:

    (i)    the Transfer would require registration of any Interest under, or result in a violation of, any Federal or state securities laws;

-26-

(ii)    as a result of such Transfer the Company would be required to register as an investment company under the Investment Company Act of 1940, as amended, or any rules or regulations promulgated thereunder;

(iii)    if as a result of such Transfer the aggregate value of Interests held by "**benefit plan investors**" including at least one benefit plan investor that is subject to ERISA, could be "significant" (as such terms are defined in U.S. Department of Labor Regulation 29 C.F.R. 2510.3-101(f)(2)) with the result that the assets of the Company could be deemed to be "plan assets" for purposes of ERISA; or

(iv)    as a result of such Transfer, the Company would or may have in the aggregate more than one hundred (100) members and material adverse Federal income tax consequences would result to a Member. For purposes of determining the number of members under this Section, a Person (the "**beneficial owner**") indirectly owning an interest in the Company through a partnership, grantor trust or S corporation (as such terms are used in the Code) (the "**flow-through entity**") shall be considered a member, but only if (i) substantially all of the value of the beneficial owner's interest in the flow through entity is attributable to the flow-through entity's interest (direct or indirect) in the Company and (ii) in the sole discretion of Manager, a principal purpose of the use of the flow-through entity is to permit the Company to satisfy the 100 member limitation.

Manager may require the provision of a certificate as to the legal nature and composition of a proposed transferee of an Interest of a Member and from any Member as to its legal nature and composition and shall be entitled to rely on any such certificate in making such determinations under this Section.

12.4.    <u>Withdrawals and Withdrawing Members</u>. (a) Each of the Members does hereby covenant and agree that it will not withdraw, resign, retire or disassociate from the Company, except as a result of a Transfer of its entire Interest in the Company permitted under the terms of this Agreement to a transferee that is admitted as a member of the Company pursuant to Section <u>12.3</u>, and that it will carry out its duties and responsibilities hereunder until the Company is terminated, liquidated and dissolved under Section <u>13</u>. No Member shall be entitled to receive any distribution or otherwise receive the fair market value of its Interest in compensation for any purported resignation or withdrawal not in accordance with the terms of this Agreement.

(b)    Upon the death, disability, winding up and termination (in the case of a Member that is a partnership or a limited liability company), dissolution and termination (in the case of a Member that is a corporation), or withdrawal in contravention of Section 12.4(a) of a Member, or the occurrence of a Bankruptcy/Dissolution Event with respect to a Member (the "**Withdrawing Member**"), the Withdrawing Member shall cease to be a member of the Company and the other Member shall, subject to this Section, have the right to treat such successor(s) in interest as assignees of the Interest in the Company of the Withdrawing Member, with only such rights of an assignee of a limited liability company interest under the Act as are consistent with the other terms and provisions of this Agreement and with no other rights under

-27-

this Agreement. Without limiting the generality of the foregoing, the successor(s) in interest of the Withdrawing Member shall only have the rights to distributions provided in Sections 6 and 13.3(d), unless otherwise waived by the other Member in its sole discretion. For purposes of this Section, if the Withdrawing Member's Interest in the Company is held by more than one Person (for purposes of this subparagraph, the "**Assignees**"), the Assignees shall appoint one Person with full authority to accept notices and distributions with respect to such Interest in the Company on behalf of the Assignees and to bind them with respect to all matters in connection with the Company or this Agreement.

12.5. Subsidiary Transfer Restrictions. Each Member and Representative shall take such action as may be necessary and appropriate to permit or cause any Subsidiary to permit a Transfer that would otherwise be permitted pursuant to the terms of this Agreement.

Section 13. Dissolution.

13.1. Limitations. The Company may be dissolved, liquidated and terminated only pursuant to the provisions of this Section, and, to the fullest extent permitted by law but subject to the terms of this Agreement, the parties hereto do hereby irrevocably waive any and all other rights they may have to cause a dissolution of the Company or a sale or partition of any or all of the Company's assets. Notwithstanding the foregoing, or any other provision of this Section 13 to the contrary, until the Obligations are indefeasibly paid in full, the Company shall not dissolve without the written consent of Preferred Investor.

13.3. Exclusive Events Requiring Dissolution. The Company shall be dissolved only upon the earliest to occur of the following events (a "**Dissolution Event**"):

(a) the expiration of the specific term, if any, set forth in Section 2.5;

(b) at any time at the election of the Management Committee in writing;

(c) at any time there are no Members (unless otherwise continued in accordance with the Act); and

(d) the entry of a decree of judicial dissolution pursuant to the Act.

13.4. Liquidation. Upon the occurrence of a Dissolution Event, the business of the Company shall be continued to the extent necessary to allow an orderly winding up of its affairs, including the liquidation of the assets of the Company pursuant to the provisions of this Section, as promptly as practicable thereafter, and each of the following shall be accomplished:

(a) Manager shall cause to be prepared a statement setting forth the assets and liabilities of the Company as of the date of dissolution, a copy of which statement shall be furnished to all of the Members.

(b) The property and assets of the Company shall be liquidated or distributed in kind under the supervision of Manager as promptly as possible, but in an orderly, businesslike and commercially reasonable manner.

-28-

(c)   Any gain or loss realized by the Company upon the sale of its property shall be deemed recognized and allocated to the Members in the manner set forth in Section 7.2. To the extent that an asset is to be distributed in kind, such asset shall be deemed to have been sold at its fair market value on the date of distribution, the gain or loss deemed realized upon such deemed sale shall be allocated in accordance with Section 7.2 and the amount of the distribution shall be considered to be such fair market value of the asset.

(d)   The proceeds of sale and all other assets of the Company shall be applied and distributed as follows and in the following order of priority:

(i)     to the satisfaction of the debts and liabilities of the Company (contingent or otherwise) and the expenses of liquidation or distribution (whether by payment or reasonable provision for payment), other than liabilities to Members or former Members for distributions;

(ii)    to the satisfaction of loans made by Members to the Company pursuant to the terms herein in proportion to the outstanding balances of such loans at the time of payment; and

(iii)   the balance, if any, to the Members in accordance with the distribution requirements pursuant to Section 6.

13.5.   Continuation of the Company.  Notwithstanding anything to the contrary contained herein, the death, retirement, resignation, expulsion, bankruptcy, dissolution or removal of a Member shall not in and of itself cause the dissolution of the Company, and the Members are expressly authorized to continue the business of the Company in such event, without any further action on the part of the Members.

## Section 14. Indemnification.

14.1.   Exculpation of Members.   No Member, manager of the Company, Representative or officer of the Company (or their respective agents, officers, directors, members, managers, partners, shareholders or employees) shall be liable to the Company or to the other Members for Damages or otherwise with respect to any actions or failures to act taken or not taken relating to the Company, except in the case of a Member only, to the extent any such Damage results from acts for which such Member is required to provide indemnification against under Section 14.3, but subject in all cases to the provisions of Section 16.12.

14.2.   Indemnification by Company. The Company, to the fullest extent permitted under Section 420 of the Act, hereby indemnifies, holds harmless and defends the Members, any manager of the Company, the Representatives, the officers of the Company and each of their respective agents, officers, directors, members, partners, shareholders and employees from and against any loss, cost, expense, damage, claim, liability or injury (including but not limited to any judgment, award, settlement, reasonable attorneys' fees and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding or claim) (collectively, "**Damages**") suffered or sustained by them by reason of or arising out of (i) their activities on behalf of the Company or in furtherance of the interests of the Company,  (ii) their status as Members, managers, representatives, employees or officers of the Company or any Subsidiary (or

-29-

their status as the respective agents, officers, directors, members, managers, partners, shareholders or employees of such Persons), or (iii) the Company's assets, property, business or affairs (including, without limitation, the actions of any officer, director, member or employee of the Company or any Subsidiary), if and to the extent that the acts or omissions are not (A) a breach of any obligation of the Person seeking indemnification under Section 14 (the "Indemnity Claimant"), (B) a breach of any obligation by or any inaccuracy in or breach of any representation or warranty made by the Indemnity Claimant (or any Affiliate of the Indemnity Claimant), whether in this Agreement or in any Collateral Agreement, or (C) fraud, gross negligence or willful or wanton misconduct on the part of, or by, the Indemnity Claimant, such Indemnity Claimant's Representatives (or any other representative appointed by such Indemnity Claimant), or any officer, director, member, partner, shareholder or employee of such Indemnity Claimant or Affiliate of such Indemnity Claimant. For the purposes of this Section, officers, directors, agents, members, partners, employees and other representatives of Affiliates of a Member who are functioning as representatives of such Member in connection with this Agreement shall be considered representatives of such Member. Reasonable expenses incurred by the indemnified party in connection with any such proceeding relating to the foregoing matters shall be paid or reimbursed by the Company in advance of the final disposition of such proceeding upon receipt by the Company of (x) written affirmation by the Person requesting indemnification of its good faith belief that it has met the standard of conduct necessary for indemnification by the Company and (y) a written undertaking by or on behalf of such Person to repay such amount if it shall ultimately be determined by a court of competent jurisdiction that such Person has not met such standard of conduct, which undertaking shall be an unlimited general obligation of the indemnified party but need not be secured. The provisions of this Section 14.2 shall not apply to any services or acts of a Member, its Affiliates or their agents, officers, directors, members, partners, shareholders and employees, in each case as independent contractors of the Company.

14.3. General Indemnification by the Members. (a) Notwithstanding any other provision contained herein, each Member (the "**Indemnifying Party**") hereby indemnifies and holds harmless the other Members, the Company and each of their Affiliates and their agents, officers, directors, members, managers, partners, shareholders, representatives and employees (each, an "**Indemnified Party**") from and against all Damages as a result of or arising out of (i) any breach of any obligation of the Indemnifying Party under this Agreement, (ii) any breach of any obligation by or any inaccuracy in or breach of any representation or warranty made by the Indemnifying Party (or any Affiliate of the Indemnifying Party), whether in this Agreement or in any Collateral Agreement, or (iii) any fraud, gross negligence or willful or wanton misconduct on the part of, or by, the Indemnifying Party, such Indemnifying Party's Representatives (or any other representative appointed by such Indemnifying Party), or any officer, director, member, partner, shareholder or employee of such Indemnifying Party or Affiliate of such Indemnifying Party. Notwithstanding the foregoing, Plymouth shall not have any obligation pursuant to this Section 14.3 prior to the earlier of (x) payment in full of the Plymouth Required Payment to Plymouth, whether by distributions of Net Cash Flow from the Company in accordance with Section 6.1 and/or by Supplemental Payments, and (y) the Outside Redemption Date; provided that thereafter, the obligations of this Section 14.3 shall immediately become binding upon Plymouth in all respects. In the event that Namdar is the Indemnified Party, any indemnification obligation which Plymouth is not obligated to contribute to in accordance with the forgoing, shall instead be the sole obligation of the Dynamic Member for all purposes hereunder.

FILED: NEW YORK COUNTY CLERK 09/16/2025 12:34 PM INDEX NO. 850030/2025
Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 231 of 300

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM INDEX NO. 850030/2025
NYSCEF DOC. NO. 46                                                    RECEIVED NYSCEF: 04/06/2025

(b)    Except as otherwise provided herein or in any other written agreement between and/or among the Company and the Members, in addition to the limitations provided in Section 16.12, recourse for the indemnity obligation of the Members under this Section 14.3 shall be limited to such Indemnifying Party's Interest in the Company; provided, however, that recourse against an Indemnifying Party under its indemnity obligations under this Agreement or otherwise shall be further limited to an aggregate amount equal to the value of the other Member's Interest as determined by and being limited to the then current liquidation value of the other Member's Interest (assuming the Company were liquidated in an orderly fashion and all net proceeds thereof were distributed in accordance with Section 6), in the event the value of the other Member's Interest is less than the value of the Indemnifying Party's Interest.

(c)    The indemnities, contributions and other obligations under this Agreement shall be in addition to any rights that any Indemnified Party may have at law, in equity or otherwise. The terms of this Section 14 shall survive termination of this Agreement.

Section 15. Limited Power of Attorney.

15.1.    Grant. Each of the Members does hereby authorize and consent to and does hereby grant to the Manager an irrevocable special limited power of attorney, coupled with an interest, to make, execute, sign, swear to and file in the Member's name, place and stead, (i) the Articles of Organization to be filed in the appropriate offices in the State of New York and in such form as shall be necessary under the laws of said State to give effect to the provisions hereof and to preserve the character of the Company as a limited liability company; (ii) any amendment to the Articles of Organization or to effect any amendment to this Agreement in accordance with the terms hereof; and (iii) all instruments, documents and certificates which may from time to time be required by the laws of the United States of America or the State of New York, or any political subdivision or agency of the foregoing, to effectuate, implement and continue the valid existence of the Company, including the making, execution and filing of the Company's Articles of Organization and any amendments thereto and any cancellation thereof. Each of the Members shall, upon request from a Manager, promptly execute, acknowledge and deliver any instruments reasonably required to reflect the foregoing.

15.2.    Conclusive Evidence. In no event shall any Person dealing with the Manager or Authorized Persons or their representatives with respect to any property of the Company be obligated to ascertain that the terms of this Agreement have been complied with, or be obligated to inquire into the necessity or expediency of any act or action of the Manager or its representatives (including any Authorized Person), and every contract, agreement, deed, mortgage, promissory note, or other instrument or document executed by the Manager with respect to any property of the Company shall be conclusive evidence in favor of any and every Person relying thereon or claiming thereunder that (i) at the time of the execution and/or delivery thereof, this Agreement was in full force and effect; (ii) such instrument or document was duly executed in accordance with the terms and provisions of this Agreement and is binding upon the Company and all of the Members hereof; and (iii) the Manager executing same or its representative was duly authorized and empowered to execute and deliver any and every such instrument or document for and on behalf of the Company.

Section 16. Miscellaneous.

-31-

16.1.   Notices.  (a)  All notices, requests, approvals, authorizations, consents and other communications required or permitted under this Agreement shall be in writing (whether or not expressly stated as to be in writing hereunder) and shall be (as elected by the Person giving such notice) hand delivered by messenger or overnight courier service, mailed (airmail, if international) by registered or certified mail (postage prepaid), return receipt requested, or sent via facsimile or email (provided such facsimile or email is immediately followed by the delivery of an original copy of same via one of the other foregoing delivery methods) addressed to:

If to DYNAMIC:

10 West Street, Apartment 40B,
New York, NY, 10004
Attn: Gary Segal
E-mail: gsegal@dynamicstarllc.com

With a copy to:

Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10036
Attn: Andrew W. Albstein, Esq.
E-mail: aalbstein@gwfglaw.com

If to Namdar:

NAMDAR FORDHAM LANDING LLC
150 Great Neck Road, Suite 304
Great Neck, New York 11021
Attn:  Igal Namdar
Email:  igal@namdarllc.com
With a copy to:

The Law Office of Alan Merovitch
3 Elm Avenue
Somers, NY 10589
Attn: Alan Merovitch, Esq.
Email: amerovitch@hotmail.com

If to Plymouth:

_____

_____

(b)  Each such notice shall be deemed delivered (i) on the date delivered if by hand delivery or overnight courier service or facsimile, or email (with confirmation of receipt by the recipient), and (ii) on the date upon which the return receipt is signed or delivery is

-32-

refused or the notice is designated by the postal authorities as not deliverable, as the case may be, if mailed (provided, however, if such actual delivery occurs after 5:00 p.m. (local time where received), then such notice or demand shall be deemed delivered on the immediately following Business Day after the actual day of delivery).

(c)  By giving to the other parties at least fifteen (15) days prior written notice thereof, the parties hereto and their respective successors and assigns shall have the right from time to time and at any time during the term of this Agreement to change their respective addresses.

16.2.  Governing Law.  (a) This Agreement and the rights of the Members hereunder shall be governed by, and interpreted in accordance with, the laws of the State of New York.

(b)  Each of the parties hereto irrevocably submits to the jurisdiction of the New York State courts and the U.S. Federal courts sitting in the Southern District of New York and agrees that all matters involving this Agreement shall be heard and determined in such courts. Each of the parties hereto waives irrevocably the defense of inconvenient forum to the maintenance of such action or proceeding. Each of the parties designates the Secretary of State of the State of New York, as its agent for service of process in the State of New York, which designation may only be changed on not less than ten (10) days' prior notice to all of the other parties.

16.3.  Successors. This Agreement shall be binding upon, and inure to the benefit of, the parties and their successors and permitted assigns.  Except as otherwise provided herein, any Member who Transfers its Interest as permitted by the terms of this Agreement shall have no further liability or obligation hereunder, except with respect to claims arising prior to such Transfer.

16.4.  Pronouns. Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in either the masculine, the feminine or the neuter gender shall include the masculine, feminine and neuter.

16.5.  Table of Contents and Captions Not Part of Agreement. The table of contents and captions contained in this Agreement are inserted only as a matter of convenience and in no way define, limit or extend the scope or intent of this Agreement or any provisions hereof.

16.6.  Severability. If any provision of this Agreement shall be held invalid, illegal or unenforceable in any jurisdiction or in any respect, then the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired, and the Members shall use their best efforts to amend or substitute such invalid, illegal or unenforceable provision with enforceable and valid provisions which would produce as nearly as possible the rights and obligations previously intended by the Members without renegotiation of any material terms and conditions stipulated herein.

-33-

Case 7-26-cv-04909    Document 1-1    Filed 06/10/26    Page 234 of 300

16.7.    Counterparts.  This Agreement may be executed in several counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.

16.8.    Entire Agreement and Amendment.  This Agreement and the other written agreements described herein between the parties hereto entered into as of the date hereof, constitute the entire agreement between the Members relating to the subject matter hereof and fully supersedes any and all prior agreements or understandings between the parties hereto pertaining to the subject matter hereof.  No amendment or waiver of this Agreement (or provision hereof) shall be enforceable against any Member unless it is in writing and duly executed by such Member.

16.9.    Further Assurances.  Each Member agrees to execute and deliver any and all additional instruments and documents and do any and all acts and things as may be necessary or expedient to effectuate more fully this Agreement or any provisions hereof or to carry on the business contemplated hereunder.

16.10.  No Third Party Rights.   The provisions of this Agreement are for the exclusive benefit of the Members and the Company, and no other party (including, without limitation, any creditor of the Company) shall have any right or claim against any Member by reason of those provisions or be entitled to enforce any of those provisions against any Member.

16.11.  Incorporation by Reference.  Every Exhibit, Schedule, and Annex attached to this Agreement is incorporated in this Agreement by reference.  Unless otherwise expressly provided herein, all references to "Articles", "Sections", "subsections" or "paragraphs" are to Articles, Sections, subsections and paragraphs of this Agreement and all references to "Exhibits", "Annexes" and "Schedules" are to the exhibits, annexes and schedules attached hereto.

16.12.  Limitation on Liability.   The Members shall not be bound by, or be personally liable for, by reason of being a Member, a judgment, decree or order of a court or in any other manner, for the expenses, liabilities or obligations of the Company, and the liability of each Member in respect thereof shall be limited solely to the amount of its Capital Contributions as provided under Section 5.  Any claim against any Member (the "**Member in Question**") which may arise under this Agreement shall be made only against, and shall be limited to, the Interest of such Member in Question, the proceeds of the sale by the Member in Question of such Interest or the undivided interest in the assets of the Company distributed to the Member in Question pursuant to Section 13.3(d) hereof.  Any right to proceed against (i) any other assets of the Member in Question or (ii) any agent, officer, director, member, manager, partner, shareholder or employee of the Member in Question or the assets of any such Person, as a result of such a claim against the Member in Question arising under this Agreement or otherwise, is hereby irrevocably and unconditionally waived.

16.13.  Remedies Cumulative; Dispute Costs.  The rights and remedies given in this Agreement and by law to a Member shall be deemed cumulative, and the exercise of one of such remedies shall not operate to bar the exercise of any other rights and remedies reserved to a Member under the provisions of this Agreement or given to a Member by law.  In the event of any dispute between the parties hereto, the prevailing party shall be entitled to recover from the other party reasonable attorney's fees and costs incurred in connection therewith.

FILED: NEW YORK COUNTY CLERK 09/16/2025 12:34 PM
INDEX NO. 850030/2025
Case 7:26-cv-04909   Document 1-1   Filed 06/10/26   Page 235 of 300
RECEIVED NYSCEF: 09/16/2025
FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 04/06/2025

16.14. <u>No Waiver</u>.  One or more waivers of the breach of any provision of this Agreement by any Member shall not be construed as a waiver of a subsequent breach of the same or any other provision, nor shall any delay or omission by a Member to seek a remedy for any breach of this Agreement or to exercise the rights accruing to a Member by reason of such breach be deemed a waiver by a Member of its remedies and rights with respect to such breach.

16.15. <u>Limitation On Use of Names</u>.  Notwithstanding anything contained in this Agreement or otherwise to the contrary, each Members as to itself agrees that neither it nor any of its Affiliates, agents, or representatives is granted a license to use or shall use the name of the other under any circumstances whatsoever unless approved in writing by the Member whose name is to be used.

16.16. <u>Certificates or Affidavits</u>.  At any time or times, upon the request of the Manager, the Members shall execute, acknowledge and swear to any certificates or affidavits or certificates of fictitious firm name, trade name or the like (and any amendments or cancellations thereof) required by the law of New York or any other jurisdiction in which the Company does or proposes to do business.  In addition, upon the request of the Manager, each Member shall provide such disclosures as to such Member as may be required by the Attorney General.

16.17. <u>Publicly Traded Partnership Provision</u>.  Each Member hereby severally covenants and agrees with the other Members for the benefit of such Members, that (i) it is not currently making a market in Interests in the Company and will not in the future make such a market and (ii) it will not Transfer its Interest on an established securities market, a secondary market or an over-the-counter market or the substantial equivalent thereof within the meaning of Code Section 7704 and the Regulations, rulings and other pronouncements of the U.S. Internal Revenue Service or the Department of the Treasury thereunder.  Each Member further agrees that it will not Transfer any Interest in the Company to any transferee unless such transferee agrees to be bound by this Section and to Transfer such Interest only to such Persons who agree to be similarly bound.

16.18. <u>Status as Accredited Investors</u>.  Each Member represents and warrants to the Company that it is an "**accredited investor**" as that term is defined in Rule 501 of Regulation D promulgated under the U.S. Securities Act of 1933, as amended (the "**Securities Act**"), and as set forth on <u>Schedule I</u>, attached hereto.  Further each Member represents that it has received and reviewed the Investment Memorandum, annexed as <u>Exhibit F</u> hereto, and any other information regarding the Company that such Member has requested and that such Member has been afforded the opportunity to ask questions and receive answers regarding the Company's business and operations and the terms of this Agreement to its complete satisfaction.

16.19. <u>Uniform Commercial Code</u>.  The interest of each Member in the Company shall be an "uncertificated security" governed by Article 8 of the UCC as enacted in the State of New York (the "**New York UCC**"), including, without limitation, (i) for purposes of the definition of a "security" thereunder, the interest of each Member in the Company shall be a security governed by Article 8 of the New York UCC and (ii) for purposes of the definition of an "uncertificated security" thereunder.

FILED: NEW YORK COUNTY CLERK 09/16/2025 12:34 PM
INDEX NO. 850030/2025

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 236 of 300

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM
INDEX NO. 850030/2025

NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 04/06/2025

16.20. <u>Public Announcements</u>. No Member, without the prior written approval of the Manager, shall issue any press releases or otherwise make any public statements with respect to the Company, any Subsidiary, the Properties or the transactions contemplated by this Agreement.

16.21. <u>No Construction Against Drafter</u>. This Agreement has been negotiated and prepared by each Member and their respective attorneys and, should any provision of this Agreement require judicial interpretation, the court interpreting or construing such provision shall not apply the rule of construction that a document is to be construed more strictly against one party.

<u>Section 17.</u>   <u>Special Purpose Entity Requirements</u>

17.1   <u>Supremacy of this Section</u>. This <u>Section 17</u> has been adopted in order to comply with certain provisions of the Prefco LLCA that require the Company to qualify as a so-called "Special Purpose Entity". This Article is written for the express benefit of the Preferred Investor and shall supersede any inconsistent provision of this Agreement.

17.2   <u>Limitation of Purpose</u>. The purpose of the Company is as set forth in <u>Section 3</u> and the Company shall not engage in any other business or activity and shall not own any assets or incur any obligations other than in furtherance of such limited purpose.

17.3   <u>Separateness/Operations Matters</u>. Until such time as no Obligations remain outstanding, the Company will remain a "Special Purpose Entity," which means a limited liability company that, since the date of its formation and at all times on and after the date thereof, has complied with and shall at all times comply with the following requirements unless it has received prior consent to do otherwise from Preferred Investor:

(i)   is and shall be organized solely for the purpose of acting as a member of Prefco and transacting lawful business that is incident, necessary and appropriate to accomplish the foregoing;

(ii)   has not engaged and shall not engage in any business unrelated to acting as the sole member of Prefco;

(iii)   has not owned and shall not own any real property other than the Properties;

(iv)   does not have, shall not have and at no time had any assets other than its membership interest in Prefco, and personal property necessary or incidental to its ownership of such interest;

(v)   shall not cause, consent to, or permit any amendment of its certificate of formation or its limited liability company agreement with respect to the matters set forth in this definition;

(vi)   is and shall be a Delaware limited liability company;

-36-

(vii)     has and shall have a limited liability agreement that provides that such entity shall not (A) dissolve, merge, liquidate, consolidate; (B) sell all or substantially all of its assets, except as expressly permitted under the Investment Documents; or (C) amend its organizational documents with respect to the matters set forth in this definition without the consent of Preferred Investor;

(viii)     has at all times been and shall intend at all times to remain solvent and has paid and shall pay its debts and liabilities (including, a fairly-allocated portion of any personnel and overhead expenses that it shares with any Affiliate) from its assets as the same shall become due, and has maintained and shall intend to maintain adequate capital for the normal obligations reasonably foreseeable in a business of its size and character and in light of its contemplated business operations; provided, that the foregoing shall not require any direct or indirect member of Prefco or the Company to make any additional capital contributions to Prefco or the Company, as the case may be;

(ix)     has not failed and shall not fail to correct any known misunderstanding regarding the separate identity of such entity and has not identified and shall not identify itself as a division of any other Person;

(x)     has maintained and shall maintain its bank accounts, books of account, books and records separate from those of any other Person and, to the extent that it is required to file tax returns under applicable law, has filed and shall file its own tax returns, except to the extent that it is required by law to file consolidated tax returns;

(xi)     has maintained and shall maintain its own records, books, resolutions and agreements;

(xii)     has not commingled and, except as contemplated by this Agreement, shall not commingle its funds or assets with those of any other Person and has not participated and shall not participate in any cash management system with any other Person;

(xiii)     has held and shall hold its assets in its own name;

(xiv)     has conducted and shall conduct its business in its name or in a name franchised or licensed to it by an entity other than an Affiliate of itself;

(xv)     (A) has maintained and shall maintain its financial statements, accounting records and other entity documents separate from those of any other Person; (B) has shown and shall show, in its financial statements, its assets and liabilities separate and apart from those of any other Person; and (C) has not permitted and shall not permit its assets to be listed as assets on the financial statement of any of its Affiliates except as required by GAAP; provided, however, that any such consolidated financial statement contains a note indicating that the Special Purpose Entity's separate assets and credit are not available to pay the debts of such Affiliate and that the Special Purpose Entity's liabilities do not constitute obligations of the consolidated entity;

-37-

(xvi)    has paid and shall pay its own liabilities and expenses, including the salaries of its own employees, out of its own funds and assets, and has maintained and shall maintain a sufficient number of employees or contract for sufficient services in light of its contemplated business operations;

(xvii)    has observed and shall observe all limited liability company formalities;

(xviii)    does not have and shall not incur any Indebtedness other than Permitted Indebtedness;

(xix)    has not assumed, guaranteed, or become obligated and shall not assume or guarantee or become obligated for the debts of any other Person, has not held out and shall not hold out its credit as being available to satisfy the obligations of any other Person or has not pledged and shall not pledge its assets to secure the obligations of any other Person, in each case except as permitted or contemplated by the Investment Documents;

(xx)    has not acquired and shall not acquire obligations or securities of its members or any Affiliate;

(xxi)    has allocated and shall allocate fairly and reasonably any overhead expenses that are shared with any of its Affiliates, constituents, or owners, or any guarantors of any of their respective obligations, or any Affiliate of any of the foregoing, including, but not limited to, paying for shared office space and for services performed by any employee of an Affiliate;

(xxii)    has maintained and used and shall maintain and use separate stationery, invoices and checks bearing its name and not bearing the name of any other entity unless such entity is clearly designated as being the Special Purpose Entity's agent;

(xxiii)    has not pledged and shall not pledge its assets to secure the obligations of any other Person, except to Preferred Investor to secure the Obligations;

(xxiv)    has held itself out and identified itself and shall hold itself out and identify itself as a separate and distinct entity under its own name or in a name franchised or licensed to it by an entity other than an Affiliate of Prefco and not as a division or part of any other Person;

(xxv)    has maintained and shall maintain its assets in such a manner that it shall not be costly or difficult to segregate, ascertain or identify its individual assets from those of any other Person;

(xxvi)    has not made and shall not make loans to any Person and has not held and shall not hold evidence of indebtedness issued by any other Person or entity (other than cash and Permitted Investments);

-38-

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM RECEIVED NYSCEF: 04/06/2025
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 04/06/2025

(xxvii) has not identified and shall not identify its members or any Affiliate of any of them, as a division or part of it, and has not identified itself and shall not identify itself as a division of any other Person;

(xxviii) other than capital contributions and distributions permitted under the terms of its organizational documents, has not entered into or been a party to, and shall not enter into or be a party to, any transaction with any of its members except in the ordinary course of its business and on terms which are commercially reasonable terms comparable to those of an arm's-length transaction with an unrelated third party;

(xxix) does not have and shall not have any obligation to, and does not currently indemnify and shall not indemnify its partners, officers, directors, or members, as the case may be, in each case unless such an obligation or indemnification is fully subordinated to the Debt and shall not constitute a claim against it in the event that its cash flow is insufficient to pay the Debt;

(xxx) has not had and shall not have any of its obligations guaranteed by any Affiliate, except as provided by the Investment Documents or as otherwise consented to by Preferred Investor;

(xxxi) has not formed, acquired, or held and shall not form, acquire, or hold any subsidiary, except as contemplated by the Investment Documents;

(xxxii) has complied and shall comply with all of the terms and provisions contained in its organizational documents; and

(xxxiii) has not permitted and shall not permit any Affiliate or constituent party independent access to its bank accounts.

*[SIGNATURES ON NEXT PAGE]*

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 240 of 300

IN WITNESS WHEREOF, this Agreement is executed by the Members, effective as of the date first set forth above.

**DYNAMIC STAR III LLC**

By: _____

    Name:

    Title:

**THE PLYMOUTH GROUP III LLC**

By: _____

    Name:

    Title:

**DS 3 GP INC.**

By: _____

Name:

Title:

**NAMDAR:**

NAMDAR FORDHAM LANDING LLC,
a New York limited liability company

BY:    NAMCO REALTY LLC,
        a New York limited liability company,
        its sole member

    BY:    NAMCO REALTY LTD.,
           a British Virgin Island
           company, its sole member

        By: _____

           Name: Igal Namdar

           By:    CEO

IN WITNESS WHEREOF, this Agreement is executed by the Members, effective as of the date first set forth above.

**DYNAMIC STAR III LLC**

By:

Name:

Title:

**THE PLYMOUTH GROUP III LLC**

By:

Name: Michael Dias

Title: Authorized Person

**DS 3 GP INC.**

By:

Name:

Title:

**NAMDAR:**

NAMDAR FORDHAM LANDING LLC,
a New York limited liability company

BY:    NAMCO REALTY LLC,
a New York limited liability company,
its sole member

    BY:    NAMCO REALTY LTD.,
    a British Virgin Island
    company, its sole member

        By:

        Name: Igal Namdar

        By:    CEO

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM INDEX NO. 850030/2025
NYSCEF DOC. NO. 46 RECEIVED NYSCEF: 04/06/2025

IN WITNESS WHEREOF, this Agreement is executed by the Members, effective as of the date first set forth above.

**DYNAMIC STAR III LLC**

By: _____

    Name:

    Title:

**THE PLYMOUTH GROUP III LLC**

By: _____

    Name:

    Title:

**DS 3 GP INC.**

By: _____

Name:

Title:

**NAMDAR:**

NAMDAR FORDHAM LANDING LLC,
a New York limited liability company

BY:    NAMCO REALTY LLC,
       a New York limited liability company,
       its sole member

       BY:    NAMCO REALTY LTD.,
              a British Virgin Island
              company, its sole member

            By: _____

               Name: Igal Namdar

            By:    CEO

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM INDEX NO. 850030/2025
NYSCEF DOC. NO. 46 RECEIVED NYSCEF: 04/06/2025

## EXHIBIT A
### Capital Contributions

| MEMBER: | INITIAL CAPITAL CONTRIBUTION | PERCENTAGE INTEREST | DISTRIBUTION PERCENTAGES PURSUANT TO SECTION 6.1(b) |
|---|---|---|---|
| DS GP 3 Inc. 10 West Street, Apartment 40B, New York, NY, 10004 | $_____ | 0.5% | 0.5% |
| Dynamic Star III LLC 10 West Street, Apartment 40B, New York, NY, 10004 | $_____ | 32.46% | 49.6% |
| The Plymouth Group III, LLC c/o Meister Seelig & Fein LLP 125 Park Ave. 17th Floor New York, NY 10071 | $_____ | 9.9% | 9.9% |
| Namdar Fordham Landing LLC 150 Great Neck Road, Suite 304 Great Neck, New York, 11021 | $_____ | 57.14% | 40% |
| TOTAL | $_____ | 100.00% | |

### Initial Management Committee Representatives

| Representative | Name |
|---|---|
| Namdar Representative | Igal Namdar |
| Dynamic Representative | Gary Segal |

FILED: NEW YORK COUNTY CLERK 09/16/2025 12:34 PM        INDEX NO. 850030/2025
Case 7:26-cv-04909     Document 1-1     Filed 06/10/26     Page 244 of 300
NYSCEF DOC. NO. 46                                       RECEIVED NYSCEF: 09/16/2025

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM
NYSCEF DOC. NO. 46                                       RECEIVED NYSCEF: 04/06/2025

## EXHIBIT B
### Definitions

For the purposes of this Agreement, the following terms shall have meanings set forth below.

"**Act**" shall mean the Delaware Limited Liability Company Act, as amended from time to time.

"**Advisor**" shall mean any accountant, attorney or other advisor retained by a Member.

"**Affiliate**" shall mean as to any Person any other Person that directly or indirectly controls, is controlled by, or is under common control with such first Person. For the purposes of this Agreement, a Person shall be deemed to control another Person if such Person possesses, directly or indirectly, the power to direct or cause the direction of the management, policies and/or decision making of such other Person, whether through the ownership of voting securities, by contract or otherwise. In addition, "**Affiliate**" shall include as to any Person, any other Person related to such Person within the meaning of Code Sections 267(b) or 707(b)(1). For purposes of this Agreement, the Company and the Subsidiaries shall not be deemed Affiliates of Dynamic, Namdar or any of their respective Affiliates. Without limiting the foregoing, (i) Manager, the Dynamic Key Individuals and each Person that is an Affiliate of any of such Persons shall each be deemed to be an Affiliate of the other, and (ii) Namdar, the Namdar Key Individual and each Person that is an Affiliate of any of such Persons shall each be deemed to be an Affiliate of the other.

"**Agreed Upon Value**" shall mean the fair market value (net of any liability secured by such property that the Company assumes or takes subject to) agreed upon pursuant to a written agreement between the Members of property contributed by a Member to the capital of the Company, which shall for all purposes hereunder be deemed to be the amount of the Capital Contribution applicable to such property contributed.

"**Agreement**" shall mean this Second Amended and Restated Limited Liability Company Agreement, as amended from time to time.

"**Annual Business Plan**" shall have the meaning provided in Section 9.3.

"**Assignees**" shall have the meaning provided in Section 12.5(b).

"**Bankruptcy Code**" shall mean Title 11 of the United States Code, as amended or any other applicable bankruptcy or insolvency statute or similar law.

"**Bankruptcy/Dissolution Event**" shall mean, with respect to the affected party, (i) the entry of an Order for Relief under the Bankruptcy Code, (ii) the admission by such party of its inability to pay its debts generally as they mature, (iii) the making by it of an assignment for the benefit of creditors generally, (iv) the filing by it of a petition in bankruptcy or a petition for relief under the Bankruptcy Code or any other applicable Federal or state bankruptcy or insolvency statute or any similar law, (v) the expiration of ninety (90) days after the filing of an involuntary

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 245 of 300

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM INDEX NO. 850030/2025
NYSCEF DOC. NO. 46 RECEIVED NYSCEF: 04/06/2025

petition under the Bankruptcy Code without such petition being vacated, set aside or stayed during such period, (vi) an application by such party for the appointment of a receiver for the assets of such party, (vii) an involuntary petition seeking liquidation, reorganization, arrangement or readjustment of its debts under any other Federal or state insolvency law, provided that the same shall not have been vacated, set aside or stayed within ninety (90) days after filing, (viii) the imposition of a judicial or statutory lien on all or a substantial part of its assets unless such lien is discharged or vacated or the enforcement thereof stayed within ninety (90) days after its effective date, (ix) an inability to meet its financial obligations generally as they accrue, or (x) a dissolution or liquidation.

"**BB Act**" shall have the meaning provided in Section 8.3.

"**Beneficial Owner**" shall have the meaning provided in Sections 5.7 and 12.4(b).

"**Business Day**" shall mean any day that is not Saturday, Sunday or a day on which banks are required or permitted to be closed in the State of New York.

"**Capital Account**" shall have the meaning provided in Section 5.6.

"**Capital Contribution**" shall mean, with respect to any Member, the aggregate amount of (i) cash, and (ii) the Agreed Upon Value of other property contributed (or as the context requires, to be contributed) by such Member to the capital of the Company.

"**Capital Conversion**" shall have the meaning provided in Section 5.2(c).

"**Cash Flow**" shall mean, for any period for which Cash Flow is being calculated, gross cash receipts of the Company (but excluding Capital Contributions) plus any amounts released from reserves and not applied to the relevant obligation or liability for which such reserves were established or to other costs and expenses of the Company, less the following payments and expenditures (i) all payments of operating expenses of the Company, (ii) all payments of principal of, interest on and any other amounts due with respect to indebtedness, leases or other commitments or obligations of the Company, (iii) all sums expended by the Company for capital expenditures, (iv) all prepaid expenses of the Company, (v) all sums expended by the Company which are otherwise capitalized, (vi) payment of Unincorporated Business Tax (if applicable), and (vii) reserves for anticipated capital expenditures, future working capital needs and operating expenses, contingent obligations and other purposes.

"**Certificate of Formation**" shall mean the articles of organization filed with the Department of State of the State of Delaware on July 8, 2022, as amended, for the purpose of forming the Company.

"**Code**" shall mean the Internal Revenue Code of 1986, as amended from time to time, including the corresponding provisions of any successor law.

"**Collateral Agreement**" shall mean any agreement, instrument, document or covenant concurrently or hereafter made or entered into under, pursuant to, or in connection with this Agreement and any certifications made in connection therewith or amendment or amendments made at any time or times heretofore or hereafter to any of the same (including, without limitation,

the Development Agreement).

"**Company**" shall mean the limited liability company created hereunder and pursuant to the filing of the Articles of Organization in the office of the Secretary of State of New York.

"**Company Assets**" shall mean all right, title and interest of the Company in and to all or any portion of the assets of the Company and any property of any type (whether real, personal, tangible or intangible), or estate or interest acquired in exchange therefor or in connection therewith, including, without limitation, the Company's interest in any Subsidiary.

"**Confidential Information**" shall have the meaning provided in Section 10(a).

"**Converted Amount**" shall have the meaning provided in Section 5.2(b).

"**Certification**" shall mean that certain certification of the Rezoning by the New York City Department of City Planning, prior to the Uniform Land Use Review Procedure ("ULURP"), pursuant to New York City zoning guidelines.

"**Company Representative**" shall have the meaning provided in Section 8.3.

"**Contributing Member**" shall have the meaning provided in Section 5.2(b).

"**Control**", "**controlled**", "**controls**" or "**controlling**" shall mean in the case of any Person, the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting equity interests, by contract, or otherwise.

"**Credit Provider**" shall have the meaning provided in Section 9.9(b).

"**Cure Period**" means (i) ten (10) business days after written notice specifying the nature of a default or breach under this Agreement or any Collateral Agreement in connection with a monetary default that is not a "**Noncurable Default**" (as hereinafter defined); (ii) thirty (30) days after written notice specifying the nature of a default or breach under this Agreement or any Collateral Agreement, in connection with a non-monetary default that is not a Noncurable Default (provided, however, that if such non-monetary default is not a Noncurable Default and cannot reasonably be cured within such 30-day period, and the defaulting party promptly commences the cure of such default and diligently pursues such cure to completion, then such 30-day period shall be extended to the extent reasonably necessary); and (iii) no period at all for a Noncurable Default. A "**Noncurable Default**" means a default or breach that is not capable of being cured and, without limitation, includes any of the following:  (a) a knowing and intentional breach, (b) a breach of any restriction on assignment, hypothecation or other transfer (including, without limitation, Section 12 or Section 9.8), or (c) a breach constituting fraud, bad faith or willful misconduct.

"**Damages**" shall have the meaning provided in Section 14.2.

"**Development Agreement**" shall have the meaning provided in Section 9.4(c)(2).

"**Development Fee**" shall have the meaning provided in Section 9.4(c)(2).

"**Default Amount**" shall have the meaning provided in Section 5.2(b).

"**Default Loan**" shall have the meaning provided in Section 5.2(b)(1).

"**Default Loan Rate**" shall mean the per annum rate equal to the lower of (i) eighteen percent (18%) and (ii) the highest rate permitted by applicable laws.

"**Dissolution Event**" shall have the meaning provided in Section 13.2.

"**Distributable Funds**" shall mean, with respect to any quarter or other period, as applicable, an amount equal to the Cash Flow of the Company for such quarter or other period, as applicable, as reduced by reserves for anticipated capital expenditures, future working capital needs and operating expenses, contingent obligations, and other purposes, the amounts of which shall be reasonably determined from time to time by Manager.

"**Distributions**" shall mean the distributions payable (or deemed payable) to a Member (including, without limitation, its allocable portion of Distributable Funds).

"**Dynamic**" shall mean Dynamic Star III LLC, a Delaware limited liability company.

"**Dynamic Change of Control**" shall mean, if at any time, other than as a result of the death or Disability of the Dynamic Key Individuals, Dynamic ceases to be directly or indirectly (i) wholly-controlled by one or more of the Dynamic Key Individuals and (ii) owned (legally, beneficially and economically) at least seventy-five percent (75%) by one or more of the Dynamic Key Individuals.

"**Dynamic Indirect Permitted Transferee**" shall mean (i) any Family Member of any Dynamic Key Individual, (ii) any trust created solely for the benefit of any Dynamic Key Individual and any Family Member of a Dynamic Key Individual which is wholly-controlled by the Dynamic Key Individual, or (iii) any partnership, limited liability company or corporation that at all times is and remains wholly-owned and wholly-controlled, directly or indirectly, by one or more of the Dynamic Key Individuals.

"**Dynamic Key Individuals**" shall mean Gary Segal.

"**Dynamic Permitted Transferee**" shall mean any Person that is directly or indirectly (i) wholly-controlled by one or more of the Dynamic Key Individuals, (ii) wholly-owned (legally, beneficially and economically) by one or more of the Dynamic Key Individuals alone or together with one or more Dynamic Indirect Permitted Transferees, and (iii) owned (legally, beneficially and economically) at least seventy-five percent (75%) by one or more of the Dynamic Key Individuals.

"**Dynamic Representatives**" shall have the meaning provided in Section 9.2(a).

"**Economic Interest**" means a Person's share of the profits and losses of, and the

-B4-

right to receive Distributions from, the Company pursuant to this Agreement and the Act, but shall not include any right to vote on, consent to or otherwise participate in any decision of the Members.

"**Economic Interest Holder**" means any Person who holds an Economic Interest, whether as a Member or an un-admitted assignee of a Member.

"**ERISA**" shall mean the Employee Retirement Income Security Act of 1974, as amended from time to time.

"**Family Member**" shall mean, with respect to any individual, any spouse or lineal descendant or spouse of a lineal descendant, whether by adoption or marriage, of such individual.

"**Fiscal Year**" shall mean each calendar year ending December 31.

"**Flow-Through Entity**" shall have the meaning provided in Sections 5.7 and 12.4(b).

"**Foreign Corrupt Practices Act**" shall mean the Foreign Corrupt Practices Act of the United States, 15 U.S.C. Sections 78a, 78m, 78dd-1, 78dd-2, 78dd-3, and 78ff, as amended, if applicable, or any similar law of any jurisdiction where one or more properties owned or leased by the Company or a Subsidiary are located or where the Company or any of the Subsidiaries transacts business or any other jurisdiction, if applicable.

"**Income**" shall mean the gross income of the Company for any month, Fiscal Year or other period, as applicable, calculated in accordance with Federal income tax accounting principles, including gains realized on the sale, exchange or other disposition of the Company's assets; provided, however, that if any property is carried on the books of the Company at a value that differs from that property's adjusted basis for tax purposes, gain with respect to such property shall be computed with reference to the book basis of such property, consistently with the requirement of Treasury Regulations §1.704-1(b)(2)(iv)(g); and provided further, that any item allocated under Section 7.2 shall be excluded from the computation of Income.

"**Indemnified Party**" shall have the meaning provided in Section 14.3(a).

"**Indemnifying Party**" shall have the meaning provided in Section 14.3(a)

"**Initial Capital Contributions**" shall have the meaning provided in Section 5.1(a).

"**Interest**" shall mean, with respect to each Member, the entire limited liability company interest of such Member in the Company, which includes, without limitation, any and all rights, powers and benefits accorded a Member under this Agreement and the duties and obligations of such Member hereunder.

"**Investment Maintenance Costs**" shall mean the actual third-party out-of-pocket costs incurred by Manager on behalf of or otherwise relating to or intended to benefit the Company, such as reasonable travel, appraisal, legal, accounting, diligence and investigation expenses.

"**Land**" shall mean the land that is the site of the Properties.

-B5-

"**Lockout Period**" shall mean the later of (A) the period of time beginning on the date of this Agreement and ending either (i) if the Certification is obtained within twenty four (24) months from the effective date of this Agreement, then eight (8) months after the Certification, and (ii) if the Certification is not obtained within twenty four (24) months from the date of this Agreement, the date that is twenty-four (24) months after the date of this Agreement; or (B) such time as any applicable construction financing can be prepaid by the Company without penalty.

"**Loss**" shall mean the aggregate of losses, deductions and expenses of the Company for any month, Fiscal Year or other period, as applicable, calculated in accordance with Federal income tax accounting principles, including losses realized on the sale, exchange or other disposition of the Company's assets; provided, however, that if any property is carried on the books of the Company at a value that differs from that property's adjusted basis for tax purposes, loss, depreciation and amortization with respect to such property shall be computed with reference to the book basis of such property, consistently with the requirement of Treas. Reg. §1.704-1(b)(2)(iv)(g); and provided further, that any item allocated under Section 7.2 shall be excluded from the computation of Loss.

"**Major Decisions**" shall mean those decisions listed on Exhibit C.

"**Management Committee**" shall have the meaning provided in Section 9.2(a).

"**Manager**" shall have the meaning provided in Section 9.1.

"**Member**" and "**Members**" shall mean Dynamic, Namdar and any other Person admitted to the Company pursuant to this Agreement. For purposes of the Act, the Members shall constitute a single class or group of members.

"**Member in Question**" shall have the meaning provided in Section 16.12.

"**Namdar**" shall mean Namdar Fordham Landing LLC, a New York limited liability company.

"**Namdar Change of Control**" shall mean, if at any time, other than as a result of the death or Disability of the Namdar Key Individuals, Namdar ceases to be directly or indirectly (i) wholly-controlled by one or more of the Namdar Key Individuals and (ii) owned (legally, beneficially and economically) at least fifty percent (50%) by one or more of the Namdar Key Individuals.

"**Namdar Indirect Permitted Transferee**" shall mean (i) any Family Member of any Namdar Key Individual, (ii) any trust created solely for the benefit of any Namdar Key Individual and any Family Member of a Namdar Key Individual which is wholly-controlled by the Namdar Key Individual, or (iii) any partnership, limited liability company or corporation that at all times is and remains wholly-owned and wholly-controlled, directly or indirectly, by one or more of the Namdar Key Individuals.

"**Namdar Key Individuals**" shall mean Igal Namdar.

"**Namdar Permitted Transferee**" shall mean any Person that is directly or

-B6-

indirectly (i) wholly-controlled by one or more of the Namdar Key Individuals, (ii) wholly-owned (legally, beneficially and economically) by one or more of the Namdar Key Individuals alone or together with one or more Namdar Indirect Permitted Transferees, and (iii) owned (legally, beneficially and economically) at least fifty percent (50%) by one or more of the Namdar Key Individuals.

"**Namdar Representatives**" shall have the meaning provided in Section 9.2(a).

"**Net Income**" shall mean the amount, if any, by which Income for any period exceeds Loss for such period.

"**Net Loss**" shall mean the amount, if any, by which Loss for any period exceeds Income for such period.

"**Non-Credit Provider**" shall have the meaning set forth in Section 9.9(b).

"**Non-Funding Member**" shall have the meaning provided in Section 5.2(b).

"**Obligations**" shall mean any and all rights under and amounts due and owing to Preferred Investor pursuant to the Prefco LLCA or other Investment Documents (as defined in the Prefco LLCA) or in respect of the Preferred Investment (including and additional advances or sums accrued thereon), together with all obligations of Member and its affiliates to Preferred Investor under the Prefco LLCA and any other Investment Documents (as defined in the Prefco LLCA).

"**OFAC**" shall have the meaning provided in Section 9.9(c).

"**Organizational Expenses**" shall have the meaning provided in Section 4(b).

"**Other MC Decision**" shall mean each decision required to be made by the Management Committee pursuant to the express terms of this Agreement, other than the Major Decisions.

"**Percentage Interest**" shall have the meaning provided in Section 5.3.

"**Person**" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization, government or any agency or political subdivision thereof or any other legal entity.

"**Plymouth**" shall mean Plymouth Group III LLC, a New York limited liability company.

"**Plymouth BCP Distribution**" shall have the meaning set forth in Section 6.4.

"**Plymouth Change of Control**" shall mean, if at any time, other than as a result of the death or Disability of the Plymouth Key Individuals, Plymouth ceases to be directly or indirectly (i) wholly-controlled by one or more of the Plymouth Key Individuals and (ii) owned (legally, beneficially and economically) at least seventy-five percent (75%) by one or more of the

Plymouth Key Individuals.

"**Plymouth Indirect Permitted Transferee**" shall mean (i) any Family Member of any Plymouth Key Individual, (ii) any trust created solely for the benefit of any Plymouth Key Individual and any Family Member of a Plymouth Key Individual which is wholly-controlled by the Plymouth Key Individual, or (iii) any partnership, limited liability company or corporation that at all times is and remains wholly-owned and wholly-controlled, directly or indirectly, by one or more of the Plymouth Key Individuals.

"**Plymouth Key Individuals**" shall mean Michael Davis and Joshua Goldstein.

"**Plymouth Permitted Transferee**" shall mean any Person that is directly or indirectly (i) wholly-controlled by one or more of the Plymouth Key Individuals, (ii) wholly-owned (legally, beneficially and economically) by one or more of the Plymouth Key Individuals alone or together with one or more Plymouth Indirect Permitted Transferees, and (iii) owned (legally, beneficially and economically) at least seventy-five percent (75%) by one or more of the Plymouth Key Individuals.

"**Prefco**" shall have the meaning set forth in the Recitals hereto.

"**Prefco LLCA**" shall mean that certain Limited Liability Operating Agreement of Prefco, to which Preferred Investor is a member and has made its Preferred Investment.

"**Preferred Investor**" shall have the meaning set forth in the Recitals hereto, together with its respective successors and permitted assigns.

"**Preferred Investment**" shall have the meaning ascribed to such term in the Prefco LLCA.

"**Project**" shall mean the construction and development of mixed use commercial and residential buildings on the Land.

"**Properties**" shall have the meaning set forth in the Recitals.

"**Regulations**" shall mean the Treasury Regulations promulgated pursuant to the Code, as amended from time to time, including the corresponding provisions of any successor regulations.

"**Representatives**" shall have the meaning provided in Section 9.2(a).

"**Rezoning**" means the reclassification of the Land, at the conclusion of ULURP for zoning purposes currently being pursued by the Company, after which the Land will be zoned to permit not less than 1,800,000 square feet of residential use and 600,000 square feet of commercial use.

"**Securities Act**" shall mean the Securities Act of 1933, as amended.

"**Subsidiary**" shall mean any corporation, partnership, limited liability company or

-B8-

other entity of which ten percent (10%) or more of the equity interest is owned directly or indirectly by the Company, including without limitation, the Borrowers and PrefCo.

"**Tax Proceedings**" shall have the meaning provided in Section 8.3.

"**Third Party Lender**" means any other source of third-party acquisition and/or construction financing or refinancing for the Properties and/or the business of the Company and its direct or indirect subsidiaries.

"**Total Investment**" shall mean, with respect to each Member the sum of the aggregate Capital Contributions made (or deemed made) by such Member.

"**Transfer**" means, as a noun, any transfer, sale, assignment, exchange, charge, pledge, gift, hypothecation, conveyance, encumbrance or other disposition, voluntary or involuntary, by operation of law or otherwise and, as a verb, voluntarily or involuntarily, by operation of law or otherwise, to transfer, sell, assign, exchange, charge, pledge, give, hypothecate, convey, encumber or otherwise dispose of.

"**Withdrawing Member**" shall have the meaning provided in Section 12.5(b).

FILED: NEW YORK COUNTY CLERK 09/16/2025 12:34 PM
INDEX NO. 850030/2025
NYSCEF DOC. NO. 46
Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 253 of 300
RECEIVED NYSCEF: 04/06/2025

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM
INDEX NO. 850030/2025
NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 04/06/2025

## EXHIBIT C
## Major Decisions

With respect to the Company and any Subsidiary, each of the below actions and/or decisions shall constitute a "**Major Decision**".

a. Entering into Development Agreement and any amendments, modifications, renewals or replacement thereof;

b. Sale or refinancing of any of the Properties or Project and any material amendments, modifications, renewals or replacement thereof;

c. Approval of a material change of the purpose of or scope of the Company;

d. Entering into any industrial leases for the Properties, or any brokerage company retained in connection therewith;

e. Approval for attaching any liens or encumbrances on the Company assets;

f. Approval of the execution of a Confession of Judgment against the Company;

g. Settling any claim in excess of $100,000 against the Company;

h. Acquiring any additional real property (other than the Land) or any interest therein on behalf of the Company;

i. Doing any act in contravention of the purpose of this Agreement as provided in Section 3; or

j. The taking of any action under applicable bankruptcy, insolvency or similar laws with respect to the Company or the Project.

## EXHIBIT D
### Buy/Sell

After the Lockout Period, at any time after a Deadlocked Major Decision shall have occurred, except in the case of a Deadlocked Major Decision with respect to the matters set forth in Section 9.10 herein, and the Members shall have unsuccessfully attempted to resolve the same in accordance with Section 9.2(f) above, either Member shall have the unilateral right to trigger this Buy/Sell provision (the "**Buy/Sell**"), by delivery of notice (the "**Buy/Sell Offering Notice**"). In the event of a Buy/Sell, the following provisions shall apply:

(a)     The Member sending the Buy/Sell Offering Notice shall be known as the "**Buy/Sell Initiator**" and the Member receiving it shall be known as the "**Buy/Sell Respondent**." The Buy/Sell Offering Notice shall include a valuation stating the aggregate dollar amount (the "**Buy/Sell Valuation**") that the Buy/Sell Initiator would be willing to pay if it were a third party for all of the Company Assets as of that date free and clear of all liabilities on such assets.

(b)     Upon receipt of the Buy/Sell Offering Notice, the Buy/Sell Respondent shall have the obligation to choose one of the following:

(c)     to sell its full Interest to the Buy/Sell Initiator for an amount equal to the aggregate amount the Buy/Sell Respondent would have been entitled to receive if the Company sold the Company Assets for the Buy/Sell Valuation and paid all the Company's liabilities (and liabilities secured by the Company Assets) on the Buy/Sell Closing Date and the Company distributed the resulting net proceeds (after deducting, inter alia, the amount of transaction costs (including brokerage commissions (2% of the purchase price) and transfer taxes (in accordance with applicable New York law)) that would have been incurred in connection with such sale and the extinguishment of all existing indebtedness and liabilities) in accordance with this Agreement; or

(d)     to purchase the full Interest of the Buy/Sell Initiator for an amount equal to the amount the Buy/Sell Initiator would have been entitled to receive if the Company sold the Company Assets for the Buy/Sell Valuation and paid all the Company's liabilities (and liabilities secured by the Company Assets) on the Buy/Sell Closing Date and the Company distributed the resulting net proceeds (after deducting, inter alia, the amount of transaction costs (including brokerage commissions (2% of the purchase price) and transfer taxes (in accordance with applicable New York law)) that would have been incurred in connection with such sale and the extinguishment of all existing indebtedness and liabilities) in accordance with this Agreement.

(e)     Within 30 days after receipt of the Buy/Sell Offering Notice by the Buy/Sell Respondent (the "**Buy/Sell Option Period**"), the Buy/Sell Respondent shall notify the Buy/Sell Initiator in writing as to whether (i) the Buy/Sell Respondent will elect to purchase the Interests of the Buy/Sell Initiator at the price provided for above (a "**Buy/Sell Purchase Notice**"), or (ii) will elect to sell its Interests in the Company to the Buy/Sell Initiator at the price provided for above (a "**Buy/Sell Sale Notice**"). If the Buy/Sell Respondent does not notify the Buy/Sell Initiator of its election prior to expiration of the Buy/Sell Option Period, the Buy/Sell Respondent shall for all purposes be conclusively deemed to have sent a Buy/Sell Sale Notice on the last day of such period. To be effective, a Buy/Sell Purchase Notice shall be accompanied by a deposit paid in United States Dollars by wire transfer of immediately available funds to Royal Abstract, as escrow agent,

or such other title company as reasonably selected by the parties, (the "**Buy/Sell Deposit**") in an amount equal to five percent (5%) of the purchase price for the Interests in question. If the Buy/Sell Respondent delivers (or is deemed to have delivered) a Buy/Sell Sale Notice to the Buy/Sell Initiator as set forth above, the Buy/Sell Initiator shall have three (3) Business Days after the date of its actual or deemed receipt of the Buy/Sell Sale Notice to deliver the Buy/Sell Deposit.

(f)     The Member obligated to purchase hereunder shall fix a date (the "Buy/Sell Closing Date") upon which the closing of such purchase (the "**Buy/Sell Closing**") shall occur, which date shall not be sooner than 30 days, or later than 180 days, following the expiration of the Buy/Sell Option Period (with each Member having the one time right to adjourn such closing by up to five Business Days). The Buy/Sell Closing shall take place at a location in the United States as designated by the Member that is obligated to purchase pursuant to this Section, or may take place escrow, at the request of either party. The Buy/Sell Deposit (if in the form of a cash deposit) shall be released from escrow and credited toward the purchase price of the Interest being sold at the Buy/Sell Closing.

(g)     At the Buy/Sell Closing, (i) the selling Member shall deliver an assignment (in form and substance reasonably satisfactory to the buying Member) of the selling Member's Interest, which Interest shall be conveyed to the buying Member free and clear of all liens, claims and encumbrances (except for those created by this Agreement); (ii) the buying Member shall pay the purchase price (as determined above) for the selling Member's Interest (less the Buy/Sell Deposit, which shall be paid to the selling Member) to the selling Member by wire transfer of immediately available funds to an account or accounts designated by the selling Member; (iii) each party shall execute and deliver any other reasonable and customary documents and instruments as are required to effectuate such purchase and sale; (iv) the selling Member shall deliver to the buying Member (x) evidence reasonably satisfactory to the buying Member of the due corporate, partnership, limited liability company or other authority of such selling Member to convey its interest to the buying Member and (y) a certificate containing representations and warranties of such selling Member regarding (A) the due authorization, execution and delivery of the closing documents, (B) due formation, valid existence and good standing in all applicable jurisdictions, (C) the enforceability of the closing documents being signed by such selling Member, (D) that all consents and approvals necessary to be obtained with respect to the transaction in respect only of such selling Member have been obtained, (E) that the selling Member has not dealt with any brokers, finders or similar parties in connection with the sale that could entitle any such party to claim a commission, fee or other compensation in connection therewith (or, if there are any such brokers, finders or similar parties, that same have been or will be paid in full concurrently with the Buy/Sell Closing) and (F) that the selling Member's Interest is free from all liens, claims or encumbrances, which representations and warranties contained in such certificate shall survive the Buy/Sell Closing for a period of twelve (12) months; (v) each party shall pay its own legal fees in connection with such sale and purchase; the selling Member shall pay any transfer or similar taxes in connection with such sale and purchase; and all other costs involved in the transaction shall be paid equally by the selling Member and the buying Member; and (vi) such sale shall be subject to all liabilities and obligations of the Company, matured or unmatured, absolute or contingent. The buying Member shall also be required to obtain a release of the selling Member and its Affiliates from obligations and liabilities that accrue after the date of such release under any guaranties that the selling Member and such Affiliates have provided to third parties in connection with any Company (or Subsidiary) financing.

Exhibit D

(h)     If the selling Member breaches its obligations hereunder, then the buying Member shall be entitled to all rights and remedies at law or in equity on account thereof (including specific performance but excluding the right to obtain consequential or punitive damages) and the selling Member shall have no further right to invoke the provisions of this Exhibit D. If the buying Member breaches its obligations under this Exhibit D, then (i) the selling Member shall be entitled to retain the Buy/Sell Deposit as liquidated damages, (ii) the buying Member shall have no further right to invoke the provisions of this Exhibit D, and (iii) the selling Member shall have the right to effectuate a Sale of the Properties without first implementing the provisions of this Exhibit D above and without the approval of the buying Member. The parties acknowledge that it would be impractical and extremely difficult to estimate the damages which the selling Member may suffer in connection with a default by the buying Member hereunder. Therefore, the parties have agreed that a reasonable estimate of the total net detriment that the selling Member would suffer in such event is and shall be the right of the selling Member to receive the Buy/Sell Deposit as liquidated damages, as its sole and exclusive remedy hereunder. Such liquidated damages are not intended as a forfeiture or penalty within the meaning of applicable law.

(i)     In connection with the Buy/Sell Closing, the buying Member, at its sole cost, expense and liability, shall have the right to refinance any outstanding third party indebtedness of the Company (and the selling Member will reasonably cooperate with the buying Member in connection therewith at no liability, cost or expense to the selling Member); provided, however, that (i) the buying Member may not incur any liabilities, costs or expenses on behalf of the Company in connection with such refinancing (except for any liabilities, costs or expenses incurred upon or after the Buy/Sell Closing), and (ii) if for any reason such refinancing is not consummated, then the buying Member shall indemnify and hold the Company and the selling Member harmless from and against any and all claims, liabilities, costs and expenses (including commitment and other loan fees and attorneys' fees) suffered or incurred by the Company and/or the selling Member in connection with such refinancing or the failure of it to close.

(j)     Notwithstanding any of the forgoing, Plymouth may not exercise the Buy/Sell. If Dynamic is the buying Member hereunder, the percentage interest of Plymouth shall remain the same. If Namdar is the buying member hereunder, Namdar's purchase of the Membership Interests of Dynamic shall include the purchase of the membership Interests of Plymouth, in accordance with the provisions set forth herein.

Exhibit D

FILED: NEW YORK COUNTY CLERK 04/06/2025 02:28 PM
INDEX NO. 850030/2025

NYSCEF DOC. NO. 46
RECEIVED NYSCEF: 04/06/2025

**EXHIBIT E**
**Initial Budget and Plan**

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 258 of 300

# EXHIBIT F

## CERTIFICATE

Exhibit D

**NYSCEF Document # 138**
**Memorandum of Law in Opposition to the Motion for Summary Judgment of Plaintiff Fordham Landing North Holdings, LLC to Dismiss the Counterclaims of Defendants/Third-Party Plaintiffs MDBZJGGS, LLC, DS Fordham Landing 2 LLC, DS Fordham Landing 4 LLC, and Gary Segal**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X
FORDHAM LANDING NORTH HOLDINGS, LLC,

                                  Plaintiff,

      -against-

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, IGAL NAMDAR, GARY
SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL
BOARD, and "JOHN DOE" NO. 1 THROUGH "JOHN DOE"
NO. 100, inclusive, the last one hundred names being fictitious
and unknown to plaintiff, the persons or parties intended being
the tenants, occupants, persons or corporations, if any, having or
claiming an interest in or lien upon the premises described in the
complaint,

                                  Defendants.

Index No.
850030/2025

Mot. Seq. 006

-------------------------------------------------------------------------X
MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS
FORDHAM LANDING 4 LLC, and GARY SEGAL,

                          Third-Party Plaintiffs,

     -against-

NAMDAR FORDHAM LANDING LLC, and SIG CRE 2023
VENTURE LLC,

                      Third-Party
                      Defendants,

- and -

FORDHAM LANDING PREFERRED, LLC and FORDHAM
LANDING PREFERRED SPONSOR, LLC,

                      Nominal Third-Party
                      Defendants.
-------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT
OF PLAINTIFF, FORDHAM LANDING NORTH HOLDINGS, LLC TO
DISMISS THE COUNTERCLAIMS OF DEFENDANTS/THIRD-PARTY PLAINTIFFS,
MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM
<u>LANDING 4 LLC, AND GARY SEGAL</u>**

Submitted By:

Russ & Russ, P.C.
Attorneys for Defendants and Third-Party Plaintiffs
543 Broadway
Massapequa, New York 11758
(516-541-1014)
jayruss@russrusspc.com

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 261 of 300

## TABLE OF CONTENTS

PAGE

Table of Authorities...................................................................................................i

PRELIMINARY STATEMENT....................................................................................1

THE SEGAL DEFENDANTS HAVE ADEQUATELY PLED CAUSES OF ACTION.....1

CONCLUSION.........................................................................................................15

# TABLE OF AUTHORITIES

**PAGE**

Alken Indus. v. Toxey Leonard & Assocs., 2013 N.Y. Slip Op. 31864(U),
(Suffolk Co. Aug. 2, 2013)...................................................................................5

Baldwin v. Weed, 17 Wend. 224 (NYS Supreme Court of Judicature, 1837).............................9

Baron v. Galasso, 83 A.D.3d 626 (2d Dept., 2011)....................................................6

Bebinger v. Sweet, 6 Hun. 478 (3d Dept., 1876).......................................................9

Bernstein v Kelso & Co., 231 A.D.2d 314, 320 (1997)..................................................2

Board of Education v Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Tchrs.
Ass'n Loc. 1889 AFT AFL-CIO, 38 N.Y.2d 397 (1975)....................................................8, 9

Brown v. Feeter, 7 Wend. 301 (NYS Supreme Court of Judicature, 1831)..............................9

Chan v. Havemeyer Holdings LLC, 2023 N.Y. Slip. Op. 32603(U) July 26, 2023,
Supreme Court, New York County Index No. 652359/2022................................................7

Cohn v. Lionel Corp., 21 N.Y.2d 559 (1968)...........................................................9

EBC I, Inc. v. Goldman Sachs & Co., 5 N.Y.3d 11 (2005)...............................................8

Fletcher v. Dakota, Inc., 99 A.D.3d 43 (1st Dept., 2012).............................................8

G.O.C. Invs. Co. Inc. v. Bagbag, 2025 N.Y. Slip. Op. 31116(U) March 31, 2025
Sup.Ct., NY Co. 2025)(Index No. 650785/2024) (Crane, J.) ...........................................3, 7

Guard-Life v. S. Parker Hardware Mfg., 50 N.Y.2d 183, 189-90 (1980).................................5

Guggenheimer v. Ginsburg, 43 N.Y.2d 268 (1977).......................................................3

Hazard v. Harding, 63 How Prac 326..................................................................9

Holley v. Mix, 3 Wend. 350 (NYS Supreme Court of Judicature, 1829)..................................9

Howard Stores Corp. v. Pope, 1 N.Y.2d 110 (1956)....................................................9

In re Sharp Intl. Corp., 281 B.R. 506, 514 (E.D.N.Y., 2002).........................................7

i

James v. Board of Educ. of Cent. School Dist. No. 1 of Towns of Orangetown Clarkstown, 37 N.Y.2d 891 (1975)................................................................................9

Jered Contr. Corp. v. New York City Tr. Auth., 22 N.Y.2d 187 (1968)......................................2

Kaufman v. Cohen, 307 A.D.2d 113 (1st Dept. 2003)................................................2

Leon v. Martinez, 84 N.Y.2d 83 (1994)................................................................3, 5

L.I City Ventures LLC v. Sismanoglou, 158 A.D.3d 567 (1st Dept., 2018)..............................8

Meinhard v. Salmon, 249 N.Y. 458 (1928)................................................8

Rogers v. Brewster, 5 Johns 125 (NYS Supreme Court of Judicature, 1809)............................9

S & K Sales Co. v. Nike, Inc., 816 F.2d 843, 848 (2d Cir., 1987)..............................................7

Sayles v. Ferone, 137 A.D.3d 486 (1st Dept., 2016)................................................7

Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Ins. Co., 64 A.D.3d 476 (1st Dept., 2009)................................................................7

Village of Kiryas Joel v. County of Orange, 144 A.D.3d 895 (2d Dept., 2016)..........................8

Vione v. Tewell, 12 Misc.3d 973 (Sup. Ct., NY Cty., 2006)................................................7

William Doyle Galleries, Inc. v. Stettner, 167 A.D.3d 501 (1st Dept., 2018)............................7

Williams v. Williams, 23 N.Y.2d 592, 596 (1969)................................................9

**OTHER AUTHORITIES**

CPLR 3016(b)................................................................................2
CPLR 3211 (a)(1) and (7)................................................................1
CPLR 3211(d)................................................................................4

ii

## PRELIMINARY STATEMENT

Defendants/Third-Party Plaintiffs, MDBZJGGS, LLC, DS Fordham Landing 2 LLC, DS Fordham Landing 4 LLC, and Gary Segal (the "**Segal Defendants**"), submit this Memorandum of Law in opposition to the motion to dismiss by FORDHAM LANDING NORTH HOLDINGS LLC, which is the substitute plaintiff in this case (the "**Substitute Plaintiff**"). The Substitute Plaintiff is an affiliate/shill for Igal Namdar (who is a defendant in this case) and the Namdar entities - which is not denied - and moves to dismiss the counterclaims asserted against it based on the alleged "failure to state a cause of action," referencing CPLR 3211 (a) (1) and (7). This motion is essentially a "me too" by Substitute Plaintiff on the heels of the same and/or similar motion by Third-Party Defendant SIG CRE 2023 Venture, LLC ("**SIG**"), which was the originally named plaintiff in this case. The Substitute Plaintiff's motion is devoid of merit. Substitute Plaintiff does not have a total defense as a matter of law.

## THE SEGAL DEFENDANTS HAVE ADEQUATELY PLED CAUSES OF ACTION

The Substitute Plaintiff alleges that original plaintiff, SIG, "received" the original lender's right, title and interest in and to the Loan Documents, Note and Mortgage, on December 14, 2023, and then commenced this action on January 10. 2025. Notably, it is further alleged that, on February 25, 2025, SIG assigned to Substitute Plaintiff "**the claim and demand constituting the cause of action.**" Boyer affirmation, para 14. Mr. Boyer does not allege that (or how) Substitute Plaintiff acquired by valid assignment, the original lender's rights, title and interest in and to the Loan Documents, Note and Mortgage. Mr. Boyer, without evidence and without any personal knowledge, alleges that Substitute Plaintiff merely "**became**" the holder and assignee of the Note/Mortgage/Loan Documents (Para 15) as if by magic! The Boyer affirmation is fatal to Substitute Plaintiff's claim that it acquired the necessary rights to prosecute this case by valid assignment. This is worth emphasizing – "**became**" has no legal effect here - and a "**claim and**

1

demand" are not a Note and Mortgage. **The earlier ruling in this case that Substitute Plaintiff "cobbled together" enough to defeat a dismissal motion is undermined by this admission against interest of Substitute Plaintiff.**

The Segal Defendants assert and have raised as an affirmative defense, that Substitute Plaintiff lacks standing, and that this case must be dismissed, and for that reason alone, this motion attacking properly and well-pled counterclaims should be denied. Mr. Boyer's non-probative affirmation is otherwise irrelevant. The specious argument being made by Substitute Plaintiff is that the counterclaims do not meet minimal pleading standards. The argument is boilerplate and ignores the actual wording of the pleadings and applicable law. It is a regurgitation of the flawed arguments made in the pending motion to dismiss by SIG.

Apparently, the Substitute Plaintiff, along with Namdar and Namdar Fordham Landing LLC, believes that the duplicitous and tortious wrongdoing and misconduct of Igal Namdar and his business entities – **by foreclosing against the Segal Defendants' (Namdar's partner) interests to wipe them out** - is not actionable. The Segal Defendants respectfully disagree.

Substitute Plaintiff's attack on the sufficiency of the pleading is overblown and very wrong. As noted in Kaufman v. Cohen, 307 A.D.2d 113 (1st Dept., 2003), under CPLR 3016(b), a plaintiff need only provide "sufficient detail to inform defendants of the substance of the claims." Bernstein v Kelso & Co., 231 A.D.2d 314, 320 (1997). Indeed, the pleading requirements of CPLR 3016(b) should not be interpreted so strictly as to require specificity where "it may be 'impossible to state in detail the circumstances..." Jered Contr. Corp. v. New York City Tr. Auth., 22 N.Y.2d 187 (1968). ("It is not unusual in cases involving concealment that a plaintiff will be unable to state the facts constituting fraud in detail since such facts are necessarily "peculiarly within the knowledge of the (defrauding) party." As established in the Segal Defendants' opposition to the

2

motion to dismiss by SIG, there is intentional obfuscation at play, here, highlighted by SIG's submission of a **"truncated to the relevant pages"** Loan Sale Agreement. This agreement is the document by which SIG allegedly "sold, assigned and transferred" its rights in the "Note and Loan Documents" to Substitute Plaintiff, which is a strawman/shill for Igal Namdar and Namdar entities. SIG's truncated submission even lacks the signature pages. **Substituted Plaintiff has not corrected this error and uses the same obfuscation.** The Loan Sale Agreement must be produced in its entirety.

As with the SIG motion, the Court is respectfully referred to the affirmation of Jay Edmond Russ, Esq. ("Russ Aff.") and the exhibits annexed thereto, which consist of the affirmation of Andrew Albstein, Esq. (NYSECF Doc. No. 44) and a previously submitted affirmation from Mr. Russ dated April 6, 2025 (NYSECF Doc. No. 45) which establish that Substitute Plaintiff is owned/controlled by Igal Namdar, or a Namdar-controlled entity. The Court may freely consider affidavits submitted by the Segal Defendants to remedy any defects in the counterclaims and third-party complaint, and "the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one" Guggenheimer v. Ginsburg, 43 N.Y.2d 268, 275 (1977). See also, this Court's decision in G.O.C. Invs. Co. Inc. v. Bagbag, 2025 N.Y. Slip. Op. 31116(U) March 31, 2025, Sup.Ct., NY Co. 2025)(Index No. 650785/2024) (Crane, J.)

**The Court should note that there is no affirmation/affidavit from Igal Namdar denying these allegations against him,** and, for the purposes of this motion, the counterclaim/third-party complaint allegations are deemed to be true. Leon v. Martinez, 84 N.Y.2d 83 (1994). As pled, Substitute Plaintiff tortiously interfered with contract rights of the Segal Defendants, induced a breach of the contract, abused the process of this Court, and aided and abetted a breach of fiduciary duties, particularly the duty of loyalty owed by Igal Namdar and the

3

Namdar entities and Substitute Plaintiff. The fiduciary duties arise from the co-membership, co-management, and joint decision-making of these entities and as to the overall real estate venture. **Igal Namdar is not passive in these investments; he (directly and through his entities) has managerial duties and responsibilities.** Substitute Plaintiff was aware of the fiduciaries' breach of duties and actively participated in it, essentially becoming a participant in it. **The Segal Defendants are allowed to have discovery and prove at trial that their co-manager, co-partner, co-investor is now actively working against them.** (See CPLR 3211(d) "Facts unavailable to opposing party. Should it appear from affidavits submitted in opposition to a motion made under subdivision (a) or (b) that facts essential to justify opposition may exist but cannot then be stated, the court may deny the motion, allowing the moving party to assert the objection in his responsive pleading, if any, or may order a continuance to permit further affidavits to be obtained or disclosure to be had and may make such other order as may be just.").

Discovery is required to determine how the original Plaintiff and the Substitute Plaintiff embarked upon this scheme. At present, it is all shrouded in mystery. The original Plaintiff (SIG), Substitute Plaintiff, Igal Namdar, the Namdar entities and others acted in concert to cause the breach of the relevant operating agreements and the undermining of the entire investment in the real estate and project. Namdar, the Segal Defendants' partner, co-member and co-manager, is now driving this litigation, the goal of which is to divest the owner of its title and procure a deficiency judgment and divest the Segal Defendants of their interests in and to the real property which is secured by the mortgage. Indeed, this is tortious interference, as well as inducing a breach, and also an abuse of process. See below for a further explanation of abuse of process. In 1980, the New York Court of Appeals adopted §766 of the Restatement (Second) of Torts as the standard for a cause of action for tortious interference with contract in New York. <u>Guard-Life v.</u>

4

S. Parker Hardware Mfg., 50 N.Y.2d 183, 189-90 (1980); see Alken Indus. v. Toxey Leonard & Assocs., 2013 N.Y. Slip Op. 31864(U), at *5 (Suffolk Co. Aug. 2, 2013). The Restatement defines tortious interference with contract as "intentionally and improperly interfer[ing] with the performance of a contract…between another and a third person by inducing or otherwise causing the third person not to perform the contract." Restatement (Second) of Torts §766 (Am. L. Inst. 1977). Otherwise causing is sufficient.

Given the clandestine/secret misconduct of Substitute Plaintiff (and SIG), the Segal Defendants have pled as much as they know, which is more than sufficient for "notice" pleading under modern pleading rules. The Segal Defendants need not do more, and these allegations are deemed to be true for purposes of this dismissal motion. Leon v. Martinez, *supra*.

Substitute Plaintiff, like SIG, is trying to dismiss causes of action against it by making random arguments arising from an operating agreement to which it is not a signatory. SIG tried to hide behind an alleged contractual waiver of fiduciary duties (seriously misquoted by SIG) contained in the Fordham Landing Preferred Sponsor, LLC operating agreement. The signatories to the operating agreement are DS 3 GP, Inc. (not a party here), Dynamic Star III LLC (not a party here), The Plymouth Group II, LLC (not a party here), and Namdar Fordham Landing, LLC, a party here). The waiver applies only "debts, obligations or liabilities of the Company" and therefore, has no effect on the breach of fiduciary duties, here, by which **Igal Namdar and the Namdar entities have turned from co-ventures to litigants against the venture and its participants.** The waiver has no effect on the type of wrongdoing alleged against Substitute Plaintiff or SIG. The Fordham Landing Preferred Sponsor, LLC operating agreement states at Section 9.2(h)(i), which is entitled "Management Committee":

> This Section shall not eliminate or limit the liability of such Representative, Manager, or the Members: A) for acts or omissions that involve fraud, intentional

5

misconduct or a knowing and culpable violation of law, B) for an intentional breach of this Agreement, or C) for any transaction not permitted or authorized under or pursuant to this Agreement from which such Representative, Manager or Member derived a personal benefit (that is separate from its interest in Distributions) unless approved in accordance with this Agreement (including, without limitation, Section 9.4). Notwithstanding any duty (including any fiduciary duty) that might otherwise exist at law or in equity, (i) none of the Representatives (in their capacities as members of the Management Committee only), the Manager or the Members may permit or authorize a transaction under or pursuant to this Agreement from which such Representative, Manager or Member derived a personal benefit (that is separate from its interest in Distributions) unless approved in accordance with this Agreement (including, without limitation, Section 9.4), and (ii) if such approval is obtained, such Representative's, Manager's or Member's duty (including any fiduciary duty) shall be completely satisfied with respect to such transaction. Notwithstanding any duty (including any fiduciary duty) that might otherwise exist at law or in equity, the duty of care of each of such Representatives (in their capacities as members of the Management Committee only), the Manager and the Members is to act in good faith and to not act with fraud, intentional misconduct or a knowing and culpable violation of law. Except as provided in this Agreement, notwithstanding any duty (including any fiduciary duty) that might otherwise exist at law or in equity, whenever in this Agreement a Representative of a Member and/or a Member is permitted or required to make a decision affecting or involving the Company, any Member or any other Person, such Representative and/or such Member shall be entitled to consider only such interests and factors as he, she or it desires, including a particular Member's interests, and shall, to the fullest extent permitted by applicable law, have no duty or obligation to give any consideration to any interest of or factors affecting the Company or any Member. Without limiting the forgoing, each Member acknowledges that the exercise of the rights of any Member under this Agreement and the taking of action on behalf of the Company or with respect to the Properties (including, without limitation, with respect to the sale or other disposition of all or any portion of the Properties) may arise at a time when current market conditions and other factors may be materially disadvantageous to the Company or any other Member.

Substitute Plaintiff brazenly claims that there are no fiduciary duties. Substitute Plaintiff asks that the Court ignore that the counterclaims (and the third-party complaint) allege that Igal Namdar is a "representative" on the management committee, with fiduciary duties as a manager. To state a claim for aiding and breach of fiduciary duty, the Segal Defendants need only allege, as they have, that a fiduciary duty owed to them was breached, that Substitute Plaintiff knowingly induced or participated in the breach, resulting in damages. Baron v. Galasso, 83 A.D.3d 626 (2d

6

Dept., 2011), cited by this Court in G.O.C. Invs. Co. Inc. v Bagbag, *supra*. Substantial assistance merely means that the party affirmatively assists, or helps conceal, or fails to act when required to do so, and the actions of the aider and abettor proximately caused harm on which the primary liability is predicated. Stanfield Offshore Leveraged Assets, Ltd. v. Metropolitan Life Ins. Co., 64 A.D.3d 476 (1st Dept., 2009). This is satisfied fully through allegations of "concealing, or failing to act when required to do so, enabling the harm to proceed" Sayles v. Ferone, 137 A.D.3d 486 (1st Dept., 2016); William Doyle Galleries, Inc. v. Stettner, 167 A.D.3d 501 (1st Dept., 2018) (plaintiff sufficiently alleged substantial assistance through pleading that defendant "enabled").

The Segal Defendants are not required to allege that the aider and abettor had an intent to harm; all that is required is that there is an allegation that such party had knowledge of the breach of duty. Kaufman v. Cohen, *supra*; S & K Sales Co. v. Nike, Inc., 816 F.2d 843, 848 (2d Cir., 1987); In re Sharp Intl. Corp., 281 B.R. 506, 514 (E.D.N.Y., 2002). It is sufficient that there are allegations in the pleadings from which it can be plausibly inferred that the party had actual knowledge of the breach of duty. As this Court stated in Chan v. Havemeyer Holdings LLC, 2023 N.Y. Slip. Op. 32603(U) July 26, 2023, Supreme Court, New York County Index No. 652359/2022, "although a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had knowledge of the breach of duty." The Court denied the motion to dismiss, stating "While plaintiffs do not plead the aiding and abetting claim with exceptional art, it is not palpably insufficient."

A breach of fiduciary is a tort that arises from a violation of a relationship of trust and confidence, which is the relationship between co-managers in the entity, as well as the relationship which each manager has with each member. The Segal Defendants are not claiming that members had fiduciary duties to each other. Vione v. Tewell, 12 Misc.3d 973 (Sup. Ct., NY Cty., 2006).

7

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 271 of 300

The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, and misconduct by the defendant, resulting in damages. <u>Village of Kiryas Joel v. County of Orange</u>, 144 A.D.3d 895 (2d Dept., 2016). A fiduciary relationship requires a showing of a relation between two people "when one of them is under a duty to act for or give advice for the benefit of another upon matters within the scope of the relation" <u>EBC I, Inc. v. Goldman Sachs & Co.</u>, 5 N.Y.3d 11 (2005). Personal liability attaches, as well ("…a corporate officer who participates in the commission of a tort may be held individually liable, … regardless of whether the corporate veil is pierced."; <u>L.I. City Ventures LLC v. Sismanoglou</u>, 158 A.D.3d 567 (1st Dept., 2018). See <u>Fletcher v. Dakota, Inc.</u>, 99 A.D.3d 43 (1st Dept., 2012).

Substitute Plaintiff alleges that the Segal Defendants have no damages. <u>That is also incorrect</u>. The harm caused by breach of fiduciary duties is financial harm, and more than financial harm. There is reputational harm. There is loss of business opportunities in the venture, because the fiduciary cannot be trusted, acts against the interest of the beneficiary, and removal of the fiduciary becomes desirable or necessary. Here, the fiduciary, co-manager of the entity has become an enemy-combatant, suing to try to take the real estate, for as Justice Cardozo stated in <u>Meinhard v. Salmon</u>, 249 N.Y. 458 (1928): "Many forms of conduct permissible in a workaday world for those acting at arm's length are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior."

As stated in <u>Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Tchrs. Ass'n, Inc., Loc. 1889 AFT AFL-CIO</u>, 38 N.Y.2d 397 (1975), abuse of process is defined as the misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process, the vital elements of which are not clearly defined (see, generally, Prosser,

8

Torts [4th ed], § 121; 1 Harper James, Torts, § 4.9; Harper, Torts, § 272; Restatement, Torts, § 682; Cooley, Torts [4th ed], § 131). As the Court further moted, actions based on abuse of process, that is, the tortiousness of using legal process to attain some collateral objective can be found in the earliest reported cases. Holley v. Mix, 3 Wend. 350 (1829); Brown v. Feeter, 7 Wend. 301 (1831); Baldwin v. Weed, 17 Wend. 224 (1837); Rogers v. Brewster, 5 Johns 125 (1809); Bebinger v. Sweet, 6 Hun. 478 (3d Dept., 1876); Hazard v. Harding, 63 How. Prac. 326 (Sup.Ct, NY Co 1882).

As the Court of Appeals stated in Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Tchrs. Ass'n, Inc., Loc. 1889 AFT AFL-CIO, 38 N.Y.2d at 403 (1975) "First, there must be regularly issued process, civil or criminal, compelling the performance or forbearance of some prescribed act. Next, the person activating the process must be moved by a purpose to do harm without that which has been traditionally described as economic or social excuse or justification (cf. James v. Board of Educ. of Cent. School Dist. No. 1 of Towns of Orangetown Clarkstown, 37 N.Y.2d 891 (1975). Lastly, defendant must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process." The Court of Appeals further stated that, "assuming the truth of the facts pleaded along with every favorable inference (Williams v. Williams, 23 N.Y.2d 592, 596 (1969), supra; Cohn v. Lionel Corp., 21 N.Y.2d 559 (1968); Howard Stores Corp. v. Pope, 1 N.Y.2d 110 (1956) and applying the above principles, we find that the complaint before us is sufficient to state a cause of action for abuse of process. The subpoenas here were regularly issued process, defendants were motivated by an intent to harass and to injure, and the refusal to comply with a reasonable request to stagger the appearances was sufficient to support an inference that the process was being perverted to inflict economic harm on the school district." Bd. of Ed. of Farmingdale Union Free

9

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 273 of 300

Sch. Dist. v. Farmingdale Classroom Tchrs. Ass'n, Inc., Loc. 1889 AFT AFL-CIO, 38 N.Y.2d at 403-404.

The carefully prepared counterclaims against Substitute Plaintiff are legally sufficient and alleges the following:

1)      Commencing at/about **paragraph 13** of the subject pleading, Third-Party Plaintiffs allege the nefarious conduct of Igal Namdar, the person in control of Plaintiff and NAMDAR FORDHAM LANDING LLC, and their motivation to acquire the right, title and interest to prosecute this action, and the aiding and abetting of breach of fiduciary duties by SIG, and that SIG. "had actual knowledge of the Breach of Fiduciary Duties and the Duty of Loyalty, encouraged the acts and omissions, and provided substantial assistance in causing the Breach of Fiduciary Duties and the Duty of Loyalty."

2)      Commencing at/about **paragraph 15**, and thereafter, it is alleged that Fordham Landing Preferred, LLC and Fordham Landing Preferred Sponsor, LLC, are in the chain of entities for the ownership of the subject real estate, which entities own "common" interests and "preferred" interests. It is alleged that the managers and management duties and responsibilities of Fordham Landing Preferred Sponsor LLC consist of two (2) individuals ("Management Committee") as follows: "NAMDAR shall be entitled to designate one (1) representative to represent NAMDAR" and "DYNAMIC shall be entitled to designate one (1) representative to represent DYNAMIC..." and the Management Committee's sole function under the agreement is to vote in respect to Major Decisions and any "Other MC Decisions..." It is alleged that Substitute Plaintiff is owned or majority owned by Namdar and/or Namdar Entities and Substitute Plaintiff was formed by, or at the direction of, Namdar, or Namdar Entities, or his or their agents or counsel. Namdar, directly or indirectly, controls Substitute Plaintiff and Namdar Entities.

10

3)    Commencing at/about **paragraph 25** it is alleged that Gary Segal and Namdar/Namdar Entities have management rights, duties and responsibilities, including but not limited to Major Matters governance and management rights, duties and responsibilities which impact the real estate. Such governance and management rights, duties and responsibilities extend to downstream entities/members/partners in the business relationship, and that Namdar/Namdar Entities freely assumed such rights, duties and responsibilities without duress, and, as a manager, Namdar has fiduciary duties to members.

4)    Commencing at/about **paragraph 26**, it is alleged that Gary Segal and Namdar/Namdar Entities, representing themselves as their interests may appear and their affiliates, are and consider themselves to be "co-venturers" and "partners" in the transactions and entities which are the subject of this action, and the Counterclaims, Cross-claims and Third-Party Claims, with fiduciary duties to each other and which extend to downstream entities, members, partners in the business relationship.

5)    Commencing at/about **paragraph 29**, it is alleged that Namdar/Namdar Entities (including Fordham Landing LLC) were required to fund the first set of payments due to SIG CRE 2023 Venture LLC, pursuant to a certain "Extension Agreement" dated in or about September 27, 2024, by and between MDBZJGGS, LLC, DS Fordham Landing 2 LLC, DS Fordham Landing 4 LLC, and SIG CRE 2023 Venture LLC. The purpose of the Extension Agreement was to obtain an extension of the original maturity date of the current loan of $55,0000,000. The Segal Defendants and SIG CRE 2023 Venture LLC relied on the financial commitment of Namdar/Namdar Entities in executing the Extension Agreement, particularly since Namdar signed the Extension Agreement as a Guarantor and was fully aware of the payment requirements thereunder.

11

6)      Accordingly, Namdar/Namdar Entities (including Namdar Fordham Landing LLC) were put on notice, in writing, pursuant to the Fordham Landing Preferred Sponsor LLC, Operating Agreement of their breach (the "Notice," dated November 12, 2024, from Dynamic Star III LLC, a Delaware limited liability company (the "Manager"), the Manager of Fordham Landing Preferred Sponsor LLC, a Delaware limited liability company.

7)      Commencing at **paragraph 30**, it is alleged that said Notice referenced the repeated requests that Namdar/Namdar Entities (including Fordham Landing LLC) contribute the required share of the amount necessary to extend the loan. Said Notice referenced that these requests have been ignored or dismissed by them. Said Notice referenced that the "sustained dereliction of your responsibility to the Company has endangered the entire future of the Project." Said Notice referenced that to extend the loan or renew negotiations, "…the Company requires Additional Capital Contributions of $7,106,779.33" and that "…Pursuant to Section 5.2 of the Operating Agreement, each Member is required to contribute its pro rata share of this Additional Capital Contribution…are required to submit your pro rata share, in an amount equal to $4,060,813.70, to the account specified in the wire instructions attached as Schedule A hereto…"

8)      Commencing at/about paragraph 32, it is alleged that one of the goals of Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff was and is to purchase or purport to purchase the debt, promissory note, mortgage and any related rights, to foreclose, force a judicial sale of the real estate, and take or "steal" from the Segal Defendants their ownership and equity interests, all contrary to their fiduciary duties and the duty of loyalty.

9)      Commencing at/about **paragraph 33**, it is alleged that Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff are engaged in a plan, conspiracy, and

12

scheme to devastate and damage the Segal Defendants by prosecuting this action to judgment and public sale, and take or "steal" from the Segal Defendants their ownership and equity interests, all contrary to their fiduciary duties and the duty of loyalty. Commencing at/about paragraph 35, it is alleged that the Segal Defendants, on the one hand, and Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff, on the other, are in a special trust relationship. As such, Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff are strictly held to the highest standard of conduct under the law.

10) Commencing at/about **paragraph 41**, it is alleged that Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff conspired with SIG CRE 2023 Venture LLC to acquire or purport to acquire certain rights by which Plaintiff would and has claimed the right to be substituted-in as Plaintiff and prosecute this action. Commencing at/about paragraph 42, it is alleged that Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff, also conspired with others, unknown at this time, including but not limited to attorneys and law firms, to acquire or purport to acquire certain rights by which Plaintiff would and has claimed the right to be substituted in as Plaintiff and prosecute this action.

11) Commencing at/about **paragraph 40**, it is alleged that the Fordham Landing Preferred Sponsor LLC Operating Agreement was/is a valid contractual relationship between the signatories thereto, and Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff knew of the Fordham Landing Preferred Sponsor LLC Operating Agreement and the valid contractual relationship. It is alleged that Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff intentionally interfered with the valid contractual relationship, intentionally induced a breach of the valid contractual relationship, and Namdar/Namdar Entities breached the Fordham Landing Preferred Sponsor LLC Operating Agreement.

13

12)     Commencing at/about **paragraph 41**, it is alleged that Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and Plaintiff purport to have acquire the right to prosecute this action to Judgment, to sell the real estate at public auction, and divest the Segal Defendants of title, ownership and the benefits thereof, all for other purposes and ulterior motives beyond those set forth in the summons and Notice of Pendency, and to harm the Segal Defendants. Such other purpose and ulterior motives are to defeat the purpose of Fordham Landing Preferred Sponsor LLC, its Operating Agreement, the entire project, and steal the real estate and ownership and equity interests from the Segal Defendants.

13)     Commencing at/about **paragraph 54**, it is alleged that Namdar/Namdar Entities including Namdar Fordham Landing LLC), and Plaintiff have acted and continue to act maliciously, willfully, conspiratorially, and with intent to cause harm and loss to the Segal Defendants. The Segal Defendants have been damaged in an amount determined at trial but believed to be in the sum of approximately 300 million dollars, together with punitive damages.

14)     Commencing at/about **paragraphs 55 through 61,** it is alleged that SIG knew that Plaintiff, Fordham Landing North Holdings LLC, was and is controlled by Namdar/Namdar Entities (including Namdar Fordham Landing LLC), and that SIG, which was the original Plaintiff herein, wrongfully, tortiously and conspiratorially participated therein, and used that participation to: a) sell or purport to sell its right, title and interest in this case and the underlying transaction for a sum paid to it by Namdar/Namdar Entities (including Namdar Fordham Landing LLC), or Plaintiff in an amount unknown, but believed to be the entire principal and interest which SIG claimed was due and owing, and b) purport to free itself of this case and the duties and responsibilities of litigation and prosecution hereof. It is alleged that, knowing full well that Fordham Landing North Holdings LLC, was and is controlled by Namdar/Namdar Entities, and

14

was and is guilty of wrongdoing and tortious acts committed against the Segal Defendants that SIG procured from Namdar/Namdar Entities (including Namdar Fordham Landing LLC), or Fordham Landing North Holdings LLC, a complete release, indemnification and hold harmless, from and against any liability of any kind, even in tort, as to the Third-Party Plaintiffs arising from its transaction, or arising from this action, or otherwise. It is alleged that SIG participated in and wrongfully, willfully and maliciously induced such breach of fiduciary duties and duties of loyalty, and profits from it, and that as a result of the foregoing the Third-Party Plaintiffs have been damaged in the amount of 300 million dollars and are entitled to an award of punitive damages and counsel fees.

## CONCLUSION

Based upon the foregoing, the motion of Substitute Plaintiff to dismiss the counterclaims should be denied, together with such other and further relief as the Court may deem just and proper.

Dated: Massapequa, New York
September 16, 2025

RUSS & RUSS, P.C.

By: _Jay Edmond Russ_
Jay Edmond Russ, Esq.
Attorneys for Third-Party Plaintiff
543 Broadway
Massapequa, NY 11758
516-541-1014
jayruss@russrusspc.com

15

## Word Count Certification

The undersigned hereby certifies that the within document contains 4,912 words and that the document complies with 22 NYCRR §202.8-b of the Uniform Rules of Courts.

Dated: September 16, 2025

*Jay Edmond Russ*
JAY EDMOND RUSS

16

**NYSCEF Document # 146**
**Plaintiff's Reply Memorandum of Law in Further Support of Motion to Dismiss Counterclaims Asserted Against Plaintiff in Segal Defendants' Amended Answer/Third-Party Complaint**

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 281 of 300

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------x
FORDHAM LANDING NORTH HOLDINGS, LLC,

                              Plaintiff,

        -against-

MDBZJGGS, LLC, et. al.,

                              Defendants.
------------------------------------------------------------------------x
MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS        **Index No. 850030/2025**
FORDHAM LANDING 4 LLC, and GARY SEGAL,

Third-Party Plaintiffs,

        -against-

NAMDAR FORDHAM LANDING LLC, and SIG CRE 2023
VENTURE LLC,

                              Third-Party Defendants.
        - and -

FORDHAM LANDING PREFERRED, LLC and FORDHAM
LANDING PREFERRED SPONSOR, LLC

Nominal Third-Party Defendants
------------------------------------------------------------------------x


**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS COUNTERCLAIMS ASSERTED AGAINST PLAINTIFF IN
SEGAL DEFENDANTS' AMENDED ANSWER/THIRD-PARTY COMPLAINT**


*Dean Boyer*
_____
N. Dean Boyer, Esq.
Lester Shaw & Levy LLP
*Attorneys for Plaintiff*
45 Main Street, Suite 322
Brooklyn, New York 1201
(212) 279-4490; Ext. 204


1 of 16

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

PRELIMINARY STATEMENT ................................................................................................... 1

FACTS ......................................................................................................................................... 2

ARGUMENT ............................................................................................................................... 2

I.     Segal Defendants Fail to Address Plaintiff's Motion Detailing Deficiencies in the Segal Pleading, Thereby Conceding Dismissal of All Counterclaims .................................................... 2

   A.     Segal Defendants Concede They Have No Fiduciary Relationship with Plaintiff ......... 3

   B.     Segal Defendants Concede They Engaged in an Improper Group Pleading .................. 4

   C.     Segal Defendants Concede That Plaintiff Could Not Have Tortiously Interfered .......... 5

   With The Operating Agreement Prior To Plaintiff's Corporate Existence ............................ 5

   D.     Segal Defendants Concede There Is No Merit to Their Abuse of Process Claims ......... 6

II.    Segal Defendants Cannot Maintain Cause of Action for Breach of Fiduciary Duty and the Counterclaim for Aiding and Abetting Same Must be Dismissed ............................................. 7

III.    Segal Defendants Cannot Establish Damages ................................................................. 8

CONCLUSION .........................................................................................................................11

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 283 of 300

## TABLE OF AUTHORITIES

Page(s)

Cases

*Abrazi v Kotlyarsky*,
   2017 N.Y. Slip Op. 32327[U] (Sup Ct, New York County 2017) ............................................. 9

*Aetna Cas. & Surety Co. v Merchants Mut. Ins. Co.*,
   84 A.D.2d 736 (1st Dept. 1981) ................................................................................................ 4

*Andesco, Inc. v Page*,
   137 A.D.2d 349 (1st Dept. 1988) .............................................................................................. 6

*Barlow v Skroupa*,
   76 Misc 3d 587 (Sup Ct, New York County 2022) ................................................................... 4

*Bd. of Ed. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO*,
   38 N.Y.2d 397 (1975) ............................................................................................................... 6

*Besen v Farhadian*,
   195 A.D.3d 548 (1st Dept. 2021) ............................................................................................ 10

*Burrowes v Combs*,
   25 A.D.3d 370 (1st Dept. 2006) ............................................................................................... 5

*Burry v Madison Park Owner LLC*,
   84 A.D.3d 699 (1st Dept. 2011) ............................................................................................... 3

*Calautti v Grados*,
   32 Misc. 3d 1205(A) (Sup Ct, Westchester County 2011) ....................................................... 2

*Components Direct, Inc. v Eur. Am. Bank and Tr. Co.*,
   175 A.D.2d 227 (2d Dept. 1991) .............................................................................................. 9

*Coventry Real Estate Advisors, L.L.C. v Developers Diversified Realty Corp.*,
   84 A.D.3d 583 (1st Dept. 2011) ............................................................................................... 7

*Curiano v Suozzi*,
   63 N.Y.2d 113 (1984) ............................................................................................................... 6

*Fischer v Belmonte*,
   2013 NY Slip Op 32491[U] (Sup Ct, New York County 2013) ............................................... 3

*Hajderlli v Wiljohn 59 LLC*,
   24 Misc. 3d 1242(A) (Sup Ct, Bronx County 2009) ................................................................ 2

*In re S. Canaan Cellular Investments, LLC*,
   09 10473, 2010 WL 3306907 (E.D. Pa Aug. 16, 2010) ........................................................... 7

*Jonas v National Life Ins. Co.*,
   147 A.D.3d 610 (1st Dept. 2017) .............................................................................................. 4

*Khandalavala v Artsindia.com, LLC*,
   2014 N.Y. Slip Op. 30939[U] (Sup Ct, New York County 2014) ............................................ 9

*Kronick v L.P. Thebault Co.*,
   70 A.D.3d 648 (2d Dept. 2010) ................................................................................................ 2

*Kronos, Inc. v AVX Corp.*,
   81 N.Y.2d 90 (1993) ................................................................................................................. 9

*Norex Petroleum Ltd. v Blavatnik*,
   48 Misc. 3d 1226(A) (Sup Ct, New York County 2015) .......................................................... 2

ii

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 284 of 300

*Panish v Steinberg,*
  32 A.D.3d 383 (2d Dept. 2006)............................................................................... 7
*Pennsylvania Lumbermens Mut. Ins. Co. v FBE/MHP Partners Corp.,*
  254 AD2d 469 (2d Dept 1998) .............................................................................. 3
*Principia Partners LLC v Swap Fin. Group,*
  194 A.D.3d 584 (1st Dept. 2021)........................................................................... 4
*Roni LLC v Arfa,*
  18 N.Y.3d 846 (2011)............................................................................................. 3
*Syllman v Nissan,*
  18 A.D.3d 221 (1st Dept. 2005).............................................................................. 6
*Talipot ESG Investments LLC v Bulltick Fin. Advisory Services LLC,*
  85 Misc. 3d 1234(A) (Sup Ct, New York County 2025) ....................................... 3
*Tarzia v Brookhaven Nat.,*
  *Lab.*, 247 A.D.2d 605 (2d Dept. 1998) ................................................................. 9
*Tesla Wall Sys., LLC v Related Cos.,*
  2018 WL 2225002 (S.D.N.Y. 2018) (applying Delaware law)............................... 8
*Two Rivers Entities, LLC v Sandoval,*
  192 A.D.3d 528 (1st Dept. 2021)......................................................................... 10
*Ward v Melis,*
  28 A.D.3d 970 (3d Dept. 2006)............................................................................. 7

Rules

CPLR 3013................................................................................................................ 4
CPLR 3016 (b)........................................................................................................... 4

Regulations

22 NYCRR § 202.8-b(a).......................................................................................... 12

iii

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 285 of 300

## PRELIMINARY STATEMENT

Plaintiff submits this memorandum of law in further support of its motion to dismiss the counterclaims alleged against Plaintiff by defendants MDBZJGGS, LLC, DS FORDHM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC and GARY SEGAL (the "Segal Defendants") in their Amended Verified Answer with Counterclaims, Cross-Claims and Third-Party Complaint (the "Segal Pleading").[1]

Segal Defendants' opposition to Plaintiff's motion to dismiss, as set forth in the Memorandum of Law of Jay E. Russ filed September 16, 2025, at NYSCEF Doc. No. 138 (the "Russ Memo"), ignores multiple dispositive legal arguments raised in Plaintiff's motion. The Segal Defendants utterly fail to address the glaring deficiencies in their pleadings and the factual impossibilities underpinning their counterclaims.[2]

Furthermore, the Segal Defendants' counterclaims are improperly pleaded and fatally defective in that the Segal Pleading asserts causes of action that are either flatly refuted by documentary evidence or contradicted within the four corners of the Segal Pleading itself.

Segal Defendants' specious counterclaims amount to no more than a slapdash attempt to muddy the waters of this relatively straightforward commercial foreclosure. This Court should not permit this bad-faith attempt at obfuscation and should grant Plaintiff's motion in its entirety and dismiss the Segal Defendants' counterclaims with prejudice.

---

[1] Unless otherwise indicated, all capitalized terms used herein shall have the same definition as set forth in the Affirmation of N. Dean Boyer, Esq., submitted in support of Plaintiff's motion on August 8, 2025 ("Boyer Aff."). NYSCEF Doc. No. 102.

[2] The Segal Defendants confusingly attempt to reargue Plaintiff's substitution motion by and restate the contents of the Segal Pleading to insist that the validity of their claims is self-evident, although their claims glaringly lack factual or legal validity.

1

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 286 of 300

## FACTS

The facts upon which this memorandum of law is based are contained in the accompanying Affirmation of N. Dean Boyer dated August 8, 2025, the exhibits attached thereto, and the documents incorporated by reference therein. NYSCEF Doc. No. 102.

## ARGUMENT

**I.    Segal Defendants Fail to Address Plaintiff's Motion Detailing Deficiencies in the Segal Pleading, Thereby Conceding Dismissal of All Counterclaims**

Segal Defendants' opposition to Plaintiff's motion to dismiss the counterclaims asserted in the Segal Pleading *completely ignores* several dispositive arguments set forth in Plaintiff's motion to dismiss. It is well settled, and New York courts have long recognized, that failure to respond to arguments raised in a motion to dismiss constitutes concession of those arguments. *See, e.g., Norex Petroleum Ltd. v Blavatnik,* 48 Misc. 3d 1226(A), *10 (Sup Ct, New York County 2015) (failure to address in opposition an argument made in motion to dismiss constitutes concession of the argument), *aff'd,* 151 A.D.3d 647 (1st Dept. 2017); *Kronick v L.P. Thebault Co.,* 70 A.D.3d 648, 649 (2d Dept. 2010) (finding claim abandoned by plaintiff's failure "to oppose the branch of the defendant's motion which was to dismiss it"); *Calautti v Grados,* 32 Misc. 3d 1205(A) (Sup Ct, Westchester County 2011) ("Defendant's failure to have addressed plaintiff's argument supporting dismissal of defendant's counterclaims necessarily is deemed a concession as to the correctness of plaintiff's legal argument."); *Hajderlli v Wiljohn 59 LLC,* 24 Misc. 3d 1242(A) (Sup Ct, Bronx County 2009) *aff'd,* 71 A.D.3d 416 (1st Dept. 2010) ("Analysis under this section is unnecessary given Plaintiff's failure to offer any arguments in opposition to Melnick's cross-motion for dismissal of this cause of action."). On this basis alone, Segal Defendants have conceded the merits of Plaintiff's motion to dismiss on each of their causes of action set forth in their counterclaims.

2

A.     Segal Defendants Concede They Have No Fiduciary Relationship with Plaintiff

Plaintiff may not be held liable for a breach of fiduciary duty to Segal Defendants based on the fact that Plaintiff has *no relationship* with any of the Segal Defendants, let alone the kind of relationship that "exists when confidence is reposed on one side and there is resulting superiority and influence on the other". *Roni LLC v Arfa,* 18 N.Y.3d 846, 848 (2011). Absent any allegation of a relationship between Plaintiff and any of the Segal Defendants, there can be no finding of a fiduciary duty. *Fischer v Belmonte, 2013 N.Y. Slip Op. 32491[U]* (N.Y. Sup Ct, New York County 2013) ("As to the breach of fiduciary duty claim, Phillips had no relationship with plaintiffs, which would give rise to a fiduciary duty."); *Pennsylvania Lumbermens Mut. Ins. Co. v FBE/MHP Partners Corp., 254 AD2d 469 (2d Dept 1998)* ("Here, the defendant had no dealings whatsoever with Lumbermens; no confidential or fiduciary relationship existed."); *See Burry v Madison Park Owner LLC*, 84 A.D.3d 699, 699–700 (1st Dept. 2011) ("To state a claim for breach of fiduciary duty, plaintiffs must allege . . . defendant owed them a fiduciary duty[.]").

Segal Defendants make clear that the Fordham Landing Preferred Sponsor LLC Operating Agreement is the source of the claimed fiduciary duty. Even accepting the allegation as true that Igal Namdar controls Plaintiff, Segal Defendants and Plaintiff remain several steps removed from one another. Like Plaintiff, none of the Segal Defendants who have pleaded any cause of action in this matter are members of Fordham Landing Preferred Sponsor LLC. There is no factual or legal basis for the expansive application of fiduciary duty, as advanced by the Segal Defendants, to related individuals and entities not in privity with one another. *See Talipot ESG Investments LLC v Bulltick Fin. Advisory Services LLC*, 85 Misc. 3d 1234(A) (Sup Ct, New York County 2025) ("[P]laintiffs have failed to cite to any authority suggesting that a controlling-interest holder of a managing member of an LLC owes a separate and distinct fiduciary duty to the non-managing members of that same LLC solely by virtue of its controlling interest in the managing member.")

3

Segal Defendants' opposition to Plaintiff's motion to dismiss its counterclaims in fact *concedes* that there is no fiduciary relationship between Plaintiff and any Segal Defendant. Indeed, the Russ Memo explicitly states "[a]s pled, Substitute Plaintiff tortiously interfered with contract rights of Segal Defendants, indued a breach of the contract, abused the process of this Court, and aided and abetted a breach of fiduciary duties," and that "Plaintiff was aware of the fiduciaries' breach of duties." Russ Memo, p. 4, NYSCEF Doc. No. 138. This wording concedes that Plaintiff is not counted among the fiduciaries itself. Based on this concession, the allegation that Plaintiff breached an independent fiduciary duty is abandoned. There is no refutation of Plaintiff's argument for dismissal of the first counterclaim, which must be dismissed.

B.   Segal Defendants Concede They Engaged in an Improper Group Pleading

Segal Defendants fail to address, and therefore concede, Plaintiff's argument that the counterclaims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty are deficient as they are brought via improper group pleading. A complaint that fails to differentiate between the defendants is an improper group pleading. *Principia Partners LLC v Swap Fin. Group,* 194 A.D.3d 584, 584 (1st Dept. 2021); *Aetna Cas. & Surety Co. v Merchants Mut. Ins. Co.,* 84 A.D.2d 736, 736 (1st Dept. 1981). Such group pleading fails to satisfy CPLR 3013 and CPLR 3016 (b). *See Jonas v National Life Ins. Co.,* 147 A.D.3d 610, 612 (1st Dept. 2017) (dismissing a fraud claim where the defendants were "impermissibly lump[ed] together"); *Barlow v Skroupa,* 76 Misc 3d 587, 591 (Sup Ct, New York County 2022), *affd* 217 A.D.3d 620 (1st Dept. 2023) (citing *Principia Partners LLC,* 194 A.D.3d at 584). The Segal Pleading repeatedly alleges that "Namdar/Namdar Entities (including Namdar Fordham Landing LLC) and Plaintiff are engaged in a plan, conspiracy, and scheme" without specifying which entity engaged in which bad acts. This failure requires dismissal of the counterclaims.

4

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 289 of 300

Segal Defendants once again ignore this deficiency in its entirety in opposing Plaintiff's Motion to Dismiss. Segal Defendants merely rely on further conclusory assertions that "Plaintiff was aware of the fiduciaries' breach of duties and actively participated in it, essentially becoming a participant in it." Russ Memo, p. 4, NYSCEF Doc. No. 138. This vague allegation of some relation to an alleged breach is insufficient to overcome the deficiency of the group pleading, which is not contested, compelling dismissal of both the breach of fiduciary duty claim and aiding and abetting breach of fiduciary duty claim.

C.    Segal Defendants Concede That Plaintiff Could Not Have Tortiously Interfered With The Operating Agreement Prior To Plaintiff's Corporate Existence

To plead and sustain a cause of action for tortious interference with contract, "a plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct." *Burrowes v Comb*s, 25 A.D.3d 370, 373 (1st Dept. 2006). As set forth in Plaintiff's moving papers, this but-for causation is a factual impossibility as Plaintiff did not exist as an entity until months after the alleged breach.

Segal Defendants' opposition confirms that the "breach" alleged in their pleading is that outlined in the notice dated November 12, 2024 (the "Notice"), from DS 3, the manager of Fordham Landing Preferred Sponsor LLC. *See* Russ Memo, p. 12, NYSCEF Doc. No. 138. That Notice alleged a breach of the Operating Agreement in the failure to make capital contributions necessary to extend the loan. *Id.* Plaintiff was formed as on February 25, 2025, more than three months after the Notice of the alleged breach, and necessarily further removed from the date of any alleged breach itself. Segal Defendants do not address this factual impossibility at all. Their opposition only reiterates the elements of tortious interference; they do not explain how a Plaintiff could be involved in, let alone a 'but-for' cause of, a breach that pre-dates its existence. Segal

5

Defendants' failure to address this factual impossibility concedes the point, compelling granting that portion of Plaintiff's motion for dismissal of the second counterclaim for tortious interference.

D.   Segal Defendants Concede There Is No Merit to Their Abuse of Process Claims

As set forth in Plaintiff's motion to dismiss, Segal Defendants cannot maintain a claim for abuse of process against Plaintiff based on the filing of the summons and complaint or the notice of pendency. "[T]he institution of a civil action by summons and complaint is not legally considered process capable of being abused." *Curiano v Suozzi*, 63 N.Y.2d 113, 116 (1984). Similarly, "the filing of a notice of pendency is not process 'compelling the performance or forbearance of some prescribed act'" *Andesco, Inc. v Page*, 137 A.D.2d 349, 356 (1st Dept. 1988) (quoting *Bd. of Ed. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Ass'n, Inc., Local 1889 AFT AFL-CIO*, 38 N.Y.2d 397, 403 (1975)).

Segal Defendants entirely ignore the fact, as pointed out in the memorandum of law in support of Plaintiff's motion, that SIG CRE, not Plaintiff, filed the summons and complaint in this action, as well as the notice of pendency. Segal Defendants offer no explanation as to why Plaintiff is the proper target of this claim when it indisputably did not engage in any "process", as loosely conceived by Segal Defendants. This concession that Plaintiff is not the proper party compels dismissal of this counterclaim.

Segal Defendants similarly offer no legal authority or distinguishing facts to contradict the application of this established law to their abuse of process claim. They only claim, in typical conclusory fashion, that Plaintiff and the other parties to this action have acted "for other purposes and ulterior motives beyond those set forth in the summons and Notice of Pendency". Even crediting Segal Defendants' conclusory allegation of "ulterior motives", their claims must be dismissed. *See Syllman v Nissan*, 18 A.D.3d 221 (1st Dept. 2005) ("A malicious motive in

6

commencing an action is insufficient to support such a claim because 'the institution of a civil action by summons and complaint is not legally considered process capable of being abused'"). *Panish v Steinberg*, 32 A.D.3d 383, 384 (2d Dept. 2006) (Dismissing claim for abuse of process where "plaintiff failed to allege any actual misuse of the notice of pendency to obtain an end outside its proper scope.").

Segal Defendants fail to provide any factual basis that this action does not affect title to real property, or that giving constructive notice to third parties of this action is somehow improper. Thus, "[t]he notice of pendency was used in the manner for which it was designed and defendants failed to allege facts sufficient to establish that it was filed *with malicious intent alone*". *Ward v Melis*, 28 A.D.3d 970, 971 (3d Dept. 2006).

## II.     Segal Defendants Cannot Maintain Cause of Action for Breach of Fiduciary Duty and the Counterclaim for Aiding and Abetting Same Must be Dismissed

As noted above, Plaintiff may not be held liable for a breach of fiduciary duty to Segal Defendants based on the fact that Plaintiff has *no relationship* with any of the Segal Defendants. The breach of fiduciary duty which Segal Defendants allege is one supposedly owed by Namdar, but no such fiduciary duty exists. "[F]iduciary duties are imposed 'only on managers and those designated as controlling members of an LLC,' and not on non-managing minority members". *Coventry Real Estate Advisors, L.L.C. v Developers Diversified Realty Corp.*, 84 A.D.3d 583, 584 (1st Dept. 2011) (*quoting In re S. Canaan Cellular Investments, LLC*, 09 10473, 2010 WL 3306907, at *7 (E.D. Pa Aug. 16, 2010)). It is undisputed that the manager designated by the Operating Agreement is DS 3.

Furthermore, Namdar does not owe a fiduciary duty to the other members of the limited liability company simply by virtue of his appointment to the management committee. Neither Namdar or any of the Segal Defendants are parties to that agreement, and no fiduciary duty exists.

7

Namdar was appointed solely as a Representative to approve or reject proposed Major Decisions. This appointment and the limited scope of authority does not constitute management control sufficient to create any fiduciary duty. *Cf. Tesla Wall Sys., LLC v Related Cos.*, 2018 WL 2225002, at *7 (S.D.N.Y. 2018) (applying Delaware law) ("On their own, 'approval rights' are not sufficient to show an active role in management. Not only are such rights commonplace among passive LLC investors, but also such rights do not create fiduciary duties absent evidence they were exercised to manage and direct the company").

In addition, even if Namdar's position on the management committee ordinarily would create a fiduciary relationship, such duties are expressly waived by the clear terms set forth in the Operating Agreement which provides as follows: "Except as otherwise expressly provided in this Agreement, none of the Representatives (in their capacities as members of the Management Committee only), the Manager or the Members shall have any duties or liabilities to the Company or any other Member (including any fiduciary duties)." NYSCEF Doc. No. 46 at p. 16.

The Segal Defendants fail to address this provision of the Operating Agreement and thereby tacitly admit that the explicit waiver of any fiduciary duty by any of the management committee representatives is binding on the parties. Therefore, without any viable claim for breach of fiduciary duty, the Segal Defendants' counterclaim against Plaintiff alleging aiding and abetting a breach of fiduciary duty must be dismissed in its entirety.

### III.     Segal Defendants Cannot Establish Damages

As set forth in Plaintiff's memorandum of law in support of its motion to dismiss, the Segal Defendants' counterclaims must be dismissed as these defendants have not suffered any articulable damages which are a necessary element of each cause of action set forth in their counterclaims. In opposition, Segal Defendants merely reiterate that there is "financial harm" caused by the breach of fiduciary *only*. Russ Memo, p. 8, NYSCEF Doc. No. 138. Notably, Segal Defendants fail to

address the lack of damages relating to the alleged tortious interference with contract or their claim for abuse of process.

Segal Defendants state, without any factual support, that they have suffered "reputational harm" and a "loss of business opportunities" in the venture. Russ Memo, p. 8, NYSCEF Doc. No. 138. First, these categories of damages are found only in the Russ Memo. There is no allegation of such damages in the Segal Pleading, nor is there any evidence – documentary or testimonial – suggesting these damages. Although a deficiency on the face of the pleading may be cured by *affidavit* submitted by the party opposing dismissal, the statements by Segal Defendants' counsel in their Memorandum of Law have no probative value. *Components Direct, Inc. v Eur. Am. Bank and Tr. Co.*, 175 A.D.2d 227, 232 (2d Dept. 1991); *Tarzia v Brookhaven Nat. Lab.*, 247 A.D.2d 605, 606 (2d Dept. 1998) ("The affirmation of the plaintiffs' attorney submitted in opposition to the defendants' motion to dismiss, *inter alia,* the second cause of action is of no probative value since it was not supported by any documentary evidence.")

Even if these supposed damages never previously pleaded or alleged were not a thin fiction thrown out by Segal Defendants' counsel, they would still be insufficient to state a cause of action to sustain their claims for damages. First, "[t]he law is settled that a plaintiff may not plead special damages by way of conclusory language and unitemized round numbers." *Abrazi v Kotlyarsky,* 2017 N.Y. Slip Op. 32327[U], 4 (Sup Ct, New York County 2017). Thus, a claim for abuse of process must also allege "how they were specifically harmed by" the alleged abuse of process. *Khandalavala v Artsindia.com, LLC*, 2014 N.Y. Slip Op. 30939[U], at 7 (Sup Ct, New York County 2014). There is no allegation that Segal Defendants suffered any harm specific to the filing of the summons or the notice of pendency, a fact which Segal Defendants do not contest. The only damages which may be discerned are tied to the broader allegations of misdeeds by all parties

9

acting in concert. This pleading deficiency requires dismissal of the Third Counterclaim against Plaintiff.

With regard to the claim for tortious interference with contract, "the claim is not enforceable until damages are sustained." *Kronos, Inc. v AVX Corp.*, 81 N.Y.2d 90, 94 (1993). The alleged breach of the Operating Agreement, failure to make a capital contribution, gives the other members recourse to a "Default Loan" secured by the non-funding member's right to disbursements, and ultimately to dilute the non-funding member's interests. The claim of reputational damage and lost business opportunities as compensable damages for a breach of the Operating Agreement cannot be sustained as they are purely speculative and, in any event, should be dismissed based on the clear, unambiguous terms of the Operating Agreement. *See Two Rivers Entities, LLC v Sandoval*, 192 A.D.3d 528, 529 (1st Dept. 2021) (Upholding dismissal of claim for breach of operating agreement where operating agreement provided clear remedy). The Second Counterclaim against Plaintiff must be dismissed for failure to allege any actual damages.

Lastly, Segal Defendants' counterclaims for (I) breach of fiduciary duty and (IV) aiding and abetting breach of fiduciary duty also fail to allege damages. The mere allegation that Plaintiff is part of a scheme to harm Segal Defendants by stepping in as lender/plaintiff in an already-existing foreclosure is insufficient. As explained in *Besen v Farhadian*, 195 A.D.3d 548, 550 (1st Dept. 2021), the alleged self-dealing by purchase of a note "as part of a plan to commence a foreclosure proceeding against their own company, deprive the Company of a legal defense, abscond with the Company's sole asset as part of a rigged foreclosure process" is not a basis for damages where "the loan was already an encumbrance on the property and needed to be paid off shortly…the creditor changed but it still needed to be paid off." Even accepting the allegations in Seal Defendants' complaint as true, there has been no change in their position which can support

10

a claim for damages. Absent damages from the breach of fiduciary duty, the counterclaims for breach of fiduciary duty and aiding and abetting such breach must be dismissed.

## CONCLUSION

For all the foregoing reasons, as well as those set forth in Plaintiff's motion papers filed August 8, 2025, Plaintiff respectfully requests that Plainitff's motion to dismiss the Segal Defendants' counterclaims be granted in its entirety and that all counterclaims alleged by the Segal Defendants be dismissed with prejudice, together with such other and further relief as this Court deems just and necessary.

Dated: Brooklyn, New York
      October 10, 2025

*Dean Boyer*
_____
N. Dean Boyer, Esq.
Lester Shaw & Levy LLP
*Attorneys for Plaintiff*
45 Main Street, Suite 322
Brooklyn, New York 1201
(212) 279-4490; Ext. 204

11

Case 7:26-cv-04909 Document 1-1 Filed 06/10/26 Page 296 of 300

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to 22 NYCRR § 202.8-b(a), that the total number of words in the foregoing Memorandum of Law dated October 10, 2025 (the "Memorandum"), exclusive of the caption and signature block is 3,353, and that the Memorandum complies with the word count limit of 22 NYCRR § 202.8-b(a). The foregoing word count is based on the word count of the Microsoft Word word-processing program used to prepare the Memorandum.

Dated: Brooklyn, New York
October 10, 2025

*Dean Boyer*
N. Dean Boyer, Esq.

12

**NYSCEF Document # 178**
**Notice of Bankruptcy**

Case 7:26-cv-04909   Document 1-1   Filed 06/10/26   Page 298 of 300

LAW OFFICES

# RUSS & RUSS, P.C.

543 BROADWAY -  P.O. BOX 149 - MASSAPEQUA. NEW YORK 11758

TEL: 516/541-1014     FAX: 516/541-1077

JAY EDMOND RUSS
LINDA EILEEN RUSS

*Of Counsel*
IRA LEVINE
DANIEL P. ROSENTHAL*

•*Also Admitted in Connecticut*

March 16, 2026

**By NYSCEF**

Chambers of the Hon. James d'Auguste
Supreme Court, New York County
60 Centre Street
New York, New York 10007

Re:     Fordham Landing North Holdings LLC v. MDBZJGGS, LLC, et al
         and third party action
         Index No. 850030/2024

Dear Justice d'Auguste:

Please be advised that defendants/third-party plaintiffs MDBZJGGS, LLC, DS Fordham Landing 2 LLC, DS Fordham Landing 4 LLC, and Nominal Defendants Fordham Landing Preferred Sponsor LLC and Fordham Landing Preferred LLC each filed a Chapter 11 bankruptcy petition today in the United States Bankruptcy Court for the Southern District of New York.

Accordingly, this action is stayed.

Respectfully submitted,

IRA LEVINE

cc      All counsel
        (via NYSCEF)

**NYSCEF Document # 181**
**Decision and Order on Motion to Dismiss**

Case 7:26-cv-04909    Document 1-1    Filed 06/10/26    Page 300 of 300

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    **Hon. James E. d'Auguste**                        PART 55

_____

FORDHAM LANDING NORTH HOLDINGS LLC,

Plaintiff,

- v -

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC, IGAL NAMDAR, GARY SEGAL, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD, "JOHN DOE" NO. 1 THROUGH "JOHN DOE" NO. 100, INCLUSIVE,

Defendants.

_____

MDBZJGGS, LLC, DS FORDHAM LANDING 2 LLC, DS FORDHAM LANDING 4 LLC, GARY SEGAL,

Plaintiffs,

-against-

NAMDAR FORDHAM LANDING LLC, SIG CRE 2023 VENTURE LLC, FORDHAM LANDING PREFERRED, LLC, FORDHAM LANDING PREFERRED SPONSOR LLC,

Defendants.

_____

| | |
|---|---|
| INDEX NO. | 850030/2025 |
| MOTION DATE | 08/08/2025, 08/08/2025 |
| MOTION SEQ. NO. | 006 007 |

**ORDER - OTHER (MOTION RELATED)**

Third-Party
Index No. 595565/2025

Motion Sequence Nos. 006 and 007 are denied without prejudice with permission for movants to file a new motion seeking the same relief once the automatic bankruptcy stay impacting this action is vacated. The action itself is stayed.

| 4/21/2026 | James d'Auguste, J.S.C. |
|---|---|
| DATE | |

| CHECK ONE: | CASE DISPOSED | | X NON-FINAL DISPOSITION | |
|---|---|---|---|---|
| | GRANTED | DENIED | GRANTED IN PART | X OTHER |
| APPLICATION: | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

850030/2025   FORDHAM LANDING NORTH HOLDINGS, LLC vs. MDBZJGGS, LLC ET AL          Page 1 of 1
Motion No.  006 007